**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| IN RE GERBER PRODUCTS COMPANY HEAVY METALS BABY FOOD LITIGATION | : : : | Master File No. 1:21-cv-0269 |
| | : | Class Action |
| THIS DOCUMENT RELATES TO: | : : | Jury Trial Demanded |
| | : : | |
| *Keeter v. Gerber Products Company* | : : | Case No. 1:21-cv-0269 |
| | : | |
| *Moore v. Gerber Products Company* | : : | Case No. 1:21-cv-00277 |
| | : | |
| *Hazely, et al. v. Gerber Products Company* | : : | Case No. 1:21-cv-00321 |
| | : | |
| *Bryan, et al. v. Gerber Products Company* | : : | Case No. 1:21-cv-00349 |
| | : | |
| *Adams v. Gerber Products Company* | : : | Case No. 1: 21-cv-00410 |
| | : | |

**CONSOLIDATED CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND OVERVIEW OF THE ACTION ................................................. 2

II.   PARTIES ............................................................................................................. 8

    A.    Plaintiffs ................................................................................................... 8

    B.    Defendant ............................................................................................... 22

III.  JURISDICTION AND VENUE ............................................................................... 24

IV.   FACTUAL ALLEGATIONS ................................................................................... 24

    A.    Gerber – The Leading Manufacturer of Baby Food Products in the United States ...................................................................................................... 24

    B.    Congressional Investigation and Reporting Reveals the Presence of Dangerous Levels of Heavy Metals in Gerber Baby Food Products .................... 25

    C.    Heavy Metals and Perchlorate – Baby Food Contaminants That Are Highly Dangerous and Detrimental to Children's Health, Safety and Welfare ............... 27

        a.    Arsenic ................................................................................. 30

        b.    Cadmium ............................................................................... 32

        c.    Lead ..................................................................................... 33

        d.    Mercury ................................................................................ 35

        e.    Perchlorate ........................................................................... 37

    D.    Gerber Falsely Markets and Represents its Baby Food Products as Safe and Suitable for Babies' Consumption, While Concealing the Presence of Dangerous Levels of Heavy Metals and/or Perchlorate in its Products ............... 38

        a.    Baby Product Packaging .......................................................... 41

        b     Omissions ............................................................................. 57

    E.    Consumers Were Misled and Deceived by Gerber's Misrepresentations ........... 58

F.     Defendant Gerber Knew or Should Have Known its Representations and Material Omissions in its Marketing Are Misleading...........................................59

G.     Plaintiffs' Reliance is Reasonable and Foreseeable..............................................62

H.     Defendant Breached its Express and Implied Warranties.....................................62

I.     Tolling Of The Statute Of Limitations.................................................................63

     a.     Discovery Rule Tolling............................................................................63

     b.     Fraudulent Concealment Tolling .............................................................64

     c.     Estoppel....................................................................................................64

V.     CLASS ACTION ALLEGATIONS .....................................................................64

FIRST CAUSE OF ACTION Breach of Express Warranty (On Behalf of All Classes) .............71

SECOND CAUSE OF ACTION Breach of Common Law Implied Warranty of Merchantability (On Behalf of All Classes) ...................................................................73

THIRD CAUSE OF ACTION Breach of Statutory Warranty of Merchantability (On Behalf of Classes in States Enumerated Below).............................................................76

FOURTH CAUSE OF ACTION Fraudulent Concealment – Fraud by Omission (On Behalf of All Classes) .............................................................................................79

FIFTH CAUSE OF ACTION Negligent Misrepresentation (On Behalf of All Classes).............81

SIXTH CAUSE OF ACTION Intentional Misrepresentation (On Behalf of All Classes)...........83

SEVENTH CAUSE OF ACTION Quasi Contract/Unjust Enrichment/Restitution (On Behalf of All Classes)..........................................................................................85

EIGHTH CAUSE OF ACTION Violations of the Arizona Consumer Fraud Act – Ariz. Rev. Stat. §§ 44-1521, *et seq*., (On Behalf of Plaintiff Thomas and the Arizona Subclass)86

NINTH CAUSE OF ACTION Violations of California's Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*, (On Behalf of Plaintiffs Bryant, Tadeo, and Serratos and the California Subclass) ...............................................................87

TENTH CAUSE OF ACTION Violations of California False Advertising Law, California Business & Professions Code §§ 17500, *et seq*., (On Behalf of Plaintiffs Bryant, Tadeo, and Serratos and the California Subclass) ...........................................................89

ELEVENTH CAUSE OF ACTION Violations of the Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq*., (On Behalf of Plaintiffs Bryant, Tadeo, and Serratos and the California Subclass) ......................................................................... 90

TWELFTH CAUSE OF ACTION Breach of the Implied Warranty of Merchantability, California Uniform Commercial Code (Cal. Comm. Code § 2314) (On Behalf of Plaintiffs Bryant,  Tadeo, and Serratos and the California Subclass).......................................................... 92

THIRTEENTH CAUSE OF ACTION Breach of the Implied Warranty of Merchantability Song-Beverly Consumer Warranty Act (Cal. Civil Code §§ 1790, *et seq*.) (On Behalf of Plaintiffs Bryant,  Tadeo, and Serratos and the California Subclass).......................................................... 93

FOURTEENTH CAUSE OF ACTION Violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-6-101, *et seq*., (On Behalf of Plaintiff Moore and the Colorado Subclass) ....................................................................................................................... 95

FIFTEENTH CAUSE OF ACTION Violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*., (On Behalf of Plaintiffs Bryan, Adams, Hazely, and Murwin and the
Florida Subclass).................................................................................................................. 96

SIXTEENTH CAUSE OF ACTION Violations of the Georgia Fair Business Practices act, O.C.G.A. §§ 10-1-390, *et seq.*, (On Behalf of Plaintiff Allen and the Georgia Subclass) ........... 98

SEVENTEENTH CAUSE OF ACTION Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*,  (On Behalf of Plaintiffs MacLeod, Neal, and Willoughby and the Illinois Subclass.) ..................................................... 101

EIGHTEENTH CAUSE OF ACTION Violations of the Minnesota Prevention of Consumer Fraud Act, M.S.A. §§ 325F.68, *et seq.*, (On Behalf of Plaintiff McKeon and the Minnesota Subclass) ....................................................................................................................... 103

NINETEENTH CAUSE OF ACTION Violations of the Minnesota False Statement in Advertising Act, M.S.A. § 325F.67 (On Behalf of Plaintiff McKeon and the Minnesota Subclass) ................................................................................................................................ 105

TWENTIETH CAUSE OF ACTION Violations of the Minnesota Unlawful Trade Practices Act, M.S.A. §§ 325D.13, *et seq*., (On Behalf of Plaintiff McKeon and the Minnesota Subclass)..... 107

TWENTY-FIRST CAUSE OF ACTION Violations of the Minnesota Uniform Deceptive Trade Practices Act, M.S.A. §§ 325D.44, *et seq.*, (On Behalf of Plaintiff McKeon and the Minnesota Subclass) ....................................................................................................................... 109

TWENTY-SECOND CAUSE OF ACTION Violations of New Jersey's Consumer Fraud Act - Fraud in Connection with Sale or Advertisement of Merchandise, N.J. Stat. Ann.

§§ 56:8-1, *et seq.*, (On Behalf of Plaintiffs Clark, Fleissner and Blazevic and the New Jersey Subclass) ................................................................................................................... 111

TWENTY-THIRD CAUSE OF ACTION Violations of the New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349 (On Behalf of Plaintiffs Visconti, Simeron, Mosquera, and Wehmeyer and the New York Subclass) ........................................................... 113

TWENTY-FOURTH CAUSE OF ACTION Violations of the New York False Advertising Act, N.Y. Gen. Bus. Law § 350 (On Behalf of Plaintiffs Visconti, Simeron, Mosquera, and Wehmeyer and the New York Subclass) ................................................................... 116

TWENTY-FIFTH CAUSE OF ACTION Violations of the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.*, (On Behalf of Plaintiffs Wilson and Roberts and the North
Carolina Subclass) ..................................................................................................... 118

TWENTY-SIXTH CAUSE OF ACTION Violations of the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.01, *et seq.*, (On Behalf of Plaintiffs Adkins, Puntel, and Robinson, and the Ohio Subclass) ............................................................................... 120

TWENTY-SEVENTH CAUSE OF ACTION Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§ 201-1, *et seq.*, (On Behalf of Plaintiffs Hagmaier, McCarthy, and Fitzgerald, and the Pennsylvania Subclass)...... 122

TWENTY-EIGHTH CAUSE OF ACTION Violations of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101, *et seq.*, (On Behalf of Plaintiff Miller and the Tennessee Subclass)................................................................................................... 126

TWENTY-NINTH CAUSE OF ACTION Violations of the Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.*, (On Behalf of Plaintiffs Keeter and Umanzor and the Texas Subclass)........................................................... 127

THIRTIETH CAUSE OF ACTION Statutory Breach of Implied Warranty ............................ 129

THIRTY-FIRST CAUSE OF ACTION Statutory Breach Of Express Warranties, Tex. Bus. & Com. Code § 2.213 (On Behalf of Plaintiffs Keeter and Umanzor and the Texas Subclass) ................................................................................................................... 130

THIRTY-SECOND CAUSE OF ACTION Statutory Breach of Express Warranties, Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-200, *et seq.*, (On Behalf of Plaintiff Rhea and the Virginia Subclass)................................................................................ 131

THIRTY-THIRD CAUSE OF ACTION Violations of the Washington Consumer Protection Act, RCW §§ 19.86, *et seq.*, (On Behalf of Plaintiff Valenzuela and the Washington Subclass)...... 132

THIRTY-FOURTH CAUSE OF ACTION Violations of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq*., (On Behalf of Plaintiff Harmon and The Wisconsin Subclass) .................................................................................................................... 134

VI.     REQUEST FOR RELIEF ............................................................................................ 135

VII.    DEMAND FOR JURY TRIAL AND REQUEST TO AMEND.................................... 136

Plaintiffs, Kathleen Keeter ("Keeter"); Jamie Moore ("Moore"); Crista Marie Hazely ("Hazely"); Kathryn McCarthy ("McCarthy"); Kimberly Simeon ("Simeon"); Renee Bryan ("Bryan"); Jen MacLeod ("MacLeod"); Alison Fleissner ("Fleissner"); Kelly McKeon ("McKeon"); Teresa Hagmaier ("Hagmaier"); Kelli Adams ("Adams"); Tessie Adkins ("Adkins"); Deandra Bryant ("Bryant"); Sheenah Clark ("Clark"); Autumn Ellison ("Ellison"); Brianna Thomas ("Thomas"); Rachant Wilson ("Wilson"); Danielle Visconti ("Visconti"); Rosa Tadeo ("Tadeo"); Myra Serratos ("Serratos"); Gretehl Umanzor ("Umanzor"); Skylar Murwin ("Murwin"); Selena Mosquera ("Mosquera"); Jennifer Wehmeyer ("Wehmeyer"); Olivia Neal ("Neal"); Morgan Fitzgerald ("Fitzgerald"); Danielle Puntel ("Puntel"); Alicia Robinson ("Robinson"); Nichole Allen ("Allen"); Amanda Roberts ("Roberts"); Ivana Blazevic ("Blazevic"); Tiffany Harmon ("Harmon"); Charlotte Willoughby ("Willoughby"); Ashley Moore Rhea ("Rhea"); Kwanda Miller ("Miller"); and Jessica Valenzuela ("Valenzuela") (collectively "Plaintiffs"), individually, and on behalf of all other consumers similarly situated, by and through their respective undersigned attorneys, bring this Consolidated Class Action Complaint against Defendant Gerber Products Company ("Defendant," "Company," or "Gerber") for its negligent, reckless, and/or intentional practice of misrepresenting and otherwise failing to fully and adequately disclose, and otherwise concealing, the presence or risk of Heavy Metals (defined below), and/or Perchlorate, or other dangerous toxic ingredients, contaminating its baby food products sold throughout the United States, including in this District.

Plaintiffs, all of whom purchased one or more Gerber baby food products to feed their children, seek both injunctive and monetary relief on behalf of themselves and the proposed Class and Subclasses (defined below, and together "Classes"), including but not limited to: (i) requiring full disclosure of all toxic substances and ingredients in Gerber's baby food products, including in

promotional material, marketing, and advertising; (ii) requiring complete and adequate testing of all ingredients in Gerber's baby food products, as well as the final products, offered for sale to consumers for such substances; and (iii) restoring monies to all members of the proposed Classes. Plaintiffs allege the following based upon personal knowledge as to themselves, and as to all other matters upon information and belief based on investigation by their counsel. Plaintiffs believe that a reasonable opportunity for discovery will reveal substantial evidentiary support for the allegations set forth herein.

## I.      INTRODUCTION AND OVERVIEW OF THE ACTION

1.      Children are precious. They are the lifeblood of our Nation, whose health, growth, and mental and psychological development carry the promise of a brighter future in fulfillment of the American dream.[1]

2.      Nourishing our children healthfully and appropriately is critical to their development. With over 19 million children ages 0-4, and over 3.7 million newborns each year in America, as reported in 2019, *see* http//www.cdc.gov/nchs/data/nvsr40/nvsr70-02-508.pdf and https://datacenter.kidscount.org/data/tables/101-child-population-by-age-group#detailed/, the so-called "baby food" market is huge. It represents a massive economic opportunity for food product manufacturers like Gerber.

---

[1]     It has been famously said that: "the potential possibilities of any child are the most intriguing and stimulating in all creation," Ray L. Wilbur, former President of Stanford University; "children are our most valuable resource," Herbert Hoover, 31st President of the United States; "children are 1/3 of our population and all of our future," Select Panel for the Promotion of Child Health, 1981; "there can be no keener revelation of a society's soul than the way in which it treats its children." Nelson Mandela, former President of South Africa.

3.      Gerber is an American manufacturer of Baby Food Products.[2]  Gerber claims to be one of the "world's most trusted name[s] in baby food." http://www.gerber.com/Nestlé nutrition/default.aspx.  Gerber sells nearly 200 different Baby Food Products, including veggie and fruit purees, cereals, and finger food snacks such as Puffs.  Gerber was founded with the mission to "give babies the best start in life." http://www.gerber.com/about-us.  As of 2017, Gerber controlled 61 percent of the baby food market in the United States. *See "Growing Up Gerber: 5 Questions with CMO Aileen Stocks."* https://www.brandchannel.com/2017/04/ 15/5-questions-gerber-041517 (April 15, 2017).  The Company continues to control a significant market share, even amid fierce competition.

4.      Gerber markets, advertises, promotes, and sells its Baby Food Products in all 50 states plus the District of Columbia and Puerto Rico.  When Gerber was acquired by Nestlé, S.A. in 2007 from Novartis, S.A., Nestlé reported that Gerber had achieved net sales of $1.6 billion and a market share of 79% of the United States market at the time.

5.      As more fully discussed below, Gerber touts that its Products provide "three fundamental areas of benefits for parents: safety and quality; nutrition; and health," offering "USDA Certified foods specially designed for baby that contain no artificial flavors or colors," with "simply the good stuff."  Its promotional material conveys safety levels or designations for its Products – constantly using the iconic image of the happy "Gerber Baby."  Gerber claims to do "[o]ver 100 quality checks in every jar" with "5 different stages of safety and quality checks from

---

[2]      The term "Baby Food Products" (also "Gerber Baby Food Products" or "Products") refers to all the Gerber baby food products sold by Gerber, including those that contain the heavy metals arsenic, lead, cadmium, and mercury, (collectively, "Heavy Metals") and/or the additional toxin Perchlorate, as more fully discussed herein.  It includes the Gerber baby food products purchased by Plaintiffs and Class Members, as more fully identified below at paragraphs 16 through 87.  Plaintiffs reserve the right to amend this definition upon completion of discovery.

farm to spoon," while also claiming that "[t]he health and safety of your little one has been and will always be our highest priority," and that it "only selects the best of what nature has to offer." Giving an appearance of being concerned and even protective of the infants it targets, Gerber also comforts consumers by touting its "Clean Field Farming" and "marketing strategy," while stating that "[s]ome soil can have unnaturally high levels of … heavy metals which you don't want with our baby food," adding, "[T]hat's why we created requirements for growing our fruits and veggies" that are among "the strictest in the world," and that "our agriculture team knows exactly how to grow for babies."

6.      Parents, like Plaintiffs and other reasonable consumers, trust manufacturers, like Defendant Gerber, to sell baby food that is safe, nutritious, and free from harmful toxins, contaminants, and chemicals.

7.      Because consumers do not have the scientific knowledge necessary to determine the ingredients in the Baby Food Products, they must rely on Gerber to honestly disclose the existence of any harmful contaminants in its Products and not falsely or deceptively advertise, promote, or market them.  However, Gerber has been advertising, promoting, marketing, and selling its Baby Food Products for many years knowing that embedded in their ingredients and in the final products are dangerous amounts of toxic contaminants such as Heavy Metals and Perchlorate that threaten the physical, psychological, and emotional health and well-being of the very children its Products are intended to feed and nourish.  Exposure to these Heavy Metals can be harmful to the growth and development of babies – they can slow growth and brain development, increase cancer risk, and lead to behavioral and learning issues.  Human exposure to high dosages of Perchlorate can interfere with iodide uptake into the thyroid gland, disrupting the functions of the thyroid and potentially leading to a reduction in the production of thyroid hormone.

In fact, Perchlorate has been used as a drug to treat hyperthyroidism (excess thyroid hormone production) and to diagnose disorders related to thyroid or iodine metabolism. The thyroid plays an important role in regulating metabolism. In fetuses and infants, thyroid hormones are critical for normal growth and development of the central nervous system. Pregnant women and their fetuses and newborns have the greatest potential for risk of adverse health effects following exposure to Perchlorate.

8.      Gerber has internally monitored the levels of such contaminants in its Baby Food Products, and has even set its own dangerous high levels of such contamination, that it nonetheless knowingly exceeded when selling its Baby Food Products.

9.      Despite knowing that its Baby Food Products are contaminated with such dangerous toxins, and the adverse impacts that they can have on the health and development of children, and in violation and breach of its duty to consumers, and especially children – a duty both imposed by law and that Gerber itself has assumed – Gerber has been wantonly and recklessly engaging in a long-standing pattern of marketing, advertising, and promoting its Products in a deceptive manner, all the while concealing the existence therein of such Heavy Metals and toxins such as Perchlorate. Gerber does not warn of or disclose the presence of any levels, much less dangerous levels, of Heavy Metals or Perchlorate in its promotion, advertising, marketing, or packaging of its Baby Food Products. Nor do Gerber's Baby Food Products and corresponding marketing have a disclaimer or warning that the items may contain Heavy Metals or other harmful toxins or contaminants such as Perchlorate that can accumulate in a child's body over time and cause deleterious effects.

10.      On August 16, 2018, a Consumer Reports article confirmed from testing that baby food products contained troubling levels of arsenic, cadmium, and lead.       *See*

https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (attached hereto as Exhibit B). Gerber was put on notice by a report by Healthy Babies Bright Future ("HBBF") entitled, *What's in My Baby's Food?* Authors: Jane Houlihan, and Charlotte Brody, October 2019 at:                         https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf released in October 2019 ("October 2019 HBBF Report") reporting that independent testing confirmed the presence of toxic Heavy Metals and Perchlorate in baby food products, including Gerber's (attached hereto as Exhibit C).

11.     On February 4, 2021, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, released the results of an investigation into leading baby food manufacturers in the United States, including Gerber, relating to alleged high amounts of harmful metals in baby food. The report entitled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury" ("Subcommittee Report," attached hereto as Exhibit A), revealed that "[i]nternal company standards permit dangerously high levels of toxic heavy metals, and documents revealed that the manufacturers have often sold foods that exceeded those levels." Subcommittee Report at 4.

12.     No reasonable consumer seeing Gerber's marketing and packaging would expect the Baby Food Products to contain Heavy Metals and/or Perchlorate, or other dangerous toxic contaminants. Reasonable consumers, like Plaintiffs, would consider the inclusion of such toxins and contaminants a material fact when considering what Baby Food Products to purchase.

13.     Gerber knows that its customers trust the quality of its Baby Food Products and that these customers expect Gerber's Products to be free of harmful ingredients such as Heavy Metals and Perchlorate. Gerber is also aware that many consumers seek out and purchase premium baby

foods that contain high quality ingredients, free of toxins, contaminants, or chemicals, and that these consumers will pay more for baby foods that they believe possess these qualities.

14.     Gerber intended for consumers to rely on its marketing.  As detailed herein, because the Baby Food Products contained undisclosed toxins and contaminants – Heavy Metals and/or Perchlorate – the Baby Food Products' packaging and marketing is deceptive, misleading, unfair and/or false.  And Gerber's Baby Food Products are not fit for the purpose for which they are intended – the healthy nourishing of children – and are otherwise not merchantable.

15.     Gerber's wrongful marketing and advertising, which includes misleading, deceptive, unfair, and false marketing and omissions, allowed the Company to capitalize on and reap enormous profits from unsuspecting consumers who paid the purchase price or a premium price for the Baby Food Products that were not sold as advertised, much to the substantial detriment and harm of Plaintiffs and the proposed Class Members.  Further, absent accurate marketing and advertising in the future, there is no way for Plaintiffs or the proposed Class Members to determine whether Gerber has reformulated or removed the Heavy Metals from its Baby Food Products and, thus, will be unable to rely on Gerber's representations.  This class action seeks a just remedy for Plaintiffs and consumer Class Member purchasers of Gerber's Baby Food Products and, importantly, for the protection of our Nation's precious resource – our children.

//

//

//

//

//

//

7

## II.    PARTIES

### A.    Plaintiffs

#### 1.    Arizona Plaintiff

##### a.    Brianna Thomas

16.    Plaintiff Thomas is, and at all relevant times hereto has been, a resident of the State of Arizona and is a member of the proposed Nationwide Class and the Arizona Subclass defined herein.

17.    Plaintiff Thomas purchased at least one of Gerber's Products at issue in this Consolidated Complaint: Gerber Oatmeal–Single Grain Cereal.  Plaintiff last purchased these products for her child from a Walmart store in Cochise County, Arizona.

#### 2.    California Plaintiffs

##### a.    Deandra Bryant

18.    Plaintiff Bryant is, and at all relevant times hereto has been, a resident of the State of California and is a member of the Nationwide Class and the California Subclass defined herein.

19.    Plaintiff Bryant purchased at least 10 of Gerber's Products at issue in this Complaint, including: (1) Gerber Non-GMO Natural Carrot; (2) Gerber Purees 1st Foods Carrot (2 Pack);  (3) Gerber Purees 1st Foods Prune (2 Pack); (4) Gerber Purees 1st Foods Butternut Squash (2 pack); (5) Gerber Purees 2nd Foods Sweet Potato Mango Kale (2 pack); (6) Gerber Purees 2nd Foods Apple Avocado (2 pack); (7) Gerber Purees 2nd Foods Banana Apple Pear (2 pack); (8) Gerber Purees 2nd Foods Sweet Potato and Turkey (2 Pack); (9) Gerber Purees 2nd Foods Vegetable and Chicken (2 pack); and (10) Gerber Puree Organic Pouch Squash Apple Sweet Potato.  Plaintiff last purchased these products for her child from Amazon in San Francisco County, California.

//

8

### b.   Rosa Tadeo

20.     Plaintiff Tadeo is, and at all relevant times hereto has been, a resident of the State of California and is a member of the proposed Nationwide Class and the California Subclass defined herein.

21.     During the period from October 2018 to March 2019, Plaintiff Tadeo purchased Gerber's Products at issue in this Consolidated Complaint including: Gerber 2nd foods (banana, sweet potato, apple, pear, carrots, peas) from Kroger (Food for Less) and Walmart stores in California.

### c.   Myra Serratos

22.     Plaintiff Serratos is, and at all relevant times hereto has been, a resident of the State of California and is a member of the proposed Nationwide Class and the California Subclass defined herein.

