UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN RE: GERBER PRODUCTS COMPANY HEAVY METALS BABY FOOD LITIGATION<br><br>This Document Relates to ALL Cases | Master File No. 1:21-cv-00269 (MSN/JFA) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL**

Plaintiffs submit this Memorandum in Support of their Motion to Compel Gerber's Response to Plaintiffs' First Requests for Production of Documents. The outstanding discovery disputes are: 1) whether Gerber has an obligation to locate and identify documents responsive to key requests for production related to Gerber's marketing claims identified in Plaintiffs' representative complaint—beyond the use of Plaintiff-supplied search terms; and 2) whether Gerber must provide a date for substantial completion of its discovery obligations.

**I.      BACKGROUND**

Plaintiffs bring their claims against Defendant, Gerber Products Company ("Gerber" or "Defendant"), on behalf of themselves and consumers who bought Gerber's baby food products. Representative Class Action Compl. ¶ 1, ECF No. 112 [hereinafter "Compl."]. Plaintiffs allege that while Gerber markets and sells its products as suitable and safe for consumption by infants and young children, Compl. ¶ 4, Gerber failed to disclose to consumers that: (1) the Gerber Baby Food Products contain, or are at material risk of containing, harmful Heavy Metals; (2) Gerber inadequately tested, or never tested, for all Heavy Metals in all the ingredients it uses and/or its

1

finished products; and (3) that when Gerber does set internal standards, Gerber still allows for the sale of Baby Food Products with Heavy Metals in amounts that could cause harm to infants and children and, at times, the Baby Food Products have failed to meet even those internal standards before reaching the market, Compl. ¶ 11.

Statements on Gerber's product labels such as "Crawler 10+ months" and depictions of the "Gerber baby" and children at various developmental stages, convey to a reasonable consumer that the Baby Food Products are safe and suitable for consumption by infants and toddlers. Compl. ¶¶ 80-106. As to Heavy Metals in particular, Gerber states that its farmers "are using best in class practices to ensure quality ingredients and minimize the presence of any unwanted heavy metals" and "reduce the presence of [Heavy Metals] by: using best in class practices like soil testing, rotating crops, and choosing peak harvest times." Compl. ¶ 77. Additionally, Gerber has used its "Clean Field Farming$^{TM}$" marketing strategy to portray itself as using some of the strictest standards in the world precisely because some soil can have naturally high levels of heavy metals. Compl. ¶ 78.

As explained more fully below, Plaintiffs have served discovery on Gerber requesting documents related to these marketing claims and have requested that responsive documents be identified by conferring with Gerber employees, rather than through the exclusive use of keyword searches. These requests seek core documents relevant to important issues in the case: including materiality, damages, and Gerber's knowledge. But Gerber has taken the position that it has no obligation to engage in discovery on these topics beyond what may be identified through the application of search terms to specific custodians and shared drives. Plaintiffs believe applying search terms to the limited number of custodians identified by Gerber will not adequately identify the universe of responsive documents. In its own initial disclosures, Gerber has identified many

individuals who may have knowledge and discoverable information related to marketing claims that are not custodians, and Gerber has identified "marketing and advertising materials" and "consumer surveys and marketing analytics" as categories of documents it intends to use to support its own defenses. Ex. 1, Gerber's Initial Disclosures, 8. Plaintiffs do not believe it is overly burdensome to require Gerber's counsel to confer with employees of Gerber to identify responsive documents to these requests.

### A. Plaintiff's Discovery Requests, Gerber's Objections, and Efforts to Resolve Discovery Disputes.

On June 10, 2022, Plaintiffs served their First Set of Requests for Production (RFPs) including 81 requests for production. Ex. 2, Gerber's Objections to Plaintiffs' First Set of RFPs. On June 27, 2022, Defendant responded with multiple objections to all 81 requests for production. *Id.* On June 21, 2022, Plaintiffs served their First Set of Interrogatories to which Defendant objected to each interrogatory on July 6, 2022. Ex. 3, Gerber's Objections to Plaintiffs' First Set of Interrogatories. Gerber objected to nearly every request as not relevant, covering privileged material, vague and ambiguous or overbroad, unduly burdensome, and disproportionate to needs of the case. Additionally, Gerber marshalled specific objections to many of Plaintiffs' RFPs and Interrogatories.

