IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN RE: GERBER PRODUCTS COMPANY HEAVY METALS BABY FOOD LITIGATION | Master File No. 1:21-cv-00269 (MSN/JFA) |
| This Document Relates to ALL Cases | |

**GERBER PRODUCTS COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSE TO PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS**

Gerber Products Company has not refused to produce the documents Plaintiffs seek in their motion or provide a date for substantial completion of its document production. Rather, it is Plaintiffs who refuse to make a good faith effort to negotiate search terms for certain documents they seek, and instead request that Gerber somehow immediately "go get" documents "beyond what would be found through the use of search terms in custodial and non-custodial databases." Pls. Ex. 10 at 2.[1]  But documents that Plaintiffs now insist that Gerber "go get"—like "internal communications" and "communications with regulators, federal and state governments, self-regularly organizations, industry or trade organizations, competitors, retailers, third-party advertising agencies, and market research firms" (Mem. at 1 (ECF No. 138))—are not centrally stored, were created by numerous individuals, and would need to be located in emails and non-custodial documents intermingled with hundreds of thousands of non-responsive documents. There is no one or reasonable number of people who can simply pull this information from a file.

---

[1] To avoid duplication of exhibits, Gerber has cited to Plaintiffs' Exhibits attached to their motion wherever possible.  Gerber's additional exhibits are lettered, rather than numbered, to avoid confusion.

1

The practical difficulty in locating these responsive documents in such a haystack is why large companies use search terms and custodians in almost every complex commercial litigation—and it is a process that the parties expected would happen, and agreed to engage in, here (*see* ESI Protocol, ECF No. 123). Plaintiffs, however, speculate anticipated inadequacies in Gerber's future productions and refuse to negotiate search terms, in an improper attempt to foist onto Gerber their evidentiary burden of establishing that use of search terms is an insufficient methodology to locate potentially responsive documents.

Because the parties have not yet agreed on search terms, Plaintiffs' demand for Gerber to provide a date for substantial completion of its document production is premature. Gerber cannot commit to a production date before there is a concrete universe of documents on which such a date could be estimated.

Finally, Plaintiffs' motion raises two issues that they did not raise with Gerber, much less meet and confer in good faith to resolve before filing this motion.

The Court should deny the motion.

**I.      BACKGROUND**

      **A.      Relevant Allegations from the Representative Complaint**

Plaintiffs allege that Gerber's product labels deceptively portrayed the products as safe to consume. Compl. ¶ 4. Plaintiffs claim that Gerber's products were in fact *not* safe to consume because, as Plaintiffs allege, the products may contain trace levels of heavy metals. *Id.* ¶ 11. FDA has confirmed these trace elements, however, "are present in the environment" and "cannot be completely avoided in the fruits, vegetables, or grains that are the basis for baby foods." ECF No. 135-1 at 1. FDA has also confirmed products containing such trace elements are not unsafe for consumption. ECF No. 135-2 at 2 ("[C]hildren are not at an immediate health risk" from trace

2

levels of heavy metals and parents and caregivers should not "throw out their supply of packaged baby foods or . . . stop feeding their babies and children certain foods altogether.").

Unable to point to any misrepresentation on Gerber's labels to support their claim of deception, Plaintiffs unpersuasively point to label features that have nothing to do with heavy metals—like the "Gerber Baby" logo and developmental milestone designations like "Crawler"—as purportedly creating the "impression" the products were safe and free of heavy metals. Compl. ¶¶ 80-81. Gerber filed a motion to dismiss on July 8, 2022, explaining why these label features are not statements of fact or are objectively true, and as a matter of law the implied meanings Plaintiffs allegedly derived from these label features cannot support Plaintiffs' affirmative misrepresentation claims (ECF No. 133, at 25-27). Plaintiffs' opposition is due on August 5, 2022, and the motion is scheduled for hearing on September 16, 2022.

