IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN RE: GERBER PRODUCTS COMPANY HEAVY METALS BABY FOOD LITIGATION | Master File No. 1:21-cv-00269 (MSN/JFA) |
| This Document Relates to ALL Cases | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT GERBER PRODUCTS COMPANY'S MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

FACTUAL BACKGROUND .................................................................................... 2

    A.    Gerber's Marketing and Labeling Conveys to Parents that its Products are Safe, Suitable, and Healthy for Babies and Young Children. ................................ 2

    B.    Congressional Report Finds that Gerber's Baby Foods are Tainted with Dangerous Levels of Heavy Metals. ................................................................... 3

    C.    Plaintiffs' Allegations and Claims. ........................................................................ 5

ARGUMENT ............................................................................................................ 6

I.      THE DOCTRINE OF PRIMARY JURISDICTION IS INAPPLICABLE. ...................... 6

II.     PLAINTIFFS' CLAIMS ARE NOT PREEMPTED. ........................................................ 12

III.    PLAINTIFFS' CAUSES OF ACTIONS ARE SUFFICIENTLY ALLEGED. ............... 15

    A.    Plaintiffs Have Sufficiently Alleged An Economic Injury. ................................ 15

    B.    Plaintiffs Have Sufficiently Alleged Actionable Omissions to Support Their Fraud-Based Causes of Action, Including a Duty to Disclose. ................... 22

    C.    Plaintiffs Have Adequately Pled Reliance and Causation to Support Their Statutory And Common Law Fraud-Based Claims. .............................................. 28

        1.    Plaintiffs Adequately Plead Causation. ...................................................... 28

        2.    Under the Applicable Laws, Reliance is Either Unnecessary or Adequately Inferred Through Plaintiffs' Allegations. ............................. 29

    D.    Plaintiffs' Virginia Consumer Protection Act Claim Is Properly Asserted on Behalf of a Nationwide Class. ......................................................................... 32

    E.    Plaintiffs Sufficiently Plead Fraudulent Concealment. ........................................ 35

    F.    Unjust Enrichment is an Independent Cause of Action that can be Pled in the Alternative. .................................................................................................... 36

    G.    Plaintiffs Adequately Plead Their Claim for Injunctive Relief. .......................... 38

IV.    Gerber's Introduction Of Dr. Nega Beru's Declaration Is Improper And Must Be Excluded. .............................................................................................................. 39

CONCLUSION ...................................................................................................... 40

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ackerman v. Coca-Cola Co.*,
  No. 09 CV 395(DLI/RML), 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ..........................38

*Acquard v. Big Heart Pet Brands*,
  No. 19-CV-50-JLS, 2020 WL 12904361 (W.D.N.Y. Nov. 30, 2020)....................................37

*Allegra v. Luxottica Retail N. Am.*,
  No. 17-CV-5216 (PKC) (RLM), 2022 WL 42867 (E.D.N.Y. Jan. 5, 2022) ..............20, 28, 30

*Allen v. ConAgra Foods, Inc.*,
  331 F.R.D. 641 (N.D. Cal. 2019)............................................................................................34

*Anderson v. Apple Inc.*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020) ....................................................................................23

*Andes v. United State*s,
  No. 1:19-CV-00005, 2020 WL 3895780 (W.D. Va. July 7, 2020) .........................................34

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) .............................................................................................9, 36

*Backus v. General Mills*,
  122 F. Supp. 3d 909 (N.D. Cal. 2015) ....................................................................................11

*Baranco v. Ford Motor Co.*,
  294 F. Supp. 3d 950 (N.D. Cal. 2018) ....................................................................................30

*Beyer v. Symantec Corp.*,
  333 F. Supp. 3d 966 (N.D. Cal. 2018) ....................................................................................26

*Branin v. TMC Enterprises, LLC*,
  832 F. Supp. 2d 646 (W.D. Va. 2011) ....................................................................................28

*Braun v. Maynard*,
  652 F.3d 557 (4th Cir. 2011) ..................................................................................................21

*Brown v. MCI WorldCom Network Servs., Inc.*,
  277 F.3d 1166 (9th Cir. 2002) ..................................................................................................7

*In re Capital One Consumer Data Sec. Breach Litig.*,
  488 F. Supp. 3d 374 (E.D. Va. 2020) .....................................................................................17

*Carriuolo v. Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) .............................................................16

*Cepelak v. HP Inc.*,
  No. 20-cv-02450-VC, 2021 WL 5298022 (N.D. Cal. Nov. 15, 2021) ....................................26

*Chisolm v. TranSouth Fin. Corp.*,
  194 F.R.D. 538 (E.D. Va. 2000) ...........................................................34

*Clark v. Time Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008) ...........................................................7, 9

*Clay v. Philip Morris USA Inc.*,
  No. 18-cv-03549, 2020 WL 5540195 (N.D. Ill. Feb. 20, 2020) .............................30

*Clenney v. FCA US LLC*,
  No. 22-cv-00547-VC, 2022 WL 2197074 (N.D. Cal. June 20, 2022) ....................35

*Cohen v. Am. Sec. Ins. Co.*,
  735 F.3d 601 (7th Cir. 2013) ...........................................................27

*Colangelo v. Champion Petfoods USA, Inc.*,
  No. 6:18-CV-1228 (LEK/ML), 2020 WL 777462 (N.D.N.Y. Feb. 18, 2020) ...................24

*Cole v. Gen. Motors Corp.*,
  484 F.3d 717 (5th Cir. 2007) ...........................................................28

*Colpitts v. Blue Diamond Growers*,
  527 F. Supp. 3d 562 (S.D.N.Y. 2021) ...................................................20

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*,
  674 F. App x 654 (9th Cir. 2017) .......................................................19

*Connick v. Suzuki Motor Co., Ltd.*,
  675 N.E.2d 584 (Ill. 1996) ...........................................................30

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  No. 9 CV 3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015) ..............................37

*Daniel v. Ford Motor Co.*,
  806 F.3d 1217 (9th Cir. 2015) ......................................................30, 34

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ...........................................................38

*Debernardis v. IQ Formulations, LLC*,
  942 F.3d 1076 (11th Cir. 2019) .........................................................18

*Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*,
965 F.3d 365 (5th Cir. 2020) ................................................36

*Doss v. Gen. Mills, Inc.*,
No. 18-61924-Civ-Scola, 2019 WL 7946028 (S.D. Fla. June 14, 2019), *aff'd,* 816 F.
App'x 312 (11th Cir. 2020). ........................................................21, 22

*Edwards v. FCA US LLC*,
No. 22-cv-01871-WHO, 2022 WL 1814144 (N.D. Cal. June 2, 2022).......................23, 25, 35

*Elias v. Hewlett-Packard Co.*,
No. 12-cv-00421-LHK, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014) ....................................23

*Elkind v. Revlon Products Corp.*,
No. 14-cv-02484, 2015 WL 2344134 (E.D.N.Y. May 14, 2015)...........................................12

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
No. H-01-3624, G-03-0481, 2010 WL 9077875 (S.D. Tex. Jan. 19, 2010)...........................31

*Environmental Technology Council v. Sierra Club*,
98 F.3d 774 (4th Cir. 1996) ................................................6

*Ernst v. Child & Youth Servs.*,
108 F.3d 486 (3d Cir. 1997).................................................40

*Feeley v. Total Realty Mgmt.*,
660 F. Supp. 2d 700 (E.D. Va. 2009) ....................................33

*Fisher v. Monster Beverage Corp.*,
656 Fed. Appx. 819 (9th Cir. 2016)..................................6, 8, 9

*Fishon v. Mars Petcare US, Inc.*,
501 F. Supp. 3d 555 (M.D. Tenn. 2020)................................34

*Florida Lime & Avocado Growers, Inc., v. Paul*,
373 U.S. 132 (1963)..................................................12, 13

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Practices Litig.*,
2:19-md-02901, 2022 WL 551221 (E.D. Mich. Feb. 23, 2022)................................34

*Freeman v. MAM USA Corp.*,
528 F. Supp. 3d 849 (N.D. Ill. 2021) ....................................28

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000)..................................................15

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
317 F.R.D. 374 (S.D.N.Y. 2016) ....................................38

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...................................................................17

*Haggag v. Welch Foods, Inc.*,
2014 WL 1246299 (C.D. Cal. Mar. 24, 2014) ........................................................11

*In re Hardieplank Fiber Cement Siding Litig.*,
No. 12-md-2359, 2013 WL 3717743 (D. Minn. July 15, 2013)...............................34

*Harris v. LSP Products Group, Inc.*,
No. 2:18-cv-02973-TLN-KJN, 2021 WL 2682045 (E.D. Cal. June 30, 2021) ......................26

*Hasemann v. Gerber Prod. Co.*,
331 F.R.D. 239 (E.D.N.Y. 2019) ......................................................................17, 19

*Hester v. New Amsterdam Cas. Co.*,
412 F.2d 505 (4th Cir. 1969) ..................................................................................16

*Heuer v. Nissan N. Am., Inc.*,
No. 17-60018-Civ-Scola, 2017 WL 3475063 (S.D. Fla. Aug. 11, 2017) ...............37

*Higgerson v. Farthing*,
96 Va. Cir. 58 (2017) ...............................................................................................37

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) .............................................................................22, 26

*Holk v. Snapple Beverage Corp.*,
575 F.3d 329 (3d Cir. 2009).................................................................................13, 14

*Hubert v. Gen. Nutrition Corp.*,
No. 2:15-cv-01391, 2017 WL 3971912 (W.D. Pa. Sept. 8, 2017) ....................18, 19

*Insteel Indus. v. Costanza Contracting Co.*,
276 F. Supp. 2d 479 (E.D. Va. 2003) .....................................................................33

*Int'l Star Class Yacht Racing v. Tommy Hilfiger U.S.A., Inc.*,
146 F.3d 66 (2d Cir. 1998).......................................................................................40

*James G. Davis Constr. Corp. v. FTJ, Inc.*,
841 S.E.2d 642 (Va. 2020).......................................................................................37

*In re Johnson & Johnson Talcum Powder Products. Mktg., Sales Practices & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018).....................................................................................18

*In re Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litig.*,
497 F. Supp. 3d 552 (N.D. Cal. 2020) ..........................................................6, 9, 10

*Kimca v. Sprout Foods, Inc.*,
    No. 21-12977 (SRC), 2022 WL 1213488 (D.N.J. Apr. 25, 2022)..............................17, 18, 19

*Kommer v. Bayer Consumer Health*,
    710 F. App'x 43 (2d Cir. 2018) ..........................................................................................38

*Lalli v. FCA US, LLC*,
    446 F. Supp. 3d 218 (E.D. Mich. 2020) ("The Florida Supreme Court has limited the
    state's economic loss rule to products liability cases") ........................................................36

*Larry J. Soldinger Assocs., Ltd. v. Aston Martin Lagonda of N. Am., Inc.*,
    No. 97 C 7792, 1999 WL 756174 (N.D. Ill. Sept. 13, 1999)..................................................24

*Leiner v. Johnson & Johnson Consumer Companies, Inc.*,
    215 F.Supp.3d 670 (N.D. Ill. 2016) .....................................................................................38

*Lilly v. ConAgra Foods, Inc.*,
    743 F.3d 662 (9th Cir. 2014) ...............................................................................................13

*LiMandri v. Judkins*,
    52 Cal. App. 4th at 337 ........................................................................................................27

*In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. & Sales
    Prac. Litig.*,
    No. 1:16md2743, 2017 WL 2911681 (E.D. Va. July 7, 2017)...............................................29

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices.
    & Prod. Liab. Litig.,* ("*Lumber Liquidators Formaldehyde*"),
    No. 1:15-md-2627 (AJT/TRJ), 2017 WL 2646286, at *5 (E.D. Va. June 20, 2017)
    ..................................................................................................................................... *passim*

*Marcus v. Dennis*,
    No. 1:21-cv-01085, 2022 WL 1527524 (E.D. Va. May 13, 2022)..........................................32

*Marek v. Lehrer*,
    No. 03-17-00509-CV, 2018 WL 6217566 (Tex. App. Nov. 29, 2018) ...................................31

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    440 F. Supp. 3d 447 (D. Md. 2020)..................................................................................17, 19

*McCrary v. Elations Co. LLC*,
    No. EDCV 13-0242 (JGB), 2014 WL 12589137 (C.D. Cal. Dec. 2, 2014) ...........................20

*McMahon v. Bumble Bee Foods LLC*,
    148 F. Supp. 3d 708 (N.D. Ill. 2015) ...................................................................................36

