**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| IN RE: GERBER PRODUCTS COMPANY HEAVY METALS BABY FOOD LITIGATION | Master File No. 1:21-cv-00269 (MSN/JFA) |
| This Document Relates to ALL Cases | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF GERBER PRODUCTS COMPANY'S MOTION TO OVERRULE OBJECTIONS AND COMPEL PLAINTIFFS' ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ………….… ....................................................................................... 1

BACKGROUND ………….… ....................................................................................... 2

    I.      Relevant Allegations in the Representative Complaint……...................................2

    II.     Gerber's Interrogatories and Requests for Production……...................................3

ARGUMENT …………….. ........................................................................................... 8

    I.      Plaintiffs Should Be Required to Provide the Factual Basis for their Allegation that Gerber's  Products Are "Harmful" and "Unsafe" ....................... 9

    II.     Plaintiffs Should Be Required to Identify the Statements That Plaintiffs Contend are False or Misleading, and What Information Gerber Should Have Disclosed (Interrogatory Nos. 4, 6, 7) ......................................................... 14

    III.    Plaintiffs Should Be Required to State the Price They Would Pay for the Purchased Products, Knowing What They Know Today (Interrogatory No. 9) ........................................................................................................................ 16

    IV.    Plaintiffs Should Be Required to Answer Interrogatories Regarding Non-Gerber Baby Foods They Purchased or Served (Interrogatory No. 10 and part of Interrogatory No. 17) .................................................................................. 17

    V.     Plaintiffs Should Be Compelled to Produce Documents Relating to Non-Gerber Baby Food Products (Request for Production No. 7) ............................. 18

    VI.    Plaintiffs' Objections Upon Which They Are Not "Standing" Should Be Overruled ............................................................................................................ 19

CONCLUSION …………….. ..................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013) ........................................................................17

*Brown v. Experian Info. Sols., Inc.*,
   No. 3:16cv670, 2017 WL 11632852 (E.D. Va. Apr. 17, 2017)................................19

*Deutsche Bank Nat'l Tr. Co. v. Fegely*,
   No. 3:16CV147, 2020 WL 201048 (E.D. Va. Jan. 13, 2020)...................................9

*In re Domestic Drywall Antitrust Litig.*,
   300 F.R.D. 228 (E.D. Pa. 2014)............................................................................12

*DOT Com Entm't Grp., Inc. v. Cyberbingo Corp.*,
   237 F.R.D. 43 (W.D.N.Y. 2006)............................................................................14

*Intelligent Verification Sys., LLC v. Microsoft Corp.*,
   No. 2:12-CV-525, 2015 WL 846012 (E.D. Va. Feb. 25, 2015) ..............................10

*Lacroix v. City of Portsmouth*,
   No. 2:13cv533, 2014 WL 12547259 (E.D. Va. Oct. 23, 2014)...............................15

*Lonquist Field Serv., LLC v. Sorby*,
   No. 21-1035-KHV-KGG, 2021 WL 4967041 (D. Kan. Oct. 26, 2021) ................................12

*In re Peanut Farmers Antitrust Litig.*,
   No. 2:19cv00463, 2020 WL 9216019 (E.D. Va. July 24, 2020) .....................................9, 17

*Turnage v. Clarity Servs.*,
   No. 3:14CV760, 2015 WL 5092695 (E.D. Va. July 22, 2015) .............................7, 19

*Wagner v. St. Paul Fire & Marine Ins. Co.*,
   238 F.R.D. 418 (N.D.W. Va. 2006)..................................................................11, 15

## FEDERAL RULES

Federal Rule of Civil Procedure 11 ...............................................................................12

Federal Rule of Civil Procedure 26 ...........................................................................17, 19

Federal Rule of Civil Procedure 33 ...............................................................................10

Federal Rule of Civil Procedure 37 ...............................................................................20

AMERICAS 116710563

## INTRODUCTION

Plaintiffs' Complaint makes conclusory allegations that Gerber's product labels deceived them into believing the products posed no "risk" of containing heavy metals when, in fact, the products "contain or were at material risk of containing harmful Heavy Metals." *E.g.*, RC ¶¶ 11, 17.  Plaintiffs fail, however, to plead basic facts supporting their deception claims, including identifying any allegedly untrue or misleading statements on the products' packaging, describing how the products Plaintiffs purchased are "harmful" and/or "unsafe," or specifying what heavy metal levels they allege render baby food "harmful" and/or "unsafe."

Now, when asked to provide these basic facts through Gerber's Interrogatories and Requests for Production, Plaintiffs refuse.  *First*, Plaintiffs mischaracterize several of Gerber's interrogatories as "premature contention interrogatories" seeking expert opinions, even though Gerber requests only facts *presently known* to Plaintiffs that underlie their allegations and has made the scope of its interrogatories abundantly clear during the parties' meet and confer efforts to the extent Plaintiffs were confused.  Plaintiffs should have known the basic facts supporting their core allegations when they filed their Complaint, and may supplement these responses if new facts surface as discovery proceeds.  *Second*, Plaintiffs object to several interrogatories and requests for production on the ground that they seek irrelevant facts or documents – specifically, requests relating to whether Plaintiffs know of any physical harm suffered due to the consumption of Gerber's products and non-Gerber baby food products Plaintiffs have purchased or served.  These interrogatories and requests relate directly to Plaintiffs' principal allegations, and Plaintiffs have not met their burden of demonstrating how they do not.  Plaintiffs should be compelled to provide answers to these interrogatories and produce the documents Gerber has requested.