23.     During the period from January 2018 through January 2020, Plaintiff Serratos purchased Gerber Baby Food Products from Ralph's, Smart & Final, and Target stores in Camarillo, CA and from and Walmart in Oxnard, California.

### 3.   Colorado Plaintiffs

### a.   Jamie Moore

24.     Plaintiff Moore is, and at all relevant times hereto has been, a resident of the State of Colorado and is a member of the Nationwide Class and the Colorado Subclass defined herein.

25.     Plaintiff Moore purchased four of Gerber's Products at issue in the Consolidated Complaint: (1) Gerber Organic Sitter 2nd Foods Pear Blueberry Apple with Avocado; (2) Gerber Organic Sitter 2nd Foods Banana Blueberry Blackberry Oatmeal; (3) Gerber Organic Toddlers Apple Mango Raspberry Oatmeal with Avocado; and (4) Gerber Natural Sitter 2nd Foods Apple

Zucchini Peach with Vitamin C. Plaintiff last purchased these Products from stores in El Paso County, Colorado.

### 4.    Florida Plaintiffs

#### a.    Renee Bryan

26.    Plaintiff Bryan is, and at all relevant times hereto has been, a resident of Florida, residing in Okeechobee, Florida, who purchased Gerber's Baby Foods for her child and is a member of the Nationwide Class and the Florida Subclass defined herein.

27.    Plaintiff Bryan purchased Gerber's Baby Foods, including, to the best of her recollection, Gerber Peas and Gerber Organic Bananas. Plaintiff Bryan purchased the Baby Foods from Publix and Target stores in Port St. Lucie, Florida from approximately October 2020 to February 2021.

#### b.    Kelli Adams

28.    Plaintiff Adams is, and at all relevant times hereto has been, a resident of Florida and a member of the Nationwide Class and the Florida Subclass defined herein.

29.    Plaintiff Adams bought Gerber Baby Foods, including Gerber's Puffs, Yogurt Melts, 2nd Foods Purees (Carrot, Bananam, and Sweet Potato), Single Grain Rice Cereal, and Multigrain Cereal from Publix Supermarkets in St. Augustine, Florida since 2018.

#### c.    Crista Marie Hazely

30.    Plaintiff Hazely is, and at all relevant times hereto has been, a resident of the State of Florida, residing in Deltona, Florida in Volusia County and is a member of the Nationwide Class and the Florida Subclass defined herein.

31.     During the applicable statute of limitations period, Plaintiff Hazely purchased Gerber's Sweet Potato (Sitter 2nd Foods) that were manufactured and produced by Gerber in Walmart in Deltona, Florida, among other retail stores in the State of Florida.

**d.     Skylar Murwin**

32.     Plaintiff Murwin is, and at all relevant times hereto has been, a resident of the State of Florida and is a member of the Nationwide Class and the Florida Subclass defined herein.

33.     During the applicable statute of limitations period, Plaintiff Murwin purchased at least 2 of Gerber's Products at issue in this Consolidated Complaint, including: (1) Gerber My 1st Veggies Starter Kit and (2) Gerber Rice Single Grain Cereal.  Plaintiff last purchased these Products from a Walmart store in Bradford County, Florida.

**5.     Georgia Plaintiffs**

**a.     Nichole Allen**

34.     Plaintiff Allen is, and at all relevant times hereto has been, a resident of the State of Georgia and is a member of the Nationwide Class and the Georgia Subclass defined herein.

35.     During the applicable statute of limitations period, plaintiff Allen purchased at least seven of Gerber's Products at issue in this Complaint including: (1) Gerber Cereal; (2) Gerber 1st Foods Natural Apple; (3) Gerber Sitter 2nd Foods 2-Packs (Prune Apple, Pear Apple); (4) Gerber Sweet Potato Apple; and (5)-(7) Gerber Organic Pouches (Multi, Peach, Strawberry).  Plaintiff last purchased these products from Walmart and Kroger stores in Bibb County, Georgia.

**6.     Illinois Plaintiffs**

**a.     Jen MacLeod**

36.     Plaintiff MacLeod is, and at all relevant times hereto has been, a resident of the State of Illinois and a member of the Nationwide Class and Illinois Subclass defined herein.

11

37.     Plaintiff MacLeod purchased Gerber's Baby Food Products for her children, including Gerber Sitter 2nd Foods Peas and Sitter 2nd Foods Peach.  Plaintiff MacLeod purchased the Gerber Baby Food Products from Target in Chicago, Illinois in or around August 2020 until February 2021.

### b.     Olivia Neal

38.     Plaintiff Neal is, and at all relevant times hereto has been, a resident of the State of Illinois and is a member of the proposed Nationwide Class and the Illinois Subclass defined herein.

39.     During the last three years, Plaintiff Neal purchased Gerber Baby Food Products including: Gerber fruits and vegetables, in all stages, as well as Gerber Rice Cereal from Jewell, Target, and Walmart stores in Lake County, Illinois.

### c.     Charlotte Willoughby

40.     Plaintiff Willoughby is, and at all relevant times hereto has been, a resident of the State of Illinois and is a member of the proposed Nationwide Class and the Illinois Subclass defined herein.

41.     Plaintiff Willoughby purchased Gerber Baby Food Products, including Gerber: Apple Blueberry; Apple Peach Squash; Apple Strawberry Banana; Apple Sweet Potato and Cinnamon Pouches; Apricot Mixed Fruit; Arrowroot Biscuits; Banana; Banana Apple Pear; Banana Blackberry Blueberry; Banana Carrot Mango; Carrot; Carrot Sweet Potato Pea; Fruit and Veggie Melts - Truly Tropical; Fruit and Veggie Melts - Very Berry; Good Start Formula; Green Bean; Lil' Biscuits; Lil' Crunchies Veggie Dip; Lil' Mixers Apple Chicken Quinoa; Mango; Oatmeal Cereal; Organic Apple Biscuits; Organic Apple Puffs; Organic BabyPops; Organic Cranberry Orange Puffs; Organic Fruit and Veggie Beet Bars; Organic Mango Banana Carrot Teethers; Organic Variety Pack Pouches; Organic White Bean Hummus Lil' Crunchies; Organic

White Cheddar Broccoli Lil' Crunchies; Pea; Pea Carrot Spinach; Pear Zucchini Corn; Prune Apple; Prune Apple; Rice Cereal; Strawberry Yogurt Melts; Sweet Potato; Sweet Potato Corn; and Sweet Potato Puffs.  Plaintiff purchased these Products from various retail outlets such as a Target store in Munster, Indiana and a Meijer in Rolling Meadows, Illinois from at least September 2019 until late 2020.

### 7.   Minnesota Plaintiffs

#### a.   Kelly McKeon

42.     Plaintiff McKeon is, and at all relevant times hereto has been, a resident of  the State of Minnesota and a member of the Nationwide Class and Minnesota Subclass defined herein.

43.     Plaintiff McKeon purchased Gerber Baby Foods including rice cereal, butternut squash, sweet potatoes, peas, carrot sweet potato and peas, sweet potato and com, sweet potato puffs, and strawberry yogurt melts from Target and Lunds in Plymouth, Minnesota  from spring 2018 until February 2021.

### 8.   New Jersey Plaintiffs

#### a.   Alison Fleissner

44.     Plaintiff Fleissner is, and at all relevant times hereto has been, a resident of Hazlet, New Jersey and is a member of the Nationwide Class and the New Jersey Subclass defined herein.

45.     Plaintiff Fleissner purchased Gerber Baby Food Products during the periods from July 2015 through August 2016 and from May 2018 through March 2019 from Shop Rite, Target, and Walmart stores in Hazlet, Middletown, Freehold, and Old Bridge stores in New Jersey and from Giant Eagle, Target, and Walmart stores in Cleveland and University Heights, Ohio, including: Gerber banana, apple, sweet potato, apple strawberry banana, pear, apple banana with oatmeal, banana orange medley, green bean, carrot, peach, sweet potato turkey with whole grains,

pear cinnamon with cereal, rice cereal, oatmeal cereal, vanilla puffs, strawberry apple puffs, strawberry yogurt melts, mild cheddar Lil' Crunchies, truly tropical blend fruit and veggie melts, banana puffs, arrowroot biscuits, sweet potato puffs, Gerber organics banana mango, pear peach strawberry, apple blueberry spinach, squash apple sweet potato, apple zucchini spinach strawberry, mango peach carrot sweet potato oatmeal, banana mango avocado quinoa vanilla, white cheddar broccoli Lil' Crunchies, strawberry puffs, and tomato puffs and oat snack.

### b.     Sheenah Clark

46.     Plaintiff Clark is, and at all relevant times hereto has been, a resident of the State of New Jersey and is a member of the proposed Nationwide Class and the New Jersey subclass defined herein.

47.     During the applicable statute of limitations period, Plaintiff Clark purchased Gerber baby food products including: Gerber My 1st Fruits Starter Kit; Gerber My 1st Veggies Starter Kit; Gerber Probiotic Oatmeal-Banana cereal (8 oz.); Gerber Non-GMO Hearty Bits Multigrain Banana Apple Strawberry Cereal; Gerber Lil' Bits Whole Wheat Apple Blueberry Cereal; Gerber 2nd Foods Carrot Mango Pineapple (2 pack); Gerber 2nd Foods Sweet Potato Apple Pumpkin (2 pack); Gerber 2nd Foods Prune Apple (2 pack); Gerber 2nd Foods Sweet Potato (2 pack); Gerber 2nd Foods Squash (2 pack); Gerber 2nd Foods Banana Blackberry Blueberry (2 pack); Gerber 2nd Foods  Prune Apple (2 Pack); Gerber 2nd Foods Carrot Sweet Potato Pea (2 pack); and Gerber 2nd Foods Apple (2 pack).  Plaintiff purchased these Products from Stop & Shop and ShopRite stores and from Amazon in Essex County, New Jersey.

//

//

//

### c.      Ivana Blazevic

48.      Plaintiff Blazevic is, and at all relevant times hereto has been, a resident of the State of New Jersey and is a member of the proposed Nationwide Class and the New Jersey Subclass defined herein.

49.      During the applicable statute of limitations period, Plaintiff Blazevic purchased Gerber Baby Food Products including: Gerber Rice Cereal and Gerber Supported Sitter 1st foods (vegetables and fruits) from a Target store in Middlesex County, New Jersey.

### 9.      New York Plaintiffs

### a.      Danielle Visconti

50.      Plaintiff Visconti is, and at all relevant times hereto has been, a resident of the State of New York and is a member of the proposed Nationwide Class and the New York Subclass defined herein.

**51.**      Plaintiff Visconti purchased Gerber Baby Food Products including: Gerber Oatmeal - Single Grain Cereal (16 oz.) and Gerber Rice – Single Grain Cereal (16 oz.) from local supermarket stores in Westchester County, New York.

### b.      Kimberly Simeron

52.      Plaintiff Simeron is, and at all relevant times hereto has been, a resident of Kings County, New York and is a member of the Nationwide Class and the New York Subclass defined herein.

53.      During the applicable statute of limitations period, Plaintiff Simeron purchased Gerber Baby Food Products at a Key Food Fresh supermarket in Brooklyn, New York including Gerber Sweet Potato (Supported Sitter 1st Foods) and Gerber Carrot (Supported Sitter 1st Foods).

//

### c.     Selena Mosquera

54.     Plaintiff Mosquera is, and at all relevant times hereto has been, a resident of the State of New York and is a member of the proposed Nationwide Class and the New York Subclass defined herein.

55.     During the applicable statute of limitation period, plaintiff Mosquera purchased Gerber Baby Food Products including: Gerber fruits and vegetables in plastic containers, jars and pouches and Gerber Rice Cereal from stores in Suffolk County, New York.

### d.     Jennifer Wehmeyer

56.     Plaintiff Wehmeyer is, and at all relevant times hereto has been, a resident of the State of New York and is a member of the proposed Nationwide Class and the New York Subclass defined herein.

57.     During the applicable statute of limitation period, Plaintiff Wehmeyer purchased Gerber Baby Food Products including: Gerber Purees and Gerber Oatmeal from Walmart and Wegmans stores and from Amazon in Broome County, New York.

### 10.     North Carolina Plaintiffs

### a.     Rachant Wilson

58.     Plaintiff Wilson is, and at all relevant times hereto has been, a resident of the State of North Carolina and is a member of the proposed Nationwide Class and the North Carolina Subclass defined herein.

59.     During the applicable statute of limitations period, Plaintiff Wilson purchased Gerber Baby Food Products including, but not limited to: Gerber Oatmeal & Barley- Bananas & Cream; Gerber 2nd Foods-Natural Banana; Gerber 2nd Foods-Sweet Potato Banana; Gerber 2nd Foods-Pear Guava; Gerber 2nd Foods-Squash Pear Pineapple; Gerber Yogurt Melts-Banana

16

Strawberry; Gerber Organic Lil' Crunchies –White Cheddar Broccoli; Gerber Spiral Pasta in Turkey Meat Sauce and a side of Green and Yellow Beans;  Gerber Pick-ups – Chicken Parmesan Cheese Ravioli; Gerber Pick-ups Chicken & Carrot Ravioli.  Plaintiff purchased these Products from local Walmart and Red-Lion stores and through Amazon in Mecklenburg County, North Carolina.

### b.      Amanda Roberts

60.     Plaintiff Roberts is, and at all relevant times hereto has been, a resident of the State of North Carolina and is a member of the proposed Nationwide Class and the North Carolina Subclass defined herein.

61.     During the applicable statute of limitations period, Plaintiff Roberts purchased at least 2 Gerber Products at issue in this Consolidated Complaint including: (1) Gerber Oatmeal Cereal and (2) Gerber Rice Cereal.  Plaintiff last purchased these Products from a local Walmart store in Pasquotank County, North Carolina.

### 11.      Ohio Plaintiffs

### a.      Tessie Adkins

62.     Plaintiff Adkins is, and at all relevant times hereto has been, a resident of the State of Ohio and is a member of the Nationwide Class and Ohio Subclass defined herein.

63.     Plaintiff Adkins purchased Gerber Baby Food Products including: Gerber Multigrain Cereal; Gerber Organic Oatmeal – single grain cereal; Gerber Probiotic Oatmeal Banana Cereal; and Gerber Variety Pack - Apple, Pear, White Grape –Toddler 12+ months from Kroger and Walmart stores and online from Walmart in Franklin County, Ohio.

//

//

### b.     Danielle Puntel

64.     Plaintiff Puntel is, and at all relevant times hereto has been, a resident of the State of Ohio and is a member of the proposed Nationwide Class and the Ohio Subclass defined herein.

65.     During the applicable statute of limitations period, Plaintiff Puntel purchased Gerber Baby Food Products from Walmart and Giant Eagle stores in Mahoning County, Ohio.

### c.     Alicia Robinson

66.     Plaintiff Robinson is, and at all relevant times hereto has been, a resident of the State of Ohio and is a member of the proposed Nationwide Class and the Ohio Subclass defined herein.

**67.**     During the applicable statute of limitations period, Plaintiff Robinson purchased Gerber Products at issue in this Consolidated Complaint including: Gerber Sitter 2nd Foods in plastic containers (vegetables) from Walmart and Kroger stores in Lucas County, Ohio.

### 12.     Oregon Plaintiff

### a.     Autumn Ellison

68.     Plaintiff Ellison is, and at all times relevant hereto has been, a resident of the state of Oregon and is a member of the Nationwide Class and Oregon Subclass defined herein.

69.     Between December 2020 to February 2021, Plaintiff Ellison purchased Gerber Baby Food Products in Oregon, including: Gerber Teethers Gentle Teething Wafers Strawberry Apple Spinach; Gerber Teethers Gentle Teething Wafers Banana Peach; Gerber Teether Wheels Banana Cream; Gerber Organic Teethers Gentle Teething Wafers Blackberry Apple Beet; Gerber Puffs Peach; Gerber Puffs Vanilla; Gerber Puffs Sweet Potato; Gerber Puffs Apple Cinnamon; and Gerber Puffs Organic Cranberry Orange.

//

13.     **Pennsylvania Plaintiffs**

a.     **Teresa Hagmaier**

70.     Plaintiff Teresa Hagmaier is, and at all relevant times hereto has been, a resident of North Abington Township, Pennsylvania and a citizen of Commonwealth of Pennsylvania and is a member of the Nationwide Class and the Pennsylvania Subclass as defined herein.

**71.**     During the period from June 2018 through the Spring of 2019, Plaintiff Hagmaier purchased Gerber Baby Food Products including single grain rice cereal, single grain oatmeal cereal, whole wheat whole grain cereal, carrots 2nd food, sweet potato 2nd food, green bean 1st food, green bean 2nd food, banana 2nd food, peach 2nd food, apple sweet potato cinnamon food, banana puffs from a Gerrity's Supermarket in Clarks Summit, Pennsylvania, a Weis Market in Clark Summit, Pennsylvania, and a Wegmans store in Dickson City, Pennsylvania.

b.     **Kathryn McCarthy**

72.     Plaintiff McCarthy is, and at all relevant times hereto has been, a resident of Commonwealth of Pennsylvania, residing in Export, Pennsylvania and is a member of the Nationwide Class and the Pennsylvania Subclass defined herein.

73.     During the applicable statute of limitations period, Plaintiff purchased Gerber's Baby Food Products, including Gerber Pasta Pick-Ups Chicken & Carrot Ravioli at Target in Pennsylvania.

c.     **Morgan Fitzgerald**

74.     Plaintiff Fitzgerald is, and at all relevant times hereto has been, a resident of the Commonwealth of Pennsylvania and is a member of the proposed Nationwide Class and the Pennsylvania Subclass defined herein.

75.     During the applicable statute of limitations period, Plaintiff Fitzgerald purchased at least one of Gerber's Products at issue in this Consolidated Complaint including: Gerber Multi-Grain Cereal.  Plaintiff last purchased these Products for her children from Giant and other stores in Philadelphia County, Pennsylvania.

### 14.     Tennessee Plaintiff

#### a.     Kwanda Miller

76.     Plaintiff Miller is, and at all relevant times hereto has been, a resident of the State of Tennessee and is a member of the proposed Nationwide Class and the Tennessee Subclass defined herein.

77.     During the period from May 2020 to February 2021, Plaintiff Miller purchased Gerber's Products at issue in this Consolidated Complaint including Gerber Rice Cereal and jar food in all stages as well as Gerber Snacks.  Plaintiff last purchased these Products for her child from stores in Chattanooga, Tennessee.

### 15.     Texas Plaintiffs

#### a.     Kathleen Keeter

78.     Plaintiff Keeter is, and at all relevant times hereto has been, a resident of the State of Texas and is a member of the Nationwide Class and Texas Subclass defined herein.

79.     During the applicable statute of limitations period, Plaintiff Keeter purchased Gerber baby food products including: Gerber 1st Foods Green Bean 2 Pack Supported Sitter Baby Food; Gerber 1st Foods Peas 2 Pack Supported Sitter Baby Food; and Gerber 1st Foods Supported Sitter Baby Food from H-E-B and Walmart stores in Houston, Texas.

//

//

**b.      Gretehl Umanzor**

80.      Plaintiff Umanzor is, and at all relevant times hereto has been, a resident of the State of Texas and is a member of the proposed Nationwide Class and the Texas Subclass defined herein.

81.      During the applicable statute of limitations period, Plaintiff Umanzor purchased Gerber's Baby Food Products including: Gerber fruits in jars (apples, pears and rice cereal) and Toddler Stage pouches (Fruit and Yogurt) from Walmart and Target stores in Dallas County, Texas.

**16.      Virginia Plaintiff**

**a.      Ashley Moore Rhea**

82.      Plaintiff Rhea is, and at all relevant times hereto has been, a resident of the Commonwealth of Virginia and is a member of the proposed Nationwide Class and the Virginia Subclass defined herein.

83.      From July 2019 to February 2021, Plaintiff Rhea purchased Gerber Baby Food Products from a Target store in Newport News, VA.

**17.      Washington Plaintiff**

**a.      Jessica Valenzuela**

84.      Plaintiff Valenzuela is, and at all relevant times hereto has been, a resident of the State of Washington and is a member of the proposed Nationwide Class and the Washington Subclass defined herein.

85.      From May 2016 to February 2021, Plaintiff Valenzuela purchased Gerber Baby Food Products including: Gerber Rice Cereal, Gerber Puffs, and Gerber Yogurt from Safeway and Walmart stores in Omak, Washington.

18.     **Wisconsin Plaintiff**

a.      **Tiffany Harmon**

86.     Plaintiff Harmon is, and at all relevant times hereto has been, a resident of the State of Wisconsin and is a member of the Nationwide Class and the Wisconsin Subclass defined herein.

87.     During the applicable statute of limitations period, Plaintiff Harmon purchased a variety of Gerber Baby Food Products including vegetables, fruit, and meat in glass jars and plastic containers from stores in Sheboygan County, Wisconsin.

88.     Each of the foregoing named individual Plaintiffs are collectively referred to hereinafter as "Plaintiffs" unless otherwise alleged.  Plaintiffs believe they were feeding their children healthy, nutritious foods during the time Plaintiffs purchased and fed their children the Gerber Baby Food Products.  Plaintiffs relied upon the false and misleading claims and omissions by Gerber as described herein, and Plaintiffs were unaware that the Baby Food Products contained toxic Heavy Metals or Perchlorate.

89.     As a result of Gerber's negligent, reckless, and/or knowingly deceptive conduct, Plaintiffs were injured when they paid the purchase price, or a price premium, for the Baby Food Products that did not deliver what they promised.  Plaintiffs paid the purchase prices with the assumption that the Baby Food Products' marketing and advertising was accurate, that they were free of dangerous toxins, and that they were safe for children to ingest.  Plaintiffs would not have paid this money had they known that the Baby Food Products contained dangerous Heavy Metals and/or Perchlorate.

**B.      Defendant**

90.     Defendant Gerber Products Company formulates, develops, manufactures, distributes, markets, advertises, and sells its Baby Food Products throughout the United States.  It

22

is a Michigan corporation with its principal place of business located at 1812 North Moore Street, Arlington, Virginia 22209.  Gerber began making pre-prepared baby food in 1928.  Gerber was purchased by Nestlé in 2007 and is now a subsidiary of Nestlé S.A.  Its sister company, Nestlé USA, is incorporated in Delaware and also headquartered in Arlington, Virginia.  Their parent company, Nestlé S.A. is a foreign corporation headquartered in Switzerland.

91.    Gerber is by far the market leader for infant foods in the United States. https://www.Nestlé.com/aboutus/history/Nestlé-company-history/gerber.

92.    Defendant has at all times material and continues to formulate, develop, manufacture, distribute, market, advertise, and sell its Baby Food Products under the baby food brand name Gerber throughout the United States, including in this District.  The advertising, packaging, marketing, manufacturing, and distribution of its Baby Food Products, as well as the Products' formulation and development, was reviewed and/or approved by Gerber and its executives and agents from or within this District.  Defendant has advertised and continues to advertise these products via television, print advertisements, point-of-sale displays, product packaging, Internet advertisements (including on social media), and other promotional materials.

93.    The Eastern District of Virginia has general jurisdiction and personal jurisdiction over Defendant, as Defendant is headquartered in this District and conducts substantial business in this Commonwealth and in this District through its headquarters, sale of products, and commercial website.

94.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Plaintiffs have suffered injury as a result of Gerber's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, Defendant conducts substantial business in this District

and is headquartered in this District, Defendant has intentionally availed itself of the laws and markets of this District, and Defendant is subject to personal jurisdiction in this District.

## III.   JURISDICTION AND VENUE

95.   This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because the claims of the proposed members of the Classes exceed $5,000,000 and because Defendant is a citizen of a different state than one or more members of the proposed Classes.

96.   Gerber is a corporation that is incorporated under the laws of the State of Michigan. Gerber maintains its principal place of business and corporate headquarters in Arlington, Virginia. Gerber was purchased by Nestlé in 2007.  Gerber is a subsidiary of Nestlé S.A. and its sister company, Nestlé USA is incorporated in Delaware and headquartered in Arlington, Virginia with its offices in close proximity to and with Gerber's offices.