The Parties met and conferred via telephone on June 16, 2022 and July 6, 2022 and via zoom July 11, 2022, and discussed Plaintiffs' First Set of RFPs. Ex. 4, July 10, 2022 Letter to Gerber, 1; Ex. 5, July 12, 2022 Email to Gerber, Ex. 6, July 14, 2022 Letter to Plaintiffs, 1; Ex. 7, July 17, 2022 Letter to Plaintiffs, 1. The Parties again met and conferred on July 18, 2022 and July 28, 2022 and discussed remaining outstanding issues as to Plaintiffs' First Set of RFPs, Plaintiffs' First Set of Interrogatories and Gerber's corresponding objections. Ex. 8, July 20, 2022 Letter to Gerber, 1, Ex. 9, July 27, 2022 Letter to Plaintiffs, 1. On July 28, 2022, the parties met and

conferred for a final time via zoom and determined that they have reached an impasse as to at least one key discovery issue, which this motion seeks to resolve through the court's assistance. Ex. 10, July 29, 2022 Email to Plaintiffs. The Parties continue to work to resolve remaining discovery disputes without court intervention.

### B. Impasse Reached by the Parties

As a result of their repeated meet and confers, Plaintiffs believe that the parties have reached an impasse on Plaintiffs' RFPs 10, 12, and 14. These requests seek:

> RFP 10: All DOCUMENTS CONCERNING any market research and/or analyses that form the basis of the MARKETING CLAIMS made in the marketing, advertising, packaging and/or labeling of DEFENDANT'S PRODUCTS, including but not limited to surveys, studies, and internal COMMUNICATIONS.
>
> RFP 12: All DOCUMENTS CONCERNING how and whether the use of the MARKETING CLAIMS impact consumer purchasing decisions or perception, including but not limited to surveys, studies, and internal COMMUNICATIONS.
>
> RFP 14: ALL DOCUMENTS CONCERNING COMMUNICATIONS to or from DEFENDANT relating to ingredients in the PRODUCTS and whether they reflect the MARKETING CLAIMS or contain HEAVY METALS, including but not limited to COMMUNICATIONS from regulators (e.g., FDA, FTC), federal and state governments, self-regulatory organizations, industry or trade organizations, competitors, retailers, third-party advertising agencies and market research firms, regardless of whether DEFENDANT engaged, hired, contracted, or did business with the agency, or firm, and regardless of whether DEFENDANT responded or replied to those COMMUNICATIONS.

As an initial matter, Gerber made numerous objections to RFPs 10, 12 and 14, including objecting to the scope of the definition of "marketing claims" and whether Gerber must produce all responsive documents or merely responsive documents returned through searches using keywords Plaintiffs' counsel has chosen with little to no assistance from Gerber or Gerber's counsel.

In attempt to move forward with the production of this critical discovery, Plaintiffs agreed, at this time, to limit the definition of "marketing claims" to those regarding the Gerber Baby, the

4

Developmental Stages, and Heavy Metals. These three matters are key to Plaintiffs claim that Gerber misled consumers through a label that conveyed safety and healthiness for infants using the Gerber Baby and Developmental Stages while failing to disclose any information regarding the presence of Heavy Metals in its products. Compl. ¶¶ 80-106.

Plaintiffs believe, contrary to the assertions of Gerber's counsel, that Gerber is obligated to seek out and locate documents responsive to Plaintiffs' relevant and proportional requests regardless of whether Plaintiffs can identify keyword searches that return the relevant documents.

## II.   STANDARD OF LAW

Under Federal Rule of Civil Procedure 26,

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26; *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, No. 2:19CV324, 2021 WL 2492473, at *2 (E.D. Va. May 5, 2021). "Any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" is considered relevant for purposes of discovery. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978).