### B.   Plaintiffs' Requests for Production

Plaintiffs served 81 requests for production on June 10, 2022.[2] Ex. A. On June 27, 2022, Gerber timely served detailed, specific objections to each interrogatory and several definitions used in almost every request, while also clearly stating Gerber's willingness to meet and confer to resolve the objections and appropriately narrow Plaintiffs' requests. Ex. 2. The parties have since engaged in over five hours of calls and exchanged four detailed letters to appropriately narrow Plaintiffs' requests and resolve Gerber's objections. Pls. Exs. 4, 6, 8, 9. In most cases, Plaintiffs have ultimately agreed to Gerber's proposals to narrow their overbroad requests (*e.g.*, by limiting requests to documents related to heavy metals, and agreeing that agreed upon ESI custodians and

---

[2] Although Plaintiffs attach to their motion Gerber's objections to Plaintiffs' interrogatories and a letter from counsel for Gerber regarding the same, Plaintiffs' motion is limited to three requests for production. Gerber thus limits its discussion of the status of discovery to Plaintiffs' requests for production.

3

search terms would serve to constructively limit Plaintiffs' requests for, *e.g.*, "all documents"). *See, e.g.*, Pls. Ex. 6 at 6; Pls. Ex. 8 at 4.

On June 27, 2022, the same day Gerber served its objections, Gerber voluntarily provided Plaintiffs with a list of 22 possible custodians and their roles at Gerber, and identified seven of them as possible priority custodians based on their duties at Gerber, in an effort to avoid delay in the process of collecting and reviewing ESI. Ex. B at 1-2. The proposed priority custodians have duties covering the topics in which Plaintiffs have expressed interest: regulatory and scientific affairs, consumer contacts, public policy and public affairs, baby food products, consumer and marketplace insights, and product quality. Ex. B at 2. After Gerber followed up on the parties' July 6 call to request a response to its proposal, and for Plaintiffs to provide their proposed search terms to define the scope of documents Gerber would ultimately review to locate documents responsive to Plaintiffs' requests, Plaintiffs sent an email *unequivocally* agreeing with Gerber's proposal on priority custodians and attaching a list of search terms. Ex. C at 1. Thereafter, Gerber ran hit reports using Plaintiffs' proposed search terms, which consisted of 515 unique terms, and proposed revisions to certain search terms. Ex. D.

With respect to Plaintiffs' overbroad definition of what they call "Marketing Claims,"[3] Gerber proposed on the parties' July 18 call that, while Gerber maintains that much of what

---

[3] Plaintiffs define "Marketing Claims" to include "any advertising claim or implication in DEFENDANT'S advertising, labeling or packaging of the PRODUCTS that the PRODUCTS and/or PRODUCT ingredients are healthy, safe for consumption, nutritious, or suitable for babies and children, including but not limited to claims that the PRODUCTS are made from high-quality ingredients, aid in brain development or learning ability, are baked with whole grains, and/or are made with real fruit or vegetables." Ex. A at 4. Gerber objected to this definition because is unduly burdensome, overbroad, and disproportionate to the needs of this case given Plaintiffs' allegations. *E.g.*, Pls. Ex. 2 at 4, 12-13, 15-17. This problem is exacerbated by the overbroad requests for production in which the term is used. Applied to Plaintiffs' requests, the scope of this definition means that Plaintiffs seek, for example, an array of documents and communications regarding whether the products "are baked with whole grains, and/or are made with real fruit or vegetables," which far exceeds the scope of Plaintiffs' Complaint.

4

Plaintiffs seek with respect to "Marketing Claims" falls well outside the scope of this action, Gerber would be willing to produce responsive documents identified through its ESI searches; in other words, the parties' agreement on ESI search terms could narrow the scope of Plaintiffs' requests for production incorporating this definition. Ex. 9 at 2. Plaintiffs then, weeks after proposing search terms, decided that the search terms they proposed were not broad enough to capture all documents they want. Pls. Ex. 8 at 2. Gerber agreed to consider additional search terms proposed by Plaintiffs that would capture such documents, and on July 21, 2022 (over two weeks after initially proposing search terms), Plaintiffs proposed additional overbroad terms that would have approximately doubled the number of hits returned from the 515 search terms Plaintiffs initially proposed. Ex. E at 1, 5-6. This is unsurprising, because Plaintiffs did not make a good faith effort to propose search terms tailored to return the documents Plaintiffs would like Gerber to produce—in particular, the "Gerber baby" logo and developmental milestone designations. For example, Plaintiffs proposed the term "Gerber baby," which hits on any document that includes the phrase "Gerber baby food," and made no attempt whatsoever to propose search terms concerning developmental milestone designations. *Id.* at 2, 5-6. Nonetheless, Gerber agreed to all but two of Plaintiffs' new search terms: (1) "Gerber baby," and (2) an overbroad term, seeking documents that would be captured by other, more specific search terms, that returned over 47,000 unique documents. Ex. E at 1-2; Ex. F at 1.