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996)..............................................................................................................13

*Milisits v. FCA US LLC,*
 No. 20-cv-11578, 2021 WL 3145704 (E.D. Mich. July 26, 2021) ........................................34

*Miller v. Samsung Elecs. Am., Inc.,*
 No. 14-4076, 2015 WL 3965608 (D.N.J. June 29, 2015) ........................................36

*In re MyFord Touch Consumer Litig.,*
 46 F. Supp. 3d 936 (N.D. Cal. 2014) ........................................36

*Owens v. DRS Auto. Fantomworks, Inc.,*
 288 Va. 489 (2014) ........................................32

*Phillips v. Loudoun Cnty. Pub. Sch.,*
 No. 1:19-cv-501, 2020 WL 2205065 (E.D. Va. May 6, 2020) ........................................39

*Physicians Comm. For Responsible Med. v. General Mills, Inc.,*
 2006 WL 3487651 (E.D. Va. Nov. 30, 2006) ........................................12

*Pinney v. Nokia,*
 402 F.3d 430 (4th Cir. 2005) ........................................12

*Pledger v. Lynch,*
 5 F.4th 511 (4th Cir. 2021) ........................................33

*In re: Plum Baby Food Litig.,*
 No. 4:21-cv-00913-YGR (N.D. Cal. Jan. 12, 2022), ECF No. 125 ........................9, 12, 21

*Posey v. Sw. Bell Yellow Pages, Inc.,*
 878 S.W.2d 275 (Tex. App. 1994) ........................................31

*Pulse Creations, Inc. v. Vesture Grp., Inc.,*
 154 F. Supp. 3d 48 (S.D.N.Y. 2015) ........................................39

*Quidera v. Blackstone Labs, LLC.,*
 No. 20-cv-80898, 2021 WL 4958789 (S.D. Fla. Mar. 8, 2021) ........................................11

*Rattagan v. Uber Technologies,*
 Case No. S272113 (Cal.) ........................................36

*Rattagan v. Uber Technologies, Inc.,*
 19 F.4th 1188 (9th Cir. 2021) (noting California Supreme Court "expressly declined
 to address whether another type of fraud—intentional concealment—likewise
 constitutes an independent tort warranting an exception") ........................................35, 36

*Rhoades v. Avon Prods., Inc.,*
 504 F..3d 1151, 1165 (9th Cir. 2007) ........................................9

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
   102 P.3d 268 (Cal. 2004) ...................................................................35

*Robles v. Domino's Pizza, LLC*,
   913 F.3d 898 (9th Cir. 2019) ..............................................................10

*Rojas v. Bosch Solar Energy Corp.*,
   443 F. Supp. 3d 1060 (N.D. Cal. 2020) ...............................................37

*Sabo v. Wellpet, LLC*,
   282 F. Supp. 3d 1040 (N.D. Ill. 2017) .................................................20

*Schneider v. Chipotle Mexican Grill, Inc.*,
   328 F.R.D. 520 (N.D. Cal. 2018) .........................................................20

*Sciortino v. Pepsico, Inc.*,
   108 F. Supp. 3d 780 (N.D. Cal. 2015) ....................................10, 12, 14

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ...........................................................2, 33, 34

*Simpson v. Champion Petfoods USA, Inc.*,
   397 F.3d 952 (E.D. Ky. 2019) .............................................................27

*State ex rel. Stratton v. Roswell Indep. Sch.*, 1991-NMCA-013, 111 N.M. 495, 806 P.2d
   1085..........................................................................................14, 15

*Starr v. VSL Pharms., Inc.*,
   509 F. Supp. 3d 417 (D. Md. 2020) .....................................................31

*Student A v. Liberty Univ., Inc.*,
   No. 6:20-cv-00023, 2022 WL 1423617 (W.D. Va. May 5, 2022) ("The Supreme
   Court of Virginia has . . . explained that there is no per se bar on pleading unjust
   enrichment claims alongside contract claims.") ...................................37

*Sud v. Costco Wholesale Corp.*,
   229 F. Supp. 3d 1075 (N.D. Cal. 2017) ...............................................31

*In re Takata Airbags Product Liability Litig.*,
   524 F. Supp. 3d 1266 (S.D. Fla. 2021) (Texas, Florida, and Virginia do not require
   fiduciary relationship)........................................................................27

*Tiara Condo. Ass'n v. Marsh & McLennan Cos.*,
   110 So. 3d 399 (Fla. 2013)..................................................................36

*Townsend v. Monster Beverage Corp.*,
   303 F. Supp. 3d 1010 (C.D. Cal. 2018) ...............................................29

*Tran v. Sioux Honey Ass'n, Coop.*,
   2017 WL 558276 (C.D. Cal. Oct. 11, 2017)................................................................10, 11

*U.S. v. Western Pac. R. Co.*,
   352 U.S. 59 (1956)..............................................................................................................6

*Union Asset Mgmt. Holding AG v. Sandisk LLC*,
   227 F. Supp. 3d 1098 (N.D. Cal. 2017) ............................................................................39

*United States v. Berkowitz*,
   927 F.2d 1376 (7th Cir.1991) ...........................................................................................15

*United States v. Szur*,
   289 F.3d 200 (2d Cir. 2002)..............................................................................................27

*W. Pac. Elec. Co. Corp. v. Dragados/Flatiron*,
   534 F. Supp. 3d 1209 (E.D. Cal. 2021).............................................................................30

*Warner v. StarKist Co.*,
   No. 1:18-cv-406, 2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019)......................................37

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008) ............................................................................................24

*Williams v. Tesla, Inc.*,
   No. 20-cv-08208-HSG, 2022 WL 899847 (N.D. Cal. Mar. 28, 2022) ...............................35

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) .....................................................................................25, 26

*Womick v. Kroger Co.*,
   No. 21-CV-00574-NJR, 2022 WL 673095 (S.D. Ill. Mar. 7, 2022)...................................38

*Wyeth v. Levine*,
   555 U.S. 555 (2009).............................................................................................13, 14, 15

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1134 (C.D. Cal. 2010) ............................................................................24

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
   780 F.3d 597 (4th Cir. 2015) .......................................................................................39, 40

*In re Zetia (Ezetimibe) Antitrust Litig.*,
   No. 2:18-md-2836, 2019 WL 1397228 (E.D. Va. Feb. 6, 2019), *report and
   recommendation adopted as modified*, *In re Zetia (Ezetimibe) Antitrust Litig.* 400 F.
   Supp. 3d 418 (E.D. Va. 2019)...........................................................................................33

*In re Zetia*,
    400 F. Supp. 3d at 434 & 441 ...............................................................................33

STATUTES

21 U.S.C. § 341-1 .......................................................................................................14

21 U.S.C. § 342 ..........................................................................................................14

Federal Food, Drug, and Cosmetic Act ............................................................ *passim*

Florida Deceptive and Unfair Trade Practices Act............................................16, 17, 30

FTCA ........................................................................................................................33

Illinois Consumer Fraud And Deceptive Business Practices Act..................................30

North Carolina Unfair and Deceptive Trade Practices Act ........................................33

Nutrition Labeling and Education Act.................................................................13, 14

Pub. L. 101-535, § 6(c)(2), 104 Stat. 2343 (1990) .....................................................14

Pub. L. No. 101-535, § 6(c)(1)......................................................................................14

Song-Beverly Act..........................................................................................................6

Tex. Bus. & Com. Code Ann. § 17.50...............................................................30, 31

Texas's Deceptive Trade Practices Act ....................................................................30

Va. Code Ann. § 59.1-197 ..........................................................................................32

Va. Code Ann. § 59.1-204 ....................................................................................32, 34

Va. Code § 59.1-200 ...................................................................................................32

Virginia Consumer Protection Act, Virginia Code Ann. §59.1-196 *et seq.*(" VCPA") ........ *passim*

OTHER AUTHORITIES

"Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and
    Mercury" ("Congressional Report")...................................................................3, 14

Fed. R. Civ. P. 23 ..........................................................................................2, 3, 33, 34

Fed. R. Evid. 201 .......................................................................................................40

# INTRODUCTION

For years, Gerber has held a special position of trust with families, promising that the health and safety of children is the company's top priority. Gerber breached that trust. It chose to sell baby food products ("Products")[1] with toxic and harmful heavy metals such as arsenic, lead, cadmium, and mercury ("Heavy Metals"). It is undisputed that these Heavy Metals have no health benefits and that early childhood exposure to these harmful toxins is detrimental to children's health and development. This case thus poses one overarching issue: did Gerber lawfully conceal and withhold the presence or material risk of Heavy Metals and other material facts from parents, although it knows parents would avoid buying Gerber products if it told the truth?

Gerber tries to avoid answering this question. It asks the Court to dismiss or stay the action on primary jurisdiction grounds. But there is no basis for deferring to the FDA here, since this Court or the trier of fact are quite capable of adjudicating Plaintiffs' omission claims. Moreover, the FDA cannot issue any rulings to resolve Plaintiffs' claims, and in any event, the FDA has not taken any steps to regulate the labeling of baby foods with Heavy Metals. Similarly, Gerber fails to identify any federal law or regulation in conflict with Plaintiffs' claims. This is fatal to its argument that federal law preempts Plaintiffs' claims.

Next, Gerber claims its choice to hide the presence or risk of Heavy Metals from parents causes no harm. But Plaintiffs have pled the existence of an injury because reasonable parents would not choose to buy Gerber's Products knowing the truth about the Heavy Metals in its Products, about its testing, and about its internal standards. This same point helps establish causation and reliance, since each Plaintiff alleges they reviewed the Product labels in question

---

[1] The full list of Gerber baby foods at issue are listed in Plaintiffs' Representative Complaint, ¶ 1. All references to "¶ _" are to the Representative Complaint.

1

and would have chosen not to buy the Products had Gerber been honest with them. In these types of false advertising cases, Plaintiffs are not required to allege a personal injury. Moreover, Plaintiffs have sufficiently alleged their fraud-based claims, including that Gerber had a duty to disclose the alleged material omissions, namely, that its Products contained or were at material risk of containing Heavy Metals, and that it did not test all ingredients or finished products for all Heavy Metals, among other things.

Gerber's challenges to Plaintiffs' nationwide claims under the Virginia Consumer Protection Act are equally erroneous. Courts within the Fourth Circuit have held that non-Virginia residents are permitted to sue under the VCPA because that statute extends relief to "any person" and, by its terms, does not require a loss to occur in Virginia. And under the Supreme Court's decision in *Shady Grove*, class actions in federal court are governed by Fed. R. Civ. P. 23.

Gerber's remaining arguments also lack merit. The economic loss doctrine does not bar fraudulent concealment claims under California or Florida law. And contrary to Gerber's arguments, Plaintiffs' unjust enrichment claims are independent causes of action, are not duplicative of their statutory or tort claims, and in any event, may be pled in the alternative. Finally, Plaintiffs have standing to pursue injunctive relief notwithstanding that they now know about the Heavy Metals in Gerber's Products. What matters is that Plaintiffs cannot trust Gerber's Product labels in the future. Gerber's motion to dismiss should be denied.

## **FACTUAL BACKGROUND**

A.  **Gerber's Marketing and Labeling Conveys to Parents that its Products are Safe, Suitable, and Healthy for Babies and Young Children.**

Gerber knows that nothing could be more important to a parent's decision on what baby food to buy than whether the product is safe and healthy for their child. This is evidenced by Gerber's promises to parents on its website that the "health and safety of your little one has been

and will always be our highest priority," and that "100% of our products meet all FDA requirements." ¶ 76. Gerber claims that it follows an "annual testing plan featuring regular safety tests of finished products." *Id.* Gerber also promises that its farmers are using the "best in class practices to ensure quality ingredients and minimize the presence of any unwanted heavy metals." ¶ 77. In its "Clean Field Farming" marketing campaign, Gerber states that some soil "can have naturally high levels of nitrates and heavy metals which you don't want in your baby's food." ¶ 78. "That's why," Gerber claims, it has "created requirements for growing our fruits and veggies" that are among the strictest in the world. *Id.*

Gerber's product packaging uniformly conveys to consumers that its Products are safe and suitable for consumption by babies and young children. ¶ 80. Each Gerber Product features the famous "Gerber Baby" the company is known for; the iconic logo is meant to convey that Gerber is a company that cares about the health and safety of children. *Id.* Product packages also have other indications that convey the impression that they are safe and suitable for babies and young children. ¶ 81. For example, the Gerber Puff's package depicts a crawling baby and states the product supports "brain development and learning ability." *Id.* Considered as a whole, a reasonable consumer would interpret that the Gerber Puffs are suitable for consumption by babies. *Id.* Gerber's other Products also convey the same message. ¶¶ 80-106. Gerber, however, has never disclosed to consumers  on its label that its Products contain, or are at material risk of containing, Heavy Metals, or other material facts about its testing and internal standards. ¶¶ 11, 84, 87, 90, 93.