*Third*, where Plaintiffs have responded to Gerber's discovery requests and confirmed they

1

are not withholding responsive information/documents based on objections, they do so "subject to objections." This not permitted by the Federal Rules of Civil Procedure and the law in this Circuit because Gerber does not know whether Plaintiffs withheld information/documents – and should be overruled.

## **BACKGROUND**

### I.   **Relevant Allegations in the Representative Complaint**

Plaintiffs allege that Gerber's product labels deceptively portrayed the products as safe to consume.  Compl. ¶ 4.  Plaintiffs claim that Gerber's products were in fact *not* safe to consume because, as Plaintiffs allege, the products may contain trace levels of heavy metals.  *Id.* ¶ 11. Plaintiffs base their claims on a purported economic injury resting on a "risk" that Gerber's products are *not* safe to consume because, as Plaintiffs allege, (i) Gerber's products "contain[ed] or were at material risk of containing harmful Heavy Metals" (*Id.* ¶¶ 216, 230, 243, 282, 312), and (ii) consumption of heavy metals "may, over time . . . increase the risk of" certain adverse health outcomes (*id.* ¶ 111).   Plaintiffs' Complaint does not allege any physical harm from the consumption of Gerber's products, which is unsurprising because FDA has also confirmed products containing such trace elements are not unsafe for consumption.  ECF No. 135-2 at 2 ("[C]hildren are not at an immediate health risk" from trace levels of heavy metals and parents and caregivers should not "throw out their supply of packaged baby foods or . . . stop feeding their babies and children certain foods altogether.").  Plaintiffs' Complaint also includes conflicting allegations regarding the value Plaintiffs ascribe to Gerber's products knowing what they know today – alleging both that the products were "worthless" and "worth less" than what Plaintiffs paid. *E.g.*, Compl. ¶ 186.

Unable to point to any misrepresentation on Gerber's labels to support their claim of

2

deception, Plaintiffs unpersuasively point to label features that have nothing to do with heavy metals—like the "Gerber Baby" logo and developmental milestone designations like "Crawler"— as purportedly creating the "impression" the products were safe and free of heavy metals. Compl. ¶¶ 80-81. Plaintiffs vaguely refer to "other indications that convey the impression that the Baby Food Products are safe and suitable," but do not specify in the Complaint all such "indications," or explain whether they allege such "indications" are false. *Id.* ¶ 81. It is also unclear from the Complaint whether Plaintiffs allege any of these label statements form part of their allegations that Gerber's products are "unsafe" (*e.g.*, whether they allege that the products are unsafe because the developmental milestone designation is false or inaccurate, rendering the products not "suitable" for the designated age).

Plaintiffs' allegations also put non-Gerber baby food products at issue – *e.g.*, by alleging incorrectly that "Gerber's competitors are manufacturing baby food products with little to no detectable levels of Heavy Metals" (Compl. ¶ 135), and "Gerber's conduct is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers themselves can reasonably avoid" (*id.* ¶ 253).

## II.   <u>Gerber's Interrogatories and Requests for Production</u>

On June 16, 2022, Gerber served 20 interrogatories (Ex. 1) and 16 requests for production (Ex. 2).[1] On July 1, 2022, Plaintiffs served objections to the interrogatories and the requests for

---

[1] Plaintiffs asserted a general objection to the number of interrogatories Gerber served, explaining that they consider the 20 interrogatories served to amount to 220 interrogatories (*i.e.*, 20 to each of the 11 Plaintiffs), which they believe exceeds the limit the Court set in its June 7, 2022 Case Management Order No. 2. That Order provides in pertinent part: "[D]efendant . . . may not serve on plaintiffs, collectively, more than fifty (50) interrogatories, including parts and subparts, without leave of court." The parties have discussed their differing understandings of the Order – for example, Gerber explained that we believe Gerber's interrogatories do not violate the Order, and asked whether Plaintiffs' position is that Gerber could serve only four interrogatories per Plaintiff. Plaintiffs explained that they would not refuse to respond to interrogatories after

AMERICAS 116710563

production.  Ex. 3; Ex. 4.

A.    **Twenty days after Gerber served discovery, Plaintiffs clarify that some of their objections are not real areas of dispute, but are asserted for "preservation"**

Upon receipt of Plaintiffs' objections, Gerber promptly met and conferred on July 6, 2022, in an effort to understand the bases for Plaintiffs' objections.  On this call, Plaintiffs stated for the first time that they asserted some objections to "preserve" them, but did not intend to withhold information/documents on the grounds of those objections.  Plaintiffs said that they understood the purpose of this Court's 15-day deadline for discovery objections to be to require the parties to "preserve" objections early, and therefore, they suggested, Gerber should wait to work though Plaintiffs' objections until it had Plaintiffs' full responses on July 18 (30 days after Gerber served discovery).  Gerber explained that the purpose of the 15-day objection deadline is not for "preservation" but instead to allow the parties to begin a substantive meet-and-confer process on any objections 15 days after the discovery is served, without having to wait until day 30.  Accordingly, Gerber requested that Plaintiffs articulate which objections they were "standing on."  On July 7, 2022, Plaintiffs did so, by email correspondence identifying which objections they planned to stand on and to which requests or portions of requests they would respond.  Ex. 5.