97.   The Eastern District of Virginia has general jurisdiction and personal jurisdiction over Defendant, as Defendant is headquartered in this District and conducts substantial business in this Commonwealth and in this District through its headquarters, sale of products, and commercial website.

## IV.   FACTUAL ALLEGATIONS

### A.   Gerber – The Leading Manufacturer of Baby Food Products in the United States

98.   Gerber is an American manufacturer of baby food products.  Gerber claims to be one of the "world's most trusted name[s] in baby food." http://www.gerber.com/Nestlénutrition/default.aspx.  Gerber sells nearly 200 different Baby Food Products.  Gerber markets, advertises, promotes, and sells its Baby Food Products in all 50 states was founded with the mission to "give babies the best start in life." http://www.gerber.com/about-

us.  As of 2017, Gerber controlled 61 percent of the baby food market in the United States.  *See*

*"Growing     Up     Gerber:     5     Questions     with     CMO     Aileen     Stocks."*

https://www.brandchannel.com/2017/04/ 15/5-questions-gerber-041517 (April 15, 2017).  And it

still controls a significant market share.  According to Zion Market Research, Consumer Reports,

as of August 2018, annual sales of baby food topped $53 billion and were projected to reach more

than $76 billion dollars in 2021.

      **B.**      **Congressional Investigation and Reporting Reveals the Presence of Dangerous**
            **Levels of Heavy Metals in Gerber Baby Food Products**

      99.     In August 2018, Consumer Reports issued an article noting that its testing of baby

food sold in the United States revealed that these products contained toxic contaminants such as

arsenic, lead, and cadmium.  *See* https://www.consumerreports.org/food-safety/heavy-metals-in-

baby-food/.  In October 2020, HBBF reported that independent testing revealed the presence of

high levels of Heavy Metals and even Perchlorate in various Gerber Baby Food Products.  *See*

HBBF      Press      Release:      https://hbbf.org/sites/default/files/documents/2019-

10/Press%20Release%20-%20Baby%20Food%20Study_0.pdf;   and  the  October  2019  HBBF

Report. On February 4, 2021, the United States House of Representatives Subcommittee on

Economic and Consumer Policy (the "Subcommittee") published the Subcommittee Report,

disclosing investigative findings that numerous commercial baby foods, including those

manufactured by Gerber, are "tainted with significant levels of toxic heavy metals, including

arsenic, lead, cadmium, and mercury."  *See* Subcommittee Report at 4.  Congressional

investigators examined a wide range of baby foods including rice cereals, purees, puffs, and juices.

The Subcommittee Report found that organic products were as likely as conventional products to

contain Heavy Metals.  *Id.* at 9.

100.    The Subcommittee Report also made specific findings regarding the presence of toxic Heavy Metals in baby foods produced by Defendant Gerber. These findings include, among others, the following:

a)  Gerber used high-arsenic ingredients, using 67 batches of rice flour that had tested over 90 ppb inorganic arsenic. *Id.* at 3. Gerber did not provide inorganic arsenic results for all of its ingredients. However, test results for conventional rice flour revealed that Gerber routinely used flour with over 90 ppb inorganic arsenic. Gerber used five batches of rice flour that had 98 ppb inorganic arsenic, and 67 batches that contained more than 90 ppb. *Id.* at 19.

b)  Gerber used ingredients that tested as high as 48 ppb lead; and used many ingredients containing over 20 ppb lead. *Id.* at 3. Gerber produced limited lead testing results. The results for its sweet potatoes and juices demonstrated its willingness to use ingredients that contained dangerous lead levels. Gerber used an ingredient, conventional sweet potatoes, with 48 ppb lead. Gerber also used twelve other batches of sweet potato that tested over 20 ppb for lead, the EU's lenient upper standard. *Id.* at 27. The average amount of lead in Gerber's tested juice concentrates was 11.2 ppb—more than FDA's limit for lead in bottled water. Over 83% of the juice concentrates tested showed greater than 1 ppb lead, which is Consumer Reports' recommended limit for fruit juices.

c)  Gerber does not test all its ingredients for cadmium. Of those it does test, it accepts ingredients with high levels of cadmium. Gerber used multiple batches of carrots containing as much as 87 ppb cadmium, and 75% of the carrots Gerber used had more than 5 ppb cadmium—the drinking water standard set by the EPA. *Id.* at 32.

d)  Gerber rarely tests for mercury in its baby food. Of the test results they presented to the Subcommittee, they only tested carrots, sweet potatoes, and lemon juice concentrate. *Id.* at 4, 33.

101.    Though Heavy Metals are naturally found in the environment, most Heavy Metals in foods come from contaminated soil or water. The contamination comes from either farming or manufacturing practices, such as the use of pesticides, mining, and smelting or pollution.

102.    Gerber was one of the seven largest baby food manufacturers in the United States from whom the Subcommittee requested internal documents and test results. Gerber responded to the requests and produced internal testing policies and results for ingredients and/or finished products. *Id.* at 2.

26

103.    The Subcommittee Report found that baby food companies such as Gerber regularly sell products that contain ingredients that exceed their own internal standards for Heavy Metals.  *Id.* at 33.  According to the Subcommittee Report, most baby food companies do not regularly test the products before they go to market, and even when they do, products with high levels of Heavy Metals are still sold.

104.    Representative Raja Krishnamoorthj, chairman of the Subcommittee, told Consumer Reports that there are "dangerous levels of toxic metals in baby foods, and the levels far exceed what experts and governing bodies say is permissible.  Left to their own devices, baby food makers have set testing standards in excess of what recommended standards are, and even then, they often violate their standards."

105.    The Subcommittee Report provides evidence that baby food companies such as Gerber are not doing enough to reduce risk from exposure to these Heavy Metals, and that parts of the manufacturing process, including the addition of vitamins and mineral mixes, may actually be contributing to the high levels of Heavy Metals in the Baby Food Products.  The Subcommittee Report concluded that **"These toxic heavy metals [in baby foods] pose serious health risks to babies and toddlers.  Manufacturers knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever."**  *Id.* at 59.  (Emphasis supplied)

**C.      Heavy Metals and Perchlorate – Baby Food Contaminants That Are Highly Dangerous and Detrimental to Children's Health, Safety, and Welfare**

106.    Arsenic, lead, cadmium, and mercury are toxic heavy metals.  The U.S. Food and Drug Administration ("FDA") and the World Health Administration ("WHO") have declared these Heavy Metals to be dangerous to human health, especially to babies and children.  *Id.* at 2.

107.     While the human body needs some small amount of certain types of heavy metals – iron and zinc in particular – to function properly, the toxic Heavy Metals – cadmium, arsenic, lead, and mercury (especially methyl mercury) – pose serious risks for babies, toddlers and young children. **Even an exposure to just a small amount of such Heavy Metals can increase the risk of contracting several types of health problems and cause the lowering of IQ and behavior problems.**

108.     The risks from the presence of Heavy Metals actually grows over time because these Heavy Metals tend to accumulate in the kidneys and other internal organs. The toxins can remain in one's body for many years. Even consuming smaller amounts over a long period can raise the risk of cancers of the bladder, lungs, and skin, cause reproductive and cognitive adverse problems, and have been linked to Type 2 diabetes. A study in the medical journal, *Lancet Public Healthcare*, posits that low levels of lead from food and other sources contribute to about 400,000 deaths each year – a significant amount of which were from cardiovascular disease.

109.     Exposure to Heavy Metals in food can be harmful to babies' neurological development and long-term brain function. Even low levels of exposure to these metals can lead to serious and potentially irreversible damage to brain development. *Id.* Babies may be more susceptible to levels of toxins and substances as they are in the critical years of brain growth and development.

110.     According to the October 2019 HBBF Report there is reliable and recent research that confirms widespread exposures for babies exposed to the four Heavy Metals — arsenic, lead, cadmium, and mercury — can lead to troubling risks including IQ loss, attention deficits, and other learning and behavioral impacts among children from baby food. "Three of the metals, arsenic, lead and cadmium, are also potent human carcinogens." HBBF October 2019 Report, at p. 13.

28

According to the HBBF October 2019 Report, "widespread exposure to toxic heavy metals shifts the population wide IQ curve down ... ratchets down the IQ of the most creative and intellectually gifted children" adding that "[F]or an individual child, the harm appears to be permanent."  Citing *EPG Grandjean & Landrigan* 2014, *Wasserman* 2007 and 2016, *Hamadani* 2011.  According to James Dickerson, Ph.D., Chief Scientific Officer for Consumer Reports ("Dr. Dickerson") "[e]xposure to heavy metals has a disproportionate adverse effect on developing minds and bodies."  Dr. Dickerson said that exposure to these metals has deleterious effects on the developing infant mind, brain, ADHD, as well as an increased risk of skin and bladder cancer.  Health risks can ensue, even without overt poisoning.  Low, daily exposures can create "subclinical decrement in brain function," with impacts on a global scale.  HBBF October 2019 Report at p. 13, *citing Grandjean & Landrigan*, 2014.

111.    Defendant has been fully aware at all material times that exposure to even small amounts of Heavy Metals, may, over time, increase the risk of several serious health problems, including those involving carcinogenic, cognitive, and reproductive effects.  Babies and young children are the most at risk, particularly given the potential harm of Heavy Metals exposure on developing brains in the form of lower IQ and behavior problems.

112.    One of the biggest worries with regard to the presence of Heavy Metals in food products made for babies' and toddlers' consumption, concerns their cognitive development. According to James E. Rogers, Ph.D., a Director of Food Safety Research and Testing at Consumer Reports, "babies and toddlers are particularly vulnerable, due to their smaller size and developing brains and organ systems," adding, "they also absorb more of the heavy metals that get into their bodies than adults do."

113.    According to Victor Villareal, Ph.D., Assistant Professor, Department of Educational Psychology, University of Texas at San Antonio, and a researcher with regard to the effects of Heavy Metals on childhood development, "the effects of early exposure to heavy metals can have long-lasting impacts that may be impossible to reverse."

114.    The fact that a product is marketed as "organic" doesn't really mean that the product is safer than conventional products; "organic" products typically include lower pesticide levels and are beneficial in that they have less of an adverse impact on the environment.  Unfortunately, Heavy Metals are still contained in organic products and not avoided just because they are produced "organically."

115.    This is particularly concerning since many parents who purchase packaged food products for their children characterized as "organic" in the product marketing and advertising, mistakenly assume, or are motivated by the mistaken assumption, that such products do not contain Heavy Metals.

116.    According to Brian Ronhom, Director of Food Policy with Consumer Reports, "**the last thing parents expect to find in baby food are toxic heavy metals** like arsenic and lead that can threaten their child's health and wellbeing."  However, manufacturers like Gerber have failed to protect vulnerable infants and toddlers from dangerous Heavy Metals that are commonly found in popular baby foods.

### a.    Arsenic

117.    Arsenic is an odorless and tasteless element that does not degrade or disappear.  It occurs in the environment and can be found in rocks, soil, water, air, plants, and animals.  Inorganic arsenic is highly toxic and a known cause of human cancers.  Exposure to arsenic can also cause respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological

effects, and damage to children's central nervous systems and cognitive development. Subcommittee Report at 10.

118.    Arsenic is a baby food contaminant that has been linked to bladder, lung and skin cancer, and adverse effects on nervous systems, in our nation's youth.  Arsenic also targets the developing brain.  At least 13 peer reviewed scientific studies link arsenic to IQ loss for children exposed in utero or during the first few years of life.  HBBF October, 2019 Report, *citing Rodriguez-Barranco* 2013.  Studies have found that there are lasting impacts on children that are exposed to arsenic early in their lives.  Adverse impacts include persistent cognitive deficits and neurological problems. HBBF October, 2019 Report, citing *Wasserman* 2007 and 2016, *Hamadani*, 2011, and *Tanaka* 2010.  There is no scientific evidence that the adverse effects that are caused by arsenic are reversible.

119.    Because of the risks associated with exposure to arsenic, both the FDA and the EPA have set limits for the allowable amount of arsenic in baby foods, including formula and juices, as well as for drinking water.  The allowable limit of arsenic is 10 parts per billion ("ppb") for consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA). Subcommittee Report at 13 and 50.

120.    In August 2020, the FDA set a limit for inorganic arsenic in infant rice cereal at 100 ppb.  Subcommittee Report at 50. According to the Subcommittee Report, Gerber used at least 67 batches of rice flour testing more than 90 ppb inorganic arsenic, which is *9 times* the allowable limits for water and apple juice.

121.    While Gerber did not provide inorganic arsenic results for all of its ingredients, test results for conventional rice flour revealed that Gerber routinely used flour (*i.e.*, at least 67 batches)

with over 90 ppb inorganic arsenic.  Also, Gerber used five batches of rice flour that had 98 ppb inorganic arsenic.  Subcommittee Report at 19.

> **b.**    **Cadmium**

122.    Exposure to cadmium is associated with decreases in IQ and the development of Attention Deficit Hyperactivity Disorder ("ADHD").  The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA likewise determined that cadmium is a probable human carcinogen.  It has been specifically noted that "[k]idney and bone effects have…been observed in laboratory animals ingesting cadmium."

123.    Cadmium has been linked in numerous scientific studies to neurotoxicity in children, and has been linked to cancer, kidney, bone and heart damage.  Studies by Harvard scientists have reported the tripling of the risk of learning disabilities and special education needs among children with higher cadmium exposure.  (*Ciesielski* 2012).  This contaminant, found in baby foods, has been found to cause harm even at low levels of exposure.  In 2019, the FDA found that cadmium in food exceeds an amount safe for children.  In 2014-16 market-based tests, the FDA detected cadmium in 65% of nearly 3000 food samples tested.  European Food Safety Authority and the United States Agency for Toxic Substances and Disease Registry have reported that children's average exposures exceed their own established safe limits. (*Spungen* 2019).

124.    There has been some regulation on the use of cadmium outside of the baby food realm, with the EPA setting a limit of 5 ppb in drinking water and the FDA setting a limit of 5 ppb in bottled water.  *See* Subcommittee Report at 29.  The WHO has set a limit of 3 ppb for cadmium in drinking water.  *Id*.  Moreover, organizations like HBBF have set a goal of no measurable

cadmium in baby food and Consumer Reports has called for a 1 ppb cadmium limit in fruit juices. *Id*. The European Union has set a limit ranging from 5-20 ppb cadmium in baby formula. *Id*.

125. The Subcommittee Report found that baby food manufacturers, including Gerber, sold many baby food products that exceeded these limits on cadmium. *Id*.

126. Gerber does not test all of its product ingredients for cadmium. Of those it does test, it accepts ingredients with levels of this metal. Gerber used multiple batches of carrots containing as much as 87 ppb cadmium, and 75% of the carrots Gerber used had more than 5 ppb cadmium. Subcommittee Report at 32.

### c.    Lead

127. Lead is persistent, and it can bioaccumulate in the body over time.[3] It is a carcinogen and developmental toxin known to cause health and developmental problems in children including decreased cognitive performance, delayed puberty, and reduced postnatal growth. Because lead can build up in the body over time, even low levels of chronic exposure can be toxic and seriously dangerous to one's health.

128. The American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports have all called for a 1 ppb level of lead in food and drinks that babies and children consume. Subcommittee Report at 21. While there is no lead standard for lead in baby foods, the FDA standard for lead in bottled water is 5 ppb lead. *See* 21 C.F.R. § 165.110(b)(4)(iii)A).

129. The Subcommittee Report found that Gerber used an ingredient, conventional sweet potatoes, with 48 ppb lead. Gerber also used 12 other batches of sweet potato that tested

---

[3]    *See*    https://www.espa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water.

over 20 ppb for lead, the maximum lead level in infant formula allowed by the European Union.

*See* Subcommittee Report at 27.  The tables identify data excerpted from Gerber detail lead levels

in baby foods and juices.  Subcommittee Report at 28.

| Ingredient | Lead Level (ppb) |
|---|---|
| Conventional | 48 |
| Organic | 35 |
| Organic | 34 |
| Organic | 34 |
| Conventional | 34 |
| Conventional | 34 |
| Conventional | 34 |
| Organic | 25 |
| Organic | 25 |
| Organic | 22 |
| Organic | 22 |
| Organic | 21 |
| Conventional | 21 |

| Ingredient | Lead (ppb) |
|---|---|
| Grape Juice White 68 Bx Asp Tote AR InfG | 29 |
| Grape Juice White 68 Bx Asp Tote AR InfG | 26 |
| Grape Juice White 68 Bx Asp Tote AR InfG | 25 |

130.     The average amount of lead in Gerber's tested juice concentrates was 11.2 ppb — more than twice the FDA's limit for lead in bottled water and more than 10 times the limit suggested by American Academy for Pediatrics, the Environmental Defense Fund and Consumer Reports.  Over 83% of the juice concentrates tested showed greater than 1 ppb, which is Consumer Reports' recommended limit for fruit juices.  *See* Subcommittee Report at 28.  The results for the sweet potatoes and juices demonstrated Gerber's willingness to use ingredients containing dangerous levels of lead.

131.     Jay Schneider, Ph.D., Professor of Anatomy, Pathology and Cell Biology, Thomas Jefferson University, Philadelphia, Pennsylvania, has examined hundreds of children who have suffered the effects of lead exposure.  Lead is extremely toxic. The human body is not able to reverse or remediate its effects.  "It's extremely potent."  According to Dr. Schneider, adding, "we know that there is no level of lead in the blood of a child that is safe."  Dr. Rogers similarly adds, "no amount of heavy metals such as lead can be considered safe."

### d.     Mercury

132.     Mercury is a known toxin, and pre-natal exposure has been associated with affected neuro-development, a decreased IQ, and autistic behaviors.  The impact of mercury exposure to humans and animals has been studied for years; as early as 1997, the EPA issued a report to Congress that detailed the health risks to humans and animals.  Because of these risks and mercury's toxicity, both state and federal regulators have enacted regulations to protect humans and animals.

133.     Mercury is another insidious pollutant that has contaminated baby foods. Mercury contains an especially toxic form called "methyl mercury" that increases cardiovascular disease risk in adults and also has been linked to poor performance on tests of vision, intelligence and

memory for children exposed *in utero*.  It has been well known among Gerber and its fellow product market manufacturers that a child's developing brain is particularly sensitive to mercury. Evidence derived from two mass poisonings and a major longitudinal study of lower exposures from seafood, among other research demonstrates that the developing brain is particularly sensitive to mercury.

134.    Methyl mercury in sufficient doses can cause nerve damage, muscle weakness, lack of coordination and impaired vision and hearing.  Exposure to cadmium over time can result in bone, kidney and lung diseases.

135.    In 2015, scientists determined that there was a four-fold higher risk of IQ scores under 80 among school aged children exposed to high levels of mercury in utero.  An IQ under 80 is the clinical cutoff for borderline intellectual disability.

136.    There has been some regulation of mercury outside the baby food context.  For example, the EPA has capped mercury in drinking water at 2 ppb.  Consumer advocates have urged for even stricter standards for baby food.  HBBF has called for a goal of *no* measurable mercury in baby food.  *See* Subcommittee Report at 32.

137.    Gerber rarely tests for mercury in its Baby Foods.  Of the test results it presented to the Subcommittee, Gerber only tested carrots, sweet potatoes, and lemon juice concentrate. Subcommittee Report at 33.

138.    Each of the four Heavy Metals identified above — arsenic, lead, cadmium and mercury — have been known by Gerber to be toxic. Despite knowledge of their toxicity and potential adverse impact on babies and children, the baby food manufacturing industry, which Gerber effectively leads with by far the largest market share, has failed to establish and enforce limits or guidelines with respect to Heavy Metals in baby foods.  Gerber has not done so despite

36

its knowledge of the toxic nature of such Heavy Metals and their impact on a child's development, and despite the fact that such Heavy Metals have been and remain prevalent in its Baby Food Products.

139.    Gerber's policy is to test only ingredients, and not its final Products.  According to the Subcommittee Report, this policy recklessly endangers babies and children and prevents the company from ever knowing the full extent of the danger presented by its products.  Finished baby foods are more toxic than their ingredients alone.  This means that testing only ingredients gives the false appearance of lower-than-actual toxic Heavy Metals levels.

### e.    Perchlorate

140.    The FDA has issued warnings about Perchlorate and its impact on young children:

Perchlorate is a negatively charged molecule made of one chlorine atom and four oxygen atoms. Perchlorate can occur naturally or be man-made.  Perchlorate occurs naturally in arid states in the Southwest United States, (U.S.), in nitrate fertilizer deposits in Chile, and in potash ore in the U.S. and Canada. Perchlorate also forms naturally in the atmosphere …. Because perchlorate is in the environment, it has been found in some drinking water and in some foods. In addition, small amounts of perchlorate (not to exceed 1.2 percent by weight of the finished polymer) may be used as a component in certain containers and food processing equipment for use in contact only with only certain types of dry foods.

***

Human exposure to high dosages of perchlorate can interfere with iodide uptake into the thyroid gland, disrupting the functions of the thyroid and potentially leading to a reduction in the production of thyroid hormone …. In fetuses and infants, thyroid hormones are critical for normal growth and development of the central nervous system. Pregnant women and their fetuses and newborns have the greatest potential for risk of adverse health effects following exposure to perchlorate.

https://www.fda.gov/food/chemicals/perchlorate-questions-and-answers.

141.    Perchlorate is an additional neurotoxic contaminant. Tests commissioned by HBBF and performed by Southwest Research Institute, San Antonio, Texas, uncovered the presence of Perchlorate in 19 of 25 baby foods that it tested and, the presence Heavy Metals in all of the 19

37

baby foods with detectable Perchlorate levels, with 12 containing all four of the aforesaid Heavy Metals, discussed above.  Testing by HBBF revealed the presence of Perchlorate in Gerber Rice Single Grain Cereal, Gerber Multi Grain Cereal - Sitter 2nd Foods, Gerber Oatmeal Single Grain Cereal, Gerber Barley Single Grain Cereal - Supported Sitter 1st Foods and Gerber Whole Wheat, Whole Grain Cereal -Sitter 2nd Foods.  Analysis was not performed on other Gerber Baby Food Products identified in Appendix Exhibit A entitled "laboratory test results for heavy metals," hereto.  *See* October 2019 HBBF Report.

### D.  Gerber Falsely Markets and Represents its Baby Food Products as Safe and Suitable for Babies' Consumption, While Concealing the Presence of Dangerous Levels of Heavy Metals and/or Perchlorate in its Products

142.    Gerber offers of a wide variety of food products such as traditional baby food purees, baby cereals, puffs, and rice cakes.  Knowing full well the importance of health, safety and nutrition respecting its products, Gerber promotes the positive, iconic image of the "Gerber Baby" on its packaging, and it markets, advertises, represents, and warrants that such products are safe and suitable for consumption by babies.  Attached hereto as Appendix Exhibit A is a list of various baby foods Gerber manufactures, packages, markets, advertises and sells in the United States.

**Gerber Website**

143.    The Company's website states that "Gerber is committed to clear and transparent ingredient labeling"; and represents that Gerber Products "meet the standards of the FDA" and that Gerber has "among the strictest standards in the world" for its Products.  To further gain the trust of the consuming public, Gerber holds itself out as a company that cares about the health of babies and the foods they eat.  *See*, www.gerber.com.  According to its website, "100% of our products meet all FDA requirements."  Gerber claims to do "[o]ver 100 quality checks in every jar" throughout "5 different stages of safety and quality checks from farm to spoon," and promises that

"[t]he health and safety of your little one has been and will always be our highest priority," adding that "[O]n top of that Gerber follows an annual testing plan featuring regular safety tests of finished products," leading consumers to believe the products are rigorously tested for any and all impurities. *See* https://www.gerber.com/learning-center/quality-safety-faqs.