In seeking discovery of documents under Rule 34, a requesting party "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34. A "reasonably particular" description places the responding party on "reasonable notice of what is called for and what is not, with sufficient information to enable the producing party to identify responsive documents." *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, No. 2:19CV324, 2021 WL 2492473, at *3 (E.D. Va. May 5, 2021) (internal citations and quotations omitted). This standard does not call for each responsive document to be specifically identified by the requesting party.

*Cody v. City of St. Louis*, No. 4:17-CV-2707-AGF, 2019 WL 5653568, at *3 (E.D. Mo. Oct. 31, 2019) (citing *Roebling v. Anderson,* 257 F.2d 615, 620 (D.D.C. 1958)). Rather, a party may request a category of documents, provided that category is described with reasonable particularity. *Id.*

A court may place limitations on discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b) (2) (C) (iii). In making an objection to a discovery request based on its breadth and the burden it imposes, a responding party "must submit affidavits or other evidence demonstrating the nature and extent of the asserted burden." *Spendlove v. RapidCourt, LLC*, No. 3:18-CV-856, 2019 WL 7143664, at *4 (E.D. Va. Dec. 23, 2019).

### III.     ANALYSIS

#### A. RFPs 10, 12 and 14 seek discovery that is relevant and proportional and are stated with reasonably particularity.

Plaintiffs' claims revolve around their allegations that Gerber's product labels misled consumers by conveying a sense of health and safety for infants and children while failing to make certain material disclosures with respect to the risk or presence of Heavy Metals in Gerber's products. Compl. ¶ 4, 11. Moreover, Plaintiffs' complaint specifically points to the Gerber Baby and Developmental Stages graphics on Gerber's labels as conveying that the Baby Food Products are safe and suitable for consumption by infants and toddlers. Compl. ¶¶ 80-106. Plaintiffs' complaint also alleges that Plaintiffs reasonably relied on Gerber's product labels which failed to disclose material information Gerber was aware of related to the presence or probable presence of Heavy Metals in its products. Compl. ¶¶ 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36. Necessarily,

6

market research and/or analyses Gerber conducted or obtained "that form the basis of [Gerber's use of the Gerber Baby, Developmental Stages, or omission of references to Heavy Metals] in the marketing, advertising, packaging and/or labeling" of the products at issue, RPF 10, bear on this key issue in the present case. RFP 12, which seeks all documents concerning "how and whether [Gerber's use of the Gerber Baby, Developmental Stages, or omission of references to Heavy Metals] impact consumer purchasing decisions or perceptions" bear directly on the knowledge elements alleged in the complaint, as well as other issues. Similarly, communications related to ingredients in the products at issue in this case "and whether they reflect [Gerber's use of the Gerber Baby, Developmental Stages, or omission of references to Heavy Metals]", RFP 14, bear on or could likely lead to information that bears on Plaintiffs claims.

As Gerber's marketing related to the Gerber Baby, Developmental Stages, and Heavy Metals is at the center of Plaintiffs claims, requesting that Gerber and Gerber's counsel seek out and identify documents that are responsive to RFPs 10, 12 and 14 is proportional to the burden Gerber is likely to incur in producing these documents. More importantly, Gerber's counsel has failed to provide any specific information on the burden of conducting such searches. Gerber cannot stand on such a general objection to the breadth and burden of requests for production without providing Plaintiffs and the court more detailed information about the burden of these requests. *Spendlove*, 2019 WL 7143664, at *4.

From the Parties repeated meet and confers, Gerber's counsel appears to merely assume such requests would be unduly burdensome rather than discussing the requests with its client. This directly contradicts the Sedona Principles, which reason that because the responding party is best positioned to understand how its documents and information are stored and organized, "the responding party must make decisions on what is required to meet its … production obligations

7

based on direct input from those inside the organization who create, receive, and store their own information (i.e., individual custodians), and those who implement and maintain the organization's information systems (e.g., applications administrators)." The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production A Project of the Sedona Conference Working Group on Electronic Document Retention and Production*, Comment 6.a.,19 Sedona Conf. J. 1, 120 (2018) [hereinafter *The Sedona Principles*].[1]