On August 1, 2022, after filing their motion to compel, Plaintiffs sent an email mischaracterizing Gerber's position on search terms and custodians. Ex. F at 2-3. As Gerber's response on August 2 states, Gerber has never (i) refused to consider new or modified search terms and has not "suggested" it would refuse to consider them if necessary in the future, or (ii) "suggested" that once the preliminary set of search terms is run against the seven priority

5

custodians, no further custodians may be considered. Ex. F. at 1-2. Plaintiffs' August 1 email also proposed an amendment to their "Gerber baby" search term—adding "the" at the beginning (*i.e.*, "the Gerber Baby")—which Gerber is considering. Ex. F at 8.

### C. Gerber's Document Production

On July 12, 2022, although the parties had yet to resolve the majority of Gerber's objections to Plaintiffs' requests for production, Gerber served an initial production of 2,400 pages it was able to produce on an expedited basis, separate and apart from the process of collecting ESI from custodians and non-custodial sources (such as shared folders) and applying the parties' agreed search terms to determine the universe of documents to be reviewed. Pls. Ex. 6 at 1. This production included over 900 product labels, sales data, organizational charts, communications between Gerber and members of the Baby Food Council, and productions made to the House Subcommittee and others relating to heavy metals, including heavy metals test results, heavy metals internal standards, and communications between Gerber and FDA. Pls. Ex. 9 at 1. Gerber has also agreed to produce additional documents in the same manner, including additional sales and pricing data, records of communications with consumers, additional test results, and Gerber website pages regarding heavy metals. *Id.*

## II. LEGAL STANDARD

Although parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b), a responding party is not required to use the requesting party's preferred methodologies in identifying responsive documents or "examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations." *FDIC v. Giannoulias*, No. 12 C 1665, 2013 WL 5762397, at *2 (N.D. Ill. Oct. 23, 2013); *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374

6

(S.D.N.Y. 2006). Rather, the responding party must "conduct a diligent search, which involves developing a reasonably comprehensive search strategy." *Treppel*, 233 F.R.D. at 374.

Courts affirm that the "responding party is best situated to determine which procedures, methodologies, and technologies are appropriate for preserving and producing its own ESI" and "should be permitted to elect how best to allocate its resources and incur the costs required to comply with its obligations" to produce responsive documents. *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 121-22 (2018) (collecting cases).[4] As such, "neither a requesting party nor the court should prescribe or detail the steps that a responding party must take to meet its discovery obligations, and there should be no discovery on discovery, absent an agreement between the parties, or specific, tangible, evidence-based indicia (versus general allegations of deficiencies or mere 'speculation') of a material failure by the responding party to meet its obligations." *Id.* at 122; *see also Freedman v. Weatherford Int'l*, No. 12 Civ. 2121, 2014 WL 4547039 (S.D.N.Y. Sept. 12, 2014) (request for "discovery on discovery" denied for failure in absence of factual basis to find original production deficient); *Hubbard v. Potter*, 247 F.R.D. 27, 31 (D.D.C. 2008) (denying discovery on discovery because of only a "theoretical possibility" that additional electronic documents may exist).

"A requesting party has the burden of proving a specific discovery deficiency in the responding party's production." *The Sedona Principles*, at 123-24; *Gross v. Chapman*, No. 19 C 2743, 2020 WL 4336062, at *2 (N.D. Ill. July 28, 2020) (same); *Enslin v. Coca-Cola Co.*, No. 2:14-cv-06476, 2016 WL 7013508, at *2 n. 2 (E.D. Pa. May 12, 2016) ("The burden lies with the

---

[4] Available at https://thesedonaconference.org/sites/default/files/publications/The%20Sedona%20Principles%20Third%20Edition.19TSCJ1.pdf.