## B.   Congressional Report Finds that Gerber's Baby Foods are Tainted with Dangerous Levels of Heavy Metals.

On February 4, 2021, the U.S. House of Representatives Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform (the "Subcommittee"), released a report titled, "Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury"

("Congressional Report"). The Congressional Report revealed that Gerber knowingly distributed and sold baby foods with toxic heavy metals such as arsenic, lead, cadmium, and mercury. ¶¶ 107-08. The Congressional Report also detailed the harmful effects of Heavy Metals to children based on numerous scientific studies and noted that the FDA has declared that arsenic, lead, cadmium, and mercury are dangerous to human health, especially to babies and young children. ¶¶ 42, 47.[2] Babies and young children are especially vulnerable to the effects from exposure to Heavy Metals because they are small, and their organs are developing. ¶ 44.

According to the Congressional Report,

Baby food manufacturers hold a special position of public trust. Consumers believe they would not sell unsafe products. Consumers also believe that the federal government would not knowingly permit the sale of unsafe baby food. As this staff report reveals, baby food manufacturers and federal regulators have broken the faith.

¶ 140. The limited testing that Gerber provided to the Subcommittee showed that Gerber's finished baby food products contained ingredients with significant levels of Heavy Metals. ¶ 108. For example, results from 2017-2019 for arsenic (in rice flour), lead (including in sweet potatoes), and cadmium (carrots) showed such significant levels. *See, e.g.*, ¶¶ 10-112. The Subcommittee faulted Gerber for not testing finished products, which tend to have higher levels of Heavy Metals than ingredients. ¶¶ 5, 120. The Subcommittee's criticism was valid because testing has shown that Gerber's rice cereal products had up to 116 ppb arsenic, above the 100 ppb action level set by the FDA for rice cereal. ¶¶ 118-19.

The Subcommittee decried Gerber's limited testing as showing a "willingness to use

---

[2] The World Health Organization ("WHO") has similarly declared arsenic, lead, cadmium, and mercury as dangerous for babies and young children. ¶ 42. The Department of Health and Human Services' Agency for Toxic Substances and Disease Registry ("ATSDR") has ranked arsenic as the number one substance that poses the most significant threat to human health, lead as number two, mercury as number three, and cadmium as number seven. ¶¶ 49, 53, 61, 68.

ingredients that contained dangerous lead levels." ¶ 110. The Chairman of the Subcommittee told

Consumer Reports that, "Left to their own devices, baby food makers have set testing standards in

excess of what recommended standards are, and even then, they often violate their standards."

¶ 115. Internal documents showed that Gerber set an internal limit of 40 ppb for lead but sold

products with ingredients having 48 ppb lead. ¶¶ 110, 114. As to cadmium, Gerber's limited testing

showed that it used multiple batches of carrots containing as much as 87 ppb. ¶ 111. The

Subcommittee criticized Gerber for burying its head in the sand as to mercury. ¶ 112. According

to the Subcommittee, Gerber rarely tested for mercury in its baby foods and then only in certain

ingredients such as carrots, sweet potatoes, and lemon juice concentrate. *Id.*

In September 2021, the Subcommittee released a supplemental report, titled, "New

Disclosures Show Dangerous Levels of Toxic Heavy Metals in Even More Baby Foods"

("Supplemental Congressional Report"). That report also castigated Gerber for continuing to sell

its rice cereals with nearly identical inorganic arsenic levels (up to 116 ppb inorganic arsenic) as

Beech-Nut's rice cereal, instead of issuing a recall like Beech-Nut. ¶ 119.

> The Subcommittee has criticized both baby food manufacturers and the FDA:
>
> To this day, baby foods containing toxic heavy metals bear no label or warning to parents. Manufacturers are free to test only ingredients, or, for the vast majority of baby foods, to conduct no testing at all. FDA has only finalized one metal standard for one narrow category of baby food, setting a 100 ppb inorganic arsenic standard for infant rice cereal. But this FDA standard is far too high to protect against the neurological effects on children.[3]

### C.    Plaintiffs' Allegations and Claims.

Plaintiffs allege claims for statutory violations of the consumer protection statutes of

California, Florida, Illinois, New York, Texas, and Virginia, and common law claims under each

---

[3] *See* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

of those state laws for fraudulent concealment/fraud by omission, and unjust enrichment.[4]

Plaintiffs' claims rest on allegations that Gerber failed to disclose three pieces of material information about its Products, namely, that (1) they contain or were at material risk of containing Heavy Metals; (2) Gerber inadequately tested, or never tested, for all Heavy Metals in all the ingredients it uses and/or its finished products; and (3) when Gerber does set internal standards, it allows for the sale of Products with Heavy Metals in amounts that could cause harm to babies and children and at times, the Baby Food Products have failed to meet even those internal standards. ¶¶ 11, 122, 142, 190, 203, 216, 230, 243, 253, 264, 282, 293, 312, 329, 346, 365. Plaintiff do not seek an order recalling the Products or a declaration that the Products are adulterated or unsafe. Instead, Plaintiffs ask that they be awarded damages for these material omissions and that the Court issue the appropriate injunctive relief.

## ARGUMENT

### I.   THE DOCTRINE OF PRIMARY JURISDICTION IS INAPPLICABLE.

There is no "fixed formula for applying the doctrine of primary jurisdiction." *U.S. v. Western Pac. R. Co.,* 352 U.S. 59, 64 (1956); *Environmental Technology Council v. Sierra Club*, 98 F.3d 774, 789 (4th Cir. 1996). In false advertising cases such as this one, courts have repeatedly declined to invoke the doctrine. *See, e.g., Fisher v. Monster Beverage Corp.,* 656 Fed. Appx. 819 (9th Cir. 2016) (violations of consumer-protection laws related to deceptive marketing and advertising were "not in the sole purview of the FDA . . . courts routinely resolve such claims"; *In re Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litig.,* 497 F. Supp. 3d 552, 583 (N.D. Cal. 2020). This is because primary jurisdiction does not require "that all claims within an agency's purview be decided by the agency. Nor is it intended to secure expert advice for the

---

[4] After further consideration, Plaintiffs agree to dismiss their claims under the Song-Beverly Act and for breach of the implied warranty of merchantability.

courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002). The circumstances under which primary jurisdiction should apply have been described as "limited." *Clark v. Time Warner Cable,* 523 F.3d 1110, 1114 (9th Cir. 2008).

Gerber's primary jurisdiction arguments are based on a mischaracterization of Plaintiffs' claims and the FDA's Closer to Zero Plan. ECF No. 133 at 6. First, Plaintiffs allege consumer claims based on Gerber's failure to disclose material facts that consumers, including parents, would want to know when deciding what foods to buy and feed their kids, or how much of certain foods to feed their kids. ¶ 11. For example, Plaintiffs allege that Gerber failed to disclose that its Products contain, or were at material risk of containing, Heavy Metals, which are known to be harmful to babies and young children. Liability will turn on whether Gerber misled reasonable consumers by omitting these facts and whether they were material. Likewise, liability for Plaintiffs' claim that Gerber failed to disclose that it inadequately tested for Heavy Metals in its ingredients and finished products will turn on whether Gerber misled reasonable consumers by omitting these facts and whether such facts were material. Contrary to Gerber's assertions, Plaintiffs do not allege that the Products were adulterated.[5] Plaintiffs also do not seek to impose any labeling requirements that are inconsistent with federal law. Indeed, the FDA does not regulate the labeling of baby foods with Heavy Metals.

---

[5] In mischaracterizing Plaintiffs' claims, Gerber appears to focus on the Complaint's allegations describing the Congressional Report's findings that: (1) Gerber's Products were unsafe due to the presence of Heavy Metals (¶¶ 108, 140), (2) the amounts of Heavy Metals in Gerber's foods were excessive (¶ 52, 107, 114-15), and (3) that consumers would not believe that manufacturers would sell unsafe products (¶ 108). But a complete and fair reading of the Complaint shows that Plaintiffs' claims do not turn on proving whether Gerber's products were safe, as discussed herein, but rather whether Gerber's omissions were material to a reasonable person. Gerber understands this (ECF No. 133 at 19), yet recasts the allegations to support its primary jurisdiction argument.

Second, Plaintiffs' claims also do not implicate the FDA's Closer to Zero Plan, which does not address the labeling of baby foods with Heavy Metals. Recognizing that Heavy Metals are harmful to children, over the next several years, the FDA will work on reducing "exposure to arsenic, lead, cadmium, and mercury from foods eaten by babies and young children" to as "Close to Zero" as possible. ECF Nos. 135-3, 135-4. The FDA has prioritized "babies and young children because their smaller bodies and metabolism make them more vulnerable to the harmful effects of these contaminants." ECF No. 135-4. Through the Closer to Zero Plan, over the course of the next several years and well beyond 2024, the FDA has set a goal of setting action levels for Heavy Metals. *Id.* These action levels, however, are not binding, but are based on what is achievable (which is why they are not called safe levels), and are just one piece of information the FDA will use to determine if a food product is adulterated and should be recalled.  Moreover, these action levels will only apply prospectively, not to the Products Gerber sold in the past and that are at issue here.

In cases alleging claims like those here, courts have refused to apply the doctrine of primary jurisdiction. For example, in *Fisher v. Monster Beverage Co.,* 656 Fed. Appx. 819, where the plaintiff alleged that he interpreted the defendant's representations to mean that Monster beverages were safe, the Ninth Circuit held that the district court abused its discretion in applying primary jurisdiction to the plaintiff's claims, which were to "remove any false or misleading statements or omissions, or to add the sort of safety warnings expressly excluded from preemption but were false and misleading regarding health risks." *Id.* at 824. According to the Ninth Circuit:

> Plaintiffs do not allege that Monster's marketing of the Monster Drinks violated the FDCA, and do not seek to impose any labeling requirements inconsistent with federal law. Instead, they allege violations of consumer-protection laws related to deceptive marketing and advertising. Such cases are not in the sole purview of the FDA; indeed, courts routinely resolve such claims.

8

*Id.*

Gerber fails to discuss in its brief that in a substantially similar case alleging that Plum failed to disclose that its baby foods had harmful Heavy Metals, Judge Gonzalez Rogers declined to apply primary jurisdiction, holding:

> The Court need not rely on the FDA's expertise or its potential guidance on action levels to determine whether Plum's alleged omissions are actionable given the allegations of the operative complaint. *See Clark* [*supra*] ("[T]he doctrine is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit.") (internal quotation marks omitted). Moreover, uncertainty over how and when the FDA will act counsels against an indefinite stay. *See Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 760 (9th Cir. 2015) ("'[E]fficiency' is the 'deciding factor' in whether to invoke primary jurisdiction.") (quoting *Rhoades v. Avon Prods., Inc*., 504 F..3d 1151, 1165 (9th Cir. 2007)).

*In re: Plum Baby Food Litig.,* No. 4:21-cv-00913-YGR (N.D. Cal. Jan. 12, 2022), ECF No. 125 at 2:7-17.

In *In re Juul Labs,* where the plaintiffs alleged that the defendants failed to warn and omitted material facts regarding the amount of nicotine delivered through electronic nicotine delivery systems ("ENDS"), the court decline to invoke the primary jurisdiction doctrine notwithstanding a ruling that was pending from the FDA on whether the defendants could continue to sell its products, and if so how, "with approved designs (e.g., nicotine yields, ingredients, and flavorings) and marketing strategies (e.g., product labels, disclosures/warnings, and sales strategies." *Id.,* 497 F. Supp. 3d at 584. According to the court, any future FDA ruling would be "forward-looking," and would not "affect, much less resolve, the bulk of plaintiffs' liability theories" based on past conduct. *Id.* at 583. While the court acknowledged that the FDA had a high level of expertise in regulating tobacco and nicotine containing products, and that its responsibility and expertise with respect to ENDS was relatively new and developing, "the technical and policy

9

questions that will be addressed by the FDA do not supplant the legal and fact-based issues to be resolved by [the court] or a trier of fact." *In re Juul Labs,* 497 F. Supp. 3d at 583.