B.    **Gerber's July 15 letter attempts to identify the narrowed areas of disagreement**

With this information, Gerber sent a letter to Plaintiffs on July 15, 2022, summarizing the status of discussions on Gerber's interrogatories and requests for production.  Ex. 6.  This letter addressed the objections that Plaintiffs stated they were standing on, and asked Plaintiffs to

---

Interrogatory No. 4 based on this objection. Although this issue is not yet resolved, it is not presently an impediment in moving forward with discovery.

confirm which objections they were withdrawing.  *Id.*

### C.    Plaintiffs serve partial interrogatory responses on July 18, and responses to Gerber's requests for production, subject to objections

On July 18, 2022, Plaintiffs served responses to Gerber's Interrogatories (Exs. 7-17), which included: (i) responses to nine interrogatories (Nos. 1, 5, 11, 12, 13, 15, 16, 18, 19, 20); (ii) a partial response to Interrogatory No. 17; and (iii) a non-responsive answer to Interrogatory No. 9.  In addition, Plaintiffs declined to answer six interrogatories (Nos. 2, 3, 4, 6, 7, 8), stating they would "meet and confer with Defendant regarding the appropriate stage of this litigation to provide a response," and stated they "will not respond" to two interrogatories (Nos. 10 and 14).

Plaintiffs also served collective responses to Gerber's requests for production on July 18, 2022, indicating they would produce responsive documents by August 1, 2022.  Ex. 18.

Plaintiffs made all of their responses "subject to and without waiving" all of their original objections, including those upon which Plaintiffs had previously indicated they were not standing on.  Exs. 7-18.

### D.    Plaintiffs' July 20 letter raises additional objections as areas of dispute

On July 20, 2022, Plaintiffs responded to Gerber's July 15 letter confirming that they were standing on the objections that Gerber identified, but stating that they were also standing on additional objections not previously mentioned in their July 7 email.  Ex. 19.  For all objections, Plaintiffs' explanations were conclusory and appeared to misinterpret Gerber's interrogatories. For example, despite the fact that Gerber further explained in its July 15 letter that none of its interrogatories seeks or requires the involvement of an expert (Ex. 6), "Plaintiffs further reiterate[d] their objections to Interrogatories 2-3, 6-8 and 14 that they variously seek premature disclosure of expert information, and/or require Plaintiffs to disclose analyses, comparative analyses, opinions, or theories that will be the subject of expert testimony," without providing any

basis for this misconception.  Ex. 19 at 2.  Plaintiffs added only that "the Representative Complaint contains the factual bases of Plaintiffs' claims . . . ."  Ex. 19 at 2.  Plaintiffs confirmed that the parties were at an impasse on Interrogatory Nos. 2, 3, 4, 6, 7, 8, 10, 14, and portions of Interrogatory Nos. 9 and 17.  Ex. 19 at 1-3.

### E.      Gerber's July 27 letter attempts to break impasse

On July 27, 2022, Gerber wrote to Plaintiffs again explaining the information sought in an effort to eliminate any potential confusion that may be the cause of the impasse; Gerber also sought clarity from Plaintiffs on which objections they continue to assert.  Ex. 20.  Gerber reiterated, as it had on the July 6 meet and confer call and its July 15 letter (Ex. 6), that none of the interrogatories seeks, nor requires, an expert opinion or further factual development, but instead they seek the basic facts underlying Plaintiffs' claims that should have been known to Plaintiffs when they filed their Complaint.  Ex. 19.  Gerber provided clarification on the specific information sought (and not sought) and citations to Plaintiffs' allegations showing that the facts and documents sought were directly relevant.  *Id.*

### F.      Plaintiffs' make a partial document production on August 1

On August 1, 2022, Plaintiffs collectively produced 373 pages of documents, subject to and without waiving any objections, some of which were objections that Plaintiffs had previously indicated they were not "standing on."  Plaintiffs production was intended to comprise a full and complete production in response to several requests "not limited by any objection except to the extent that the RFPs seek information prior to February 10, 2015 or premature expert disclosure."  Ex. 21 at 4-5.  Consistent with Plaintiffs' refusal to produce documents relating to non-Gerber baby foods (Ex. 5 at 1; Ex. 19 at 4), Plaintiffs' production on Request No. 7 was "limited to Gerber baby

6

food products" purchased or served by Plaintiffs, and did not include documents Gerber sought relating to non-Gerber baby food products.  *Id.* at 4.

### G.      Plaintiffs' position in their August 3 letter and on the parties' August 4 meet-and-confer call confirms areas of impasse

On August 3, 2022, Plaintiffs sent a response to Gerber's July 27 letter.  Ex. 21.  Plaintiffs contended that Gerber was asserting "entirely different" interrogatories in its July 27 letter than those it propounded "under the guise of purportedly providing 'additional clarity,'" and stated that "Plaintiffs are not required to construe Gerber's Interrogatories in any manner other than how they are plainly drafted, which would necessarily require expert information."  Ex. 21 at 1 n.1, 2. Plaintiffs' continued refusal to answer Gerber's interrogatories predominately concerned three objections ("premature contention interrogatory," requires expert opinion, and not relevant), though Plaintiffs still did not clearly state which objections they continue to assert and instead made general references to objections previously made.  *E.g.*, Ex. 21 at 3.

On the parties' subsequent meet and confer call on August 4, 2022, Gerber asked Plaintiffs to articulate the substantive differences between Gerber's interrogatories (Ex. 1) and Gerber's interrogatories as described in its July 27 letter (Ex. 20).  Plaintiffs said they already provided a response to that in their August 3 letter (Ex. 21) (they did not); repeated that the differences are "self-evident"; misconstrued Gerber's efforts to provide clarification on what facts Plaintiffs might include in a response as changing the scope of the interrogatories propounded; and maintained that no response was warranted because, in their view, the interrogatories "necessarily" require an expert opinion, are contention interrogatories, or seek irrelevant information.

On the parties' August 4 call, Gerber again specifically tried to confirm which objections Plaintiffs continue to assert.  Based on the discussion, it appears Plaintiffs are standing on three objections (*i.e.*, "premature contention interrogatory," requires an expert opinion, and relevance),

7

though Plaintiffs in their responses continue to assert all objections.