144. Gerber claims that its food is of the highest quality and that Gerber "only select[s] the best of what nature has to offer."[4] Gerber assures parents that its Products are safe for babies by stating that it operates the "largest food research and development network of any food company" as part of its effort to provide "three fundamental areas of benefits for parents: safety and quality; nutrition and health and taste, texture, and convenience."[5]

145. Gerber also asserts that its Products are safe for babies, in part, by recommending foods based on its "Milestone" levels, prominently printed on the packaging for its Baby Food Products. Such Milestone levels include, for example, "Newborn, 0-4 months," "Supported Sitter, 4-6 months," and "Crawler, 8+ months," etc., as indicated in the packaging identified at paragraphs herein. Each of these labels is used by Gerber to assert that its Products are suitable and appropriate for babies in the specified age range.

146. In addition, Gerber's "Clean Field Farming™" labelling and marketing strategy, in use since at least 2019, misleads consumers regarding Gerber's purported focus on providing safe foods for babies and toddlers. For example, Gerber asserts that it was "Keeping Soil in the Family," stating that "[s]ome soil can have naturally high levels of nitrates and heavy metals which you don't want in your baby's food. That's why we created requirements for growing our fruits

---

[4]     https://www.gerber.com/commitment-to-quality, last visited April 15, 2021.

[5]     https://www.gerber.com/research, last visited April 15, 2021.

and veggies" that are among the strictest in the world.[6]  Gerber assured consumers that "[w]e know where every fruit and veggie is grown" and that "[o]ur agriculture team knows exactly how to grow for babies."  *Id.*  Gerber made these representations on its website until at least September 27, 2020.[7]

147.    Gerber further makes, and has made, numerous graphic representations on its website regarding food safety, such as "[o]ur fruits and veggies are our babies.  You raise yours so gently.  And we do the same.  Or they never could have the "good Gerber name,"[8] as illustrated.



148.    Similarly, in addressing concerns regarding rice cereal, Gerber sought to assure parents that "[y]ou care about every spoonful your baby eats and we can assure you that we do too,"[9] as illustrated below:

---

[6]    www.gerber..com/clean-field-farming, archived at https://web.archive.org/web/20190616130535/https://www.gerber.com/clean-field-farming, on June 16, 2019.

[7]    www.gerber.com/clean-field-farming, archived at https://web.archive.org/web/20200927063937/https://www.gerber.com/clean-field-farming, on September 27, 2020.

[8]    www.gerber.com/home, archived at archive.org on January 5, 2017.

[9]    www.gerber.com/home, archived at archive.org on February 2, 2017.



149.    Gerber further assures parents that its snack products "are made with nutritious ingredients and no artificial flavors, artificial sweeteners or synthetic colors, ever!,"[10] as illustrated below:



       **a.**    **Baby Product Packaging**

150.    There are many other examples of Gerber's deceptive promotion of its Baby Food Products.  For example, Gerber Puffs, which are sold in several flavors including Strawberry

---

[10]    www.gerber.com/home, archived at archive.org on September 2, 2018.

Apple, Banana, Blueberry, Sweet Potato, Apple Cinnamon, Peach, Organic Cranberry Orange, Organic Fig Berry and Organic Apple, are "finger food" snacks for babies.

151.    Gerber Puffs' packaging shows a crawling baby and states that these Products are for "Crawler" babies, who are age 8+ months old.  The website states that Puffs "are designed for Crawlers [and] will dissolve quickly in babies' mouths."  Gerber markets Puffs as supporting "brain development and learning ability" and "naturally flavored with other natural flavors."  Below is an example of the front of the Gerber Puffs product packaging:



152.    Gerber's statements, taken together and considered as a whole, from the perspective of a reasonable consumer, conveyed that the Gerber Puffs are safe and suitable for consumption by babies.

153.    Gerber Lil' Crunchies also feature the famous "Gerber Baby" as well as a crawling baby on the package, and indicate that the Lil' Crunchies are intended for "Crawler" babies, age 8+ months.  The packaging also touts the fact that the Lil' Crunchies are "Baked with Whole Grains" and "naturally flavored with other natural flavors."  Gerber Lil' Crunchies are sold in several flavors, including Mild Cheddar, Veggie Dip, Garden Tomato, Apple Sweet Potato, Ranch, Vanilla Maple, Organic White Cheddar Broccoli and Organic White Bean Hummus.  The following illustrate the front labels of various Gerber Lil' Crunchies products:



154. Gerber's statements, taken together and considered as a whole, from the perspective of a reasonable consumer, convey that the Gerber Lil' Crunchies are safe and suitable for consumption by babies.

155. Gerber's Yogurt Melts products also depict the famous "Gerber Baby" as well as a crawling baby, and indicate that the Gerber Yogurt Melts are intended for "Crawler" babies, age 8+ months. The packaging also touts that the Yogurt Melts are "made with real fruit." Gerber Yogurt Melts are sold in several flavors, including Strawberry, Very Berry Blend, Truly Tropical Blend, Mixed Berries, Banana Vanilla, Peach, Organic Banana Strawberry, and Organic Red Berries. The following illustrate the front labels of various Gerber Yogurt Melts product:



43

156.    Gerber's statements when taken together and considered as a whole, from the perspective of a reasonable consumer, also conveyed that the Gerber Yogurt Melts are safe and suitable for consumption by babies.

157.    As another example, Gerber's 2nd Foods, one of which is depicted below, are purees that also depict the famous "Gerber Baby" as well as a "Sitter" baby, and indicates that the 2nd Foods are intended for "Sitter."   The Gerber 2nd Foods are sold in several flavors, including Banana, Sweet Potato, Carrot, Green Bean, Apple, and Butternut Squash.  Gerber's website states that the bananas, sweet potatoes, pears, butternut squash, and green beans used in the pear-flavored 2nd Foods products are "grown using our Clean Field Farming™ practices."  Each of Gerber's Banana, Sweet Potato, Carrot, Green Bean, and Butternut Squash products are labeled similarly to the Pear product below:



158.    Gerber's statements, taken together and considered as a whole, from the perspective of a reasonable consumer, convey that Gerber's 2nd Foods are safe and suitable for consumption by babies.

159.    In addition, Gerber's cereals, such as Single Grain Rice, Multigrain, and Whole Wheat Whole Grain, also depict the famous "Gerber Baby" as well as a depiction of a baby, and indicate that the product is for "Supported Sitter" babies.  Gerber's website states that the Organic Single Grain Rice product is made "Following Clean Field Farming™ practice" and Gerber

"keep[s] [its] grains safe and wholesome from farm to kitchen."[11]  Gerber's statements, taken together and considered as a whole, from the perspective of a reasonable consumer, convey that the Gerber cereals are safe and suitable for consumption by babies.

160.   Regarding Gerber's White Grape juice, the packaging depicts the famous "Gerber Baby" as well as a walking baby, and indicates that the product is for "Toddler[s]," age 12+ months.  Gerber's website asserts that its White Grape Juice and Pear Juice have "[n]o artificial flavors or colors" and are "100% juice from concentrate with added Vitamin C and citric acid."[12,13] Gerber's statements, taken together and considered as a whole, from the perspective of a reasonable consumer, convey that Gerber's White Grape Juice and Pear Juice are safe and suitable for consumption by babies.

161.   Gerber's Arrowroot Biscuits are described as "Baby's First Biscuit" on the front of the package label.  The product depicts the famous "Gerber Baby" as well as a crawling baby, and indicates that the food is for the "Crawler[s]," age 10+months.  Gerber's website asserts that the biscuits have "No Artificial Flavors of Artificial Sweeteners."[14]  Gerber's statements, taken together and considered as a whole, from the perspective of a reasonable consumer, convey that Gerber's Arrowroot Biscuits are safe and suitable for consumption by babies.

162.   Numerous other Gerber "Baby Food Product" packages are deceptive and misleading by reason of their overall content and/or omissions.

---

[11]   *See* https://www.gerber.com/gerber-organic-single-grain-cereal-rice, last visited April 15, 2021.

[12]   https://www.gerber.com/gerber-fruit-juice-white-grape, last visited April 15, 2021.

[13]   https://www.gerber.com/gerber-fruit-juice-pear, last visited April 15, 2021.

[14]   https://www.gerber.com/arrowroot-cookies, last visited on April 15, 2021.

163.    These additional examples of such Baby Food Products and their packaging include the following:

(a)  Rice Single Grain Cereal



(b)    Oatmeal Single Grain Cereal



(c)    Diced Carrots Veggie Pick-Ups



(d)   Barley Single Grain Cereal (Supported Sitter)



(e)   Carrot (Supported Sitter)



(f)   Sweet Potato (Supported Sitter)



(g)   Green Bean (Supported Sitter)



(h)   MultiGrain Cereal (Sitter)



(i)   Whole Wheat Whole Grain Cereal (Sitter)



(j)   Carrot (Sitter)



(k)   Sweet Potato (Sitter)



(l)   Pea (Sitter)



(m)   Green Bean (Sitter)



(n)   Banana (Sitter)



(o)   Peach (Sitter)



(p)   Pear (Sitter)



(q)   Organic Mango Apple Carrot Kale (Sitter)



(r)   Carrot Pear Blackberry (Sitter)



(s)   Organic Apple Blueberry Spinach (Sitter)



(t)   Carrot Sweet Potato Pea (Sitter)



(u)   Chicken Rice Dinner (Sitter)



(v)   Turkey Rice Dinner (Sitter)



(w)   Beef and Gravy (Sitter)



(x)   Ham and Gravy (Sitter)



(y)   Puffs Banana Cereal Snack (Crawler 8+ Months)



(z)   Teether Wheels - Apple Harvest (Crawler)



(aa)   Yogurt Blends Strawberry Snack (Crawler 8+ Months)



(bb)  Fruit & Veggie Melts –Truly Tropical Blend - Freeze-Dried Fruit & Vegetable Snack (Crawler, 8+ Months)



(cc)  Arrowroot Biscuits (Crawler 10+ Months)



(dd)  Apple Sweet Potato with Cinnamon (Toddler 12+ Months)



(ee)  Apple Juice from Concentrate (Toddler 12+ Months)



(ff)  Apple Prune Juice from Concentrate (Toddler 12+ Months)



(gg)  Variety Pack Juices from Concentrate - White Grape



(hh)  Pear Juice from Concentrate  100% Juice (Toddler 12+ Months)



(ii)  Mashed Potatoes & Gravy with Roasted Chicken and a Side of Carrots (Toddler)



(jj)  Lil' Sticks Chicken Sticks (Toddler)



164.   The following image is a representative example of Gerber's "organic" claim on the Baby Food Products' packaging:



165.    And the following images are representative examples of Gerber's "Milestone" claims on the Baby Food Products' packaging:





**b      Omissions**

166.    As discussed above, the advertisements, marketing and packaging for Gerber's Baby Food Products also misleadingly omitted the presence, or risk of, Heavy Metals and/or Perchlorate. Gerber intentionally omitted disclosure of the presence or risk of these substances in order to induce and mislead reasonable consumers like Plaintiffs to purchase its Baby Food Products.

167.    Gerber's marketing, advertising and packaging of its Baby Food Products is false, deceptive, and misleading to reasonable consumers because, as Gerber, well knows, and as Gerber's internal policies permitted, the Gerber Baby Food Products it has been selling to

consumers at all times material contains toxins – Heavy Metals and/or Perchlorate – which are harmful to babies and children. Gerber's marketing and advertising was also false, deceptive, and misleading to reasonable consumers because Gerber failed to warn and disclose material facts regarding its Gerber Baby Food Products, namely that: they were unsafe and unsuitable for babies and children; contained Heavy Metals and/or Perchlorate; contained levels of the Heavy Metals and/or Perchlorate; and that its own testing showed their products contained dangerous levels of Heavy Metals and/or Perchlorate, even exceeding Gerber's own internal, albeit illusory, standards.

168.   Gerber's own website, advertising, promotion, marketing, and packaging reflects its conscious effort at all times material to portray its Gerber Baby Food Products as safe, nutritious and healthy, even though they are tainted with unsafe and dangerous toxins – a fact that the Company concealed.

169.   Gerber knew that its Products were intended to be ingested by children – who could not know or defend themselves from risk of harm.  Gerber set illusory and dangerous or excessive "standards," and even exceeded its own internal standards, despite its own testing.  Gerber violated its duty to disclose the truth and adverse facts to reasonable consumers.

### E.   Consumers Were Misled and Deceived by Gerber's Misrepresentations and Material Omissions in its Marketing

170.   Gerber's marketing of its Baby Food Products wrongfully conveys to consumers like Plaintiffs that these foods have certain superior quality and characteristics that they do not actually possess.

171.   Gerber misleadingly caused Plaintiffs and other consumers to believe that its Baby Food Products do not contain Heavy Metals and/or Perchlorate through its marketing and omissions, which is material information to a reasonable consumer.

172.    Gerber's marketing wrongfully fails to disclose to Plaintiffs and consumers the presence of Heavy Metals and/or Perchlorate in its Baby Food Products.

173.    Based on Gerber's marketing, a reasonable consumer would not suspect the presence of Heavy Metals and/or Perchlorate, nor would a reasonable consumer be able to detect these metals in the Baby Food Products without conducting his or her own scientific testing or reviewing scientific testing conducted on these products.

174.    Reasonable consumers must and do rely on Gerber to honestly report what is in the Baby Food Products.

175.    Gerber knew or should have known that the Baby Food Products contained Heavy Metals and/or Perchlorate.

176.    Gerber intended for consumers to rely on its marketing, and reasonable consumers did in fact so rely as more fully alleged below in paragraph 321.

177.    Gerber had a duty to ensure that the Baby Food Products were as they were represented, and not deceptively, misleadingly, unfairly, or falsely advertised, promoted and marketed.

178.    Gerber had a duty under the circumstances, and particularly given the nature of its products intended to be fed to babies and children, and Gerber's knowledge of the dangers of their ingesting Heavy Metals and/or Perchlorate.

**F.    Defendant Gerber Knew or Should Have Known its Representations and Material Omissions in its Marketing Are Misleading**

179.    At all times herein, Gerber knew or should have known that its Baby Food Products contained Heavy Metals and/or Perchlorate.

180.    Gerber knew that Heavy Metals and/or Perchlorate are potentially dangerous contaminants that pose health risks to humans, and particularly to babies and children.

181.    The Baby Food Products had a risk of and did contain Heavy Metals and/or Perchlorate due to Gerber's failure to adequately or faithfully monitor for their presence in the ingredients and finished products and remove them even after internal testing.  Gerber was aware of this risk and failed to disclose it to Plaintiffs and the Class.

182.    Gerber knew or should have known that it owed consumers a duty of care to prevent, or at the very least, to minimize or, at least, warn of or disclose the presence of Heavy Metals and/or Perchlorate in the Baby Food Products.

183.    Gerber knew consumers purchased the Baby Food Products based on the reasonable expectation that Gerber manufactured the Baby Food Products to the highest standards, that they were safe for their children and babies, and would not present a risk to their health and development.

184.    As a result of the foregoing, Gerber's marketing is deceptive, misleading, unfair and false to Plaintiffs and other consumers of baby food, including under state consumer protection laws.

185.    Gerber acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false marketing and omissions as described herein.

186.    Based on the foregoing, reasonable consumers would consider the inclusion of these toxic Heavy Metals and/or Perchlorate in the Baby Food Products to be a material fact when considering which baby food to purchase.

187.    Gerber knew that properly and sufficiently monitoring and testing for Heavy Metals and/or Perchlorate in its ingredients and Baby Food Products was critical.

188.    Finally, Gerber knew or should have known that it could control the levels of Heavy Metals and/or Perchlorate in Baby Food Products by properly monitoring their ingredients and

final products for their presence and adjusting any formulation to reduce ingredients that contained dangerous levels of Heavy Metals and/or Perchlorate.

189.    Defendant also knew it was not properly and sufficiently testing for the presence of Heavy Metals and/or Perchlorate in the Baby Food Products, and/or it was violating its own standards and allowing dangerous levels of Heavy Metals and/or Perchlorate to taint its Baby Food Products.

190.    Gerber knew or should have known that consumers reasonably expected it to test for and monitor the presence of Heavy Metals and/or Perchlorate in the Baby Food Products and ingredients.

191.    Gerber knew, yet failed to disclose, its lack of regular testing and knowledge of the risk or presence of Heavy Metals and/or Perchlorate in the Baby Food Products.

192.    The statements, representations, partial disclosures, and omissions made by Gerber are crafted to deceive the public and portray the Baby Food Products as healthy, nutritious, and made from the best ingredients, subject to strict quality control, and free of Heavy Metals and/or Perchlorate.

193.    Reasonable consumers, such as Plaintiffs and the Class members, would have no reason to doubt Gerber's statements regarding the quality of the Baby Food Products.  Gerber's failure to disclose and/or concealment of the toxins in the Baby Food Products, together with the misrepresentations alleged herein that were intended to, and did, cause reasonable consumers like Plaintiffs to purchase products they otherwise would not have if the true quality and ingredients were disclosed.

194.    As a result of the wrongful marketing, including the misleading, deceptive, unfair and false representations and material omissions, Gerber capitalized on and reaped enormous

profits from reasonable consumers like Plaintiffs who paid the purchase price or a premium for the Baby Food Products that were not as advertised and/or they would not have purchased had Gerber been truthful and made full and adequate disclosures.

### G. PLAINTIFFS' RELIANCE IS REASONABLE AND FORESEEABLE

195. Plaintiffs are reasonable consumers. No reasonable consumer would knowingly purchase Gerber Baby Food Products containing toxic contaminates – whether Heavy Metals and/or Perchlorate – and their reliance on Gerber's statements and/or omissions is not required given the nature of the product defects. Alternatively, Plaintiffs and members of the Classes are presumed to, or did, reasonably rely on Gerber's claims, warranties, representations, advertisements, and other marketing concerning the qualities and benefits of the Baby Food Products in making their purchase decisions.

196. Had Plaintiffs and members of the Classes known of Gerber's' misrepresentations and material omissions regarding the presence of toxic Heavy Metals and/or Perchlorate in its Baby Food Products, Plaintiffs and members of the Classes would not have purchased the Baby Food Products.

### H. DEFENDANT BREACHED ITS EXPRESS AND IMPLIED WARRANTIES

197. Defendant had sufficient notice of its breaches of express and implied warranties. Defendant has, and had, exclusive knowledge of the physical and chemical properties of the Baby Food Products. Moreover, Defendant was put on notice by the HBBF October, 2019 Report regarding the inclusion of Heavy Metals and other toxins in the Baby Food Products. Defendant knew that consumers such as Plaintiffs and the proposed members of the Classes would be the end purchasers or users of the Baby Food Products and the target of its advertising and statements.

198.    Defendant intended the warranties, advertising, labeling, statements, and other representations would be considered by the end purchasers of the Baby Food Products, including Plaintiffs and the proposed Class.

199.    Defendant directly marketed the Baby Food Products to Plaintiffs and the proposed Classes through statements on its website, labeling, advertising, and packaging on the Baby Food Products.  Further, Gerber sold the Baby Food Products to the proposed Classes directly through its own website.

200.    Plaintiffs and the proposed Classes are the ultimate purchasers and intended beneficiaries of the express and implied warranties.

### I.    TOLLING OF THE STATUTE OF LIMITATIONS

#### a.    Discovery Rule Tolling

201.    Within the period of any applicable statues of limitations, Plaintiffs and members of the proposed Classes could not have discovered through the exercise of reasonable diligence that Gerber's Baby Food Products contained Heavy Metals and/or Perchlorate, or dangerous levels of these toxic contaminants, and were unsafe to consume.

202.    Plaintiffs and the other Class Members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Gerber's Baby Food Products contained Heavy Metals and/or Perchlorate, or dangerous levels of these toxic contaminants, or that Gerber's advertising, promotion, and marketing was false and/or misleading.

203.    Plaintiffs and Class Members could not have reasonably discovered the true extent of Gerber's deception with regard to the safety of its Baby Food Products until the publication of the Subcommittee Report on February 4, 2021.

204.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule.

### b.    Fraudulent Concealment Tolling

205.    All applicable statutes of limitation have also been tolled by Gerber's fraudulent concealment throughout the period relevant to this Action of its own adverse internal testing and knowledge of dangerous levels of toxic contaminants in its own Baby Food Products.

206.    Instead of disclosing to consumers that its Baby Food Products contained Heavy Metals and/or Perchlorate, and/or determining by its own internal testing, Gerber continued to manufacture and sell Products without disclosing this information, or making full and adequate disclosure.

### c.    Estoppel

207.    Gerber was under a continuous duty to disclose to Plaintiffs and the other Class Members the risks of consuming its Baby Food Products.

208.    Gerber knowingly, affirmatively, and actively concealed or recklessly disregarded the true risks of consuming its Baby Food Products, and meanwhile affirmatively misrepresented them and misled consumers that they were safe for ingestion by children.

209.    Based on the foregoing, Gerber is estopped from relying on any statutes of limitations in defense of this action.

## V.    CLASS ACTION ALLEGATIONS

210.    Plaintiffs bring this Action individually and on behalf of the Nationwide Class as defined below, and on behalf of their respective state Subclasses pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

**Nationwide Class**

All persons within the United States who purchased Gerber Baby Food Products for household or business use, and not for resale, within any applicable statute of limitations period (the "Nationwide Class").

**State Subclasses:**

    **1.**    **Arizona Subclass**

211.    Plaintiff Thomas brings this Action individually and on behalf of the following

Arizona Subclass:

All persons who are residents of the State of Arizona who purchased Gerber's Baby Food Products for household or business use and not for resale during any applicable statute of limitations period.

    **2.**    **California Subclass**

212.    Plaintiffs Bryant, Tadeo and Serratos bring this Action individually and on behalf

of the following California Subclass:

All persons who are residents of the State of California who purchased Gerber's Baby Food Products for household or business use and not for resale during any applicable statute of limitations period.

    **3.**    **Colorado Subclass**

213.    Plaintiff Moore brings this Action individually and on behalf of the following

Colorado Subclass:

All persons who are or were residents of the State of Colorado who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

    **4.**    **Florida Subclass**

214.    Plaintiffs Bryan, Adams, Hazely, and Murwin bring this Action individually and

on behalf of the following Florida Subclass:

All persons who are or were residents of the State of Florida who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

### 5.   Georgia Subclass

215.   Plaintiff Allen brings this Action individually and on behalf of the following Georgia Subclass:

All persons who are or were residents of the State of Georgia who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

### 6.   Illinois Subclass

216.   Plaintiffs MacLeod, Neal and Willoughby bring this Action individually and on behalf of the following Illinois Subclass:

All persons who are or were residents of the State of Illinois who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

### 7.   Minnesota Subclass

217.   Plaintiff McKeon brings this Action individually and on behalf of the following Minnesota Subclass:

All persons who are or were residents of the State of Minnesota who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

### 8.   New Jersey Subclass

218.   Plaintiffs Fleissner, Clark and Blazevic bring this action individually and on behalf of the following New Jersey Subclass:

All persons who are or were residents of the State of New Jersey who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

### 9. New York Subclass

219. Plaintiffs Visconti, Simeron, Mosquera and Wehmeyer bring this Action individually and on behalf of the following New York Subclass:

> All persons who are or were residents of the State of New York who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

### 10. North Carolina Subclass

220. Plaintiffs Wilson and Roberts bring this Action individually and on behalf of the following North Carolina Subclass:

> All persons who are or were residents of the State of North Carolina who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

### 11. Ohio Subclass

221. Plaintiffs Adkins, Puntel and Robinson bring this Action individually and on behalf of the following Ohio Subclass:

> All persons who are or were residents of the State of Ohio who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

### 12. Oregon Subclass

222. Plaintiff Ellison brings this action individually and on behalf of the following Oregon Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who are or were residents of the State of Oregon who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

### 13. Pennsylvania Subclass

223. Plaintiffs Hagmaier, McCarthy and Fitzgerald bring this action individually and on behalf of the following Pennsylvania Subclass:

All persons who are or were residents of the Commonwealth of Pennsylvania who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

### 14.    Tennessee Subclass

224.    Plaintiff Miller brings this action individually and on behalf of the following

Tennessee Subclass:

All persons who are or were residents of the State of Tennessee who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

### 15.    Texas Subclass

225.    Plaintiffs Keeter and Umanzor bring this Action individually and on behalf of the

following Texas Subclass:

All persons who are or were residents of the State of Texas who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

### 16.    Virginia Subclass

226.    Plaintiff Rhea brings this Action individually and on half of the following Virginia

Subclass:

All persons who are or were residents of the Commonwealth of Virginia who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

### 17.    Washington Subclass

227.    Plaintiff Valenzuela brings this Action individually and on behalf of the following

Washington Subclass:

All persons who are or were residents of the State of Washington who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

18.     **Wisconsin Subclass**

228.    Plaintiff Harmon brings this Action individually and on behalf of the following Wisconsin Subclass:

> All persons who are or were residents of the State of Wisconsin who purchased Gerber's Baby Food Products for household or business use and not for resale during the applicable statute of limitations period.