Finally, contrary to Gerber's position, Rule 34 does not require Plaintiffs to identify the specific documents it seeks for Gerber's counsel to work with its client to produce responsive documents. *Cody v. City of St. Louis*, No. 4:17-CV-2707-AGF, 2019 WL 5653568, at *3 (E.D. Mo. Oct. 31, 2019) (citing *Roebling v. Anderson,* 257 F.2d 615, 620 (D.D.C. 1958)). Rather, a requesting party, as Plaintiffs have here, may describe categories of documents with reasonable particularity. *Id.* Plaintiffs have described the marketing related materials it seeks, including enumerating examples of the types of documents it seeks through RFPs 10, 12 and 14. Additionally, Plaintiffs have identified the subject matter of the materials, even narrowing the topics to the Gerber Baby, Developmental Stages, and Heavy Metals.

### B. Gerber's discovery obligation is to produce documents responsive to RFPs 10, 12 and 14.

---

[1] The Sedona Principles are often used by courts and litigators in evaluating the best approach to managing parties electronic document production obligations. *E.g. Hyles v. New York City*, No. 10CIV3119ATAJP, 2016 WL 4077114, at *2 (S.D.N.Y. Aug. 1, 2016); *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 250 F.R.D. 251, 260 (D. Md. 2008); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620 (D. Colo. 2007). *See also AIDS Healthcare Found., Inc. v. City of Baton Rouge/Par. of E. Baton Rouge Through City of Baton Rouge Div. of Hum. Dev. & Servs.*, No. CV 17-229-BAJ-RLB, 2018 WL 5259465, at *5 (M.D. La. Oct. 22, 2018) (noting that many courts recognize "Sedona Principles and related Sedona commentaries [as] the leading authorities on electronic document retrieval and production.").

Gerber contends that with regard to the RFPs addressing the "Marketing Claims" in the complaint, it need only produce responsive documents which are returned through keyword searches chosen by Plaintiffs. Gerber's counsel has taken the position that they are not obligated to go get responsive information from its client or to work with its client to develop and provide search terms that are most likely to return responsive documents. Plaintiffs, however, believe that the keyword searches the Parties have thus far agreed up on, terms that are mostly related to Heavy Metals, are not likely to return information responsive to RFPs 10, 12 and 14. With this motion, Plaintiffs are asking that the court require Gerber's counsel to ask its client where the responsive documents are and to produce responsive documents rather than rely on search terms Plaintiffs proposed without knowledge of how or where Gerber stores, organizes, or refers to its internal marketing documents.

Ultimate responsibility for producing responsive documents and meeting its discovery obligations lies with the responding party and its counsel. *In re Seroquel Prod. Liab. Litig.,* 244 F.R.D. 650, 664 (M.D. Fla. 2007). Gerber's obligation is not to search a set of documents using the search terms identified by Plaintiffs and throw up its hands if those searches don't return the responsive documents. *Id.*; *The Sedona Principles*, Comment 12.b.ii. ("[R]esponding parties are obligated to take reasonable steps that are proportional to the needs of the case to find and produce requested information within the scope of discovery under Rule 26(b)(1)."). Instead, if Gerber insists on using keyword searches it must take "steps it took to assure reasonable completeness and quality control" and provide Plaintiffs and the court with information on how it ensured such completeness. *In re Seroquel Prods. Liab. Litig.,* 244 F.R.D. at 660 n. 6 ("[W]hile key word searching is a recognized method to winnow relevant documents from large repositories …

9

[c]ommon sense dictates that sampling and other quality assurance techniques must be employed to meet requirements of completeness.").