party requesting discovery to show that a responding party's production of ESI was inadequate and that additional efforts are warranted."); *Koninklijke Philips N.V. v. Hunt Control Sys., Inc.*, No. 11-cv-03684, 2014 WL 1494517, at *4 (D.N.J. Apr. 16, 2014) (requesting party failed to show a "material deficiency" in the responding party's electronic discovery process). Because "whether search terms or 'keywords' will yield the information sought is a complicated question involving the interplay, at least, of the sciences of computer technology, statistics and linguistics," if a requesting party contends that search terms are "insufficient," then "they will have to specifically so contend in a motion to compel and their contention must be based on evidence that meets the requirements of Rule 702 of the Federal Rules of Evidence." *United States v. O'Keefe*, 537 F. Supp. 2d 14, 24 (D.D.C. 2008).[5]

### III. DISCUSSION

#### A. Plaintiffs' Motion Raises Issues Plaintiffs Did Not Raise with Gerber

While the parties spent over five hours discussing Plaintiffs' requests for production and exchanging four detailed letters regarding the requests, Plaintiffs' motion exceeds the scope of the parties' discussions in at least two ways. The Court should reject Plaintiffs' motion as it relates to these issues.

*First*, the parties' discussion of Plaintiffs' requested marketing "go gets" was limited to market research and/or consumer surveys or studies relating to three "marketing claims"—"the Gerber Baby, Heavy Metals, and Developmental Stages." Pls. Ex. 8 at 2; *see also* Pls. Ex. 5 at 1; Pls. Ex. 6 at 7; Pls. Ex. 10 at 2. Plaintiffs did not request that Gerber "go get" the broader set of documents related to these "marketing claims" now identified in Plaintiffs' motion, which includes

---

[5] Plaintiffs cite this opinion in their memorandum, but conveniently omit this final portion of the paragraph they quote, which dooms their motion. Mem. at 10.

8

"internal communications" and "communications with regulators, federal and state governments, self-regulary organizations, industry or trade organizations, competitors, retailers, third-party advertising agencies, and market research firms." Mot. at 1 (ECF No. 137).

The parties therefore never had the opportunity to discuss why such a request—*i.e.*, for Gerber employees to attempt manually to conduct ad hoc searches to locate such communications—is unreasonable and would be inefficient, and what viable, mutually agreeable alternatives there might be, such as ESI searches. Had the issue been raised, Gerber could have, for instance, explained that the prioritization of certain custodians (as the parties have discussed) who might have responsive documents could help meet Plaintiffs' objectives. Further, Gerber's initial production included such documents to the extent readily available, including communications between Gerber and members of the Baby Food Council, and productions made to the House Subcommittee and others relating to heavy metals, including heavy metals test results, heavy metals internal standards, and communications between Gerber and FDA.

*Second*, Plaintiffs premise their motion in part on their belief that "applying search terms to the *limited number of custodians identified by Gerber* will not adequately identify the universe of responsive documents." Mem. at 2 (ECF No. 138) (emphasis added). As noted above, however, Plaintiffs *unequivocally* agreed with Gerber's proposal on priority custodians (Ex. C at 1) and did not raise an issue regarding the adequacy of custodians, priority or otherwise, prior to filing their motion. Additionally, Gerber has confirmed it will apply agreed upon search terms to agreed upon custodial documents, as well as non-custodial documents (Pls. Ex. 9 at 1), and Plaintiffs have acknowledged the same (Pls. Ex. 10 at 2). To the extent Plaintiffs are unhappy with the possible custodians Gerber identified, they should have already raised that issue with Gerber, and met and conferred with Gerber in good faith to attempt to reach a resolution, before rushing to the Court.

9

### B. Plaintiffs' Baseless Contention that ESI Searches Will Be Inadequate Does Not Entitle Them to Dictate Gerber's Processes for Identifying Responsive Documents

Plaintiffs' motion complicates a simple issue. Plaintiffs' definition of "Marketing Claims" is overbroad and results in requests for production that far exceed the scope of what is relevant or proportionate to the needs of this case. Plaintiffs have agreed "to limit the definition of Marketing Claims by adding ESI search terms, sent by separate letter, and by limiting non-custodial searches, or 'go gets,' to marketing claims regarding the Gerber Baby, Heavy Metals, and Developmental Stages." Pls. Ex. 8 at 2.