Here, there are no regulations regarding the labeling of baby foods with Heavy Metals; nor is there a ruling from the FDA pending on how such products should be labeled. Moreover, even if Plaintiffs' claims did implicate the FDA's action levels—which they do not—whatever action levels the FDA may set in the future (2024 and beyond) will not resolve Plaintiffs' claims for past conduct and will only delay the case for some unknown duration. And while the FDA does have experience in regulating foods and has studied heavy metals for years, the Court or a trier of fact can capably decide whether Gerber's omissions could mislead a reasonable consumer. Both can weigh evidence regarding the undisputed, harmful effects of Heavy Metals and how its presence may impact a purchase decision. *See Robles v. Domino's Pizza, LLC,* 913 F.3d 898, 911 (9th Cir. 2019) ("If the court requires specialized or technical knowledge to understand assertions, the parties can submit expert testimony"); *Sciortino v. Pepsico, Inc.,* 108 F. Supp. 3d 780, 814 (N.D. Cal. 2015) (finding that although the claims did involve "some scientific analysis of the actual health and safety risk of 4-Mel," the state law misrepresentation and omission clams did "not clearly require the FDA's expertise or benefit from uniformity in administration").

The decisions Gerber cites are inapt. In *Tran v. Sioux Honey Ass'n, Coop.,* 2017 WL 558276 (C.D. Cal. Oct. 11, 2017), the court stayed the case based on the plaintiff's concession that the claims depended on "what constitutes a safe level of glyphosate in honey" and on a concurrent Environmental Protection Agency review of the chemical and its health risks. *Id.* at *2-3. In contrast, Plaintiffs' claims here are based on whether reasonable consumers would want to know if Gerber's Products contain, or are material risk for containing, Heavy Metals, which have been repeatedly recognized as harmful to children by the food industry (including Gerber), scientists,

and medical professionals. Also, unlike in *Tran*, where the court found that a reasonable consumer's understanding of the words "Pure" or "100% Pure" with respect to trace amounts of glyphosate in honey "is closely related to whether those trace amounts are safe for human consumption," reasonable consumers here would want to avoid risking the health of their children and to know whether Gerber's Products contain, or are at material risk for containing, Heavy Metals, and about Gerber's internal standards and testing. As Gerber has acknowledged, parents do not want Heavy Metals in the baby foods they buy. ¶¶ 7, 77-78.

In *Backus v. General Mills,* 122 F. Supp. 3d 909 (N.D. Cal. 2015), the plaintiff did not allege false advertising/omission claims as Plaintiffs do here; rather, the plaintiff alleged that it was unlawful for General Mills to use trans fats in any amount in its baking mixes, although the FDA permitted companies to sell products with partially hydrogenated oils until 2018 and to submit food additive petitions to show that such additives could be used in small amounts. *Id.* at 916-17, 924. Similarly, in *Quidera v. Blackstone Labs, LLC.,* No. 20-cv-80898, 2021 WL 4958789, at *4 (S.D. Fla. Mar. 8, 2021), all the plaintiff's claims were based on the allegation that a certain stimulant was illegal where the FDA had not declared it so. *Id.*[6]

Given that there is no federal regulation, FDA ruling, or guidance pending on the labeling of baby foods with Heavy Metals, and Plaintiffs' claims do not implicate the Closer to Zero Plan, if the Court or a jury ultimately finds that Gerber failed to disclose material facts to reasonable consumers, that decision would not conflict with any future, non-binding action levels set by the

---

[6] Gerber's reliance on *Haggag v. Welch Foods, Inc.,* 2014 WL 1246299, at *5 (C.D. Cal. Mar. 24, 2014), is misplaced. The issue in that case was whether the defendant's Heart Health Label constituted an implied health claim. The FDA had assumed the role of deciding when a particular claim constitutes an implied health claim, issued guidance stating that there was no bright-line definition for implied health claims, and said it would decide on a case-by-case basis, thereby consciously refraining from establishing a precise definition for health claims.

FDA for use in determining whether a product is adulterated and should be recalled.[7] *See Elkind v. Revlon Products Corp.,* No. 14-cv-02484, 2015 WL 2344134, at *10 (E.D.N.Y. May 14, 2015); *Scortino*, 108 F. Supp. 3d at 813.

## II.   PLAINTIFFS' CLAIMS ARE NOT PREEMPTED.

Gerber raises a narrow preemption argument. It does not argue that Plaintiffs' claims are expressly preempted by any federal law or regulation. Instead, Gerber asserts that Plaintiffs' claims are impliedly preempted. Gerber's arguments and the authorities on which it relies are substantially similar to those made by Plum in a similar case,[8] and which Judge Gonzalez Rogers has already rejected.[9]

As in *In re Plum Baby Food Litig*., Gerber has failed to identify any federal laws or regulations with which Plaintiffs' claims purportedly conflict. There are two types of implied (or conflict) preemption: "when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pinney v. Nokia*, 402 F.3d 430, 457 (4th Cir. 2005); *Florida Lime & Avocado Growers, Inc., v. Paul,* 373 U.S. 132, 141-43 (1963). A finding of impossibility requires more than a showing of differences between federal and state standards; impossibility arises only where there is an "inevitable collision between the two schemes of

---

[7] *Physicians Comm. For Responsible Med. v. General Mills, Inc.,* 2006 WL 3487651, at *6 (E.D. Va. Nov. 30, 2006) is also distinguishable because there, the plaintiffs filed petitions with both the FTC and the FDA over the same subject matter in their case, which was filed two months earlier in federal court. In that instance, invoking the primary jurisdiction doctrine was appropriate because of the risk of inconsistent rulings between the agencies and the court.

[8] *See In re In re: Plum Baby Food Litig.,* No. 4:21-cv-00913-YGR (N.D. Cal.), Motion and Motion to Dismiss, or in the Alternative, to Stay; Memorandum of Points and Authorities in Support Thereof, ECF No. 103 at14:10-19.

[9] *See In re In re: Plum Baby Food Litig.,* No. 4:21-cv-00913-YGR, ECF No. 125 at 2:7-9.

regulation" that results in "impossibility of dual compliance." *Id.,* 373 U.S. at 143. "Impossibility pre-emption is a demanding defense." *Wyeth v. Levine,* 555 U.S. 555, 573 (2009).

Preemption by obstruction arises where the challenged state law stands as an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 576-77. In determining whether state law claims are preempted, courts begin with the fundamental presumption against federal preemption. *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996). In *Medtronic,* the Supreme Court stated that,

> [B]ecause the States are independent sovereigns in our federal system, we have long assumed that Congress does not cavalierly pre-empt state-law causes of action. In all pre-emption cases, and particularly in those in which Congress has "legislated ... in a field which the States have traditionally occupied," … we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."

*Id.* at 485 (citations omitted). As the Supreme Court has recognized, "States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders.'" *Florida Lime,* 373 U.S. at 144.

Gerber cannot overcome the presumption against preemption. First, Gerber has failed to identify any specific federal law or regulation with which Plaintiffs' state law claims purportedly conflict. As to the Nutrition Labeling and Education Act ("NLEA"), which amended the FDCA and which Congress enacted for purposes of establishing "uniform food labeling requirements, including the familiar ubiquitous Nutrition Facts Panel found on most food packages,"[10] the NLEA declares that courts may not find implied preemption based on any provision of the NLEA. *See Holk v. Snapple Beverage Corp.,* 575 F.3d 329, 336 (3d Cir. 2009). The NLEA expressly says that the Act "shall not be construed to preempt any provision of State law, unless such provision is

---

[10] *See Lilly v. ConAgra Foods, Inc.,* 743 F.3d 662, 664 (9th Cir. 2014).

expressly preempted under [21 U.S.C. § 341-1] of the Federal Food, Drug, and Cosmetic Act." Pub. L. No. 101-535, § 6(c)(1); *see also Holk*, 575 F.3d at 336.

Second, Plaintiffs' claims do not conflict with, or pose an obstacle to, 21 U.S.C. § 342. Plaintiffs do not allege that Gerber's Products are adulterated, and their claims do not depend on such a showing. Contrary to Gerber's assertion, Plaintiffs do not seek to prohibit the sale of infant rice cereal with less than 100 ppb inorganic arsenic. (ECF No. 133 at 17). Paragraph 109 of Plaintiffs' Complaint, which Gerber references, describes the findings in the Congressional Report. ¶ 109.

Third, Plaintiffs' claims do not conflict with the FDA's preamble to a proposed rule that Gerber cites in its brief. (ECF No. 133 at 16 (citing *Food Labeling; Declaration of Ingredients*, 56 Fed. Rg. 28592-01, 28615 (June 21, 1991)). As a preliminary matter, Gerber has not shown that the FDA's preamble has the force of law necessary to preempt state law. *See Wyeth*, 555 U.S. 555 at 576-77 (while noting that an agency regulation with the force of law can preempt conflicting state law, declining to find conflict preemption based on FDA's assertion in a preamble to a final rule that state law was an obstacle to statutory objectives); *see also Holk*, 575 F.3d at 340 (declining to give preemptive effect to FDA policy statement regarding the word "natural"). Gerber, however, takes the FDA's opinion out of context; it was not made in relation to the labeling of Heavy Metals or safety warnings,[11] but in response to consumers who requested that the ingredient list commonly found on food labels provide "warning statements or symbols to announce the presence of certain ingredients derived from dairy products or hydrolyzed vegetable protein." 56 FR 28592-01, 28615,

---

[11] Section 6(c)(2) of the NLEA provides a savings clause from section 403A of the FDCA, (21 U.S.C. §343-1). *Sciortino*, 108 F.Supp. 3d at 801. It says that the express preemption provision "shall not be construed to apply to any requirement respecting a statement on the labeling of food that provides a warning concerning the safety of the food or a component of the food." Pub. L. 101-535, § 6(c)(2), 104 Stat. 2343 (1990), codified in 21 U.S.C. § 343-1.

*State ex rel. Stratton v. Roswell Indep. Sch.,* 1991-NMCA-013, 111 N.M. 495, 806 P.2d 1085. The FDA rejected the idea on the grounds that if "the agency were to require warnings for ingredients that only cause mild idiosyncratic responses, . . . it would overexpose consumers to warnings." *Id.* The FDA also stated that the ingredient list is enough to allow consumers to avoid ingredients of concern. *Id.*

Even if the FDA's opinion did have the force of law to preempt state law—which it does not[12]—there is no conflict between Plaintiffs' claims and the FDA's decision not to have warnings related to "mild idiosyncratic responses." As in *In re Plum Baby Food Litig.,* the Court should decline to find conflict preemption.[13]

## III.   PLAINTIFFS' CAUSES OF ACTIONS ARE SUFFICIENTLY ALLEGED.

### A.   Plaintiffs Have Sufficiently Alleged An Economic Injury.

Contrary to Gerber's contentions, (ECF No. 133 at 18), Plaintiffs adequately and plausibly allege an economic injury. Plaintiffs allege they would not have bought Gerber's Products if they had known that: 1) the Products contained or were at material risk of containing harmful Heavy Metals; 2)  Gerber inadequately tested for all Heavy Metals in all ingredients or finished products; and 3) where existing, the Products failed to meet Gerber's own internal standards. *See, e.g.,* ¶ 11.

---

[12] Because Gerber failed to provide any argument or analysis as to why the FDA's opinion has the force of law, it has waived any such arguments. *See, e.g., United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir.1991) ("We have repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

[13] *Geier v. Am. Honda Motor Co.,* 529 U.S. 861 (2000) was distinguished in *Wyeth*, 555 U.S. 555 at 580-81 ("In Geier, the DOT conducted a formal rulemaking and then adopted a plan to phase in a mix of passive restraint devices. Examining the rule itself and the DOT's contemporaneous record, which revealed the factors the agency had weighed and the balance it had struck, we determined that state tort suits presented an obstacle to the federal scheme. After conducting our own pre-emption analysis, we considered the agency's explanation of how state law interfered with its regulation, regarding it as further support for our independent conclusion that the plaintiff's tort claim obstructed the federal regime"). In contrast, the FDA has not engaged in formal rulemaking about the labeling of baby foods with Heavy Metals, nor issued regulations regarding the same

Gerber's omissions created a "price premium" for the Products and thus Plaintiffs did not receive the "benefit of their bargain." *Hester v. New Amsterdam Cas. Co.*, 412 F.2d 505, 511 (4th Cir. 1969) ("Under Florida law, the measure of damages for fraud is the 'benefit of the bargain.' This is the difference between the actual value and the represented value of the property that the defrauded person was induced to purchase."). The "price premium" or "price distortion" theory has "various articulations but it appears in substance to be simply a benefit-of-the-bargain theory and measure of damages that is not materially different from a generally accepted breach of warranty measure of damages." *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices. & Prod. Liab. Litig.,* ("*Lumber Liquidators Formaldehyde*"), No. 1:15-md-2627 (AJT/TRJ), 2017 WL 2646286, at *5 (E.D. Va. June 20, 2017).