## ARGUMENT

On this motion to compel, the "burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted." *Turnage v. Clarity Servs.*, No. 3:14CV760 (HEH-RCY), 2015 WL 5092695, at *5-6 (E.D. Va. July 22, 2015) (internal citations omitted) (granting motion to compel where the responding party failed to provide "persuasive argument or proof as to why the challenged production should not be permitted").

Plaintiffs refuse to answer a number of Gerber's interrogatories on the grounds that they are "premature contention interrogatories," in most cases supposedly requiring both "legal conclusion[s]" and "premature disclosure of expert information," and/or on the ground that they request irrelevant information.  Gerber seeks the basic facts underlying Plaintiffs' allegations and known to Plaintiffs *prior to filing* their Complaint, not expert testimony or facts that Plaintiffs cannot provide until some later point in the litigation.  The Court should overrule Plaintiffs' objections and compel Plaintiffs to answer Gerber's Interrogatories, specifically: No. 14 (whether any harm has been suffered from the consumption of the purchased products); Nos. 2, 3, 8 (facts that informed the Complaint's claim Gerber's products are "harmful" and/or "unsafe"); Nos. 4, 6, 7 (statements Plaintiffs contend were false or misleading, and what information Gerber should have disclosed); No. 9 (price the responding Plaintiff would pay for each purchased product today); and Nos. 10 and part of No. 17 (non-Gerber baby food products that Plaintiffs have purchased, considered purchasing, or served).

Similarly, Plaintiffs refuse to produce documents in response to Request for Production No. 7 that relate to non-Gerber baby food products, claiming non-Gerber baby food products are not relevant even though Plaintiffs put them at issue in their Complaint.  The Court should overrule

Plaintiffs' objections and compel Plaintiffs to produce the requested documents.

**I.     Plaintiffs Should Be Required to Provide the Factual Basis for their Allegation that Gerber's  Products Are "Harmful" and "Unsafe"**

Plaintiffs refuse to answer Gerber's Interrogatories Nos. 2, 3, 8, and 14, which seek the factual basis for Plaintiffs' allegation in the Complaint that Gerber's products are "harmful" and "unsafe."

**A.     Interrogatory No. 14 - whether any harm has been suffered**

The Complaint seeks to recover economic damages based on a risk of physical injury.  That is, Plaintiffs base their claims on a purported economic injury resting on a "risk" that Gerber's products are *not* safe to consume.  *See, e.g.*, Compl. ¶¶ 111, 216, 230, 243, 282, 312.  Accordingly, Interrogatory No. 14 simply asks Plaintiffs to state whether the consumption of the Gerber products Plaintiffs purchased has, to Plaintiffs' current knowledge, resulted in any harm.  Ex 1.  Plaintiffs refuse to answer, claiming (1) the information sought is not relevant, and (2) this is a premature contention interrogatory.

With respect to relevance, as the party resisting production, "[t]he burden is on [Plaintiffs] to show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant." *Deutsche Bank Nat'l Tr. Co. v. Fegely*, No. 3:16CV147, 2020 WL 201048, at *6-8 (E.D. Va. Jan. 13, 2020) (overruling relevance objection because the objecting party "lack[ed] the supporting evidentiary support necessary to sustain" the objection and had not demonstrated "each interrogatory is not relevant"); *In re Peanut Farmers Antitrust Litig.*, No. 2:19cv00463, 2020 WL 9216019, at *1-2 (E.D. Va. July 24, 2020) (quoting *Contract Materials, Inc. v. Kataleuna Gmbh Catalysts*, 462 Fed. Appx. 266, 273 (4th Cir. 2012)) (granting motion to compel and overruling relevance objection because the objecting party did "not me[e]t its burden to demonstrate that it should not be required to produce" the requested information,

quoting the Fourth Circuit in *Contract Materials* that "[t]he threshold for relevance is not a high one"). Plaintiffs cannot meet this burden.

Plaintiffs maintain that Interrogatory No. 14 does not seek relevant information because "Plaintiffs seek no damages based on . . . physical harm." Ex. 19 at 1. But the alleged risk of physical harm is the *very basis* for Plaintiffs' allegations seeking economic damages. *See, e.g.*, Compl. ¶¶ 111, 216, 230, 243, 282, 312. In contrast, Plaintiffs insist Gerber include ESI search terms based on a risk of physical harm, such as "ADHD" and "autism," stating on the parties' July 11 call that such documents are relevant because a risk of physical injury is material to Plaintiffs.

Plaintiffs also object to Interrogatory No. 14 as a "premature contention interrogatory" that "Plaintiffs are not required to respond to until the substantial completion of discovery" (Ex. 19 at 1-2). But this interrogatory does not ask "for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). Gerber has clarified to Plaintiffs in letters (*e.g.*, Ex. 20 at 2) and on numerous calls that Gerber neither seeks nor expects Plaintiffs to answer with expert testimony, or advance any sort of legal argument. The interrogatory does not, for example, ask Plaintiffs to show that any physical injury entitles Plaintiffs to economic damages – the interrogatory asks only that Plaintiffs state unequivocally whether harm has in fact been suffered. *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12-CV-525, 2015 WL 846012, at *5-6 (E.D. Va. Feb. 25, 2015), *aff'd sub nom. Intelligent Verification Sys., LLC v. Majesco Ent. Co.*, 628 F. App'x 767 (Fed. Cir. 2016*)* (holding an interrogatory that "simply request[s] facts" and does not ask the party to "advance legal argument" or "explain how or why [the facts requested] established the invalidity of Plaintiff's patent," is not a "contention interrogatory"). Here, Gerber requests facts underlying Plaintiffs' damages theory as articulated in the Complaint; this is not a contention interrogatory.