229.    Excluded from the Class and Subclasses (collectively, "Classes") are the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

230.    This Action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

231.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1) --** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands or more. The number of members in the Classes is presently unknown to Plaintiffs but may be verified by Gerber's records. Members of the Classes may be notified of the pendency of this Action by mail, e-mail, Internet postings, and/or publication.

232.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3) –** Common questions of law and fact exist as to all members of the Classes and predominate over individual questions. Such common questions of law or fact include, but are not limited to:

        (a)     whether Defendant owed a duty of care;

69

(b)      whether Defendant knew or should have known that the Baby Food Products contained or may contain Heavy Metals and/or Perchlorate;

(c)      whether Defendant represented and continue to represent that the Baby Food Products are healthy, nutritious, organic, made from the best ingredients, and safe for consumption by children, including babies and infants;

(d)      whether Defendant represented and continue to represent that the manufacturing of their Baby Food Products are subjected to rigorous quality standards;

(e)      whether Defendant failed to disclose or concealed that the Baby Food Products contained or may contain Heavy Metals and/or Perchlorate;

(f)      whether Gerber's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

(g)      whether those representations are likely to deceive a reasonable consumer;

(h)      whether Defendant had knowledge that its representations and/or material omissions were false, deceptive, and misleading;

(i)      whether Defendant continues to disseminate or render those representations and/or material omissions despite knowledge that the representations are false, deceptive, and misleading;

(j)      whether that a product is healthy, nutritious, organic, made from the best ingredients, safe for consumption, does not contain Heavy Metals, Perchlorate, and/or other undesirable toxins or contaminants is material to a reasonable consumer;

(k)      whether Gerber's marketing of the Baby Food Products are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

(l)      whether Defendant violated the laws of any or all of the states respecting which subclasses are alleged herein;

(m)      whether Defendant made or breached express warranties;

(n)      whether Defendant made or breached implied warranties;

(o)      whether Defendant engaged in unfair trade practices;

70

(p)      whether Defendant engaged in false advertising;

(q)      whether Defendant's conduct was negligent;

(r)      whether Defendant made negligent and/or fraudulent misrepresentations and/or material omissions;

(s)      whether Plaintiffs and members of the Classes are entitled to actual, statutory, and punitive damages; and

(t)      whether Plaintiff and the members of the Classes are entitled to declaratory and injunctive relief.

233.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes. Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of All Classes)**

234.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-233, as though fully set forth herein.

235.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Gerber for breach of express warranty.

236.    Gerber marketed and sold the Baby Food Products into the stream of commerce with the intent that the Products would be purchased by Plaintiffs and members of the Classes.

237.    Gerber expressly warranted, advertised, and represented to Plaintiffs and members of the Classes that the Products were and are high quality, natural, and nutritious products that are free from artificial flavors and colors, and safe for consumption by infants and young children.

71

238.    Gerber made these express warranties regarding the Baby Food Products' quality, ingredients, and suitability for consumption in writing through its website, advertisements, and marketing materials and on the Products' packaging and labels.  These express warranties became part of the basis of the bargain that Plaintiffs and members of the Classes entered into upon purchasing the Products.

239.    Gerber's said warranties, advertisements, and representations were made in connection with the sale of the Baby Food Products to Plaintiffs and members of the Classes. Plaintiffs and members of the Classes relied on Gerber's warranties, advertisements, and representations regarding the Baby Food Products in deciding whether or not to purchase Gerber's Products.

240.    Gerber's Baby Food Products do not conform to Gerber's warranties, advertisements, and representations in that they are not safe or appropriate for consumption by infants and young children, as they contain, or may contain various toxic Heavy Metals and/or Perchlorate.

241.    Gerber was on notice of this breach, as Gerber was aware of the included Heavy Metals and/or Perchlorate in the Baby Food Products due to its own testing and expertise, and/or based on the investigation noted in the HBBF Report that revealed the Baby Food Products as containing various levels of toxic Heavy Metals and/or Perchlorate.

242.    Privity exists because Gerber expressly warranted to Plaintiffs and members of the Classes through the warranting, website, packaging, advertising, marketing, promoting materials that the Baby Food Products were high quality, natural, nutritious, free from artificial flavors and colors, and safe for consumption by infants and young children, and by failing to make any mention of Heavy Metals and/or Perchlorate.

243.     As a direct and proximate result of Gerber's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased Baby Food Products that were worth less than the price they paid and they would not have purchased had they known of the risk and/or presence of dangerous levels of Heavy Metals, Perchlorate and/or other contaminants that do not conform to the Products' marketing and advertisements.

244.     Gerber's breach of its express warranties constitutes a violation of Article 2, Section 2-313 of the Uniform Commercial Code, which Article has been adopted by every State other than Louisiana.

245.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## SECOND CAUSE OF ACTION
### Breach of Common Law Implied Warranty of Merchantability
### (On Behalf of All Classes)

246.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-233 of this Consolidated Complaint.

247.     At all relevant times, Gerber was the merchant, manufacturer, marketer, warrantor, and/or seller of the Baby Food Products.  Gerber knew or had reason to know of the specific use for which the Baby Food Products were purchased.

248.     Plaintiffs purchased the Baby Food Products manufactured and marketed by Gerber at retailers for retail sale to consumers throughout the United States as well as through Gerber's website directly.

249.     Baby Food Products are and were at all relevant times goods within the meaning of various state statutes set forth herein.

250.    An implied warranty that the Baby Food Products were merchantable arose by operation of law as part of the sale of the Baby Food Products.

251.    Gerber impliedly warranted to Plaintiffs and the Classes that the Baby Food Products were of merchantable quality, fit for their ordinary use, and conformed to the messaging, characterizations, promises and affirmations of fact made on the Baby Food Products' packaging, containers, labels and/or advertisements, including that the food was high quality, natural, nutritious, free from artificial flavors and colors, and safe for consumption by infants and young children. The Baby Food Products when sold at all times were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and nutritious food for babies and toddlers.  The Baby Food Products were and are not safe for babies and children because they contain dangerous Heavy Metals and/or Perchlorate.

252.    Plaintiffs and members of the Classes relied on such messaging, characterizations promises and affirmations of fact when they purchased the Baby Food Products. Contrary to Gerber's representations and warranties, the Baby Food Products were not fit for their ordinary use, consumption by infants or young children, and did not conform to Gerber's affirmations of fact and promises as they contained, or were at risk of containing, Heavy Metals and/or other ingredients or contaminants that do not conform to the packaging.

253.    As a consequence, Gerber breached its implied warranties upon selling such Products, as each product contained Heavy Metals, and/or Perchlorate, and/or other ingredients or contaminants.

254.    Gerber cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous Baby Food Products.

255.     Gerber was on notice of this breach, as Gerber was aware of the included Heavy Metals and/or Perchlorate in the Baby Food Products due to its own testing and/or expertise, and based on the investigation in the HBBF Report that revealed the Baby Food Products as containing various levels of toxic Heavy Metals.

256.     Gerber was also provided notice by the numerous class action complaints filed against it.  Affording Gerber a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Gerber has known of and concealed the safety of its Baby Food Products.

257.     As a direct and proximate result of Gerber's breach of the implied warranty of merchantability, Plaintiffs and members of the Subclasses have been damaged in an amount to be proven at trial.

258.     Plaintiffs and members of the Classes have been excused from performance of any warranty obligations as a result of Gerber's conduct described herein.

259.     Privity exists because Gerber impliedly warranted to Plaintiffs and members of the Classes through the warranting, website, packaging, advertising, marketing, and labeling that the Baby Food Products were high quality, natural, nutritious products, free from artificial flavors and colors, and safe for consumption by infants and young children, and by failing to make any mention of Heavy Metals and/or other ingredients.

260.     As a direct and proximate result of Gerber's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they have purchased Baby Food Products that are worth less than the price they paid and that they would not have purchased at all had they known the presence or risk of Heavy Metals and/or other ingredients.

261.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

### THIRD CAUSE OF ACTION
**Breach of Statutory Warranty of Merchantability**
**(On Behalf of Classes in States Enumerated Below)**

262.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-233 of this Consolidated Complaint.

263.    At all relevant times, Gerber was the merchant, manufacturer, marketer, warrantor, and/or seller of the Baby Food Products.  Gerber knew or had reason to know of the specific use for which the Baby Food Products were purchased.

264.    Plaintiffs purchased the Baby Food Products manufactured and marketed by Gerber at retailers for retail sale to consumers throughout the United States as well as through Gerber's website directly.

265.    Baby Food Products are and were at all relevant times goods within the meaning of various state statutes set forth herein.

266.    An implied warranty that the Baby Food Products were merchantable arose by operation of law as part of the sale of the Baby Food Products.

267.    The following state statutes recognize an implied warranty of merchantability under their version of Section 2-314 the Uniform Commercial Code:

- Az. Rev Stat § 47-2314;

- Cal. Comm. Code § 2314;

- Col. Rev. Stat. § 4-2-314;

- Fla. Stat § 672.314;

- Ga. Code Ann. §11-2-314;

- 810 I.L.C.S. 5/2-314;

- Minn. Stat., § 3336.2-314;

- N.J. Stat. Ann. § 12a:2-314;

- N.Y. U.C.C. § 2-314;

- N.C. Gen. Stat. § 25-2-314;

- Ohio Rev. Code § 1302.27;

- Or. Rev. Stat. § 72.3140;

- 13 Pa.C.S. § 2314;

- Tenn. Code. §§ 47-2-314;

- Tex. Bus. & Com. Code Ann. § 2.314;

- Va. Code Ann. 8.2-314;

- Rev. Code Wash. § 62a.2-614;

- W.S.A. 402.314; and

- Wash. Rev. Code Ann. § 62A.2-314 (West).

268.    Gerber impliedly warranted that the Baby Food Products were of merchantable quality, fit for their ordinary use, and conformed to the messaging, characterizations, promises and affirmations of fact made on the Baby Food Products' packaging, containers, labels and/or advertisements, including that the food was high quality, natural, nutritious, free from artificial flavors and colors, and safe for consumption by infants and young children.  The Baby Food Products when sold at all times were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and nutritious food for babies and toddlers.  The Baby Food

Products were and are not safe for babies and children because they contain dangerous Heavy Metals and/or Perchlorate.

269.     Plaintiffs and members of the Classes relied on such messaging, characterizes promises and affirmations of fact when they purchased the Baby Food Products.  Contrary to Gerber's representations and warranties, the Baby Food Products were not fit for their ordinary use, consumption by infants or young children, and did not conform to Gerber's affirmations of fact and promises as they contained, or were at risk of containing, Heavy Metals and/or other ingredients or contaminants that do not conform to the packaging.

270.     As a consequence, Gerber breached its implied warranties upon selling such Products, as each product contained Heavy Metals, and/or Perchlorate, and/or other ingredients or contaminants.

271.     Gerber cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous Baby Food Products.

272.     Gerber was on notice of this breach, as Gerber was aware of the included Heavy Metals and/or Perchlorate in the Baby Food Products due to its own testing and/or expertise, and based on the investigation in the HBBF Report that revealed the Baby Food Products as containing various levels of toxic Heavy Metals.

273.     Gerber was also provided notice by the numerous class action complaints filed against it.  Affording Gerber a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Gerber has known of and concealed the safety of its Baby Food Products.

274.    As a direct and proximate result of Gerber's breach of the implied warranty of merchantability, Plaintiffs and members of the Classes have been damaged in an amount to be proven at trial.

275.    Plaintiffs and members of the Classes have been excused from performance of any warranty obligations as a result of Gerber's conduct described herein.

276.    Privity exists because Gerber impliedly warranted to Plaintiffs and members of the Classes through the warranting, website, packaging, advertising, marketing, and labeling that the Baby Food Products were high quality, natural, nutritious products, free from artificial flavors and colors, and safe for consumption by infants and young children, and by failing to make any mention of Heavy Metals and/or other ingredients.

277.    As a direct and proximate result of Gerber's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they have purchased Baby Food Products that are worth less than the price they paid and that they would not have purchased at all had they known the presence or risk of Heavy Metals and/or other ingredients.

278.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

### FOURTH CAUSE OF ACTION
### Fraudulent Concealment – Fraud by Omission
### (On Behalf of All Classes)

279.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-233, as though fully set forth herein.

280.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Gerber for fraud by omission.

281.    Gerber concealed from and failed to disclose to Plaintiffs and members of the Classes that the Baby Food Products contained, or were at risk of containing, Heavy Metals and/or other ingredients such as Perchlorate that do not conform to the Products' labels, packaging, advertising, and statements, including, but not limited to, representations that its Products were wholesome, made from safe ingredients, and appropriate for babies and young children.

282.    Gerber was under a duty to disclose to Plaintiffs and members of the Classes the true quality, characteristics, ingredients and suitability of the Products because: (1) Gerber was in a superior position to know the true state of facts about its products; (2) Gerber was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by infants and young children; (3) Gerber had exclusive knowledge of its own test results showing contamination of its Baby Food Products; and/or (4) Gerber knew that Plaintiffs and members of the Classes could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

283.    The facts concealed or not disclosed by Gerber to Plaintiffs and members of the Classes are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Baby Food Products.  No reasonable consumer would have purchased the Gerber Baby Food Products had Defendant adequately and fully disclosed the truth.

284.    Gerber knew that this omission was material information that Plaintiffs required, and Gerber intentionally omitted and failed to disclose this information to induce the Plaintiffs to purchase its Baby Food Products.

285.    Plaintiffs did not know or suspect that Gerber's Baby Food Products were unsafe or contained unhealthy ingredients.

286.     Plaintiffs and members of the Classes justifiably relied on Gerber's omissions to their detriment.  The detriment is evident from the true quality, characteristics, and ingredients of the Products, which are inferior when compared to how the Products are advertised and represented by Gerber.

287.     As a direct and proximate result of Gerber's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Baby Food Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of Heavy Metals and/or other ingredients such as Perchlorate that do not conform to the products' labels, packaging, advertising, and statements.

288.     Plaintiffs and members of the Classes seek actual and punitive damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**FIFTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**(On Behalf of All Classes)**

289.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-233, as though fully set forth herein.

290.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Gerber for negligent misrepresentation.

291.     Gerber marketed the Baby Food Products in a manner indicating that the Products were and are high quality, natural, nutritious, free from artificial flavors and colors, and safe for consumption by infants and young children.  However, the Baby Food Products contained, or were at risk of containing, Heavy Metals and/or unnatural or other ingredients or contaminants such as

Perchlorate that do not conform to their packaging and portrayal or characterization by Gerber. Therefore, Gerber has made misrepresentations about the Products.

292.     Gerber's misrepresentations regarding the Baby Food Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for.  A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Baby Food Products.

293.     At all relevant times when such misrepresentations were made, Gerber knew or had been negligent in not knowing that the Products contained, or were at risk of containing, Heavy Metals and/or other ingredients or contaminants such as Perchlorate.  Gerber has no reasonable grounds for believing its misrepresentations were not false and misleading.

294.     Gerber intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Baby Food Products' packaging, as well as its advertising and marketing of the Baby Food Products as high quality, natural, nutritious, free from artificial flavors and colors, and safe for consumption by infants and young children.

295.     Plaintiffs and members of the Classes have reasonably and justifiably relied on Gerber's negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased the Products at all.

296.     Therefore, as a direct and proximate result of Gerber's negligent misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Baby Food Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of Heavy Metals and/or

unnatural or other ingredients such as Perchlorate that do not conform to the Products' portrayals, characterizations, packaging, advertising, and statements.

297.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**SIXTH CAUSE OF ACTION**
**Intentional Misrepresentation**
**(On Behalf of All Classes)**

298.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-233, as though fully set forth herein.

299.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Gerber for intentional misrepresentation.

300.    Gerber marketed the Baby Food Products in a manner indicating that the Baby Food Products were and are high quality, natural, nutritious products, free from artificial flavors and colors, and safe for consumption by infants and young children.  However, the Products contained, or were at risk of containing, Heavy Metals and/or other ingredients or contaminants such as Perchlorate that do not conform to the packaging.  Therefore, Gerber has made misrepresentations about the Baby Food Products.

301.    Gerber's misrepresentations regarding the Baby Food Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for.  A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Baby Food Products.

302.    At all relevant times when such misrepresentations were made, Gerber knew that the representations were misleading, or acted recklessly in making the representations, without regard to the truth.

303.    Gerber intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Baby Food Products' packaging by Gerber, as well as its advertising, marketing, and portrayals and characterizations of the Baby Food Products as high quality, natural, nutritious products, free from artificial flavors and colors, and safe for consumption by infants and young children.

304.    Plaintiffs and members of the Classes have reasonably and justifiably relied on Gerber's intentional misrepresentations when purchasing the Baby Food Products, and had the correct facts been known, would not have purchased them at all.

305.    Therefore, as a direct and proximate result of Gerber's intentional misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Baby Food Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of Heavy Metals and/or other ingredients such as Perchlorate that do not conform to the products' labels, packaging, advertising, and statements.

306.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## SEVENTH CAUSE OF ACTION
### Quasi Contract/Unjust Enrichment/Restitution
### (On Behalf of All Classes)

307.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-233, as though fully set forth herein.

308.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Gerber for quasi contract, unjust enrichment, and restitution.

309.    As alleged herein, Gerber has intentionally and recklessly made misleading representations to Plaintiffs and members of the Classes to induce them to purchase the Baby Food Products.   Plaintiffs and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Gerber.   Plaintiffs and members of the Classes therefore have been induced by Gerber's misleading and deceptive representations about the Baby Food Products, and paid more money to Gerber for the Products than they otherwise would and/or should have paid.

310.    Plaintiffs and members of the Classes have conferred a benefit upon Defendant as Gerber has retained monies paid to them by Plaintiffs and members of the Classes.

311.    The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the Classes – *i.e.*, Plaintiffs and members of the Classes did not receive the full value of the benefit conferred upon Gerber.

312.    Therefore, it is inequitable and unjust for Gerber to retain the profit, benefit, or compensation conferred upon it without paying Plaintiffs and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

313.    As a direct and proximate result of Gerber's unjust enrichment, Plaintiffs and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a

constructive trust upon all profits, benefits, and other compensation obtained by Gerber from its deceptive, misleading, and unlawful conduct as alleged herein.

**EIGHTH CAUSE OF ACTION**
**Violations of the Arizona Consumer Fraud Act – Ariz. Rev. Stat.**
**§§ 44-1521,** *et seq.,*
**(On Behalf of Plaintiff Thomas and the Arizona Subclass)**

314. Plaintiff Thomas realleges and incorporates by reference the allegations contained in paragraphs 1-233 above as if fully set forth herein.

315. Pursuant to section 44-1522, Ariz. Rev. Stat., it is unlawful to engage in false, misleading or deceptive acts or practices in connection with the sale or advertisement of any merchandise. Gerber's Baby Food Products are merchandise within the scope of the Act.

316. Gerber's false, misleading and deceptive acts or practices were made in connection with the advertisement, marketing, promotion, packaging and sale of merchandise as defined in section 44-1521(5), Ariz. Rev. Stat.

317. As explained herein, Gerber misrepresented and omitted material facts regarding Gerber's Baby Food Products' in the products' advertising, promotional, packaging and marketing materials.

318. As the manufacturer, distributor, and sellers of Gerber's Baby Food Products, Gerber possessed specialized knowledge regarding the content and effects of the ingredients contained in the Products. Thus, Gerber is in a superior position to learn of the effects, risks and unsafe nature of dangerous and have learned of the effects their Baby Food Products have on consumers. As a result, Gerber knew, or should have known, that its representations of its Products as healthy were false, misleading and/or deceptive.

319.    Gerber's misrepresentations and material omissions in the advertising, marketing, promotion and packaging of its Baby Food Products were intended to, and did, deceive plaintiff Thomas and Arizona Subclass members into purchasing said products.

320.    Plaintiff Thomas and the Arizona Subclass members read and relied on the accuracy of the representations characterizations, portrayals of the Baby Food Products advertising and marketing, including Gerber's Baby Food Products packaging and labeling, in purchasing the products.

321.    Plaintiff Thomas and the Arizona Subclass members have been actually injured by Gerber's false, misleading and fraudulent business acts and practices and are entitled to damages in the amount they paid for Gerber's Baby Food Products.

322.    Plaintiff Thomas and the Arizona Subclass members are entitled to equitable relief in the form of restitution of all monies paid for Gerber's Baby Food Products and disgorgement of the profits Gerber received from the sale of said Products.

323.    Plaintiff Thomas and the Arizona Subclass members also are entitled to an award of attorneys' fees and costs.

### NINTH CAUSE OF ACTION
**Violations of California's Consumers Legal Remedies Act,**
**California Civil Code §§ 1750, *et seq.*,**
**(On Behalf of Plaintiffs Bryant, Tadeo and Serratos and the California Subclass)**

324.    Plaintiffs Bryant, Tadeo and Serratos incorporate by reference and reallege each and every allegation contained in paragraphs 1-233 above, as though fully set forth herein.

325.    Plaintiffs and each proposed member of the California Subclass is a "consumer," as that term is defined in California Civil Code section 1761(d).

326.    The Baby Foods Products are "goods," as that term is defined in California Civil Code section 1761(a).

327. Gerber is a "person" as that term is defined in California Civil Code section 1761(c).

328. Plaintiffs and each California Subclass member's purchase of Gerber's Baby Food Products constituted a "transaction" as that term is defined in California Civil Code section 1761(e).

329. Gerber's conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA").

330. California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Baby Foods are healthy, nutritious, organic, made from the best ingredients, and safe for consumption, and by failing to make any mention of Heavy Metals, Perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods Products.

331. California Civil Code section 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Baby Foods were of a particular standard, quality, or grade, when they were of another.

332. California Civil Code section 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Baby Foods with intent not to sell them as advertised.

333. California Civil Code section 1770(a) (16), by representing that the Baby Foods have been supplied in accordance with previous representations when they have not.

334. The California Plaintiffs were not required to provide pre-suit notice to Gerber. Any such notice is futile and is excused. Gerber has been on notice of the claims and has failed and refused to remedy the damages and harm caused by its misconduct or otherwise cease and desist from the conduct alleged herein for a period well in excess of 30 days. If notice is

required then Plaintiffs will amend this complaint and provide notice to assert a claim for class-wide damages beyond injunctive relief.

335.    As a direct and proximate result of these violations, plaintiffs Bryant, Tadeo and Serratos and the California Subclass have been harmed, and that harm will continue unless Gerber is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Baby Food Products.

336.    Plaintiffs seek an award of attorneys' fees pursuant to, inter alia, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

**TENTH CAUSE OF ACTION**
**Violations of California False Advertising Law,**
**California Business & Professions Code §§ 17500, *et seq*.,**
**(On Behalf of Plaintiffs Bryant, Tadeo and Serratos and the California Subclass)**

337.    Plaintiffs Bryant, Tadeo and Serratos incorporate by reference and reallege each and every allegation contained in paragraphs 1-233 above, as though fully set forth herein.