Furthermore, many courts have recognized the limitations and risks associated with relying solely on keyword searches. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 260–61 (D. Md. 2008); *United States v. O'Keefe,* 537 F.Supp.2d 14, 24 (D.D.C.2008) ("Whether search terms or 'keywords' will yield the information sought is a complicated question involving the interplay, at least, of the sciences of computer technology, statistics and linguistics.... Given this complexity, for lawyers and judges to dare opine that a certain search term or terms would be more likely to produce information than the terms that were used is truly to go where angels fear to tread.")). "Selection of the appropriate search and information retrieval technique requires careful advance planning by persons qualified to design effective search methodology. The implementation of the methodology selected should be tested for quality assurance; and the party selecting the methodology must be prepared to explain the rationale for the method chosen to the court, demonstrate that it is appropriate for the task, and show that it was properly implemented." *Victor Stanley, Inc.,* 250 F.R.D. at 262. The Sedona Conference has identified multiple issues with relying on keyword searches to produce relevant documents, including that they are often both over inclusive and underinclusive and importantly, "limited by their dependence on matching a specific, sometimes arbitrary choice of language to describe the targeted topic of interest." *See* A Project of The Sedona Conference Working Group on Best Practices for et. al., *The Sedona Conference Best Practices Commentary on the Use of Search and Information Retrieval Methods in E-Discovery August 2007 Public Comment Version*, 8 Sedona Conf. J. 189, 201-02 (2007).

Here, Gerber's methodology for meeting its obligation to produce responsive documents has been to refine and narrow search terms proposed by Plaintiffs. Plaintiffs, however, are poorly

positioned to know how or where responsive documents would be stored and identified in Gerber's files. *The Sedona Principles*, 118, Principle 6. ("Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information."); *The Sedona Principles*, 119, Comment 6a. ("The lack of uniformity and varying degrees of complexity in organizations and their information systems often require a very specific, in-depth understanding of how that party handles its own information."); *The Sedona Principles*, 102, Comment 5.c ("For organizations, identifying and preserving relevant ESI will normally require input from legal staff who understand the claims and defenses in the case, from employees involved in the transaction or event that caused the lawsuit, and from information technology or records management personnel with a good understanding of where and how the organization stores relevant ESI.").

Moreover, Gerber's counsel's arguments to Plaintiffs have repeatedly been that they could not locate responsive documents by asking the relevant personnel at Gerber where documents responsive to RFPs 10, 12 and 14 would be and what those documents might be. In its own initial disclosures, however, Gerber has identified individuals that have not been named as document custodians for ESI, related to marketing; relevant personnel are not unknown to Gerber or Gerber's counsel. Ex. 1 at 5-6 (listing Cheryl Callen, Paula Casey, Lauryn Gutierrez, and Basharat Khalil as relevant individuals with knowledge or responsibilities related to marketing and regulatory affairs). Further, Gerber identified consumer surveys that they intend to use as part of their defense; responsive documents such as consumer surveys are, therefore, not unknown to Gerber or Gerber's counsel. *Id.* at 8 (listing consumer surveys and marketing analytics for Gerber Products; communications with consumers concerning Gerber Products; and communications exchanged with the United States Food and Drug Administration). Gerber has the ability to locate documents

11

responsive to RFPs 10, 12 and 14 and should be required to produce them as these RFPs make relevant and proportional request.

### C. Gerber must provide Plaintiffs with a date for substantial completion of its discovery responses.

Plaintiffs request that the court order Gerber to provide Plaintiffs with a deadline by which their discovery production will be substantially complete. Rule 34 requires that production "be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Fed. R. Civ. Pro. 34(b)(2)(B). Despite Plaintiffs' request Gerber has failed to provide a reasonable time, or any time at all, by which its production with be completed, or even substantially completed. The need for such a clear timeline is particularly acute in the present case where the parties must complete discovery in such a timely fashion.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs seek an order from the court requiring Gerber's counsel to work with Gerber and any potentially relevant document custodians to identify and produce documents responsive to Plaintiffs RFPs 10, 12 and 14. In addition, Plaintiffs ask the court to order Gerber to timely provide Plaintiffs with a date for substantial completion of their discovery production.

Dated: July 29, 2022

By: */s/ Steven J. Toll*
Steven J. Toll
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
1100 New York Ave. NW
East Tower, 5th Floor
Washington, DC  20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Rosemary M. Rivas
**GIBBS LAW GROUP LLP**

1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9700
Facsimile: 510-350-9701

Janine Pollack
**CALCATERRA POLLACK LLP**
1140 Avenue of the Americas, 9th Floor
New York, New York 10036
Telephone: 212-899-1765
Facsimile: 332-206-2073

*Plaintiffs' Interim Co-Lead Counsel*