In order to avoid a discovery dispute, Gerber had agreed to produce documents relating to these "marketing claims," even though Gerber does not agree documents regarding the Gerber baby logo or developmental stages are relevant, subject only to reaching an agreement on search terms and custodians. The parties disagree only as to whether, at this stage, Gerber must somehow, as Plaintiffs request, conduct "searches for marketing materials on these three claims beyond what would be found through the use of search terms in custodial and non-custodial databases." Ex. E at 2. Plaintiffs offer no factual or evidentiary basis to support their contention that agreement on search terms, as contemplated by the ESI protocol to which they agreed, is an inadequate way to identify the scope of documents Gerber will review for responsiveness.

#### 1. Plaintiffs Cannot Dictate Gerber's Method for Identifying Responsive Documents

Plaintiffs cannot dictate the method by which Gerber identifies responsive documents, which is exactly what their motion to compel seeks to do. Plaintiffs "do[] not have a right to dictate the processes, methodologies, or technologies to be used by [Gerber] in fulfilling its preservation or discovery obligations under the Federal Rules." *The Sedona Principles*, 19 Sedona Conf. J. at 124. Moreover, "a requesting party should not normally be able to restrain the responding party's

AMERICAS 116580814

discovery process to prevent an anticipated, but uncertain, future harm." *Id.* at 123, n. 101. In *Hyles v. New York City*, for example, the plaintiffs sought to force the defendant to use a particular methodology for locating responsive documents instead of search terms, defendant's chosen methodology. 2016 WL 4077114, at *1 (S.D.N.Y. Aug. 1, 2016). The court held that the defendant "as the responding party is best situated to decide how to search for and produce ESI responsive" to the request and therefore "can use the search method of its choice." *Id.* at *2-3. Plaintiffs similarly are not entitled to force Gerber to "go get" certain documents "to prevent an anticipated, but uncertain, future harm" or simply because they prefer that method over the use of search terms.

2. <u>Plaintiffs Must Prove a Deficiency in Gerber's Discovery</u>

It is Plaintiffs' burden to prove a "specific discovery deficiency" in Gerber's production warranting additional efforts to locate responsive ESI. *Gross*, 2020 WL 4336062, at *2; *Enslin*, 2016 WL 7013508, at *2 n. 2. Plaintiffs are entirely wrong in their multiple arguments purporting to shift their burden to Gerber. For example, the court in *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.* expressly rejected a requesting party's attempt to shift "the burden . . . on Defendants to provide enough information to prove their document search was reasonable," confirming that the requesting party carries the "not trivial" burden of showing the responding party's search was not reasonable, based on "concrete evidence." No. 15-6480, 2020 WL 3498161, at *2-4 (E.D. Pa. June 29, 2020).

As an initial matter, it is notable that the three cases Plaintiffs cite as instructive of Gerber's discovery obligations to produce documents all concern challenges to deficiencies in the responding party's identification and production of documents *after* the requesting party already received allegedly inadequate or incomplete document productions—not challenges where a party

11

preemptively asserts, without any evidence, that they believe search terms will be ineffective, as Plaintiffs do here. Mem. at 8-11 (citing *United States v. O'Keefe*, 537 F.Supp.2d 14, 24 (D.D.C. 2008); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 260-61 (D. Md. 2008); *In re Seroquel Prod. Liab. Litig.*, 244 F.R.D. 650, 664 (M.D. Fla. 2007)). Each opinion undermines Plaintiffs' position for additional reasons:

- The court in *O'Keefe* expressly held that if a requesting party contends that search terms the responding party used are "insufficient," then "they [the requesting party] will have to specifically so contend in a motion to compel and their contention must be based on evidence that meets the requirements of Rule 702 of the Federal Rules of Evidence." 537 F. Supp. 2d at 24.

- Plaintiffs contend that "if Gerber insists on using keyword searches it must take 'steps . . . to assure reasonable completeness and quality control' and provide Plaintiffs and the court with information on how it ensured such completeness." Mem. at 9 (citing *In re Seroquel Prod. Liab. Litig.*, 244 F.R.D. at 664). This quotation does not relate to keyword searches, and comes from a footnote in which the court takes issue with the defendant's deficient approach to identifying relevant databases, which violated a court order. *Id.* at 660. In contrast, with respect to search terms, the court held that the defendant's keyword search of documents was "inadequate," citing "shortcomings . . . adequately and persuasively described by *Plaintiffs'* witnesses." *Id.* at 662.