The payment of a price premium caused by a fraudulent omission or misrepresentation fulfills the injury element of Plaintiffs' causes of actions. *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016) is instructive; there, General Motors prematurely included representations of crashworthiness on its minivans. The plaintiffs asserted a claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). GM argued not every consumer would have seen—or cared—about those representations, and GM did later receive NHTSA ratings. *Id.* at 985, 987. After class certification, the Eleventh Circuit found that the plaintiffs "need not show actual reliance on the representation or omission at issue" because "the mental state of each class member is irrelevant." *Id.* at 985. Further "[a] defendant may not escape FDUTPA liability under Florida law merely because a deceptive or misleading statement later turns out to be true. The injury occurs at the point of sale because the false statement allows the seller to command a premium on the sales price." *Id.* at 987. Judge Trenga relied on *Carriuolo* when denying summary judgment in *Lumber Liquidators Formaldehyde* of many of the same causes of action alleged here:

16

Here, the evidence is sufficient for a fact finder to conclude that Lumber Liquidators knowingly misrepresented throughout a nationwide marketplace that its flooring was CARB compliant. Plaintiff's theory of injury is that these misrepresentations allowed LL to charge a higher price for its Product than the Plaintiffs would have otherwise had to pay. As other courts have found, if Plaintiffs can present facts and expert opinion to adequately support that claim, Plaintiffs have Article III standing for the purposes of their federal claims and for the Brandts' claims under the FDUTPA, regardless of whether any particular Plaintiff relied on the misrepresentation, though reliance remains an element or is otherwise material to many of Plaintiffs' specific causes of action.

*Lumber Liquidators Formaldehyde,* 2017 WL 2646286, at *6.

Other courts have similarly held that omissions or misrepresentations permitting a price premium can support causation and injury under the applicable consumer protection statutes. *See, e.g., In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 418-26 (E.D. Va. 2020) (plaintiffs sufficiently alleged an economic injury by describing how they received less in a transaction and paid  more than they otherwise would have under California, Florida, and New York law); *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 258 (E.D.N.Y. 2019) (finding price premium damages are available under the GBL); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1104 (N.D. Cal. 2018) ("It is well-established that the "'price premium' attributable to" an alleged misrepresentation on product labeling or packaging is a valid measure of damages in a mislabeling case under the FAL, CLRA, and UCL); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 466, 492 (D. Md. 2020) (plaintiffs sufficiently alleged injury-in-fact under either an overpayment or a benefit-of-the-bargain theory to satisfy both Article III and statutory requirements). In *In re Plum Baby Food Litig.*, a substantially similar case, Judge Gonzalez Rogers rejected the same argument from Plum. *Id.*, No. 4:21-cv-00913-YGR, ECF No. 125 at 1:20-2:6.

Gerber relies on the definitions of "price premium" and "benefit of the bargain" offered in an outlier decision from the Third Circuit. ECF No. 133 at 19 (citing *Kimca v. Sprout Foods, Inc.,*

No. 21-12977 (SRC), 2022 WL 1213488 (D.N.J. Apr. 25, 2022)). On the "price premium"

allegations, the *Kimca* court required plaintiffs to identify "comparable, cheaper, or safer products

to show that they, in fact, paid a premium for the Baby Food Products." *Id.* at *8.

Further, *Kimca* relied on a narrow definition of the benefit-of-the-bargain damages theory

articulated in *In re Johnson & Johnson Talcum Powder Products. Mktg., Sales Practices & Liab.*

*Litig.,* 903 F.3d 278, 289-290 (3d Cir. 2018). There, the court found that "the plaintiff had not

adequately plead that she purchased baby powder that was worth less than what she paid for it"

because the plaintiff "did not allege that she developed ovarian cancer, nor did she allege she is at

risk of developing ovarian cancer in the future as a result of her [b]aby [p]owder use." *Kimca*,

2022 WL 1213488 at *9. But this follows the *Johnson & Johnson* court defining the benefit-of-

the bargain as buying talc that absorbs sweat and did not cause physical injury. *Johnson & Johnson,*

903 F.3d at 289-90. That overly specific description of "benefit of the bargain" artificially narrows

the widely accepted definition of "benefit of the bargain"—"the value of the goods accepted and

the value they would have had if they had been as warranted[.]." *Lumber Liquidators*

*Formaldehyde*, 2017 WL 2646286, at *5. Judge Trenga did not require allegations or evidence

that the formaldehyde caused continued risks to purchasers but accepted the plaintiffs'

commonsense testimony that they would not have paid what they did to incur such a risk.

Similarly, the Eleventh Circuit interpreted the "benefit of the bargain" as  met where a

purchaser consumed a potentially unsafe (and therefore overpriced) supplement but did not suffer

physical injury. *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1087-88 (11th Cir. 2019).

The *Debernardis* court rejected *Hubert v. Gen. Nutrition Corp.*, No. 2:15-cv-01391, 2017 WL

3971912 (W.D. Pa. Sept. 8, 2017) because there, the court failed to consider whether the plaintiffs

alleged economic injury based on allegations that they were deprived of the benefit of the bargain

when they bought supplements that could not be legally sold under the FDCA. *See id.*, 942 F.3d at 1087. *Kimca* relied on *Hubert* for its "benefit of the bargain" definition. *Kimca*, 2022 WL 1213488, at *8. Thus, while the *Kimca* court required actual future physical injury as an element of benefit of the bargain, this Court need not.[14] *See Lumber Liquidators Formaldehyde*, 2017 WL 2646286, at *5.

Gerber's other arguments also fail. For one, Gerber states that a plaintiff cannot obtain "a refund of the price of a good or service" under the GBL where they already derived some benefit. ECF No. 133 at 24 n. 6., However, under that statute, Plaintiffs can recover $50 or their actual damages (the delta between what they paid and the price had Gerber disclosed the truth as to it Heavy Metal testing and procedures), whichever is greater. GBL § 349; *Hasemann*, 331 F.R.D. at 258.

Gerber also argues that Plaintiffs' economic injury allegations fail because Plaintiffs do not specify the exact amount of overpayment. ECF No. 133 at 24. But determining that difference is not required (and not possible) at this stage. *In re Marriott Int'l, Inc.,* 440 F. Supp. 3d at 494 ("Defendants argue that no Plaintiffs attempt to place a value on the alleged overpayment, loss of benefit-of-the bargain, or loss of value of personal information. … But as explained above, Plaintiffs do not need to assign a value at this stage to adequately plead damages.").

---

[14] Plaintiffs do not allege personal injuries and none of their claims or damage theories require them to do so. Nor are they required to allege that the specific products they bought were unfit for human consumption. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1032 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App x 654 (9th Cir. 2017), and *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) (certifying price premium damages model used in a class certifying claims under Illinois and Texas law and holding that it did not matter whether a plaintiff actually consumed a serving size such that they consumed zero fat and zero calories from the product, as it was advertised, because regardless of amount of consumption by class members, they were injured by the premium price they paid for the product).

Gerber also argues that Plaintiffs fail to adequately allege a price premium because the Complaint does not identify competing baby food products without Heavy Metals. ECF No. 133 at 24-25. This argument fails for multiple reasons. First, Plaintiffs are not required to identify such a competitor or competing product to allege they incurred an injury under a price premium theory. *See Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 578 (S.D.N.Y. 2021) (comparable product for a price premium theory not required under NYGBL).[15] While identifying a comparable product might be one way to prove the exact value of a price premium, it is not the only way to calculate the amount of Plaintiffs' damages. *See, e.g. Allegra v. Luxottica Retail N. Am.*, No. 17-CV-5216 (PKC) (RLM), 2022 WL 42867, at *51 (E.D.N.Y. Jan. 5, 2022) (discussing the multiple models for calculating class-wide, price-premium damages proffered by plaintiffs' experts at the class certification stage); *cf. McCrary v. Elations Co. LLC*, No. EDCV 13-0242 (JGB) (SPx), 2014 WL 12589137, at *9 (C.D. Cal. Dec. 2, 2014) ("A price premium may exist even though, at some point, [the product] with and without the [misleading] claim was sold at the same price."); *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 531 (N.D. Cal. 2018) ("The fact that the price of the product did not change after the representation does not establish that there is no triable issue as to whether Plaintiffs paid a price premium.").

---

[15] Gerber cites to *Colella v. Atkins Nutritionals, Inc.* to support this argument. ECF No. 133 at 25. *Colella,* however, predates *Colpitts*, which definitively holds that identifying a comparable product is not necessary to bring a NYGBL claim. *Colpitts,* 527 F. Supp. 3d at 578. Further, in neither *Colella* nor the other authority Gerber cites, *Sabo v. Wellpet, LLC*, did the courts hold that the plaintiff's claims failed due solely to failing to identify a valid competitor. *Colella*, 348 F. Supp. 3d at 143; *Sabo v. Wellpet*, *LLC*, 282 F. Supp. 3d 1040, 1042 (N.D. Ill. 2017). Rather, a failure to identify a comparable product was part of an enumeration of what could have raised plaintiff's injury allegations above mere speculation. *See, e.g., Sabo,* 282 F. Supp. 3d at 1042 (plaintiff failed to identify the price of a comparable product or "any other measurable criteria for comparing the position plaintiff and the class would have been in absent the alleged fraud with the position they were in as a result of their reliance").

Next, Gerber relies on unsubstantiated assertions that contradict the allegations in the complaint, which must be accepted as true. *See, e.g.,* ECF No. 133 at 25 (asserting without citation that "no competitor product that contains the same fruit, vegetable, or grain as a Gerber product has zero heavy metals"). *Compare with* ¶ 135 ("Certain of Gerber's competitors are manufacturing baby food products with little to no detectable levels of Heavy Metals.") and ¶ 136 (describing the testing and representations of Gerber's competitors). Gerber may not add its own facts to contradict the Complaint's allegations, which must be accepted as true, to obtain dismissal. *See Braun v. Maynard*, 652 F.3d 557, 559 (4th Cir. 2011).

Gerber's other cases do not support its argument that Plaintiffs fail to adequately allege economic injury. For example, *Doss v. Gen. Mills, Inc.,* is not apt because the court found that the danger posed by the chemical allegedly present in the defendant's product was "purely speculative." *Doss,* No. 18-61924-Civ-Scola, 2019 WL 7946028, at *3 (S.D. Fla. June 14, 2019), *aff'd,* 816 F. App'x 312 (11th Cir. 2020). Plaintiffs here have alleged that more than being a "probable carcinogen," the Heavy Metals are indisputably harmful to children and can result in serious developmental and other health problems as recognized by the FDA and other agencies and organizations. ¶¶ 45, 73. Moreover, Gerber itself concedes that parents do not want Heavy Metals in their baby's food. ¶¶ 7, 77. Plaintiffs' injuries are also plausible in light of Gerber's internal testing from 2017-2019 showing Heavy Metals, Gerber's failure to test all ingredients and finished products for all Heavy Metals, and its practice of using ingredients that exceed its own internal standards. ¶¶ 109-120.

*In re Fruit Juice Prod. Mktg. & Sales Practices. Litig.*, does not help Gerber, as the plaintiffs there "failed to allege that the [products at issue] had any diminished value because of the presence of lead or that they would have purchased different or cheaper fruit juice products

had they known about the lead. Plaintiffs' allegations only support the contention that the levels of lead in Defendants' products were unsatisfactory to them." *Id.*, 831 F. Supp. 2d 507, 513 (D. Mass. 2011). Plaintiffs here allege that they would not have bought the Products or paid what they did had they known they contained or were at material risk for containing Heavy Metals. *See, e.g.*, ¶¶ 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37. Plaintiffs allege that the Heavy Metals are toxic and particularly detrimental to children's health and development. ¶¶ 42-73. Widespread exposure to Heavy Metals can lead to harm including IQ loss, attention deficits, and other learning and behavioral impacts among children. ¶¶ 45-72. The Complaint, unlike in *Doss* and *Fruit Juice*, recites extensively the many harms of arsenic, lead, mercury, and cadmium, even at low levels, to child development. ¶¶ 45-71. As such, Plaintiffs adequately allege economic injury.