AMERICAS 116710563

There is no legitimate ground for refusing to respond to Interrogatory No. 14, and the Court should compel Plaintiffs to answer.

**B.**     **Interrogatory Nos. 2, 3, 8 - facts that informed allegations that Gerber's products are "harmful" and/or "unsafe"**

The Complaint alleges that Gerber sold products that were "unsafe" and "hazardous" and/or "allow[s] for the sale of Baby Food Products with Heavy Metals in amounts that could cause harm." Compl. ¶¶ 122, 178.  The Complaint, however, is unclear as to the amounts of heavy metals Plaintiffs find unacceptable or harmful (*e.g.*, any "risk" of the presence of heavy metals, or the levels indicated in the testing Plaintiffs reference in the Complaint), or whether there is any other reason besides a risk of heavy metals they allege renders Gerber's products unsafe.  Gerber accordingly asks Plaintiffs to (i) state, for each purchased product, the amount of each heavy metal Plaintiffs allege is "unsafe" and/or "harmful," as alleged in the Complaint (Interrogatory No. 2); (ii) state, for each purchased product, the amount of each heavy metal Plaintiffs allege would have created a duty for Gerber to disclose on the product label (Interrogatory No. 3); and (iii) identify the "facts to support Plaintiffs' contentions in the Complaint that each Purchased Product was 'harmful' and/or 'unsafe'" (Interrogatory No. 8).  Ex. 1.

Plaintiffs refuse to provide these basic facts on the ground that the interrogatories are "premature contention interrogatories," stating that they "seek premature disclosure of expert information, and/or require Plaintiffs to disclose analyses, comparative analyses, opinions, or theories that will be the subject of expert testimony" and "seek quintessential expert opinion that Plaintiffs are not yet required to provide."  Ex. 19 at 2.

*First*, these are not "contention" interrogatories.  Plaintiffs knew or should have known at least some factual bases for this allegation when they filed their Complaint repeatedly alleging that Gerber's products contain or may contain "harmful" heavy metals and are "unsafe."  Plaintiffs'

11

refusal to answer these interrogatories either means that Plaintiffs did not have a factual basis for their claims, or they aim to withhold such factual bases from Gerber, which they may not do. *See, e.g.*, *Wagner v. St. Paul Fire & Marine Ins. Co.*, 238 F.R.D. 418, 426-27 (N.D.W. Va. 2006) (internal citations omitted) (rejecting plaintiffs' argument that they need not answer an interrogatory for which "they have yet to obtain the information through the discovery process" because "[f]act interrogatories are consistent with Rule 11 of the Federal Rules of Civil Procedure, [which requires that] plaintiffs must have some factual basis for the allegations in their complaint"). If the latter, a "party has a duty to provide all responsive information available when answering a discovery request," and Gerber is entitled to an answer. *Lonquist Field Serv., LLC v. Sorby*, No. 21-1035-KHV-KGG, 2021 WL 4967041, at *3 (D. Kan. Oct. 26, 2021) (granting a motion to compel because "[a]lthough Plaintiff may learn of additional information" through discovery, plaintiff "brought a lawsuit contending that Defendants stole its trade secrets and/or confidential information," so "Plaintiff must have some factual basis for this claim" and "Defendants are entitled to discover information Plaintiff contends is the basis of its trade secret claim").

Moreover, Plaintiffs cling to their objection that these interrogatories are "premature contention interrogatories" because they use some variation of the word "contend." Ex. 19 at 3. But "[t]he use of the word 'contention' in the text of the interrogatories is certainly not dispositive" of whether an interrogatory is a contention interrogatory. *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 228, 230 (E.D. Pa. 2014). Instead, the information sought determines whether an interrogatory is a "contention interrogatory." *Id.* at 230-31 (holding interrogatories "seek[ing] facts on which Plaintiffs base their claims" are not "contention interrogatories," even though they contain the word "contention").

12

In *In re Peanut Farmers*, for example, the court held the following interrogatory, among others, was not a contention interrogatory because defendants "merely request[ed] the factual bases of claims made in the Complaint": "Describe how *You believe* each Defendant manipulated the Peanut prices and inventory numbers reported to USDA NASS . . . ."  2020 WL 8970814, at *1; ECF No. 154, Interrogatory No. 11 (emphasis added).   The only difference between this interrogatory and Gerber's interrogatories is that some of Gerber's interrogatories include the word "contend" (rather than, *e.g.*, "believe" or "allege").   When asked on the parties' August 4 call if Plaintiffs would have answered the interrogatories if they used the word "allege" instead of the word "contend," counsel for Plaintiffs indicated they would have to consider it, suggesting Plaintiffs indeed rested inappropriate weight on the word choice as compared to the facts each interrogatory sought.

*Second*, these interrogatories do not seek any expert or legal opinion and are expressly directed to each responding Plaintiff's beliefs.   Perplexingly, Plaintiffs insist on reading them *contrary* to how they are drafted, and then claim they are "not required to construe Gerber's Interrogatories in any manner other than how they are plainly drafted, which would necessarily require expert information."  Ex. 19 at 2.  That is simply not true.