338.    California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code §17500.

339.    As set forth herein, Gerber's claims that the Baby Food Products are healthy, nutritious, organic, made from the best ingredients, and safe for consumption are literally false and likely to deceive the public.

340.    Gerber's claims that the Baby Food Products are healthy, nutritious, organic, made from the best ingredients, and safe for consumption are untrue or misleading, as is failing to mention the presence of Heavy Metals, Perchlorate, and/or other undesirable toxins or contaminants in the Baby Food Products.

341.    Gerber knew, or reasonably should have known, that all these claims were untrue or misleading.

89

342.     Gerber's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs desire to purchase these Products in the future if they can be assured that, so long as the Baby Foods are as advertised: healthy, nutritious, organic, made from the best ingredients, and safe for consumption, and do not contain Heavy Metals, Perchlorate, and/or other undesirable toxins or contaminants.

343.     Plaintiffs and members of the California Subclass are entitled to injunctive and equitable relief, and restitution in the amount they spent on Gerber's Baby Food Products.

**ELEVENTH CAUSE OF ACTION**
**Violations of the Unfair Competition Law,**
**California Business & Professions Code §§ 17200, *et seq*.,**
**(On Behalf of Plaintiffs Bryant, Tadeo and Serratos and the California Subclass)**

344.     Plaintiffs Bryant, Tadeo and Serratos incorporate by reference and reallege each and every allegation contained in paragraphs 1-233 above, as though fully set forth herein.

345.     The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200:

**Fraudulent**

346.     Gerber's statements that the Baby Food Products are healthy, nutritious, organic, made from the best ingredients, and safe for consumption are literally false and likely to deceive the public, as is Gerber's failing to make any mention of Heavy Metals, Perchlorate, or other undesirable toxins and/or contaminants in the Baby Food Products.

**Unlawful**

347.     As alleged herein, Gerber has advertised the Baby Foods with false or misleading claims, such that Gerber's' actions as alleged herein violate at least the following laws:

(a)     The CLRA, California Business & Professions Code sections 1750, et seq.; and

(b)    The False Advertising Law, California Business & Professions Code sections 17500, *et seq*.

**Unfair**

348.    Gerber's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Baby Food Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

349.    Gerber's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Baby Food Products is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

350.    Gerber's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Baby Food Products is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

351.    In accordance with California Business & Professions Code section 17203, Plaintiffs seek an order enjoining Gerber from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.  Gerber's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

352.    On behalf of themselves and the California Subclass, Plaintiffs also seek an order for the restitution of all monies from the sale Gerber Baby Food Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

TWELFTH CAUSE OF ACTION
**Breach of the Implied Warranty of Merchantability**
**California Uniform Commerical Code (Cal. Comm. Code § 2314)**
**(On Behalf of Plaintiffs Bryant, Tadeo and Serratos and the California Subclass)**

353.  Plaintiffs Bryant, Tadeo and Serratos hereby incorporate by reference the allegations contained in paragraphs 1-233 above of this Complaint.

354.  This claim is brought by Plaintiffs against Gerber on behalf of themselves and the California Subclass members.

355.  Gerber is and was at all relevant times a merchant as defined by Cal. Comm. Code § 2104.

356.  A warranty that the Gerber Baby Food Products were in merchantable condition is implied by law pursuant to California Comm. Code § 2314.

357.  Plaintiffs and members of the California Subclass purchased the Gerber Food Baby Products manufactured and marketed by Gerber by and through Gerber's authorized sellers for retail or online sale to consumers.  At all relevant times, Gerber was the merchant, manufacturer, marketer, warrantor, and/or seller of the Gerber Food Baby Products. Gerber knew or had reason to know of the specific use for which its Gerber Food Baby Products were purchased.

358.  The Gerber Food Baby Products are and were at all relevant times goods within the meaning of Cal. Comm. Code § 2105.

359.  Gerber impliedly warranted that the Gerber Food Baby Products were in merchantable condition and fit for consumption or ingestion by children, including babies and toddlers. The Gerber Food Baby Products when sold at all times thereafter were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and healthy nourishment for children in the event of a collision.  The Gerber Food Baby Products,

however, are not safe for children.  Thus, Gerber breached its implied warranty of merchantability for the ordinary purpose for which the Gerber Food Baby Products are purchased and used.

360.     Gerber cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous Gerber Food Baby Products.

361.     Gerber was provided notice by the numerous consumer class action complaints filed against it.  Affording Gerber a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Gerber has known of and concealed the safety risks attendant to the Gerber Food Baby Products.

362.     Privity exists because Gerber impliedly warranted to Plaintiffs and members of the Classes through the warranting, website, packaging, advertising, marketing, and labeling that the Baby Food Products were high quality, natural, nutritious products, free from artificial flavors and colors, and safe for consumption by infants and young children, and by failing to make any mention of Heavy Metals and/or Perchlorate and/or other ingredients.

363.     As a direct and proximate result of Gerber's breach of the implied warranty of merchantability, Plaintiffs and members of the California Subclass have been damaged in an amount to be proven at trial.

364.     Plaintiffs and members of the California Subclass have been excused from performance of any warranty obligations as a result of Gerber's conduct described herein.

### THIRTEENTH CAUSE OF ACTION
**Breach of the Implied Warranty of Merchantability**
**Song-Beverly Consumer Warranty Act (Cal. Civil Code §§ 1790, *et seq*.,**
**(On Behalf of Plaintiffs Bryant,  Tadeo and Serratos and the California Subclass)**

365.     Plaintiffs Bryant, Tadeo and Serratos hereby incorporate by reference the allegations contained in paragraphs 1-233 above of this Complaint.

366.    This claim is brought by Plaintiffs against Gerber on behalf of themselves and the members of the California Subclass.

367.    Gerber's Baby Food Products are and were at all relevant times consumer goods within the meaning of Cal. Civ. Code § 1791(a).

368.    Plaintiffs and the members of the California Subclass are and were at all relevant times buyers within the meaning of Cal. Civ. Code § 1791(b).

369.    Gerber is and was at all relevant times a manufacturer as defined by Cal. Civ. Code § 1791(j).  At the time of purchase Gerber was in the business of selling consumer goods for sale to consumers.

370.    A warranty that the Gerber Baby Food Products were in merchantable condition and fit for consumption is implied by law pursuant to Cal. Civ. Code §§ 1791.1 & 1792.

371.    Plaintiffs and the members of the California Subclass purchased the Gerber Baby Food Products manufactured and marketed by Gerber by and through Gerber's authorized sellers for retail or online sale to consumers.   At all relevant times, Gerber was the merchant, manufacturer, marketer, warrantor, and/or seller of the Gerber Baby Food Products and knew or had reason to know of the specific use for which they were purchased.

372.    By reason of the foregoing, Gerber's Baby Food Products when sold at all times thereafter were not in merchantable condition and were and are not fit for the ordinary purpose of nourishing, safe, healthy food for children's consumption.   Thus, Gerber breached its implied warranty of merchantability for the ordinary purpose for which the Gerber Baby Food Products were purchased.

373.    Gerber cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous Baby Food Products and know they would be consumer or ingested by children, including babies and toddlers.

374.    Gerber was provided notice by the numerous consumer class action complaints filed against it.  Affording it a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Gerber has known of and concealed the health and safety risks attendant to ingesting its Baby Food Products.

375.    As a direct and proximate result of Gerber's breach of the implied warranty of merchantability, Plaintiffs and the members of the California Subclass have been damaged in an amount to be proven at trial.

376.    Plaintiffs and the members of the California Subclass have been excused from performance of any warranty obligations as a result of Gerber's conduct described herein.

**FOURTEENTH CAUSE OF ACTION**
**Violations of the Colorado Consumer Protection Act**
**Colo. Rev. Stat. §§ 6-6-101, *et seq*.,**
**(On Behalf of Plaintiff Moore and the Colorado Subclass)**

377.    Plaintiff Moore incorporates by reference and realleges each and every allegation contained in paragraphs 1-233 above, as if fully set forth herein.  Plaintiff brings this action on behalf of herself individually and on behalf of the Colorado Subclass.

378.    Gerber is a "person" as defined by Colo. Rev. Stat.  §6-1-102(6).

379.    Gerber engaged in "sales" as defined by Colo. Rev. Stat.  §6-1-102(10).

380.    Plaintiff Moore and Colorado Subclass members, as well as the general public, are actual or potential consumers of the products offered by Gerber or its successors in interest to actual consumers.

381.    Gerber engaged in deceptive trade practices in the course of its business, in violation of Colo. Rev. Stat. §6-1-105(1)(g) by, among other things, representing that the Products are of a particular standard, quality or grade, while they knew or should know that they are of another.

382.    Gerber's representations or omissions were material because they were likely to deceive reasonable consumers.

383.    As a direct and proximate result of Gerber's deceptive trade practices, plaintiff Moore and the Colorado Subclass members suffered injuries in fact to their legally protected interests.

384.    The challenged practices described above caused the injuries in fact to plaintiff Moore and the Colorado Subclass.

**FIFTEENTH CAUSE OF ACTION**
**Violations of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201, *et seq*.,**
**(On Behalf of Plaintiffs Bryan, Adams, Hazely and Murwin**
**and the Florida Subclass)**

385.    Plaintiffs Bryan, Adams, Hazely and Murwin repeat and reallege the allegations contained in paragraphs 1-233 above, as if fully set forth herein.

386.    Plaintiffs Bryan, Adams, Hazely and Murwin bring this claim individually and on behalf of the members of the proposed Florida Subclass against Gerber for violations of Florida Deceptive and Unfair Trade Practices Act, ("FDUTPA"), Fla.  Stat.  §§ 501.201 et seq.

387.    Plaintiffs Bryan, Adams, Hazely and Murwin and the members of the Florida Subclass are "consumers," as defined by Fla. Stat. § 501.203(7), the Products sold by Defendant Gerber are "goods" within the meaning of FDUTPA, and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

388.     Fla. Stat. § 501.204 provides that "[u]fair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

389.     For the reasons discussed herein, Gerber violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, *et seq*.  Gerber's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including plaintiffs Bryan, Adams, Hazely and Murwin and the members of the Florida Subclass and other consumers acting reasonably the circumstances, to their detriment.

390.     At all times mentioned herein, Gerber engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that they advertised, offered or sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

391.     Gerber repeatedly advertised, on the labels for its Baby Food Products, on its websites, and through national advertising campaigns, among other things, that its Baby Food Products were high quality, natural, nutritious, and safe for consumption by infants and young children.  Gerber failed to disclose the material information that its Products contained unsafe levels of toxic Heavy Metals and/or Perchlorate.

392.     Gerber's representations and omissions were material because they were likely to deceive reasonable consumers and to induce them to purchase Gerber's Baby Food Products without knowing that the Baby Food Products contained unsafe levels of toxic Heavy Metals and/or Perchlorate.  As a direct and proximate result of Gerber's unfair and deceptive acts or practices, plaintiffs Bryan, Adams, Hazely and Murwin and the members of the Florida Subclass

suffered damages by purchasing Gerber's Baby Food Products because they would not have purchased Gerber's Baby Food Products had they known the truth, that the Products contain, or may contain, levels of toxic Heavy Metals and/or Perchlorate.

393.     Gerber's deceptive trade practices caused plaintiffs Bryan, Adams, Hazely and Murwin and the members of the Florida Subclass to suffer injury in fact and actual damages in the form of the loss or diminishment of value of the Baby Food Products they purchased, which allowed Gerber to profit at the expense of plaintiffs Bryan, Adams, Hazely and Murwin and members of the Florida Subclass.  The injuries Plaintiffs and the members of the Florida Subclass suffered were to legally protected interests.  The gravity of the harm of Gerber's actions is significant and there is no corresponding benefit to consumers of such conduct.

394.     Plaintiffs Bryan, Adams, Hazely, and Murwin and the members of the Florida Subclass, seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by FDUTPA and applicable law.

**SIXTEENTH CAUSE OF ACTION**
**Violations of the Georgia Fair Business Practices Act**
**O.C.G.A. §§ 10-1-390, *et seq.*,**
**(On Behalf of Plaintiff Allen and the Georgia Subclass)**

395.     Plaintiff Allen incorporates the allegations in paragraphs 1-233 above as if fully set forth herein.

396.     Plaintiff Allen intends to assert and prosecute claims under the under the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 ("GFBPA") against Defendant. Upon information and belief, Gerber does not maintain a place of business in Georgia, nor does Gerber maintain property or assets in Georgia.  Plaintiff thus is not required to provide Gerber with pre-suit written demand for relief pursuant to O.C.G.A. § 10-1-399(b).  Notwithstanding, to the extent that such statutory notice is deemed required by the Court, plaintiff Allen has provided notice in

98

accordance with O.C.G.A. § 10-1-399(b) to Gerber.  This Count provides notice that this Consolidated Complaint shall be amended accordingly to demand all appropriate relief, subject to any response by Gerber.

397.    Plaintiff Allen and the members of the Georgia Subclass are "consumers" within the meaning of O.C.G.A. § 10-1-392(6).

398.    Plaintiff Allen and the members of the Georgia Subclass are purchases of Gerber Baby Food Products.

399.    Such purchases of Gerber Baby Food Products are "consumer transactions" within the meaning of O.C.G.A. § 10-1-392(10).

400.    At all times mentioned herein, Gerber engaged in trade or commerce in Georgia, as defined by O.C.G.A. § 10-1-392(28), in that they advertised, distributed, offered for sale, sold or distributed goods or services in Georgia and/or engaged in trade or commerce directly or indirectly affecting the people of Georgia.

401.    The Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-393(a) provides that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."

402.    For the reasons discussed herein, Gerber violated and continues to violate the GFBPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by O.C.G.A. § 10-1-393 et seq. Gerber's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

403.    Gerber repeatedly advertised, both on the labels for its Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Gerber Baby

Foods were and are safe and healthy for infant and child consumption.  Gerber failed to disclose the material information that Gerber Baby Foods contained unsafe levels of toxic Heavy Metals and/or Perchlorate.

404.    Gerber's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Gerber Baby Foods without being aware that Gerber Baby Foods contained unsafe levels of toxic Heavy Metals and/or Perchlorate.  As a direct and proximate result of Gerber's unfair and deceptive acts or practices, plaintiff Allen and the members of the Georgia Subclass suffered damages by purchasing Gerber Baby Food Products because they would not have purchased Gerber Baby Food Products had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic Heavy Metals and/or Perchlorate.

405.    Gerber's deceptive trade practices caused injury in fact and actual damages to plaintiff Allen and the members of the Georgia Subclass in the form of the loss or diminishment of value of Gerber Baby Food Products.  Plaintiff Allen, and the members of the Georgia Subclass purchased these products, which allowed Defendant to profit at the expense of Plaintiff and the members of the Georgia Subclass.  The injuries plaintiff Allen and the members of the Georgia Subclass sustained were to legally protected interests.  The gravity of the harm of Gerber's actions is significant and there is no corresponding benefit to consumers as a result of such conduct.

406.    Plaintiff Allen and the members of the Georgia Subclass seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by O.C.G.A § 10-1-399 and applicable law.

## SEVENTEENTH CAUSE OF ACTION
### Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 Ill. Comp. Stat. 505/1, *et seq.*,
### (On Behalf of Plaintiffs MacLeod Neal and Willoughby and the Illinois Subclass.)

407.    Plaintiffs MacLeod, Neal and Willoughby incorporate by reference and reallege the allegations in paragraphs 1-233 above, as though fully set forth herein.

408.    The conduct described in this Complaint constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.* (hereinafter, "ICFA").

409.    Gerber engaged in a deceptive act or practice in violation of ICFA by knowingly misrepresenting, concealing, or failing to disclose the Baby Food Products' true quality and suitability for consumption by infants.  Gerber failed to disclose the presence, or risk of, Heavy Metals, Perchlorate and/or any other ingredients or contaminants that do not conform to the packaging claims that its Products are organic and appropriate for certain "Milestone[s]" of babies.

410.    Gerber's deceptive acts and practices are continuing.

411.    Gerber intended for plaintiffs MacLeod, Neal and Willoughby and the Illinois Subclass members to rely on and accept as true these advertisements and representations in deciding whether to purchase the Baby Food Products and at what price.

412.    Gerber's misrepresentations, concealment, omissions, and other deceptive conduct was likely to deceive consumers with respect to the Baby Foods' quality, ingredients, and suitability for consumption by infants.

413.    Gerber's misrepresentations, concealment, omissions, and other deceptive conduct was likely to cause consumers to purchase and/or overpay for the Baby Food Products.

414.     Gerber's misrepresentations, concealment, omissions, and other deceptive acts occurred before the plaintiffs MacLeod, Neal and Willoughby and the Illinois Subclass decided to purchase the Baby Food Products.

415.     Gerber's misrepresentations, concealment, omissions, and other deceptive conduct did in fact deceive plaintiffs MacLeod, Neal and Willoughby and the Illinois Subclass with respect to the Baby Food Products' quality and suitability for consumption by infants.

416.     Gerber's misrepresentations, concealment, omissions, and other deceptive conduct did in fact deceive and cause the Illinois Plaintiffs and the Illinois Subclass members to purchase the Baby Food Products.

417.     Gerber's misrepresentations, concealment, omissions, and other deceptive conduct did in fact deceive and cause plaintiffs MacLeod, Neal and Willoughby and the Illinois Subclass members to purchase and/or overpay for the Baby Food Products.

418.     Gerber's misrepresentations, concealment, omissions, and other deceptive conduct described herein repeatedly occurred in Gerber's trade or business and were capable of deceiving a substantial portion of the consuming public.

419.     The facts misrepresented, concealed, or not disclosed by Gerber with respect to the presence of Heavy Metals and/or Perchlorate are material facts because plaintiffs MacLeod, Neal and Willoughby and any reasonable consumer would have considered those facts important in deciding whether to purchase the Baby Food Products, and at what price.

420.     If plaintiffs MacLeod, Neal and Willoughby and the Illinois Subclass members had known that the Baby Foods did not in fact match the quality and ingredients described above, they would not have paid the price premium they paid for the Baby Foods.

421.    If plaintiffs MacLeod, Neal and Willoughby and the Illinois Subclass members had known that the Baby Food Products did not in fact match the quality and ingredients described above, they would not have purchased the Baby Food Products at all.

422.    As a result of Gerber's conduct, plaintiffs MacLeod, Neal and Willoughby and the Illinois Subclass members have suffered actual damages, in that they purchased Baby Food Products at a price far greater than they would have paid if they had knowledge of the levels of Heavy Metals and/or Perchlorate present in the Baby Food Products.

423.    As a result of Gerber's conduct, plaintiffs MacLeod, Neal and Willoughby and the Illinois Subclass members have suffered actual damages, in that they purchased Baby Food Products that they would not have purchased at all if they had knowledge of the levels of Heavy Metals and/or Perchlorate present in the Baby Food Products.

424.    As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of Gerber set forth above, plaintiffs MacLeod, Neal and Willoughby and the Illinois Sub- Class members are entitled to actual damages, compensatory damages, penalties, attorneys' fees, and costs, as set forth in Section 1 of the ICFA.

425.    Gerber's deceptive, misleading, unfair, and unconscionable practices set forth above were done willfully, wantonly, and maliciously entitling plaintiffs MacLeod, Neal and Willoughby and the Illinois Subclass members to an award of punitive damages.

**EIGHTEENTH CAUSE OF ACTION**
**Violations of the Minnesota Prevention of Consumer Fraud Act**
**M.S.A. §§ 325F.68, *et seq.*,**
**(On Behalf of Plaintiff McKeon and the Minnesota Subclass)**

537.    Plaintiff McKeon repeats and realleges the allegations contained in paragraphs 1-233 above, as if fully set forth herein.

538.   Plaintiff McKeon brings this claim individually and on behalf of the members of the proposed Minnesota Subclass against Gerber for violations of Minnesota Prevention of Consumer Fraud Act, M.S.A. § 325F.68, *et seq*.

539.   The Minnesota Prevention of Consumer Fraud Act prohibits the "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."  M.S.A. § 325F.69.

540.   The Baby Food Products at issue are "Merchandise" under M.S.A.  § 325F.68, sub. 2.

541.   Gerber and plaintiff McKeon and members of the Minnesota Subclass, are all "persons" within the meaning of the Minnesota Prevention of Consumer Fraud Act, M.S.A. § 325F.68, sub. 3.

542.   For the reasons discussed herein, Gerber violated and continues to violate the Minnesota Prevention of Consumer Fraud Act by engaging in the deceptive, unfair acts or practices proscribed by M.S.A.  § 325F.68, *et seq*.  As detailed above, in the course of their business, Gerber made materially false and misleading statements to plaintiff McKeon and members of the Minnesota Subclass and supplied Plaintiff and members of the Minnesota Subclass with false information concerning the health and safety of its Products.

543.   Gerber also concealed from plaintiff McKeon and members of the Minnesota Subclass the presence of, or risk of, toxic heavy metals in its Products.

544.   Gerber intended that plaintiff McKeon and members of the Minnesota Subclass rely on these representations, as evidenced by the intentional and conspicuous placement of the

misleading representations on the Gerber Baby Food Products' packaging by Gerber, as well as its advertising, marketing, and labeling of the Baby Food Products as high quality, natural, nutritious products, free from artificial flavors and colors, and safe for consumption by infants and young children.

545.    By failing to warn plaintiff McKeon and members of the Minnesota Subclass that the Baby Food Products contain, or may contain toxic Heavy Metals and/or Perchlorate, Gerber violated the Minnesota Prevention of Consumer Fraud Act, Minn.  Stat.  § 325F.68 et seq.  Had Gerber disclosed all material information regarding the presence of, or risk of, toxic Heavy Metals in its Baby Food Products, plaintiff McKeon and members of the Minnesota Subclass would not have purchased said Products.

546.    As a direct and proximate result of Gerber's violation of the Minnesota Prevention of Consumer Fraud Act, M.S.A. § 325F.68, *et seq.*, plaintiff McKeon and members of the Minnesota Subclass have suffered actual damages in that they purchased the Baby Food Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk of and/or presence of Heavy Metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

547.    Plaintiff McKeon and members of Minnesota Subclass seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by Minnesota Prevention of Consumer Fraud Act and applicable law.

### NINETEENTH CAUSE OF ACTION
### Violations of the Minnesota False Statement in Advertising Act
### M.S.A. § 325F.67
### (On Behalf of Plaintiff McKeon and the Minnesota Subclass)

548.    Plaintiff McKeon repeats and realleges the allegations contained in paragraphs 1-233 above, as if fully set forth herein.

549.    Plaintiff McKeon brings this claim individually and on behalf of the members of the proposed Minnesota Subclass against Gerber for violations of Minnesota False Statement in Advertising Act, M.S.A. § 325F.67.

550.    Gerber's actions, representations and omissions constitute unfair and deceptive trade practices within the meaning of the Minnesota False Statement in Advertising Act, M.S.A. § 325F.67, including but not limited to:

      a.    Advertising goods and/or services with the intent not to sell them as advertised;

      b.    Advertising or otherwise representing that goods or services are guaranteed in such a way as to have the capacity and tendency of misleading purchasers or prospective purchasers or prospective purchasers into believing that the goods or services so guaranteed have a greater degree of serviceability, durability, or performance capability in actual use than is true in fact; and

      c.    Failing to disclose material information concerning goods or services which information was known at the time of an advertisement or sale, and such failure to disclose such information was intended to induce Plaintiff and members of the Class to enter into a transaction.

551.    By engaging in conduct described herein, Gerber violated and continues to violate the false advertising provisions of Minnesota's False Statement in Advertising Act, M.S.A. § 325F.67.

552.    Gerber's untrue, deceptive, and misleading assertions, representations, and advertisements concerning said Products include its statements that its Baby Food Products are high quality, natural, nutritious, and free from artificial flavors and colors.  Gerber markets its Baby Food Products in a manner that indicates its Products are safe for consumption by infants and young children, as it uses words such as "ages", "supported sitter", "sitter", "crawler" and "toddler" to emphasize the foods suitability for consumption by infants and young children.