- Finally, Plaintiffs cite *Victor Stanley, Inc.* for the proposition that the party selecting a search methodology "must be prepared to explain the rationale for the method chosen to the court, demonstrate that it is appropriate for the task, and show that it was properly implemented." Mem. at 10 (citing 250 F.R.D at 260-61). This opinion deals with the

use of search methodology for the distinct purpose of identifying and withholding privileged or work-product protected information, and the tests for whether the inadvertent production of privileged information constitutes a waiver. 250 F.R.D at 258. One test in such a case, which is inapposite here, requires consideration of "the reasonableness of the precautions taken to prevent inadvertent disclosure." *Id.* at 259.

    3.    <u>Plaintiffs Provide No Evidence of a Deficiency in the Parties' Agreed Process for Conducting ESI Searches</u>

Here, Plaintiffs fall far short of their required showing and offer no evidence whatsoever to support their demand that Gerber be required to "go get" documents related to marketing claims regarding "the Gerber Baby, Heavy Metals, and Developmental Stages." Ex. 8 at 2.

To summarize the key facts:

With respect to Plaintiffs' request that Gerber "go get" marketing documents regarding heavy metals, the parties agree that there are no marketing claims on Gerber's labels regarding heavy metals. While the parties disagree that non-label statements are relevant, given Plaintiffs only claim to have relied on the labels in making their purchases, Gerber has agreed to "go get" Gerber website pages relating to heavy metals. As Gerber has raised with Plaintiffs, it is not clear what other heavy metal-related "marketing" documents Plaintiffs seek, or why the over 400 search terms Plaintiffs have proposed related to heavy metals, with respect to which the parties are negotiating, would be insufficient to identify such documents.

With respect to the "Gerber Baby" and "Developmental Stages," Plaintiffs contend that Gerber can simply "go get" the requested documents regarding these label features based on Plaintiffs' speculation that the documents they seek should be easily identifiable in a Gerber folder containing ESI regarding marketing. Gerber has repeatedly explained that is not the case, and that there are only certain categories of documents and information it can efficiently "go get," such as

13

the documents it has already produced and other specific information and additional documents it has agreed to collect and produce by manual collection. Pls. Ex. 10 at 1. Gerber has explained that market research and other documents relating to these label features—such as the Gerber baby logo and developmental stages which appear on most if not all of Gerber's infant and toddler products—are not kept in a manner that makes manual retrieval efficient. *Id*

While the parties disagree regarding whether such documents are even relevant, in order to avoid a protracted discovery dispute and motion, Gerber nonetheless agreed to produce responsive documents related to the "Gerber Baby" and "Developmental Stages" from the universe of ESI identified using mutually agreeable search terms in order to compromise and minimize the burden of collecting and producing irrelevant documents. *Id.* This agreement renders Section III.A of Plaintiffs' memorandum inapposite: with respect to this limited issue, there was effectively no remaining dispute as to relevancy, proportionality, or whether the requests were stated with reasonable particularity—provided the parties could agree to search terms.

In an attempt to bolster their position that this approach is inadequate and Gerber must somehow "go get" these documents apart from ESI searches, Plaintiffs made one feeble attempt to propose search terms to capture such documents before filing this motion. Plaintiffs proposed a single term, "Gerber baby," which hits on any document that says "Gerber baby food," and made no attempt to propose even a single search term concerning "development stages." Plaintiffs have claimed they are unable to propose effective search terms because, *e.g.*, they lack knowledge of "how or where Gerber stores, organizes, or refers to its internal marketing documents." Mem. at 9. However, Plaintiffs make allegations in their Complaint about the purported relevance of the "Gerber baby" and "developmental stages" to their claims (*e.g.*, Compl. ¶¶ 80-81), and they thus should be able to propose search terms related to those allegations—Gerber does not have special

14

knowledge to devise search terms about subjects it does not agree are even relevant. And where and how Gerber stores and organizes documents is irrelevant to the content of search terms.

Gerber explained why the term "Gerber baby" was plainly overbroad on July 27, 2022 (Ex. E). Instead of making any further effort to propose search terms tailored to the documents they claim to seek, related to their own allegations in the Representative Complaint, Plaintiffs two days later decided to take the position that they "do not believe that search terms will be sufficient to identify the universe of responsive documents with respect to these claims that Plaintiffs are seeking" (Pls. Ex. 10 at 2) and filed this motion.