**B.    Plaintiffs Have Sufficiently Alleged Actionable Omissions to Support Their Fraud-Based Causes of Action, Including a Duty to Disclose.**

Gerber's first argument, that Plaintiffs' omissions are "not contrary to statements Gerber actually made," fails. ECF No. 133 at 29.  Plaintiffs are not required to allege an omission that is contrary to a statement made by Gerber. ECF No. 133 at 29. Rather, Plaintiffs may also allege an actionable omission by alleging an "omission of fact that the defendant was obligated to disclose." *See, e.g., Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018).

Next, Plaintiffs have adequately pled a duty to disclose, contrary to Gerber's arguments otherwise. ECF No. 133 at 29. Gerber correctly states that a duty to disclose arises in four circumstances under Plaintiffs' state law claims: where the defendant (1) is the plaintiff's fiduciary; (2) has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) actively conceals a material fact from the plaintiff; and (4) makes partial representations that are misleading because some other material fact has not been disclosed.  *Id.* at

30. Plaintiffs adequately allege omissions under the second, third, and fourth factors, although they only need to meet one of the four requirements.

Under the second factor, Plaintiffs allege that Gerber had unique and exclusive knowledge about the presence or risk of Heavy Metals in its Products, considering its own testing dating back as early as 2017, and internal standards related to such, of which Plaintiffs were unaware. ¶¶ 8-9, 11, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 109-14. Plaintiffs also allege materiality, namely, Gerber's knowledge of how important the health and safety of its foods are to parents, and that parents do not want heavy metal in their baby food, as reflected in Gerber's representations on its website. ¶¶ 76-78. These allegations are far from conclusory.

Gerber, however, claims it did not have exclusive knowledge given its website statements of its efforts to "minimize the presence of any unwanted heavy metals" and "numerous publications (spanning more than a decade) providing consumers information about Heavy Metals in baby foods." ECF No. 133 at 31. Gerber is wrong. First, Gerber misunderstands what "exclusive knowledge" means; "it does not mean that the facts were known or accessible only to [the defendant] ." *Edwards v. FCA US LLC,* No. 22-cv-01871-WHO, 2022 WL 1814144, at *3 (N.D. Cal. June 2, 2022). Rather, "A defendant has exclusive knowledge giving rise to a duty to disclose when 'according to the complaint, [defendant] knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover.'" *Elias v. Hewlett-Packard Co.*, No. 12-cv-00421-LHK, 2014 WL 493034, at *9 (N.D. Cal. Feb. 5, 2014) (citations omitted). In other words, "[t]he defendant need not have literally been the sole holder of the knowledge. It is generally sufficient for defendants to have had 'superior knowledge' and for the information to have not been reasonably discoverable by the plaintiffs." *Edwards,* at *3 (quoting *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1014–15 (N.D. Cal. 2020)).

23

Here, Gerber's website contradicts its argument that it did not have exclusive (*i.e.*, superior) knowledge. Gerber did not disclose on its website, or anywhere else for that matter, its internal test results showing the Heavy Metals in its Products. ¶¶ 11, 76-78. Moreover, Gerber represented on its website that through its "Clean Field Farming" strategy, some soil "can have naturally high levels of nitrates and heavy metals which you don't want in your baby's food . . . [t]hat's why . . . [Gerber] has created requirements for growing our fruits and veggies" that are among the strictest in the world. ¶ 78. These statements, coupled with its superior knowledge of its internal test results and standards, show that Gerber had exclusive knowledge of the Heavy Metals in its Products, while Plaintiffs had no knowledge of them.

As to the "numerous publications" about Heavy Metals in baby foods, none of the Plaintiffs allege they saw these publications. Moreover, consumers are not required to go out and do research; they are allowed to rely on Gerber's Product labels. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box"); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1141 n.15 (C.D. Cal. 2010) (rejecting argument that complaint's references to federal government advisory committee and American Heart Association's reports had alerted consumers to artificial trans-fat content of defendant's margarine; court could not infer "that because plaintiff cites these references in the complaint, they were known to her and/or widely known to consumers in the putative class at the time they were published"); *Colangelo v. Champion Petfoods USA, Inc.*, No. 6:18-CV-1228 (LEK/ML), 2020 WL 777462, at *11 (N.D.N.Y. Feb. 18, 2020) ("[A] reasonable consumer would not be expected to read the White Paper [published by the defendant] to disabuse themselves of any misconception they might have as a

result of allegedly false advertising"); *Larry J. Soldinger Assocs., Ltd. v. Aston Martin Lagonda of N. Am., Inc.*, No. 97 C 7792, 1999 WL 756174, at *6 (N.D. Ill. Sept. 13, 1999) (average consumer "should not be expected to acquire the expertise of an automotive mechanic").

Further, Plaintiffs adequately allege that under the third factor, Gerber actively concealed the alleged material facts. Specifically, Plaintiffs allege that Gerber tried to suppress the material facts or obscure them from the public with statements on its website acknowledging that Heavy Metals are not safe for children, claiming to test "finished products," performing "[o]ver 100 quality checks in every jar," and having the strictest standards in the world because consumers "don't want [heavy metals] in [their] baby's food." ¶¶ 76-78. *See Edwards*, 2022 WL 1814144 at *7 (stating that acts such as suppressing information in the public domain or obscuring the ability of consumers to find it constitute acts of active concealment). Yet, the presence or risk of Heavy Metals was nowhere disclosed on the labels, nor facts about Gerber's testing.

Under the fourth factor, Plaintiffs also lay out all of the partial representations they claim Gerber made that triggered a duty to disclose. Specifically, statements on Gerber's Product labels such as "Crawler 10+ months," depictions of the "Gerber baby," and children at various developmental stages, including crawling sitting and playfully walking, considered as a whole from the perspective of a reasonable consumer, convey that the Products are suitable and healthy for consumption by infants and toddlers. ¶ 80-106. The Product labels were misleading, however, because it is undisputed that babies and young children, because of their size, should not be exposed to Heavy Metals, yet Gerber failed to disclose that its Products contain, or are materially likely to contain, Heavy Metals, and other material facts as described herein.

Next, Gerber argues that as to Plaintiffs' California claims, the omitted facts must relate to a safety concern. ECF No. 133 at 30 (citing *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140

(9th Cir. 2012)). This requirement, however, applies in cases where a product has a latent defect occurring outside of a warranty period, which is not the case here. *Harris v. LSP Products Group, Inc.,* No. 2:18-cv-02973-TLN-KJN, 2021 WL 2682045, at *11 (E.D. Cal. June 30, 2021); *cf Wilson,* 668 F.3d at 1138 (laptop defect emerged after two years and expiration of warranty).

Even if Plaintiffs were required to show under California law that the alleged omissions relate to a safety concern, Plaintiffs meet this requirement. Plaintiffs allege that despite knowing that Heavy Metals are unwanted in baby foods, that Heavy Metals are harmful to children, and that its Products and ingredients contained or risked containing  Heavy Metals, Gerber did not test all ingredients and finished products for all Heavy Metals, and in some cases exceeded its own internal thresholds. Thus, Gerber's Products undoubtedly presented an unreasonable safety risk for children from the perspective of a parent and reasonable consumer.

Moreover, a recent review of the relevant case law shows that Plaintiffs also meet the "central functionality" test. *See Hodson*, 891 F.3d at 864 (stating that *Wilson* may still apply where a defect does not go to the central functionality of the product, but still creates a safety hazard). California federal courts after *Hodson* have adopted the "central functionality" test—a test akin to an omission of material fact. *Cepelak v. HP Inc*., No. 20-cv-02450-VC, 2021 WL 5298022, at *1 (N.D. Cal. Nov. 15, 2021) (citing *Hodson* and applying the central functionality test while noting the test would not cover *subjective* preferences); *Beyer v. Symantec Corp*., 333 F. Supp. 3d 966, 978 (N.D. Cal. 2018) (noting that the omission must simply be material). Here, it is ultimately irrelevant which test to apply as the defects relate to an unreasonable safety hazard (¶¶ 42-72 (describing the dire impact of heavy metal exposure on children), and the central functionality of the Products, i.e., their suitability for children and their ability to nourish infants and children, the importance of which Gerber acknowledges. ¶ 76.

Finally, Gerber argues that for Plaintiffs' fraudulent concealment claims to succeed, they must adequately allege a special or fiduciary relationship between the parties.[16] The only case Gerber has cited for this proposition that sets forth this requirement, however, is *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601 (7th Cir. 2013), which discusses Illinois law. Contrary to Gerber's assertion, Plaintiffs do allege a special relationship to support the fraudulent concealment claim under Illinois law. A special relationship arises where the "plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff. This position of superiority may arise by reason of friendship, agency, or experience." *Id.* at 613. Plaintiffs have alleged that they placed trust in Gerber, as a manufacturer of baby food, and that Gerber was in a superior position based on its experience as a manufacturer of baby foods. *See* ¶ 192 (alleging that Gerber held a special position of public trust as a baby food manufacturer); ¶ 140 (Subcommittee stating that baby food manufacturers hold a special position of public trust); ¶ 192 (Gerber was in a superior position to know the truth about its Products, ingredients, and characteristics); ¶ 76 (Gerber holds itself out as a company that cares about the health of babies and the foods they eat);

---

[16] These allegations are also sufficient to support the fraudulent concealment claims under New York law, *see Woods v. Maytag* Co., 807 F.Supp.2d 112, 124 (E.D.N.Y. 2011) (recognizing duty to disclose where "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge"). Plaintiffs are not required to allege a fiduciary or special relationship under their California, Florida, Texas, and Virginia law claims for fraudulent concealment. *See LiMandri v. Judkins,* 52 Cal. App. 4th at 337; *In re Takata Airbags Product Liability Litig.,* 524 F. Supp. 3d 1266, 1288-90 (S.D. Fla. 2021) (Texas, Florida, and Virginia do not require fiduciary relationship). Gerber's reliance on *Simpson v. Champion Petfoods USA, Inc.,* 397 F.3d 952, 971 (E.D. Ky. 2019) is misplaced because there, the plaintiff failed to allege a fiduciary duty under Kentucky law, which is not at issue here. Moreover, under Virginia law, *Simpson* explained that a claim for fraudulent omission could also be shown by the omission of a material fact by someone with superior knowledge (*id.* at n.19), facts that Plaintiffs have alleged here. *United States v. Szur,* 289 F.3d 200 (2d Cir. 2002) is also inapposite because there, the duty to disclose was examined in relation to claims for wire fraud, conspiracy, and violations of the Travel Act, not about any of the state law claims Plaintiffs allege here. *Id.* at 208.

¶¶ 77-78 (Gerber knows Heavy Metals are harmful and unwanted in baby foods). Accordingly, Gerber's argument that Plaintiffs' fraudulent concealment claims fail should be rejected.

### C.   Plaintiffs Have Adequately Pled Reliance and Causation to Support Their Statutory And Common Law Fraud-Based Claims.

Plaintiffs have adequately pled causation and reliance to support their statutory and common law fraud claims.[17] Plaintiffs allege that Gerber made omissions of material fact (with respect to the presence or risk of Heavy Metals, its testing for Heavy Metals, etc.), had a duty to disclose those facts, that Plaintiffs reviewed the Product labels in reliance, and that the omissions caused Plaintiffs damages. These allegations support causation and reliance.

#### 1.   Plaintiffs Adequately Plead Causation.

Plaintiffs allege that Gerber's deceptive acts (discussed more fully above) caused Plaintiffs to pay more than they otherwise would have and robbed them of the benefit of their bargain. ¶¶ 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37. That suffices to show injury and causation.[18] *Lumber Liquidators Formaldehyde,* 2017 WL 2646286, at *4-6 (finding injury and causation adequately alleged based on defendant's failure to disclose the presence of formaldehyde in its laminate flooring which permitted the defendant to command a higher price in the marketplace for its

---

[17] Gerber treats causation and reliance as interchangeable—they are not. *Allegra*, 2022 WL 42867, at *8, n.7 (noting that a defendant's misrepresentations can lead to a higher market price, *causing* Plaintiffs to suffer loss through overpayment, even though the Plaintiffs did not *rely* on those misrepresentations.) Plaintiffs treat them separately.