In *Tucker v. Momentive Performance Materials USA, Inc*., for example, the defendant propounded an interrogatory seeking the "identification and description for each alleged specific unsafe working condition" and asked for the plaintiffs to "identify and describe how the [defendant's] 'Subject Plant was responsible for causing each alleged unsafe work condition.'" No. 2:13-cv-04480, 2016 WL 8252929, at *4-5 (S.D. W. Va. Nov. 23, 2016).   The plaintiffs objected to this interrogatory on the ground that it "requires expert testimony."  *Id.*  Rejecting plaintiffs' argument, the court granted the defendants' motion to compel because the interrogatory

AMERICAS 116710563

"relate[s] directly to the facts and violations asserted by Plaintiffs" and "Plaintiffs could have some knowledge of the information sought by these interrogatories."  *Id.*  Similarly, here, Gerber only asks that Plaintiffs identify such facts on which they base these allegations *presently known to Plaintiffs at this stage in the litigation*.  Plaintiffs' Complaint is based on Gerber's products being allegedly unsafe, and Plaintiffs are entirely equipped to state why they so believe.

In the absence of valid objections, Gerber is entitled to Plaintiffs' answers to Interrogatory Nos. 2, 3, and 8.

## II.   Plaintiffs Should Be Required to Identify the Statements That Plaintiffs Contend are False or Misleading, and What Information Gerber Should Have Disclosed (Interrogatory Nos. 4, 6, 7)

The Complaint alleges that the packaging on Gerber's products deceived Plaintiffs into believing the products posed no "risk" of containing heavy metals and were therefore "safe and suitable for consumption by infants and young children."  Compl. ¶¶ 11, 75, 122, 216-17, 230-31, 243-44, 253, 282-83, 293-94, 312-13, 329-30, 346-47, 365-66.   Accordingly, Gerber served interrogatories to ask each responding Plaintiff to identify (i) label statements for the Purchased Products each Plaintiff contends were false or misleading (Interrogatory No. 4); (ii) marketing statements the responding Plaintiff saw prior to making their purchases that they contend were false or misleading (Interrogatory No. 6); and (iii) what disclosure the responding Plaintiff contends Gerber should have made (Interrogatory No. 7).  Ex. 1.

Plaintiffs again object on the ground that the interrogatories are "premature contention interrogatories."  Exs. 3, 7-17.  As with Gerber's interrogatories discussed above, these too do not request that Plaintiffs advance any sort of legal argument as to how such representations on the packaging meet the elements of a misrepresentation claim.  The interrogatories merely seek the factual basis for each Plaintiff's misrepresentation claims – that Gerber's packaging deceived them – and are therefore not contention interrogatories.  *DOT Com Entm't Grp., Inc. v. Cyberbingo*

14

*Corp.*, 237 F.R.D. 43 (W.D.N.Y. 2006) (holding interrogatories are not contention interrogatories because they do not require defendants to advance legal argument in support of their defense or counterclaim, but rather "simply require Defendants disclose the evidentiary basis upon which such a determination may be made at trial, presumably, with the assistance of expert opinion and legal argument based on such facts").

Relatedly, Plaintiffs again object to these interrogatories on the grounds that they "seek premature disclosure of expert information, and/or require Plaintiffs to disclose analyses, comparative analyses, opinions, or theories that will be the subject of expert testimony." Ex. 19 at 2. It is unclear how these interrogatories – asking Plaintiffs for the factual basis for their claim that Gerber's packaging deceived them – could possibly require expert opinion. The defendants in *Wagner v. St. Paul Fire & Marine Insurance Company* also propounded interrogatories asking "Plaintiffs to reveal information regarding the factual background of their case." 238 F.R.D. 418, 428 (N.D.W. Va. 2006). An interrogatory asked the plaintiffs to state "[e]ach and every instance of wrongful litigation conduct you allege was committed, specifying the name of the attorney who committed the act and the date of such act." *Id.* at 420. Plaintiffs objected on the grounds that the interrogatory requires "an expert opinion and/or conclusion of law the plaintiff is not qualified to render." *Id.* at 428. The court, however, found that the interrogatory "does not ask for an expert opinion," but rather "merely asks Plaintiffs to state whether they allege wrongful litigation conduct by defense attorneys and if so the facts upon which they base that argument." *Id.* Gerber's interrogatories request the same facts.

Plaintiffs should therefore be required to answer Interrogatory Nos. 4, 6, and 7.

AMERICAS 116710563

**III.   Plaintiffs Should Be Required to State the Price They Would Pay for the Purchased Products, Knowing What They Know Today (Interrogatory No. 9)**

Interrogatory No. 9 asks Plaintiffs to state the price they would pay for each of the purchased products, knowing what they knows today.  Ex. 1.  Plaintiffs answered that they "would not have bought any of the Baby Food Products."  Ex. 7-17.  Plaintiffs maintain that this is responsive to Gerber's interrogatory, but as Gerber explained on the parties' August 4 call, Plaintiffs' response does not answer the question asked.  *Lacroix v. City of Portsmouth*, No. 2:13cv533, 2014 WL 12547259, at *1-2 (E.D. Va. Oct. 23, 2014) (granting motion to compel where a party provided a "general description" to an interrogatory response, when the interrogatory requested "specific instances of conduct," because "[a]n incomplete answer to an interrogatory is treated the same as a non-answer for purposes of a motion to compel").

Plaintiffs stating they "would not have bought any of the Baby Food Products" could mean that they believe the products are worth $0.  It could also mean Plaintiffs believe they are worth some value, but still choose not to purchase the products.  This is significant because Plaintiffs' Complaint includes conflicting allegations regarding the value Plaintiffs ascribe to Gerber's products knowing what they know today – alleging both that the products were "worthless" and "worth less" than what Plaintiffs paid.  *E.g.*, Compl. ¶ 186.