553.    The unfair and deceptive trade practices and false advertising described herein occurred in the course of Gerber's business and significantly impacted the public as actual and potential consumers of Gerber's Baby Food Products.

554.    As a direct and proximate result of Gerber's violation of the Minnesota False Statement in Advertising Act, M.S.A. § 325F.67, plaintiff McKeon and members of the Minnesota Subclass have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of Heavy Metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

555.    Plaintiff McKeon and members of Minnesota Subclass seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by Minnesota False Statement in Advertising Act and applicable law.

### TWENTIETH CAUSE OF ACTION
### Violations of the Minnesota Unlawful Trade Practices Act
### M.S.A. §§ 325D.13, *et seq*.,
### (On Behalf of Plaintiff McKeon and the Minnesota Subclass)

556.    Plaintiff McKeon repeats and realleges the allegations contained in paragraphs 1-233 above, as if fully set forth herein.

557.    Plaintiff McKeon bring this claim individually and on behalf of the members of the proposed Minnesota Subclass against Gerber for violations of Minnesota Unlawful Trade Practices Act, M.S.A. § 325D.13.

558.    Defendant is a "person" within the meaning of the Minnesota Unlawful Trade Practices Act (MUTPA).

559.   Defendant violated the MUTPA by knowingly misrepresenting the true quality and ingredients of the Baby Foods by falsely claiming that the Baby Foods are "organic" and Appropriate for certain "Milestone[s]" of babies.

560.   Defendant knew or should have known that the Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing Heavy Metals, Perchlorate, and/or other ingredients.

561.   Gerber's pattern of knowing misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive plaintiff McKeon and the Minnesota Subclass with respect to the Baby Foods' quality, ingredients, and suitability for consumption by babies.

562.   Gerber intended that plaintiff McKeon and the Minnesota Subclass would rely on Gerber's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Baby Foods' quality, ingredients, and suitability for consumption by babies.

563.   Gerber's conduct and omissions described herein occurred repeatedly in Gerber's trade or business and were capable of deceiving a substantial portion of the consuming public.

564.   The facts concealed or not disclosed by Defendant were material facts in that plaintiff McKeon and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods.  Had Plaintiff known the Baby Foods did not have the quality advertised by Defendant, she would not have purchased the Baby Foods.

565.   Gerber's unlawful conduct is continuing, with no indication that Gerber's intent to cease this fraudulent course of conduct.

566.   As a direct and proximate result of Gerber's conduct, plaintiff McKeon and the Minnesota Subclass have suffered actual damages in that they purchased the Baby Food Products that were worth less than the price they paid.

567.   Plaintiff McKeon and the members of the Minnesota Subclass would not have purchased the Baby Foods at all had they known of the presence or risk of Heavy Metals, Perchlorate and/or any other ingredients or contaminants that do not conform to the packaging claims.

568.   Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.15, plaintiff McKeon and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Gerber's violations of the MUTPA.

### TWENTY-FIRST CAUSE OF ACTION
### Violations of the Minnesota Uniform Deceptive Trade Practices Act
### M.S.A. §§ 325D.44, *et seq.*,
### (On Behalf of Plaintiff McKeon and the Minnesota Subclass)

569.   Plaintiff McKeon repeats and realleges the allegations contained in paragraphs 1-233 above, as if fully set forth herein

570.   Plaintiff McKeon bring this claim individually and on behalf of the members of the proposed Minnesota Subclass against Gerber for violations of Minnesota Deceptive Trade Practices Act, M.S.A. § 325D.44.

571.   Gerber is a "person" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act (MUDTPA).

572.   Gerber willingly engaged in deceptive trade practices, in violation of the MUDTPA, by knowingly misrepresenting the true quality of the Baby Foods by falsely claiming that the Baby Foods are "Organic" and appropriate for certain "Milestone[s]" of babies.

109

573.     Gerber knew or should have known that the Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing, Heavy Metals, Perchlorate, and/or any other ingredients or contaminants that do not conform to the packaging claims.

574.     Gerber's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive plaintiff McKeon and the Minnesota Subclass with respect to the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by babies.

575.     Gerber intended that plaintiff McKeon and the Minnesota Subclass would rely on Defendant's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by babies.

576.     Gerber's conduct and omissions described herein occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

577.     The facts concealed or not disclosed by Gerber were material facts in that plaintiff McKeon and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods.  Had plaintiff McKeon known the Baby Foods did not have the quality advertised by Gerber, she would not have purchased the Baby Foods.

578.     Gerber intended that plaintiff McKeon and the Class would rely on the deception by purchasing the Baby Foods, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

579.    Gerber's unlawful conduct is continuing, with no indication that Defendant intends to cease this fraudulent course of conduct.

580.    As a direct and proximate result of Gerber's conduct, plaintiff McKeon and the Minnesota Subclass have suffered actual damages in that they purchased the Baby Food that was worth less than the price they paid.

581.    Plaintiff McKeon and the members of the Minnesota Subclass would not have purchased the Baby Foods at all had they known of the presence of Heavy Metals, Perchlorate, and/or other ingredients that do not conform to the packaging.

582.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.45, plaintiff McKeon and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Gerber's violations of the MUDTPA.

**TWENTY-SECOND CAUSE OF ACTION**
**Violations of New Jersey's Consumer Fraud Act –**
**Fraud in Connection with Sale or Advertisement of Merchandise,**
**N.J. Stat. Ann. §§ 56:8-1, *et seq*.,**
**(On Behalf of Plaintiffs Clark, Fleissner and Blazevic and the New Jersey Subclass)**

583.    Plaintiffs Clark, Fleissner and Blazevic incorporate by reference and reallege each the allegations contained in paragraphs 1-233 above, as though fully set forth herein.

584.    Gerber's representations related to the Baby Foods, as described herein, are advertisements as defined by N.J. Stat. Ann. § 56:8-l (a).

585.    The Baby Food Products sold by Gerber is merchandise as defined in N.J. Stat. Ann. § 56:8-l(c).

586.    Gerber is a person as defined in N.J. Stat. Ann. § 56:8-l (d).

587.    Gerber misrepresented the true quality and ingredients of the Baby Food Products. The false statements regarding the quality and ingredients were untrue, misleading, and deceptive,

inducing plaintiffs Clark, Fleissner and Blazevic, and other consumers, to spend more for Baby Foods that have lower quality than represented.

588.    The misrepresented quality and ingredients of the Baby Food Products is a material fact to plaintiffs Clark, Fleissner and Blazevic and other consumers, because it is directly related to quality, and because Gerber recognizes the materiality as evidenced by their prominent placement on Gerber's labels, packaging, and advertising.

589.    Gerber failed to disclose the presence of a risk of Heavy Metals and/or Perchlorate in the Baby Food Products.  These were material facts that Gerber omitted from the packaging of the Baby Food Products.  Consumers, including plaintiffs Clark, Fleissner and Blazevic and the New Jersey Subclass, would not have paid as much for the Baby Food Products had Gerber accurately disclosed the quality and ingredients of the Baby Food Products.  Nor could Gerber charge as much for such baby foods, as the quality and ingredients are directly related to the amount of money retailers are able to charge for baby foods.

590.    Gerber placed the false quality in labels, packaging, and advertising related to the Baby Food Products, intending that consumers would rely on those misrepresentations and purchase the Baby Food Products from Gerber.  Plaintiffs Clark, Fleissner and Blazevic and the New Jersey Subclass were harmed by Gerber's misrepresentations and purchased the Baby Food Products.  Had Gerber disclosed the true quality and contents, plaintiffs Fleissner, Clark and Blazevic and members of the New Jersey Subclass would not have purchased the Baby Food Products or would not have been willing to pay as much for the Baby Food Products.

591.    Plaintiffs Clark, Fleissner and Blazevic and the New Jersey Subclass have suffered an ascertainable loss by paying more than they would have otherwise paid - and more than Gerber would have been able to charge - for the Baby Food Products and by receiving Baby Food Products

with lower quality than they were promised by Gerber and thus being denied the benefit of their

bargain.

592.    As a direct and proximate result of the deceptive, fraudulent, misleading, unfair,

and unconscionable practices of Gerber set forth above, plaintiffs Clark, Fleissner and Blazevic

and the New Jersey Subclass members are entitled to a refund of all moneys acquired by Gerber

for violations of N.J. Stat. Ann. § 56:8-1, any other applicable legal or equitable relief, and treble

damages.

**TWENTY-THIRD CAUSE OF ACTION**
**Violations of the New York Deceptive Acts and Practices Act**
**N.Y. Gen. Bus. Law § 349**
**(On Behalf of Plaintiffs Visconti, Simeron, Mosquera and**
**Wehmeyer and the New York Subclass)**

593.    Plaintiffs Visconti, Simeron, Mosquera and Wehmeyer repeat and reallege the

allegations contained in paragraphs 1-233 above, as if fully set forth herein.

594.    Plaintiffs Visconti, Simeron, Mosquera and Wehmeyer bring this claim

individually and on behalf of the members of the proposed New York Subclass against Gerber for

violations of the New York Deceptive Acts and Practices Act ("NYDAPA"). N.Y. Gen. Bus. Law

§ 349.

595.    Plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New

York Subclass and Gerber are "persons" under NYDAPA. N.Y.  Gen. Bus.  Law § 349(h).

596.    Gerber's actions as set forth herein occurred in the conduct of trade or commerce

under NYDAPA.

597.    NYDAPA makes unlawful "[d]exceptive acts or practices in the conduct of any

business, trade or commerce."  N.Y. Gen. Bus. Law § 349.  Gerber's conduct as set forth herein,

constitutes deceptive acts or practices under this section.

113

598.    In the course of business, Gerber made affirmative misrepresentations that conveyed to plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass that the Gerber baby food Products were high quality, natural, nutritious, and safe for consumption by infants and young children. Gerber, however, concealed and suppressed material facts concerning the Products, including that they contained unsafe levels of Heavy Metals and/or Perchlorate.

599.    Plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass had no way of discerning that Gerber's representations were false and misleading without conducting their own scientific tests.

600.    Gerber thus violated the NYDAPA by making statements, when considered as a whole from the perspective of a reasonable consumer, that conveyed that its Baby Food Products were high quality, natural, nutritious, and safe for consumption by infants and young children. Gerber also failed to disclose and warn that its Products were unsafe and unsuitable for consumption by infants and young children, and that the Products contained levels of Heavy Metals and/or Perchlorate.

601.    Gerber intentionally and knowingly made affirmative misrepresentations and failed to disclose material facts regarding its Products with intent to mislead plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass.

602.    Gerber knew or should have known that their conduct violated the NYDAPA, and owed a duty to plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass to disclose the true and unsafe nature of its Products.

603.    Gerber's concealment of the level of Heavy Metals in its Products and/or Perchlorate in its Baby Food Products was material to plaintiffs Visconti, Simeron, Mosquera and

Wehmeyer and members of the New York Subclass, as they relate to the safety of said product the consumer is receiving and paying for.  A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Baby Food Products.

604.    Gerber's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass, about the safety of its Baby Food Products.  Plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass would not have purchased the Baby Food Products had they known that said Products were unsafe for consumption by infants and young children, and that they contained levels of toxic Heavy Metals and/or Perchlorate.

605.    Gerber's violations present a continuing risk to plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass as well as to the general public. Gerber's unlawful acts and practices complained of herein affect the public interest.

606.    As a direct and proximate result of Gerber's misrepresentations, concealment of, and failure to disclose material information, as well as Gerber's deceptive and unfair acts and practices made during the course of Gerber's business, plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass suffered ascertainable loss and actual damages.

607.    Plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by the NYDAPA and applicable law.

**TWENTY-FOURTH CAUSE OF ACTION**
**Violations of the New York False Advertising Act**
**N.Y. Gen. Bus. Law § 350**
**(On Behalf of Plaintiffs Visconti, Simeron, Mosquera and**
**Wehmeyer and the New York Subclass)**

608.   Plaintiffs Visconti, Simeron, Mosquera and Wehmeyer repeat and reallege the allegations contained in paragraphs 1-233 above, as if fully set forth herein.

609.   Plaintiffs Visconti, Simeron, Mosquera and Wehmeyer bring this claim individually and on behalf of the members of the proposed New York Subclass against Gerber for violations of the New York False Advertising Act ("NYFAA"), N.Y. Gen. Bus. Law§ 350.

610.   The NYFAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. "False" includes "advertising, including labeling of a commodity ... if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of ... representations [made] with respect to the commodity..." N.Y. Gen. Bus. Law § 350(a).

611.   Gerber caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known or should've been known through the exercise of reasonable care by Gerber to be untrue and misleading.

612.   Gerber made numerous material and affirmative misrepresentations and omissions of fact with intent to mislead and deceive consumers concerning its Baby Food Products. Specifically, Gerber intentionally concealed and suppressed material facts concerning the safety of said Products, and that they contained, or were at risk of containing, levels of toxic Heavy Metals and/or Perchlorate. Gerber intentionally and grossly defrauded and mislead plaintiffs

Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass concerning the true and unsafe nature of its Products.

613.    The misrepresentations and omissions regarding the Baby Food Products set forth herein were material and likely to deceive a reasonable consumer, as they relate to the safety of the product the consumer is receiving and paying for.  A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Baby Food Products.

614.    Gerber intentionally and knowingly misrepresented material facts regarding its Baby Food Products with intent to mislead plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass.

615.    Gerber's false advertising was likely to and did in fact deceive reasonable consumers, including plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass, about the true nature of the safety and quality of its Products.  Plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass would not have purchased the Baby Food Products had they known that said Products were unsafe for consumption by infants and young children, and that they contained levels of toxic Heavy Metals and/or Perchlorate.

616.    Gerber's violations present a continuing risk to plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass as well as to the general public who would continue purchasing Gerber Baby Food Products if it were safe.  Gerber's unlawful acts and practices complained of herein affect the public interest.

617.    As a direct and proximate result of Gerber's misrepresentations, concealment of, and failure to disclose material information, as well as Gerber's deceptive and unfair acts and

practices made during the course of Gerber's business, plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass suffered ascertainable loss and actual damages.

618.    Plaintiffs Visconti, Simeron, Mosquera and Wehmeyer and members of the New York Subclass seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by the NYFAA and applicable law.

**TWENTY-FIFTH CAUSE OF ACTION**
**Violations of the North Carolina Unfair Trade Practices Act**
**N.C. Gen. Stat. §§ 75-1.1, *et seq.*,**
**(On Behalf of Plaintiffs Wilson and Roberts and the North Carolina Subclass)**

619.    Plaintiffs Wilson and Roberts repeat and realleges the allegations contained in paragraphs 1-233 above, as if fully set forth herein.

620.    Plaintiffs Wilson and Roberts bring this claim individually and on behalf of the members of the proposed North Carolina Subclass against Gerber for violations of North Carolina Unfair Trade Practices Act, N.C. Gen. Stat.§ 75.1-1, *et seq*.

621.    North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, et seq. ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce [.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of the NCUDTPA.   N.C. Gen. Stat. § 75-16.

622.    Gerber's acts and practices described above were performed in the course of Gerber's trade or business and thus occurred in or affected "commerce" as defined in N.C. Gen. Stat. § 75-1.1 (b).

623.     In the course of its business, Gerber concealed that its Baby Food Products contained, or were at risk of containing, toxic Heavy Metals such as arsenic, cadmium, mercury, and lead, and otherwise engaged in activities with a tendency or capacity to deceive. Gerber also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of its Products.

624.     By misrepresenting that its Baby Food Products were safe for consumption by infants and young children, and advertising its Baby Food Products as high quality, natural, and nutritious, Gerber participated in unfair, deceptive, and unconscionable acts that violated the NCUDTPA.

625.     In light of Gerber's marketing, including its professed commitment to providing high quality, natural and nutritious products that are free from artificial flavors and colors, Gerber knew or should have known that said Products contained toxic Heavy Metals and/or potentially dangerous contaminants such as Perchlorate that pose health risk to humans, and particularly to infants and young children.  Furthermore, Gerber tests its Baby Food Products over 100 times for quality, as evidenced by its representations on its website, and therefore was aware, or should have been aware, of the presence of toxic Heavy Metals and/or Perchlorate in its Baby Food Products. However, Gerber concealed the fact that its Baby Food Products contain, or may contain, levels of toxic Heavy Metals and/or Perchlorate.

626.     By failing to disclose and by actively concealing the presence of, or risk of, toxic Heavy Metals in its Products, and by marketing its Baby Food Products as high quality, natural,

nutritious, and safe for consumption by infants and young children, Gerber engaged in unfair, unconscionable, and deceptive business practices in violation of the NCUDTPA.

627.    Gerber intentionally and knowingly misrepresented material facts regarding the Baby Food Products with an intent to mislead plaintiffs Wilson and Roberts and members of the proposed North Carolina Subclass.

628.    As a direct and proximate result of Gerber's violations of the NCUDTPA, plaintiffs Wilson and Roberts and members of the proposed North Carolina Subclass  have suffered actual damages in that they purchased the Baby Food Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of Heavy Metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

629.    Plaintiffs Wilson and Roberts and members of the North Carolina Subclass seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by NCUDTPA and applicable law.

## TWENTY-SIXTH CAUSE OF ACTION
### Violations of the Ohio Consumer Sales Practices Act
### Ohio Rev. Code Ann. §§ 1345.01, *et seq.*,
### (On Behalf of Plaintiffs Adkins, Puntel and Robinson, and the Ohio Subclass)

630.    Plaintiffs Adkins, Puntel and Robinson incorporate the allegations contained in paragraphs 1-233 above, as if fully set forth herein.

631.    Plaintiffs Adkins, Puntel and Robinson and Ohio Subclass members are residents of the State of Ohio.

632.    Plaintiff Adkins, Puntel and Robinson and Ohio Subclass members are "consumers" within the meaning of Ohio Rev. Code Ann. § 1345.01(D) that engaged in "consumer

transactions" as defined by Ohio Rev. Code Ann. § 1345.01(A) with Gerber when they purchased Gerber Baby Foods.

633.    At all times mentioned herein, Gerber was a "supplier" as defined by Ohio Rev. Code Ann. § 1345.01(C), in that they were a "seller" that was "engaged in the business of effecting or soliciting consumer transactions" in Ohio.

634.    The Ohio Consumer Sales Practices Act ("OSCPA"), Ohio Rev. Code Ann. §§1345.02, provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction" and that "[s]uch an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

635.    For the reasons discussed herein, Gerber violated and continues to violate the OSCPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Ohio Rev. Code Ann. § 1345.02, *et seq*.  Gerber's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

636.    Gerber repeatedly advertised, both on the labels for Gerber Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Gerber Baby Food Products, were and are safe and healthy for infant and child consumption.  Gerber failed to disclose the material information that Gerber Baby Food Products contained unsafe levels of toxic Heavy Metals and/or Perchlorate.

637.    Gerber's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Gerber Baby Food Products without being aware that Gerber Baby Food Products contained unsafe levels of toxic Heavy Metals and/or Perchlorate.  As a direct and proximate result of Gerber's unfair and deceptive acts or practices,

plaintiffs Adkins, Puntel and Robinson and Ohio Subclass members suffered damages by purchasing Gerber Baby Food Products because they would not have purchased Gerber Baby Food Products had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic Heavy Metals.

638.   Gerber's deceptive trade practices caused injury in fact and actual damages to plaintiffs Adkins, Puntel and Robinson and Ohio Subclass members in the form of the loss or diminishment of value of Gerber Baby Food Products that plaintiffs Adkins, Puntel and Robinson and Ohio Subclass members purchased, which allowed Gerber to profit at the expense of Plaintiffs and Ohio Subclass members.   The injuries plaintiffs Adkins, Puntel and Robinson and Ohio Subclass members were to legally protected interests.   The gravity of the harm of Gerber's actions is significant and there is no corresponding benefit to consumers of such conduct.

639.   Plaintiffs Adkins, Puntel and Robinson and Ohio Subclass members seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by Ohio Rev. Code Ann § 1345.09 and applicable law.

**TWENTY-SEVENTH CAUSE OF ACTION**
**Violations of the Pennsylvania Unfair Trade Practices and Consumer**
**Protection Law**
**73 Pa. Cons. Stat. Ann. §§ 201-1, *et seq*.**
**(On Behalf of Plaintiffs Hagmaier, McCarthy and Fitzgerald, and the**
**Pennsylvania Subclass)**

640.   Plaintiffs Hagmaier, McCarthy and Fitzgerald, incorporate by reference and reallege the allegations contained in paragraphs 1-233 above, as though fully set forth herein.

641.   Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§201-1 et seq. (the "UTPCPL") makes unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

642.   Gerber is a manufacturer, marketer, seller, and distributor of the Baby Foods.

643.    Gerber markets and sells its Baby Food Products with express warranties created on the Products' packaging, labeling, advertisements, marketing literature, and website regarding the qualities, ingredients, and benefits of the said Products.

644.    Plaintiffs Hagmaier, McCarthy and Fitzgerald, and the Pennsylvania Subclass purchased the Baby Food Product for personal, household, or family use.

645.    Gerber misrepresented the quality of the Baby Food Product and their ingredients contained therein on their labels in violation of the UTPCPL.

646.    Gerber's deceptive, false and misleading statements deceived plaintiffs Hagmaier, McCarthy and Fitzgerald, and the Pennsylvania Subclass members and deceived a substantial segment of the target consumer audience in violation of the UTPCPL.

647.    The conduct described above and throughout this Complaint took place within the Commonwealth of Pennsylvania and constitutes unfair methods of competition or unfair or deceptive acts or practices pursuant to §§201-2(4)(v), (vii), and (xxi) of the UTPCP.

648.    In violation of the UTPCPL, Gerber omitted and concealed material facts from plaintiffs Hagmaier, McCarthy and Fitzgerald, and other Pennsylvania Subclass members regarding the quality, characteristics, and benefits of Gerber's Baby Food Products.

649.    The omissions and misrepresentations described herein were likely to deceive consumers into purchasing Gerber Baby Food Products.

650.    Gerber knew or reasonably should have known that its representations about the Baby Foods were false, that the Baby Food Products contained, or were at risk of containing Heavy Metals, chemicals or toxins, such as Perchlorate, and otherwise were not as warranted and represented by Gerber.

651.    Gerber knew or should have known, at the time the Baby Food Products left their control that they contained Heavy Metals, chemicals or toxins, and were not made of ingredients fit for consumption by babies.

652.    Gerber's deception is material as it influenced purchasing and payment decisions.

653.    Plaintiffs Hagmaier, McCarthy and Fitzgerald, and Pennsylvania Subclass members have been damaged as a direct and proximate result of Gerber's deceptive and unfair practices.

654.    Gerber intended that plaintiffs Hagmaier, McCarthy and Fitzgerald, and other Pennsylvania Subclass members rely on its presentations, as their reliance was crucial to Gerber being able to command a premium for its Baby Food Products.

655.    Gerber deceived and continues to deceive consumers about the quality and ingredients of its Baby Food Products as well as the fitness of these products for ingestion by babies.  This conduct constitutes unfair or deceptive acts or practices within the meaning of the UTPCPL.  This illegal conduct by Gerber is continuing, with no indication that it will cease.

656.    Gerber's actions in connection with the manufacture and distribution of the Baby Food Products as set forth herein, evidence a lack of good faith, honesty in fact, and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the UTPCPL.

657.    Gerber acted willfully, knowingly, intentionally, unconscionably, and with reckless indifference when it committed these acts of consumer fraud.

658.    Gerber intended that plaintiffs Hagmaier, McCarthy and Fitzgerald, and the other Pennsylvania Subclass members, rely on the acts of concealment, omissions and misrepresentations regarding the nature of the Baby Food Products so that plaintiffs Hagmaier,

McCarthy and Fitzgerald, and the other Pennsylvania Subclass members, would purchase the Baby Food Products.