Despite Plaintiffs' baseless assertion otherwise, using search terms is a widely accepted and standard method for identifying potentially responsive documents, particularly when a large volume of documents is concerned. *E.g.*, *FDIC v. Appleton*, No. CV 11-476-JAK (PLAx), 2012 WL 10245383, at *5 n.3 (C.D. Cal. Nov. 29, 2012) ("[S]earches for electronically stored documents necessarily and reasonably involve the use of search terms to locate responsive documents."); *EEOC v. McCormick & Schmick's Seafood Rests., Inc.*, No. WMN-08-0984, 2012 WL 380048, at *4 (D. Md. Feb. 3, 2012) ("Common practice governing the discovery of electronically stored information requires the use of search terms to make an extraordinarily burdensome search comply with the tenets of Fed. R. Civ. Proc. 26(b)(2)(C)."); *In re Seroquel Prod. Liab. Litig.*, 244 F.R.D. at 664 (holding that "key word searching is a recognized method to winnow relevant documents from large repositories" and the responding party should "work[] with [the requesting party] from the outset to reach agreement on appropriate and comprehensive search terms and methods"). The parties agreed to negotiate search terms in this case, Gerber has engaged with Plaintiffs for weeks to reach agreement on search terms, and Plaintiffs offer no basis for a departure from that approach.

15

### C. Plaintiffs' Request for a Date of Substantial Completion of Gerber's Document Production Is Premature

Plaintiffs' motion also asks the Court to "order Gerber to provide Plaintiffs with a deadline by which their discovery production will be substantially complete." Mem. at 12. Based on Plaintiffs' citation to Federal Rule of Civil Procedure 34 (*id.*) and the parties' discussion of this issue (*e.g.*, Ex. E at 5), Gerber understands this to be a request for a date of substantial completion of Gerber's document production.

Plaintiff proposed by email on July 22, 2022, that the parties agree to substantially complete discovery by August 22, 2022, and complete it by August 31, 2022. Ex. E at 5. This proposal came a day after Plaintiffs proposed additional search overbroad terms (two weeks after their initial proposal of over 500 search terms) that approximately doubled the number of hits returned. Ex. E. Gerber explained that it did not believe substantial completion by August 22 was feasible, but that it would continue to work quickly in good faith with Plaintiffs on finding a target that works for both sides, to be informed by the agreed document universe, which the parties would know when they reach agreement on search terms and custodians. Ex. E at 5.

Plaintiffs offer no explanation of how Gerber could estimate a date by which its document production will be substantially complete when the parties have not yet reached agreement on search terms and Plaintiffs continue to propose additional overbroad search terms. As Gerber has explained, Gerber is eager to begin the process of reviewing ESI hits and producing responsive documents; the quicker the parties settle on search terms, the quicker Gerber can substantially complete its document production.

### IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion and award Gerber its costs in opposing it.

16

Dated: August 3, 2022        WHITE & CASE LLP

By: _____
Kathryn J. Mims (Va. 81486)
701 Thirteenth Street, NW
Washington, DC 20005
T: (202) 626-3704
F: (202) 639-9355
kmims@whitecase.com

Bryan A. Merryman
(admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
T: (213) 620-7700
F: (213) 452-2329
bmerryman@whitecase.com

J. Frank Hogue
(admitted *pro hac vice*)
701 Thirteenth Street, NW
Washington, DC 20005
T: (202) 626-3623
F: (202) 639-9355
fhogue@whitecase.com

KELLEY DRYE & WARREN LLP

Geoffrey W. Castello
(admitted *pro hac vice*)
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
T: (973) 503-5922
F: (973) 503-5950
gcastello@kelleydrye.com

Attorneys for Defendant
Gerber Products Company

17

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2022, I caused a copy of the foregoing **GERBER PRODUCTS COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSE TO PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS** to be filed electronically with the Clerk of the Court via the Court's ECF system, which will send notification of such filing to all counsel of record.

By: /s/ *Kathryn J. Mims*
Kathryn J. Mims (Va. 81486)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
T: (202) 626-3704
F: (202) 639-9355
kmims@whitecase.com

Attorneys for Defendant
Gerber Products Company

AMERICAS 116580814