[18] *See Allegra,* 2022 WL 42867, at *49 (finding that an "overcharge" or "price premium" theory of injury establishes injury and causation under New York, Florida, and California law); *Freeman v. MAM USA Corp.,* 528 F. Supp. 3d 849, 865 (N.D. Ill. 2021) (noting the same under Illinois law); *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007) (noting an overcharge theory could establish standing—which has a causation requirement); *Lumber Liquidators Formaldehyde*, 2017 WL 2646286 at *6 (finding allegations of overpayment sufficient to show injury and certifying claims under Texas law); *Branin v. TMC Enterprises, LLC*, 832 F. Supp. 2d 646, 654 (W.D. Va. 2011) (holding that plaintiff sufficiently alleged actual fraud under the VCPA when car seller fraudulently misrepresented the mileage of a vehicle purchased by plaintiff at a price subsuming its mileage).

product, thereby causing the plaintiffs to pay more for the flooring than they otherwise would have). Similarly, Plaintiffs here have pled that Gerber's omissions with respect to Heavy Metals permitted Gerber to command a higher price in the marketplace for its products than it otherwise would have, causing Plaintiffs to overpay and robbing them of the benefit of their bargain. ¶¶ 11, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37.

> 2.     Under the Applicable Laws, Reliance is Either Unnecessary or Adequately Inferred Through Plaintiffs' Allegations.

Plaintiffs' fraud claims are premised on an omission of material facts, rather than a misrepresentation on the label. ¶ 191, 192, 217. For that reason, Gerber's argument that Plaintiffs did not identify a specific representation that was false misses the mark. ECF No. 133 at 33-34. Reliance in the case of a material omission does not require reviewing and relying on a *false* representation under any of the consumer fraud claims that Plaintiffs have pled.

Under Virginia law for fraud claims based on an omission of material fact, reliance is pled when the plaintiff reviewed information about the product where a disclosure of a material fact could have been made—i.e., the label—and had that material fact been disclosed the purchaser of the product would not have been injured. *See In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. & Sales Prac. Litig.,* ("*Lumber Liquidators Durability*") No. 1:16md2743 (AJT/TRJ), 2017 WL 2911681, at *7-8, 12-13 (E.D. Va. July 7, 2017) (holding failure to disclose the scale that demonstrated the laminate flooring did not meet common standard for household use sufficed to plead reliance for fraudulent concealment and violation of the VCPA). Plaintiffs have precisely pled that they would have paid less had they known the true facts.

Under California law, a "showing of materiality gives rise to an inference of reliance and causation" under California's consumer protection statutes alleged here. *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1043 (C.D. Cal. 2018). This is true for claims based on an

omission under the UCL, FAL, CLRA. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). For an omission, a plaintiff need only show that had the omitted information been disclosed, the plaintiff would have seen it and behaved differently. *Id.* If the omission is material, there is a presumption that one would have behaved differently. *Id.* Plaintiffs have pled that they reviewed the labels on the Products and that Gerber's omissions related to Heavy Metals and testing were material. ¶¶ 16-37. Reliance is shown in the same way for common law fraudulent concealment under California law. *See W. Pac. Elec. Co. Corp. v. Dragados/Flatiron*, 534 F. Supp. 3d 1209, 1251 (E.D. Cal. 2021).

New York, Florida, and Illinois' consumer protection statutes have no actual reliance requirement—only causation. *See Allegra,* 2022 WL 42867 at *8-9 (gathering cases on New York GBL §§ 349 and 350 and Florida's Deceptive Trade Practices Act.); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 594 (Ill. 1996) (proximate cause, but not reliance, must be shown under Illinois Consumer Fraud And Deceptive Business Practices Act).[19]

With respect to the claims for fraudulent concealment under New York, Florida law, and Illinois law, reliance is a question of materiality—an objective standard. *Allegra,* 2022 WL 42867 at *48, 61. Here Plaintiffs have pled an omission of a material fact. The same allegations suffice to plead a claim under Illinois fraudulent concealment law. *See Clay v. Philip Morris USA Inc*., No. 18-cv-03549, 2020 WL 5540195 (N.D. Ill. Feb. 20, 2020).

Under Texas's Deceptive Trade Practices Act, reliance is only required for a false, misleading, or deceptive act or practice. Tex. Bus. & Com. Code Ann. § 17.50 (West). Here,

---

[19] Gerber's citation to *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 969 (N.D. Cal. 2018) is unavailing. The communication requirement under Illinois law is minimal and is essentially an opportunity to disclose requirement.  Plaintiffs meet that requirement here because Plaintiffs reviewed the Product labels—communications from Gerber. *See id.* (finding the court could infer communication based on the nature of the purchase process).

Plaintiffs have alleged a deceptive practice, an omission of material facts, and that they relied on Gerber's material omissions. ¶¶ 34, 36. This suffices to show reliance under the DTPA for an omission claim and fraudulent concealment.[20] *See Starr v. VSL Pharms., Inc.*, 509 F. Supp. 3d 417, 452 (D. Md. 2020) (plaintiff pled reliance under DTPA where defendant failed to disclose that it changed the formula of its probiotic without disclosing it, and they would have not purchased it had they known). The DTPA has no reliance requirement for claims of unconscionability. Tex. Bus. & Com. Code Ann. § 17.50 (West)*; see also*; *Marek v. Lehre*r, No. 03-17-00509-CV, 2018 WL 6217566, at *9 (Tex. App. Nov. 29, 2018) (noting unconscionable acts claim does not require reliance under the DTPA). Plaintiffs have also alleged that Gerber's actions were unconscionable.[21] ¶¶ 277-289, 305-06.

Finally, Gerber's arguments that Plaintiffs' claims fail because they do not allege a plausible method of disclosure and that they fail to identify any specific representations they reviewed and relied on are erroneous. Gerber cites *Sud v. Costco Wholesale Corp.,* 229 F. Supp. 3d 1075, 1083 (N.D. Cal. 2017), to support its position. But there the court only dismissed claims related to the company's labor policy disclosure because the plaintiffs had not reviewed it. *See id.* The court found that reliance was adequately pled with respect to claims based on the product label because that had been reviewed; it made no difference that the label had no representation with respect to the company's labor practices. *See id.* So too here, Plaintiffs have alleged that they

---

[20] Additionally, under Texas law, reliance is not a proper reason for dismissal at the pleading stage. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. H-01-3624, G-03-0481, 2010 WL 9077875, at *46 (S.D. Tex. Jan. 19, 2010).

[21] Gerber is mistaken that one must *plead* every provision of the DTPA that one is seeking relief under. *See Posey v. Sw. Bell Yellow Pages, Inc*., 878 S.W.2d 275, 281 (Tex. App. 1994) (liberally construing claims under DTPA and permitting plaintiffs to proceed even though certain specific sections of the DTPA were not pled).

reviewed and relied on the labels—a natural place for a disclosure. ¶¶ 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36.

D.   **Plaintiffs' Virginia Consumer Protection Act Claim Is Properly Asserted on Behalf of a Nationwide Class.**

Gerber's arguments for dismissal of Plaintiffs' nationwide class claims asserted under the Virginia Consumer Protection Act, Virginia Code Ann. §59.1-196 *et seq.* ("VCPA") fail.

First, the extent to which a defendant with headquarters in Virginia is accountable under the VCPA to consumers residing outside of Virginia is a matter of statutory interpretation of the VCPA, not a choice-of-law issue as Gerber mistakenly posits. The VCPA was enacted "to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-197; *see also Owens v. DRS Auto. Fantomworks, Inc.,* 288 Va. 489, 497 (2014) ("[T]he legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law."). In that spirit, the VCPA extends relief to "*[a]ny person* who suffers loss as the result of a violation of this chapter" and states that such a person "*shall be entitled to initiate an action* to recover actual damages, or $500, whichever is greater." Va. Code Ann. § 59.1-204 (emphasis added). "Person," in turn, is defined as "*any natural person* … and any other legal entity," without reference to the person's geographic location. *Id.* § 59.1-198 (emphasis added).

Likewise, nothing in the VCPA requires that a person's transactional loss occur within Virginia for its protective provisions to apply; the statute instead requires *only* that the "loss" be the result of "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code § 59.1-200. This Court therefore has entertained VCPA claims alleged by non-Virginians. *See, e.g., Marcus v. Dennis*, No. 1:21-cv-01085 (RDA/TCB), 2022 WL 1527524, at *8-10 (E.D. Va. May 13, 2022) (denying motion to dismiss VCPA claim asserted against

Virginia-based company by Maryland plaintiffs for services rendered in Maryland); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836, 2019 WL 1397228, at \*33 (E.D. Va. Feb. 6, 2019) (end payor plaintiffs, wherever located, deemed proper parties to assert VCPA claims since that statute provides a remedy to "any person [] that suffers a loss caused by a violation of the statute"), *report and recommendation adopted as modified*, *In re Zetia (Ezetimibe) Antitrust Litig.* 400 F. Supp. 3d 418, 439 (E.D. Va. 2019).[22]

Second, Gerber's contention that no class can be certified in this Court under Fed. R. Civ. P. 23 because no equivalent class mechanism exists under Virginia's procedural rules ignores *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). In *Shady Grove*, the Supreme Court concluded that in diversity cases the availability of class certification is governed by Fed. R. Civ. P. 23, and thus available to federal litigants regardless of state law so long as the prerequisites of Fed. R. Civ. P. 23 are satisfied – even where the assertion of class claims is affirmatively disallowed under state law. *See Pledger v. Lynch,* 5 F.4th 511, 518-19 (4th Cir. 2021) (applying *Shady Grove* to prison's FTCA claim and holding it was not subject to the state law's pre-notice and certification requirements).

In *In re Zetia*, both the Magistrate Judge and the District Judge cited *Shady Grove* in specifically *rejecting* the argument that the affirmative bar of a class claim under state antitrust acts supposedly precluded class certification of that statutory claim in federal court. *In re Zetia*, 2019 WL 1397228, at \*25-26 & 35; *In re Zetia*, 400 F. Supp. 3d at 434 & 441. The lack of a class

---

[22] Neither case cited by Gerber involved claims under the VCPA, let alone addressed the lack of any territorial limitations on its applicability to a defendant headquartered in Virginia. *See* ECF No. 133 at 48 (*citing Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700, 714 (E.D. Va. 2009) ("Plaintiffs have failed to assert claims under the VCPA, and such claims would be untenable against the banks in this litigation."); *Insteel Indus. v. Costanza Contracting Co*., 276 F. Supp. 2d 479, 489 (E.D. Va. 2003) (denying motion to dismiss claims under the North Carolina Unfair and Deceptive Trade Practices Act)).

action mechanism under Virginia's rules of civil procedure is thus irrelevant to the viability of a class action claim pursuant to the VCPA under Fed. R. Civ. P. 23. *See also Milisits v. FCA US LLC*, No. 20-cv-11578, 2021 WL 3145704, at *12 (E.D. Mich. July 26, 2021) (collecting cases rejecting Gerber's contention); *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 574 (M.D. Tenn. 2020) (same).[23]

Notably, Gerber, which fails to discuss the decisions above and *Shady Grove*, cites no Fourth Circuit decisions supporting its contention that a federal class cannot be certified because Virginia's state procedural rules lack a Fed. R. Civ. P. 23 counterpart. The only two cases cited by Gerber are out-of-circuit cases in which the courts did not consider *Shady Grove*. ECF No. 133 at 49 (citing *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Practices Litig.*, 2:19-md-02901, 2022 WL 551221, at *19 (E.D. Mich. Feb. 23, 2022) and *Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 667-68 (N.D. Cal. 2019); *but see Andes v. United State*s, No. 1:19-CV-00005, 2020 WL 3895780, *3-7 (W.D. Va. July 7, 2020) (questioning persuasiveness of district court analyses that do not consider *Shady Grove*, and reversing earlier case dismissal on reconsideration after analyzing *Shady Grove* and *Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019)). Moreover, *Ford Motor Co. F-150* is premised on the incorrect notion that the VCPA expressly bars class action relief; nothing in the cited VCPA provision (§ 59.1-204) so states. *See In re Hardieplank Fiber Cement Siding Litig.*, No. 12-md-2359, 2013 WL 3717743, at *17 (D. Minn. July 15, 2013) ("absence of a class action right under the VCPA is the 'default' position under Virginia law, rather than a provision of the VCPA itself. Thus, the Court concludes that the lack of a class action mechanism is a procedural matter, rather than a substantive law").

---

[23] Indeed, courts within this District followed the *Shady Grove* analysis even before *Shady Grove*. *See, e.g., Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 561 (E.D. Va. 2000) (certifying VCPA claims under Fed. R. Civ. P. 23).