To the extent Plaintiffs refuse to provide a responsive answer on the ground that such an answer would require expert testimony and "will be dealt with at the expert stage" (Ex. 21 at 3), Gerber has explained that this interrogatory is specifically addressed to the responding Plaintiff and does not seek, or require, an expert opinion (*e.g.*, Ex. 20 at 6).

Plaintiffs should therefore be required to provide a responsive answer to this interrogatory.

16

**IV.** **Plaintiffs Should Be Required to Answer Interrogatories Regarding Non-Gerber Baby Foods They Purchased or Served (Interrogatory No. 10 and part of Interrogatory No. 17)**

Interrogatory Nos. 10 and 17 request that Plaintiffs identify other baby food products they purchased or considered purchasing when they purchased Gerber's products (Interrogatory No. 10) and baby food products they purchased since learning that Gerber's products "contain or are at a material risk of containing harmful Heavy Metals," as Plaintiffs allege in the Complaint (Interrogatory No. 17).   Ex. 1.   Plaintiffs object to these interrogatories on the ground that information pertaining to non-Gerber baby food products is irrelevant.  Ex. 19 at 3.

But Plaintiffs' allegations put these products at issue (*e.g.*, Compl. ¶¶ 11, 205, 135-37, 253), and Plaintiffs' interrogatory responses state they "would not have bought any of the Baby Food Products" if they "had known that the Gerber Baby Food Products contain or were at material risk of containing harmful Heavy Metals . . . ." Exs. 7-17, No. 9.  Further, Plaintiffs seemingly base their overpayment theory on comparisons to "competitors" allegedly "manufacturing baby food products with little to no detectable levels of heavy metals."   Compl. ¶¶ 135-37.   The Complaint, though, includes little to no factual support for this "overpayment" theory, such as Plaintiffs' purchasing habits concerning baby food products before and since allegedly learning that Gerber's products "contain or are at a material risk of containing harmful Heavy Metals." Compl. ¶ 10.  What Plaintiffs purchased or would have purchased instead of Gerber's products is clearly relevant and far surpasses the bar for relevance.  *In re Peanut Farmers Antitrust Litig.*, 2020 WL 9216019 at *1-2 (quoting *Contract Materials, Inc. v. Kataleuna Gmbh Catalysts*, 462 Fed. Appx. 266, 273 (4th Cir. 2012)) (granting a motion to compel discovery because the objecting party failed to meet its burden of demonstrating the requested information is not relevant, quoting the Fourth Circuit in *Contract Materials* that"[t]he threshold for relevance is not a high one").

Plaintiffs have the burden of "explaining precisely why" the information sought in

17

Interrogatory Nos. 10 and 17 is not relevant.  *Momentive Performance Materials USA, Inc.*, 2016

WL 8252929 at *3-4 (S.D. W. Va. Nov. 23, 2016) (granting defendant's motion to compel because

plaintiffs "failed to provide reasoning to support their claims of irrelevancy," particularly because

a "party resisting discovery on the basis of relevancy bears the burden of explaining precisely why

its objection is proper, given the broad and liberal construction of Rule 26").  Plaintiffs have failed

to provide any explanation beyond conclusory statements and citation to inapposite cases[2] that

such information does not relate to Plaintiffs' claims (Ex. 19 at 3 n.3; Ex. 21 at 3), much less a

precise explanation that overcomes the "highly inclusive" relevance standard.  *Id.* at *12.

Plaintiffs should, therefore, be required to answer these interrogatories concerning non-

Gerber baby food products.

## V.    Plaintiffs Should Be Compelled to Produce Documents Relating to Non-Gerber Products (Request for Production No. 7)

For the same reason Gerber propounded interrogatories concerning other baby food

products Plaintiffs purchased or considered purchasing, Gerber requested Plaintiffs produce

documents identifying the foods and beverages Plaintiffs purchased or served to babies, toddlers,

or children (RFP No. 7).  Ex. 2.  Plaintiffs' August 1, 2022 production of responsive documents to

Request No. 7, according to Plaintiffs, was "subject to Plaintiffs' prior objections" and "limited to

---

[2] For example, Plaintiffs reference *Astiana v. Kashi Co.*, 291 F.R.D. 493, 503 (S.D. Cal. 2013) (cited in *In re Coco-Cola Prods. Mktg. & Sales Practices Litig. No. II*, 2015 WL 5043846 (N.D. Cal. Aug. 26, 2015)) as evidence that these interrogatories seek irrelevant information based on a quotation that reads: "the fact that Plaintiffs may also purchase unhealthy or otherwise artificial foods says nothing about whether they purchased Kashi products specifically because they were supposedly healthy and natural." However, the plaintiffs in both *Coca-Cola* and *Astiana* alleged that the products were "unhealthy" because they include artificial or non-natural ingredients, not that the products were "unsafe" and/or "harmful" to consume as Plaintiffs allege here. Consumers may seek a product because they believe it is "healthy," but may also choose to consume other "unhealthy" foods and the plaintiffs did not base their economic damages on a risk of physical harm from "unhealthy" foods. It is unsurprising that the courts in *Coca-Cola* and *Astiana* did not find plaintiffs' purchasing habits regarding other foods to be relevant. Conversely, here, Plaintiffs seek economic damages based on a risk of physical injury and presumably would not purchase *any* foods or beverages that they deem as "unsafe" and/or "harmful" for a child to consume.

18

Gerber baby food products purchased by Plaintiffs." Ex. 21 at 4.