659.    Plaintiffs Hagmaier, McCarthy and Fitzgerald, and the other Pennsylvania Subclass members relied on the acts of concealment, omissions, and misrepresentations regarding the nature of the Baby Food Products.

660.    Plaintiffs Hagmaier, McCarthy and Fitzgerald, and the other Pennsylvania Subclass members.  Had Gerber disclosed to them all material information regarding its Baby Food Products, plaintiffs would have considered the omitted information material to their decision to purchase said Products at the price they paid.

661.    As a direct proximate result of Gerber's misrepresentations and omissions, plaintiffs Hagmaier, McCarthy and Fitzgerald, and the other members of the Pennsylvania Subclass suffered direct economic loss by purchasing Gerber Baby Food Products at a premium, and unwarranted, price.  Had plaintiffs Hagmaier, McCarthy and Fitzgerald, and other members of the Pennsylvania Subclass known the Heavy Metals and/or Perchlorate, content of the Baby Food Products, they would not have bought them, or they would not have paid the premium price that they did.

662.    Plaintiffs Hagmaier, McCarthy and Fitzgerald, and Pennsylvania Subclass members are entitled to recover compensatory damages, plus interest, attorneys' fees, and costs.

663.    Gerber's conduct was intentional, willful, wanton, malicious, and egregious, entitling plaintiffs Hagmaier, McCarthy and Fitzgerald, and members of the Pennsylvania Subclass, to recover actual compensatory and statutory damages, as well as attorneys' fees and costs of suit, to the fullest extent.

**TWENTY-EIGHTH CAUSE OF ACTION**
**Violations of the Tennessee Consumer Protection Act**
**Tenn. Code Ann. §§ 47-18-101, *et seq.***
**(On Behalf of Plaintiff Miller and the Tennessee Subclass)**

664.     Plaintiff Miller incorporates the allegations contained in paragraphs 1-233 above, as if fully set forth herein.

665.     Plaintiff Miller and Tennessee Subclass members are residents of the State of Tennessee.

666.      Gerber is a "person" as defined by Tenn. Code Ann. § 47-18-103(14).

667.     Plaintiff Miller and Tennessee Subclass Members are actual or potential consumers of Gerber Baby Foods.

668.     At all times mentioned herein, Gerber engaged in "trade" or "commerce" in Tennessee, as defined by T. C. A. § 47-18-103(20), in that they engaged in the "advertising," "offering for sale," and "distribution" of any "goods," "services," "property," "articles," "commodities," or "things of value" in Tennessee.

669.     The Tennessee Consumer Protection Act ("TCPA") provides that "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices." T. C. A. § 47-18-104(a).

670.     For the reasons discussed herein, Gerber violated and continues to violate the TCPA by engaging in the herein described deceptive or unfair acts or practices proscribed by § 47-18-101 et seq.  Gerber's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

671.     Gerber repeatedly advertised, both on the labels for Gerber Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Gerber

126

Baby Foods were and are safe and healthy for infant and child consumption.  Gerber failed to disclose the material information that Gerber Baby Foods contained dangerous or unsafe levels of toxic Heavy Metals and/or Perchlorate.

672.  Gerber's deceptive trade practices caused injury in fact and actual damages to plaintiff Miller and Tennessee Subclass Members in the form of the loss or diminishment of value of Gerber Baby Foods plaintiff Miller and Tennessee Subclass members purchased, which allowed Gerber to profit at the expense of plaintiff Miller and Tennessee Subclass members.  The injuries to plaintiff Miller and Tennessee Subclass members were to legally protected interests.  The gravity of the harm of Gerber's actions is significant and there is no corresponding benefit to consumers of such conduct.

673.  Plaintiff Miller and Tennessee Subclass members seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by Tenn. Code Ann. § 47-18-109 and applicable law.

**TWENTY-NINTH CAUSE OF ACTION**
**Violations of the Texas Deceptive Trade Practices and Consumer Protection Act**
**Tex. Bus. & Com. Code §§ 17.41, *et seq.***
**(On Behalf of Plaintiffs Keeter and Umanzor and the Texas Subclass)**

674.  Plaintiffs Keeter and Umanzor repeat and reallege the allegations contained in paragraphs 1-233 above, as if fully set forth herein.

675.  Plaintiffs Keeter and Umanzor bring this claim individually and on behalf of the members of the proposed Texas Subclass against Gerber for violations of Texas Deceptive Trade Practices and Consumer Protection Act ("TDTPA"), Tex. Bus. & Com. Code §§ 17.41 et seq.

676.  Plaintiff Keeter provided written notice of the specific complaint and damages to Gerber in accordance with Tex. Bus. & Com. Code § 17.05 in March 2021.  Gerber did not

favorably respond within 60 days of the notice.  Alternatively, further notice by or on behalf of any Texas Subclass member would be futile and is excused.

677.    At all material times herein, Gerber engaged in "trade" or "commerce" as defined by the TDTPA.

678.    The TDTPA, Tex. Bus. & Com. Code § 17.46, makes it unlawful to commit "[f]alse, misleading, and deceptive acts or practices in the conduct of any trade or commerce."

679.    For the reasons discussed herein, Gerber violated and continues to violate the TDTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by TDTPA §§ 17.41 et seq. Gerber's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

680.    Gerber repeatedly advertised, both on the labels for the Baby Food Products, on its websites, and through a national advertising campaigns, among other items, that said Products were and are high quality, natural, nutritious, and safe for consumption by infants and young children.  Gerber failed to disclose the material information that Baby Food Products contained unsafe levels of toxic Heavy Metals and/or Perchlorate.

681.    Gerber's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase its Baby Food Products without being aware that said Products contained dangerous or unsafe levels of toxic Heavy Metals and/or Perchlorate.  As a direct and proximate result of Gerber's unfair and deceptive acts or practices, plaintiffs Keeter and Umanzor, and the members of the Texas Subclass, suffered damages by purchasing Gerber's Baby Food Products because they would not have purchased said Products

had they known the truth, and they received a product that was worthless because it contains dangerous or unsafe levels of toxic Heavy Metals and/or Perchlorate.

682.    Gerber's deceptive trade practices caused injury in fact and actual damages to plaintiffs Keeter and Umanzor, and members of the Texas Subclass, in the form of the loss or diminishment of value of Baby Food Products that Plaintiffs and the members of the Texas Subclass purchased, which allowed Gerber to profit at the expense of Plaintiffs, and the members of the Texas Subclass.  The injuries to plaintiffs Keeter and Umanzor, and the members of the Texas Subclass, were legally protected interests.  The gravity of the harm of Gerber's actions is significant and there is no corresponding benefit to consumers of such conduct.

683.    Plaintiffs Keeter and Umanzor, and the members of the Texas Subclass, seek relief for the injuries they have suffered as a result of Gerber's unfair and deceptive acts and practices, as provided by TDTPA and applicable law.

**THIRTIETH CAUSE OF ACTION**
**Statutory Breach of Implied Warranty**
**Tex. Bus. & Com. Code § 2.314**
**(On Behalf of Plaintiffs Keeter and Umanzor and the Texas Subclass)**

684.    Plaintiffs Keeter and Umanzor incorporate and reallege the allegations contained in paragraphs 1-233 above, as if fully set forth herein.  Plaintiffs Keeter and Umanzor bring this cause of action on behalf of themselves and the Texas Subclass.

685.    Gerber is and was at all relevant times a "merchant" under Texas Business and Commercial Code §§2.104(1) and 2A.103(a)(20), and a "seller" under §2.103(a)(4).

686.    The Baby Food Products are and were at all relevant times "goods" within the meaning of Texas Business and Commercial Code §§2.105(a) and 2A.103(a)(8).

687.    A warranty that the Baby Food Products were in merchantable condition and fit for the ordinary purpose for which baby food products are used is implied by law, pursuant to Texas Business and Commercial Code §§2.314 and 2A.212.

688.    Gerber impliedly warranted that the Baby Food Products were of merchantable quality and fit for such use.  This implied warranty included, inter alia, a warranty that the Baby Food Products were manufactured, supplied, distributed, and/or sold by Gerber were safe for consumption by infants.

689.    Gerber breached the implied warranty of merchantability in that the Baby Food Products were not in merchantable condition when they were sold to Plaintiffs and the Texas Subclass members because the Baby Food Products were and are unfit for the ordinary purposes for which such products are used because they pose a serious safety risk to the children who consume them.

690.    Gerber has been provided notice of these issues and has failed to remediate or otherwise respond, as alleged herein.

691.    As a direct and proximate result of breaches of the implied warranty of merchantability, plaintiffs Keeter and Umanzor and the Texas Subclass members have suffered damages.

**THIRTY-FIRST CAUSE OF ACTION**
**Statutory Breach Of Express Warranties**
**Tex. Bus. & Com. Code § 2.213**
**(On Behalf of Plaintiffs Keeter and Umanzor and the Texas Subclass)**

692.    Plaintiffs Keeter and Umanzor incorporate by reference and reallege the allegations contained in paragraphs 1-233 above, as if fully set forth herein.  Plaintiffs Keeter and Umanzor bring this cause of action on behalf of themselves and the Texas Subclass.

693.    Gerber is and was at all relevant times a "merchant" under Texas Business and Commercial Code §§2.104(1) and 2A.1-3A(a)(20), and a "seller" under §2.103(a)(4).

694.    The Baby Food Products are and were at all relevant times "goods" within the meaning of Texas Business and Commercial Code §§2.105(a) and 2A.103(a)(8).

695.    In connection with the sale of the defective Baby Food Products to the Plaintiffs and the Texas Subclass, Gerber provided an express warranty.

696.    Gerber breached this warranty by selling Baby Food Products that were unsafe for infant consumption.

697.    Gerber had a reasonable opportunity to cure its breaches.

698.    Gerber has been provided notice of these issues by numerous complaints as described herein.

699.    As a direct and proximate result of Gerber's breach of express warranties, plaintiffs Keeter and Umanzor and the Texas Subclass members have been damaged in an amount to be determined at trial.

**THIRTY-SECOND CAUSE OF ACTION**
**Statutory Breach of Express Warranties**
**Virginia Consumer Protection Act**
**Va. Code Ann. §§ 59.1-200, *et seq.***
**(On Behalf of Plaintiff Rhea and the Virginia Subclass)**

700.    Plaintiff Rhea incorporates by reference and realleges the allegations contained in paragraphs 1-233 above, as if fully set forth herein.  Plaintiff Rhea brings this cause of action on behalf of herself and the Virginia Subclass.

701.    As set forth above, Gerber made a fraudulent misrepresentation of fact, consisting of: (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage.

702.     Pursuant to Va. Code Ann. § 59.1-204, plaintiff Rhea and the Virginia Subclass who suffered a loss as the result of a violation of this chapter are entitled to recover actual damages, or $500, whichever is greater, plus reasonable attorneys' fees and court costs.  Moreover, because the violation was willful, it may increase damages to an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater.

**THIRTY-THIRD CAUSE OF ACTION**
**Violation of the Washington Consumer Protection Act**
**RCW §§ 19.86, *et seq*.**
**(On Behalf of Plaintiff Valenzuela and the Washington Subclass)**

703.     Plaintiff Valenzuela hereby incorporates by reference the allegations contained in paragraphs 1-233 above, as if fully set forth herein.

704.     This claim is brought by plaintiff Valenzuela against Gerber on behalf of herself and members of the Washington Subclass.

705.     Gerber's foregoing unfair and deceptive acts and practices, including its omissions, were and are committed in its course of trade or commerce, directed at consumers, affect the public interest, and injured plaintiff Valenzuela and the Washington Subclass.

706.     Gerber's foregoing deceptive acts and practices, including its omissions, were material, in part, because they concerned an essential aspect of Gerber Baby Food Products intended for use and provision of nutrition to children.  Gerber omitted material facts regarding the safety (or lack thereof) of the Baby Food Products by failing to disclose the results of its internal testing, the dangerous Heavy Metal and/or Perchlorate contaminants, and the adverse risks to children's health and safety from ingesting as alleged above.

707.     The Gerber Baby Food Products pose an unreasonable risk to the health safety of children who consume or ingest them, despite Gerber's representations, characterizations and portrayals.

708.    Gerber purposely concealed and did not disclose this information to consumers, as more fully alleged above.

709.    Gerber's foregoing deceptive acts and practices, including its omissions, were and are deceptive acts or practices in violation of the Consumer Protection Act, RCW §§ 19.86, *et seq.*

710.    Plaintiff Valenzuela and the Washington Subclass members suffered damages when they purchased the Gerber Baby Food Products.  Gerber's unconscionable, deceptive and/or unfair practices caused actual damages to plaintiff Valenzuela and the Washington Subclass members who were unaware that the Gerber Baby Food Products posed an unreasonable safety, and health risk to children who ingested said products.

711.    Gerber's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

712.    Consumers, including plaintiff Valenzuela and Washington Subclass members, would not have purchased the Gerber Baby Food Products had they known about the unreasonable safety, and health risk they pose to children, the results of Gerber's internal testing.

713.    As a direct and proximate result of Gerber's deceptive acts and practices, including its omissions, plaintiff Valenzuela and Washington Subclass members have been damaged as alleged herein, and are entitled to recover actual damages and/or treble damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

714.    In addition, plaintiff Valenzuela and Washington Subclass members seek equitable and injunctive relief against Gerber on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

### THIRTY-FOURTH CAUSE OF ACTION
### Violations of the Wisconsin Deceptive Trade Practices Act
### WIS. STAT. §§ 100.18, *et seq.*
### (On Behalf of Plaintiff Harmon and The Wisconsin Subclass)

715.    Plaintiff Harmon hereby incorporates by reference the allegations contained in paragraphs 1-233 above, as if fully set forth herein.

716.    This claim is brought by plaintiff Harmon against Gerber on behalf of herself and members of the Wisconsin Subclass.

717.    Gerber's foregoing acts and practices, including its fraudulent representations and omissions in the conduct of trade or commerce, were directed at consumers for the purpose of inducing sales of its Baby Food Products.

718.    Gerber's foregoing deceptive acts and practices, including its fraudulent representations and omissions, were material, in part, because they concerned an essential part of Gerber Baby Food Products' intended use and provision safe and healthy nutrition.  Gerber omitted material facts regarding the safety (or lack thereof) and risks of the Baby Food Products, as aforesaid.

719.    Gerber did not disclose this adverse information to consumers.

720.    Gerber's foregoing deceptive acts and practices, including its misrepresentations and omissions, were and are deceptive acts or practices in violation of Wis. Stat. § 100.18.

721.    Plaintiff Harmon and the Wisconsin Subclass members were unaware that the Gerber Baby Food Products posed an unreasonable safety and health risk to children ingesting or consuming them.

722.    Gerber's foregoing deceptive acts and practices, including its fraudulent representations and omissions, were likely to deceive, and did deceive and induce the purchase of Gerber Baby Food Products by, consumers acting reasonably under the circumstances.

134

723.     Consumers, including plaintiff Harmon and the Wisconsin Subclass members, would not have purchased the Gerber Baby Food Products had they known about the unreasonable safety risk they pose to children.

724.     As a direct and proximate result of Gerber's deceptive acts and practices, including its fraudulent representations and omissions, plaintiff Harmon and the Wisconsin Subclass members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

## VI.    REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A.     Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel for the Classes;

B.     An order enjoining Gerber from selling Baby Food Products until the higher and/or unsafe levels of Heavy Metals and/or Perchlorate are removed;

C.     An order enjoining Gerber from selling Baby Food Products in any manner suggesting or implying that they are healthy, nutritious, and safe for consumption;

D.     An order requirinig Gerber to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.     Ordering Gerber to pay actual damages to Plaintiffs and the other members of the Classes;

F.     Ordering Gerber to pay restitution to Plaintiffs and the other members of the Classes;

G.      Ordering Gerber to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Classes;

H.      Ordering Gerber to pay statutory damages, as provided by the applicable state consumer protection statutes invoked herein, to Plaintiffs and the other members of the Classes;

I.      Ordering Gerber to pay reasonable attorneys' fees and litigation costs to Plaintiffs and the other members of the Class as allowable by law;

J.      Ordering Gerber to pay both pre- and post-judgment interest as allowable by law, on any amounts awarded; and

K.      Ordering such other and further relief as may be just and proper.

## VII.   DEMAND FOR JURY TRIAL AND REQUEST TO AMEND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.  Plaintiffs also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: May 12, 2021

**Bonnett Fairbourn Friedman & Balint PC**
By: /s/ *Francis J. Balint, Jr.*
Francis J. Balint, Jr.
Joshua Gunnell House, Suite 4
4023 Chain Bridge Road
Fairfax, VA 22030
Telephone: (602) 776-5903
Fax: (602) 274-1199
fbalint@bffb.com
            and

Elaine A. Ryan
Patricia N. Syverson
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Fax: (602) 274-1199
eryan@bffb.com
psyverson@bffb.com

136

*Attorneys for Plaintiff and Proposed*
*Class Member Kathleen Keeter*

**Bonnett Fairbourn Friedman & Balint PC**
/s/*Francis J. Balint, Jr.*
Francis J. Balint, Jr.
Joshua Gunnell House, Suite 4
4023 Chain Bridge Road
Fairfax, VA 22030
Telephone: (602) 776-5903
Fax: (602) 274-1199
fbalint@bffb.com

            and

Elaine A. Ryan
Patricia N. Syverson
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Fax: (602) 274-1199
eryan@bffb.com
psyverson@bffb.com

**Barrack, Rodos & Bacine**
Mark R. Rosen
Jeffrey W. Golan
William J. Ban
Julie B. Palley
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Fax: (215) 963-0838
mrosen@barrack.com
jgolan@barrack.com
wban@barrack.com
jpalley@barrack.com

            and

Stephen R. Basser
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800

137

Fax: (619) 230-1874
sbasser@barrack.com

**Emerson Firm, PLLC**
John G. Emerson
2500 Wilcrest, Suite 300
Houston, TX 77042
Telephone: (800)-551-8649
Fax: (501)-286-4659
jemerson@emersonfirm.com

*Attorneys for Plaintiffs and Proposed*
*Class Members Jamie Moore, Tessie Adkins;*
*Deandra Bryant, Sheenah Clark, Autumn Ellison,*
*Mayra Serratos, Rosa Tadeo, Brianna Thomas,*
*Rachant Wilson, and Danielle Visconti*

**GEORGE GESTEN MCDONALD, PLLC**
*/s/ Christopher W. McDonald*
Christopher W. McDonald
VA Bar No. 33092
5516 Falmouth Street, Suite 108
Richmond, VA 23230
Telephone: (804) 256-2908
Fax: (888) 421-4173
CMcDonald@4-Justice.com
E-Service: eService@4-Justice.com

**GEORGE GESTEN MCDONALD, PLLC**
David J. George
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Telephone: (561) 232-6002
Fax: (888) 421-4173
DGeorge@4-Justice.com

**GEORGE GESTEN MCDONALD, PLLC**
Lori G. Feldman
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
Fax: (888) 421-4173
LFeldman@4-justice.com
E-Service: eService@4-Justice.com

**CALCATERRA POLLACK LLP**
Janine L. Pollack
1140 Avenue of the Americas

138

9th Floor
New York, NY 10036
Telephone: (917) 899-1765
Fax: (332) 206-2073
jpollack@calcaterrapollack.com

***Attorneys for Plaintiffs and Proposed
Class Members Crista Marie Hazely, Kathryn
McCarthy, and Kimberly Simeron***


**DURRETTE, ARKEMA, GERSON & GILL PC**
By: */s/ Wyatt B. Durrette, Jr.*
Wyatt B. Durrette, Jr. (VSB No. 04719)
Kevin J. Funk (VSB No. 65465)
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Telephone: (804) 775-6900
Fax: (804) 775-6911
wdurrette@dagglaw.com
kfunk@dagglaw.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson
Catherine Smith
Mary M. Nikolai
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
csmith@gustafsongluek.com
mnikolai@gustafsongluek.com

Kenneth A. Wexler
Kara A. Elgersma
WEXLER WALLACE, LLP
55 West Monroe, Suite 3300
Chicago, Illinois 60603
Tel: (312) 346-2222
kaw@wexlerwallace.com
kae@wexlerwallace.com

Simon B. Paris
Patrick Howard
SALTZ, MONGELUZZI & BENDESKY, P.C.
1650 Market Street, 52nd Floor

139

Philadelphia, Pennsylvania 19103
Tel: (215) 575-3895
sparis@smbb.com
phoward@smbb.com

Kevin Landau
Miles Greaves
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, New York 10038
Tel: (212) 931-0704
klandau@tcllaw.com
mgreaves@tcllaw.com

Matthew D. Schelkopf
Lori G. Kier
Davina C. Okonkwo
**SAUDER SCHELKOPF**
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
Tel: (610) 200-0581
mds@sstriallawyers.com
lgk@sstriallawyers.com
dco@sstriallawyers.com

**THE MILLER LAW FIRM, P.C.**
E. Powell Miller
Sharon S. Almonrode
William Kalas (P82113)
950 West University Drive, Suite 300 Rochester,
Michigan 48307
Tel: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
wk@millerlawpc.com

*Attorneys for Plaintiffs and Proposed*
*Class Members Renee Bryan, Jen MacLeod,*
*Alison Fleissner, Kelly McKeon, and Teresa*
*Hagmaier*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
By: */s/ Steven J. Toll*
Steven J. Toll (VSB No. 15300)
Douglas J. McNamara (*pro hac vice* forthcoming)
Geoffrey A. Graber (*pro hac vice* forthcoming)
Brian E. Johnson (*pro hac vice* forthcoming)

140

Paul M. Stephan (*pro hac vice* forthcoming)
1100 New York Ave. NW
East Tower, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dmcnamara@cohenmilstein.com
ggraber@cohenmilstein.com
bejohnson@cohenmilstein.com
pstephan@cohenmilstein.com

**GIBBS LAW GROUP LLP**
Rosemary M. Rivas (*pro hac vice* forthcoming)
Mark Troutman (*pro hac vice* forthcoming)
Rosanne L. Mah (*pro hac vice* forthcoming)
505 14th Street, Suite 110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
rmr@classlawgroup.com

*Attorneys for Plaintiff and Proposed*
*Class Member: Kelli Adams*

**LINVILLE JOHNSON PLLC**
By: **321321321321321321**
Christopher D. Jennings
610 President Clinton Ave, #300
Little Rock, AR 72201
Telephone: (501) 209-7777
chris@yourattorney.com

*Attorneys for Plaintiffs and Proposed*
*Class Members Gretehl Umanzor, Skylar Murwin,*
*Selena Mosquera, Jennifer Wehmeyer, Olivia*
*Neal, Morgan Fitzgerald, Danielle Puntel, Alicia*
*Robinson, Nichole Allen, Amanda Roberts, Ivana*
*Blazevic, Tiffany Harmon, Ashley Moore Rhea,*
*Kwanda Miller and Jessica Valenzuela*

**CUNEO GILBERT & LADUCA, LLP**
By*: s/ Daniel M. Cohen*

Daniel M. Cohen, Bar No. 79836
Charles LaDuca
Katherine Van Dyck
C. William Frick
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016

Telephone:(202) 789-3960
Facsimile: (202) 789-1813
danielc@cuneolaw.com
charles@cuneolaw.com
kvandyck@cuneolaw.com
bill@cuneolaw.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P**.
Robert K. Shelquist
Rebecca A. Peterson
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rkshelquist@locklaw.com
rapeterson@locklaw.com

**LITE DEPALMA GREENBERG, LLC**
Joseph DePalma
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
jdepalma@litedepalma.com
scruzhodge@litedepalma.com

*Attorneys for Plaintiff and Proposed*
*Class Member Charlotte Willoughby*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2021, I caused a copy of the foregoing **CONSOLIDATED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** to be served via electronic mail upon all counsel of record.

<u>*/s/   Francis J. Balint, Jr.*</u>
Francis J. Balint, Jr.