E.      **Plaintiffs Sufficiently Plead Fraudulent Concealment.**

Next, Gerber incorrectly contends that the economic loss rule bars the California and Florida fraudulent concealment claims (thereby conceding the claims under Illinois, New York, Texas, and Virginia law are sufficient) because Plaintiffs do not allege personal injury. ECF No. 133 at 38. "Recent California Supreme Court cases, pertinent decisions from other states, and germane scholarship all suggest that the economic loss rule does not bar fraudulent concealment claims under California law." *Clenney v. FCA US LLC*, No. 22-cv-00547-VC, 2022 WL 2197074, at *3 (N.D. Cal. June 20, 2022). Courts have held that this is equally the case with respect to fraudulent omission claims. *See Edwards*, 2022 WL 1814144 at *7 (collecting cases).

The sole California case cited by Gerber (*Williams v. Tesla*), is in error for its holding that *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268 (Cal. 2004) carved out a "limited" exception to the economic loss rule only for affirmative representations but not fraudulent omission claims. *Williams v. Tesla, Inc.*, No. 20-cv-08208-HSG, 2022 WL 899847, at *6-7 (N.D. Cal. Mar. 28, 2022). *Clenney* rejected this narrow reading of *Robinson Helicopter*, stating, "As the Ninth Circuit explained in *Rattan*, the Court in *Robinson Helicopter* left open the question whether fraudulent concealment claims are barred by the economic loss rule." *Clenney*, 2022 WL 2197074, at *4 (citing *Rattan v. Uber Technologies, Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021) (noting California Supreme Court "expressly declined to address whether another type of fraud—intentional concealment—likewise constitutes an independent tort warranting an exception")). A better reading of *Robinson Helicopter* is that its "rationale applies equally well to omissions" and there is "no principled reason, in this context, for distinguishing between the two types of intentional misrepresentations." *Edwards*, 2022 WL 1814144, at *7.[24]

---

[24] At a minimum, the Court should decline to make this determination at the pleading stage in light of the *Rattan* court's certification to the California Supreme Court of the question whether

And while Plaintiffs concede that courts are split on whether the economic loss doctrine bars fraudulent concealment claims under Florida law, the better interpretation of the law based on the facts of this case is in *Miller v. Samsung Elecs. Am., Inc.*, No. 14-4076, 2015 WL 3965608 (D.N.J. June 29, 2015). The court there held that Florida law does not bar fraudulent concealment claims where the claim arises outside the "products liability context," including where the plaintiff alleged the defendant "marketed, advertised and represented to consumers that the Chromebook contains a USB port that it does not have." *Miller*, 2015 WL 3965608 at *10; *see also Lalli v. FCA US, LLC*, 446 F. Supp. 3d 218, 225 (E.D. Mich. 2020) ("The Florida Supreme Court has limited the state's economic loss rule to products liability cases") (citing *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 400 (Fla. 2013)). Similarly, Plaintiffs' allegations here concern how Gerber marketed, advertised, and labeled its Products. Finally, Plaintiffs' fraudulent concealment claims are further viable under Florida law because the claims are "based on the duty to disclose which exists independent of any contract[.]" *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 965-66 (N.D. Cal. 2014).

## F. Unjust Enrichment is an Independent Cause of Action that can be Pled in the Alternative.

Contrary to Gerber's argument, Plaintiffs' unjust enrichment claims are independent causes of action under California, Illinois, and Texas law that can be brought in this Court. *See, e.g., Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015); *McMahon v. Bumble Bee Foods LLC*, 148 F. Supp. 3d 708, 714-15 (N.D. Ill. 2015); *Dig. Drilling Data Sys.,*

---

"claims for fraudulent concealment" are "exempted from the economic loss rule." *Rattagan*, 19 F.4th at 1192-93. On February 9, 2022, the California Supreme Court granted the Ninth Circuit's request for certification, and the case is currently pending. *See Rattagan v. Uber Technologies*, Case No. S272113 (Cal.).

*L.L.C. v. Petrolink Servs.*, *Inc.,* 965 F.3d 365, 379 n.11 (5th Cir. 2020). They should not be dismissed as duplicative of Plaintiffs' statutory and tort law claims (which Gerber also argued must be dismissed, *see* ECF No. 133 at 38-39), because numerous decisions hold that unjust enrichment claims can be pled in the alternative to statutory and tort law claims.[25] Gerber also overlooks caselaw holding that New York GBL claims are not duplicative of unjust enrichment claims because GBL claims "require proof of an element that is distinct from what is required to prove unjust enrichment," namely that an act is directed at consumers. *See Acquard v. Big Heart Pet Brands*, No. 19-CV-50-JLS, 2020 WL 12904361, at *7 (W.D.N.Y. Nov. 30, 2020) (citations omitted). Accordingly, "a reasonable trier of fact could find the elements of unjust enrichment without establishing all the elements for Plaintiffs' NYGBL § 349 claim." *Id.* (internal quotations and brackets omitted). *See also Warner v. StarKist Co.*, No. 1:18-cv-406 (GLS/ATB), 2019 WL 1332573, at *3 (N.D.N.Y. Mar. 25, 2019) (same). Finally, Gerber's sole case on this point, *Higgerson v. Farthing*, 96 Va. Cir. 58 (2017), does not involve the VCPA at all, and in any event is contrary to more recent Virginia Supreme Court law holding that unjust enrichment claims can be pled with contract claims. *James G. Davis Constr. Corp. v. FTJ, Inc.,* 841 S.E.2d 642, 648 (Va. 2020)).

---

[25] *See, e.g., Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060, 1080 (N.D. Cal. 2020) ("[T]his Court has held that a claim for unjust enrichment may be asserted under California law, and that such a claim is not subject to dismissal at the pleading stage even if duplicative of other claims"); *Heuer v. Nissan N. Am., Inc.*, No. 17-60018-Civ-Scola, 2017 WL 3475063, at *6 (S.D. Fla. Aug. 11, 2017) (rejecting argument that plaintiff's unjust enrichment claim must be dismissed as duplicative of FDUTPA claim because Plaintiff "entitled to bring all alternative theories available under Florida law.") (citations omitted); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at *36 (N.D. Ill. June 29, 2015) (observing that dismissing unjust enrichment claims as duplicative of other claims "is not a widely-accepted theory for dismissal at the motion-to-dismiss stage"); *Student A v. Liberty Univ., Inc.*, No. 6:20-cv-00023, 2022 WL 1423617, at *17 (W.D. Va. May 5, 2022) ("The Supreme Court of Virginia has . . . explained that there is no per se bar on pleading unjust enrichment claims alongside contract claims.") (citing *James G. Davis Constr. Corp. v. FTJ, Inc.*, 841 S.E.2d 642, 648 (Va. 2020)).

### G.      Plaintiffs Adequately Plead Their Claim for Injunctive Relief.

Plaintiffs allege that they are willing to buy Gerber's Products in the future if they do not contain, or are not at material risk for containing, Heavy Metals. ¶¶ 17, 19, 21, 25, 29, 33, 35. Contrary to Gerber's contention, (ECF No. 133 at 39-40), Plaintiffs' allegations are sufficient to maintain their claims for injunctive relief. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 397 (S.D.N.Y. 2016). And this is not affected by the fact that Plaintiffs are now aware of the risk of Heavy Metals in Gerber's Products. *See Davidson*, 889 F.3d at 969 ("a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm."); *Leiner v. Johnson & Johnson Consumer Companies, Inc.*, 215 F.Supp.3d 670, 672-73 (N.D. Ill. 2016) (plaintiffs deceived by defendant's false claims that products are clinically proven to help babies sleep better had standing to pursue injunctive relief even though they had already "discovered the alleged deception and [can] no longer be fooled.");[26] *Ackerman v. Coca-Cola Co.*, No. 09 CV 395(DLI/RML), 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (allowing plaintiffs deceived by marketing of Vitaminwater as nutritious water-based beverage to pursue injunctive relief despite being aware of the truth).

Gerber's cited cases to the contrary do not require a different result. For example, in *Kommer v. Bayer Consumer Health*, 710 F. App'x 43 (2d Cir. 2018), the plaintiffs were mistaken that prepackaged foot inserts were custom made for their specific feet. And because the defendant would not change their product into a service providing custom fittings, there was no way for the

---

[26] *But see Womick v. Kroger Co.*, No. 21-CV-00574-NJR, 2022 WL 673095, at *6 (S.D. Ill. Mar. 7, 2022) (noting "split of authority" on issue).

defendant to modify their product such that the plaintiffs would desire to purchase the product. By contrast here, Gerber has not stated it will not reduce or eliminate, where possible, the Heavy Metals in its Products. Gerber's advertising can also be cured, allowing Plaintiffs to know whether the Products contain Heavy Metals or not when presented with the Products while grocery shopping in the future.

## IV.  **GERBER'S INTRODUCTION OF DR. NEGA BERU'S DECLARATION IS IMPROPER AND MUST BE EXCLUDED.**

As part of its motion, Gerber relies on the declaration of Dr. Nega Beru (ECF No. 134), a former U.S. Food & Drug Administration ("FDA") official who retired from the agency in 2017. *See, e.g.*, ECF No. 133 at 2, 7. Dr. Beru's declaration is improperly before this Court and should be excluded from its consideration. First, when considering a 12(b)(6) motion to dismiss, a court is generally "limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated into the complaint." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (internal quotation marks and citations omitted). The consideration of extrinsic documents is furthermore "not appropriate," particularly where the parties "have not had an opportunity to conduct reasonable discovery." *Id.*; *see also Phillips v. Loudoun Cnty. Pub. Sch.*, No. 1:19-cv-501, 2020 WL 2205065, at *5 (E.D. Va. May 6, 2020).[27] The Beru Decl. plainly does not fit into the type of documents the Court can consider.

Second, although a "narrow exception" to this standard exists for facts and documents subject to judicial notice (*Zak*, 780 F.3d at 607), each fact must be "'generally known within the

---

[27] *See also Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 52 (S.D.N.Y. 2015) (holding that "Defendants' declarations indeed constituted extrinsic evidence inappropriate for consideration upon a Rule 12(b)(6) motion"); *Union Asset Mgmt. Holding AG v. Sandisk LLC*, 227 F. Supp. 3d 1098, 1100 (N.D. Cal. 2017) (noting that "at bottom, the defendants are introducing extrinsic material in an effort to sow doubt at a stage when the plaintiffs' factual allegations are presumed true. That is not appropriate.").

court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id*. (quoting Fed. R. Evid. 201). Dr. Beru's bare and unsupported opinions are certainly subject to reasonable dispute. He makes several sweeping statements concerning the agency's *current* mission, commitment of resources, processes, and plan to address Heavy Metals in baby food.  *See* Beru Decl. ¶¶ 3–17. No sources of his opinion are cited, except four FDA press releases issued in 2021 and 2022 (*see id*. at ¶¶ 6, 7)—i.e., years after Dr. Beru's retirement in 2017. How Dr. Beru is able to opine on the agency's *current* plan, processes, and thinking is left unstated, and thus, subject to reasonable dispute. His opinions and declaration are furthermore not "generally known" within this Court's territorial jurisdiction. And similarly, no evidence exists that Dr. Beru's opinions are the sort of undisputed "common knowledge" that the Rule was intended to encompass. *See* 1 Weinstein's Fed. Evid. § 201.11.[28] Thus, the Court should exclude the Beru Declaration.

## **CONCLUSION**

Based on the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss.

<table>
<tr><td>Dated: August 5, 2022</td><td>Respectfully submitted,</td></tr>
</table>

By:    */s/ Steven J. Toll*
─────────────────────
Steven J. Toll
**COHEN MILSTEIN SELLERS**
 **& TOLL PLLC**
1100 New York Ave. NW
5th Floor

---

[28] *See, e.g.*, *Int'l Star Class Yacht Racing v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70–71 (2d Cir. 1998) (finding that the district court erred in taking judicial notice of prevailing trademark search practices described in an earlier court opinion, where such practices were not common knowledge, were subject to change, and were not "derived from an unimpeachable source"); *Ernst v. Child & Youth Servs.*, 108 F.3d 486, 498–99 (3d Cir. 1997) (affirming trial court's decision to not take judicial notice of an affidavit concerning the activities of a child welfare agency, because the facts recited in the affidavit were subject to reasonable dispute).

Washington, DC  20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699


Rosemary M. Rivas
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9700
Facsimile: 510-350-9701


Janine Pollack
**CALCATERRA POLLACK LLP**
1140 Avenue of the Americas
9th Floor
New York, New York 10036
Telephone: 212-899-1765
Facsimile: 332-206-2073

*Plaintiffs' Interim Co-Lead Counsel*