Plaintiffs object to this portion of Request for Production No. 7 as not relevant on the same bases provided with respect to Gerber's Interrogatory Nos. 10 and part of 17, described in Section IV.  Ex. 4 at 7; Ex. 20 at 4.  For the reasons explained with respect to Gerber's interrogatories, documents relating to non-Gerber food products Plaintiffs purchased or served relate directly to Plaintiffs' allegations.  Accordingly, here too, Plaintiffs fail to meet their burden of showing the documents sought are not relevant.

## VI.   Plaintiffs' Objections Upon Which They Are Not "Standing" Should Be Overruled

For Interrogatory Nos. 1, 5, 11, 12, 13, 15, 16, 18, 19, 20, and the portion of Interrogatory No. 17 relating to Gerber baby food products, and Request for Production Nos. 2-4, 8 and 10-13, 16, and the portion of Request for Production No. 7 relating to Gerber baby food products, Plaintiffs have said that they are not withholding information/documents and/or refusing to search for any information/documents on the basis of any objections, but at the same time, they will not withdraw those objections.[3]  Providing answers and documents "subject to" objections is confusing and misleading, as already demonstrated by Gerber's numerous attempts through letters (*e.g.*, Ex. 20 at 1, 6) and meet and confer calls to discern which objections are the basis of an impasse and that Plaintiffs continue to assert.  *Turnage*, 2015 WL 5092695 at *2-3 (E.D. Va. July 22, 2015) (overruling objections and explaining "responses that are made 'subject to' and 'without waiving the foregoing objections'" are confusing, misleading, and improper, and are thus "deemed waived").

Courts in this district have made it clear that responding to a discovery request "subject to"

---

[3] The parties reached agreement on certain of Plaintiffs' objections, such as the definition of "Purchased Products" and limiting certain responses to the period of February 10, 2015 to the present, and as such, there is no need for Plaintiffs to maintain such objections.

19

and "without waiving" objections is improper, and for good reason.  *See, e.g.*, *Brown v. Experian Info. Sols., Inc.*, No. 3:16cv670, 2017 WL 11632852, at *1-2 (E.D. Va. Apr. 17, 2017) (ordering the defendant to supplement its responses to "all propounded discovery to which it lodged the improper general or 'subject to' objections," stating that making discovery response "subject to" objections "amounts to no answer at all, for it says, essentially, 'here is some information, but there could be more that you are not getting.'").  Under Federal Rule of Civil Procedure 26(e), a party must supplement or correct responses to interrogatories and requests for production "if the party learns that in some material respect the . . . response is incomplete or incorrect . . . ."  Plaintiffs could effectively evade this responsibility, though, for information arising under an objection.  As Gerber has described in this motion, Plaintiffs have asserted numerous and varied objections throughout the meet and confer process, some of which Plaintiffs have admitted they asserted solely for the purpose of "preserving" them.  The only reason for "preserving" objections is so Plaintiffs may invoke them later.  This is prejudicial to Gerber, as Gerber has no way of discerning the information Plaintiffs withhold from supplementation and on what bases.

For these reasons, Gerber respectfully requests that the Court overrule Plaintiffs' objections upon which they are not standing for Interrogatory Nos. 1, 5, 11, 12, 13, 15, 16, 18, 19, 20, and the portion of Interrogatory No. 17 relating to Gerber baby food products, and Request for Production Nos. 2-4, 8 and 10-13, and 16, and the portion of Request for Production No. 7 relating to Gerber baby food products.

## CONCLUSION

For the foregoing reasons, Gerber respectfully requests that this Court grant its Motion and compel Plaintiffs to serve, within five days, (1) complete answers to Interrogatory Nos. 2, 3, 4, 6, 7, 8, 9, 10, and 14, and (ii) complete answers to Interrogatory No. 17, and documents responsive

20

to Request for Production No. 7, insofar as these requests relate to non-Gerber foods and beverages.  Gerber also respectfully requests that the Court overrule Plaintiffs' objections upon which they are not standing for Interrogatory Nos. 1, 5, 11, 12, 13, 15, 16, 18, 19, 20, and the portion of Interrogatory No. 17 relating to Gerber baby food products, and Request for Production Nos. 2-4, 8 and 10-13, 16, and the portion of Request for Production No. 7 relating to Gerber baby food products.

Gerber additionally requests that the Court award it reasonable attorney's fees and costs incurred in filing this motion to compel, pursuant to Federal Rule of Civil Procedure 37(a)(5).

21

Dated:  August 12, 2022

WHITE & CASE LLP

By: _____
Kathryn J. Mims (Va. 81486)
701 Thirteenth Street, NW
Washington, DC 20005
T: (202) 626-3704
F: (202) 639-9355
kmims@whitecase.com

Bryan A. Merryman
(admitted *pro hac vice*)
555 South Flower Street
Suite 2700
Los Angeles, CA 90071
bmerryman@whitecase.com

Kimberly A. Havlin
(admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1095
kim.havlin@whitecase.com

KELLEY DRYE & WARREN LLP
Geoffrey W. Castello
One Jefferson Road, 2nd Floor
Parsippany, NJ  07054
Tel: (973) 503-5922
Fax: (973) 503-5950
gcastello@kelleydrye.com

*Attorneys for Defendant*
*Gerber Products Company*

22

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2022, I caused a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF GERBER PRODUCTS COMPANY'S MOTION TO COMPEL DEFENDANTS' RESPONSES TO REQUESTS FOR PRODUCTION AND ANSWERS TO INTERROGATORIES** to be filed electronically with the Clerk of the Court via the Court's ECF system, which will send notification of such filing to all counsel of record.

*/s/ Kathryn J. Mims*
Kathryn J. Mims (Va. 81486)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
T: (202) 626-3704
F: (202) 639-9355
kmims@whitecase.com

*Attorneys for Defendant*
*Gerber Products Company*