**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| IN RE: GERBER PRODUCTS COMPANY HEAVY METALS BABY FOOD LITIGATION | Master File No. 1:21-cv-00269 (MSN/JFA) |
| This Document Relates to ALL Cases | |

<u>**REPLY IN SUPPORT OF GERBER PRODUCTS COMPANY'S MOTION TO DISMISS THE REPRESENTATIVE CLASS ACTION COMPLAINT**</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ...................................................................................................... 2

I.     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER THE PRIMARY JURISDICTION DOCTRINE ............................................. 2

II.    FEDERAL PREEMPTION BARS PLAINTIFFS' CLAIMS ............................. 6

III.   PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR RELIEF ........... 8

        A.    Plaintiffs Fail to Plausibly Allege Economic Injury ..................... 8

             1.    Plaintiffs Do Not Allege They Purchased Products Unsafe for Consumption—and Incorrectly Assert They Do Not Need To .......................................................... 9

             2.    Plaintiffs Do Not Allege Facts Sufficient to Find that They Overpaid for the Products They Purchased ......................................................................... 11

        B.    Plaintiffs Concede Their Affirmative Misrepresentation Theory Fails; and They Fail to Plausibly Plead Omission-Based Deception ...................................................................... 13

        C.    Plaintiffs Fail to Adequately Plead Reliance or Causation .......... 16

        D.    The Nationwide Virginia Consumer Protection Act Claim Fails ................................................................................. 17

        E.    Plaintiffs' Common Law Claims Fail for Additional Reasons ............................................................................ 18

             1.    The Economic Loss Rule Bars Plaintiffs' Fraudulent Concealment Claims ..................................... 18

             2.    Unjust Enrichment .......................................................... 19

        F.    Plaintiffs' Claim for Injunctive Relief Fails ............................... 20

CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ahern v. Apple Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019) .......................................................................15

*Beck v. McDonald*,
  848 F.3d 262 (4th Cir. 2017) .....................................................................................11

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) .....................................................................................11

*Blackhaut v. Apple, Inc.*,
  74 F. Supp. 3d 1033 (N.D. Cal. 2014) .......................................................................17

*In re Capital One Consumer Data Sec. Breach Litig.*,
  488 F. Supp. 3d 374 (E.D. Va. 2020) ........................................................................12

*Cardenas v. Toyota Motor Corp.*,
  418 F. Supp. 3d 1090 (S.D. Fla. 2019) ......................................................................19

*Carriuolo v. GM Co.*,
  823 F.3d 977 (11th Cir. 2016) ...................................................................................12

*Castillo v. Unilever U.S., Inc.*,
  2022 WL 704809 (N.D. Ill. Mar. 9, 2022) .................................................................20

*Century Pac., Inc. v. Hilton Hotels Corp.*,
  528 F. Supp. 2d 206 (S.D.N.Y. 2007), *aff'd*, 354 F. App'x 496 (2d Cir. 2009) ..................17

*Cheramie v. HBB, LLC*,
  545 F. App'x 626 (9th Cir. 2013) ...............................................................................15

*Cleary v. Philip Morris Inc.*,
  656 F.3d 511 (7th Cir. 2011) .....................................................................................20

*Clenney v. FCA US LLC*,
  2022 WL 2197074 (N.D. Cal. June 20, 2022) ............................................................19

*In re Clorox Consumer Litig.*,
  2013 WL 3967334 (N.D. Cal. July 31, 2013) .......................................................16, 20

*Colangelo v. Champion Petfoods USA, Inc.*,
  2020 WL 777462 (N.D.N.Y. Feb. 18, 2020) ..............................................................14

*Colangelo v. Champion Petfoods USA, Inc.*,
    2022 WL 991518 (N.D.N.Y. Mar. 31, 2022) ........................................................14

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ..................................................................9

*Dana v. Hershey Co.*,
    180 F. Supp. 3d 652 (N.D. Cal. 2016) ................................................................13

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ............................................................................20

*Doss v. Gen. Mills, Inc.*,
    2019 WL 7946028 (S.D. Fla. June 14, 2019) ....................................................11

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ............................................................................14

*Edwards v. FCA US LLC*,
    2022 WL 1814144 (N.D. Cal. June 2, 2022) ..............................................14, 19

*Elias v. Hewlett-Packard Co.*,
    2014 WL 493034 (N.D. Cal. Feb. 5, 2014) ......................................................14

*Farrales v. Ford Motor Co.*,
    2022 WL 1239347 (N.D. Cal. Apr. 27, 2022) ..................................................19

*Fisher v. Monster Bev. Corp.*,
    656 F. App'x 819 (9th Cir. 2016) ......................................................................6

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*,
    2021 WL 1220948 (C.D. Cal. Mar. 29, 2021) ..................................................19

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Practices Litig.*,
    2022 WL 551221 (E.D. Mich. Feb. 23, 2022) ..................................................18

*In re Fruit Juice Prods. Mktg. & Sales Practices Litig. ("Fruit Juice")*,
    831 F. Supp. 2d 507 (D. Mass. Dec. 21, 2011) ..........................................10, 11

*Frye v. L'Oreal USA, Inc.*,
    583 F. Supp. 2d 954 (N.D. Ill. 2008) ..........................................................10, 11

*Gannon v. FCA US, LLC*,
    2022 WL 3013101 (C.D. Cal. May 18, 2022) ..................................................19

*Garrett-Alfred v. Facebook, Inc.*,
    540 F. Supp. 3d 1129 (M.D. Fla. 2021) ............................................................15

AMERICAS 116713483

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000)....................................................................................8

*Guajardo v. Skechers USA, Inc.*,
    503 F. Supp. 3d 746 (C.D. Ill. 2020) .......................................................15

*Gurwell v. Seaworld Parks & Entm't LLC*,
    2021 WL 4168503 (E.D. Va. Aug. 11, 2021)......................................16, 20

*Hammerling v. Google LLC*,
    2022 WL 2812188 (N.D. Cal. July 18, 2022).............................................16

*In re Hardieplank Fiber Cement Siding Litig.*,
    2013 WL 3717743 (D. Minn. July 15, 2013) .............................................18

*Harris v. Mondelez Global LLC*,
    2020 WL 4336390 (E.D.N.Y. July 28, 2020).............................................14

*Herrington v. Johnson & Johnson Consumer Cos.*,
    2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ...........................................10

*Holk v. Snapple Bev. Corp.*,
    575 F.3d 329 (3d Cir. 2009).................................................................7, 8

*Hood v. Wholesoy & Co.*,
    2013 WL 3553979 (N.D. Cal. July 12, 2013).............................................4

*Insteel Indus. v. Costanza Contracting Co.*,
    276 F. Supp. 2d 479 (E.D. Va. 2003) .......................................................17

*Izquierdo v. Mondelez Int'l, Inc.*,
    2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016).............................................12

*In re Juul Labs, Inc., Mktg., Sales Practices & Prods. Liab. Litig.*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020) .......................................................6

*Kimca v. Sprout Foods, Inc.*,
    2022 WL 1213488 (D.N.J. Apr. 25, 2022) ...............................................10

*Kimca v. Sprout Foods, Inc.*,
    No. BER-L-002538-22 (N.J. Sup. Ct. Law Div. Aug. 17, 2022) ......................2, 10

*Kumandan v. Google LLC*,
    2022 WL 103551 (N.D. Cal. Jan. 11, 2022).............................................13

*Leon v. Cont'l AG*,
    301 F. Supp. 3d 1203 (S.D. Fla. 2017) ...................................................19

iv

*Licul v. Volkswagen Grp. of Am., Inc.*,
    2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) .................................................................................20

*In re Lipitor Antitrust Litig.*,
    336 F. Supp. 3d 395 (D.N.J. 2018) ...........................................................................................18

*Loo v. Toyota Motor Sales, USA, Inc.*,
    2019 WL 7753448 (C.D. Cal. Dec. 20, 2019) ...........................................................................20

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg.,*
    *Sales Practices & Prods. Liab. Litig.*, 2017 WL 2646286 (E.D. Va. June 20, 2017) .............12

*Marrache v. Bacardi U.S.A., Inc.*,
    2020 WL 434928 (S.D. Fla. Jan. 28, 2020) .................................................................................7

*In re Marriott Int'l, Inc.*,
    440 F. Supp. 3d 447 (D. Md. 2020) ...........................................................................................12

*Matanky v. GM LLC*,
    370 F. Supp. 3d 772 (E.D. Mich. 2019)......................................................................................18

*Ostolaza-Diaz v. Countrywide Bank, N.A.*,
    360 F. App'x 504 (4th Cir. 2010) ...............................................................................................17

*Owens v. DRS Auto. Fantomworks, Inc.*,
    288 Va. 489 (2014) ....................................................................................................................18

*Physicians Comm. for Responsible Med. v. General Mills, Inc.*,
    2006 WL 3487651 (E.D. Va. Nov. 30, 2006)...............................................................................5

*Pineda v. Nissan N. Am., Inc.*,
    2022 WL 2920416 (C.D. Cal. July 25, 2022) ............................................................................19

*Pittman v. Chick-fil-A, Inc.*,
    2022 WL 2967586 (S.D.N.Y. July 27, 2022) ............................................................................20

*In re Plum Baby Food Litig.*,
    2022 U.S. Dist. LEXIS 25944 (N.D. Cal. Jan. 12, 2022) .................................................6, 7, 10

*Prestige Ins. Grp. v. Allstate Ins. Co.*,
    2022 WL 1091825 (S.D. Fla. Apr. 12, 2022) ............................................................................17

*Quidera v. Blackstone Labs, LLC*,
    2021 WL 4958789 (S.D. Fla. Mar. 5, 2021).................................................................................4

*In re Riddell Concussion Reduction Litig.*,
    77 F. Supp. 3d 422 (D.N.J. 2015) .............................................................................................13

v

*Sabo v. Wellpet, LLC*,
 282 F. Supp. 3d 1040 (N.D. Ill. 2017) ...................................................................12

*Sciacca v. Apple, Inc.*,
 362 F. Supp. 3d 787 (N.D. Cal. 2019) .................................................................15

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
 559 U.S. 393 (2010)..............................................................................................18

*Sharbat v. Iovance Biotherapeutics, Inc.*,
 2022 WL 45062 (S.D.N.Y. Jan. 5, 2022) .............................................................16

*Simpson v. Champion Petfoods USA, Inc.*,
 397 F. Supp. 3d 952 (E.D. Ky. 2019) ..............................................................13, 14

*Slafter v. Haier US Appliance Sols., Inc.*,
 2022 WL 1912388 (S.D. Ill. June 3, 2022)...........................................................20

*Small v. Lorillard Tobacco Co.*,
 94 N.Y.2d 43 (1999) ..............................................................................................12

*Tappana v. Am. Honda Motor Co.*,
 2022 WL 2526971 (C.D. Cal. July 5, 2022) .........................................................19

*Tran v. Sioux Honey Ass'n*,
 2017 WL 5587276 (C.D. Cal. Oct. 11, 2017)..........................................................3

*Wigod v. Wells Fargo Bank, N.A.*,
 673 F.3d 547 (7th Cir. 2012) .................................................................................17

*Williams v. Gerber Prods. Co.*,
 552 F.3d 934 (9th Cir. 2008) ............................................................................14, 19

*Williams v. Tesla, Inc.*,
 2022 WL 899847 (N.D. Cal. Mar. 28, 2022).........................................................19

*Wyeth v. Levine*,
 555 U.S. 555 (2009)..................................................................................................8

*Yu v. Dreyer's Grand Ice Cream, Inc.*,
 2022 WL 799563 (S.D.N.Y. Mar. 16, 2022) ........................................................14

*Yumul v. Smart Balance, Inc.*,
 733 F. Supp. 2d 1134 (C.D. Cal. 2010) ................................................................14

vi

## FEDERAL STATUTES

21 U.S.C. § 342 ................................................................................................................7

21 U.S.C. § 393 ................................................................................................................7

21 U.S.C. § 402 ................................................................................................................7

## FEDERAL RULES

Fed. R. Civ. Proc. 23 ......................................................................................................18

## FEDERAL REGISTER

85 Fed. Reg. 47797 .......................................................................................................7, 8

86 Fed. Reg. 56711 ..........................................................................................................8

## STATE STATUTES

Cal. Bus. & Prof. Code § 17500 .....................................................................................13

Va. Code. Ann. § 59.1-204 .............................................................................................18

AMERICAS 116713483

## PRELIMINARY STATEMENT

This Motion can and should be resolved on a series of core points Gerber demonstrated in its Motion and Plaintiffs do not contest.  Traces of heavy metals occur in, and cannot be eliminated from, food that infants must eat.  Mot. 3.  There is no difference between packaged and homemade food, or between non-organic and organic food.[1]  *Id.* at 4.  There are no comparable products with no heavy metals.  *Id.* at 7.  FDA has told consumers these foods pose no immediate risk and should not be discarded.  *Id.* at 4.  FDA is actively studying this complex issue in its well-funded "Closer to Zero" campaign, and will consult extensively with experts and stakeholders and report on relevant standards on a fixed timeline over the next two years.  *Id.* at 4-5.  Plaintiffs do not allege there were actual heavy metals in their foods that caused actual harm, but only a risk of heavy metals (quantity unspecified) and a risk that, if present, there may be an increased risk of future harm.  *Id.* at 23.  Plaintiffs expressly seek to impose standards different from FDA.  *Id.* at 13.

All told, as soon as the Court, as required, looks past Plaintiffs' sensational language, Plaintiffs' case falls apart on multiple grounds.  The safety of Gerber products, and what trace levels of heavy metals render a product unfit for consumption by infants and children, are at the core of this case and under study by FDA.  This case should be dismissed based on primary jurisdiction to allow FDA to complete its work.  Plaintiffs cannot avoid this result by suddenly contending, contrary to their Complaint, that this case has nothing to do with food safety.  Likewise, Plaintiffs' claims conflict with and are preempted by FDA regulations and rulings.  Nor can Plaintiffs plead injury by (again) for the first time claiming that safety is not the issue, but only

---

[1] In fact, in August 2022, Healthy Babies Bright Futures released a second study, following the 2019 study cited in the Complaint, that concluded "We found no evidence to suggest that homemade baby food has lower heavy metal levels than store-bought brands."  *See* https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2022-08/ExecSummary_ENG.pdf.

whether they overpaid for Gerber products.  Plaintiffs claim they overpaid *because* (they allege) the Gerber products were unsafe, and they have failed to plausibly allege actual injury or harm. Nor can Plaintiffs advance their price premium theory where they have not pled a zero-heavy-metals competitor and the facts show none exists.  The claims fail basic pleading requirements for multiple other reasons stated below.  The Complaint should be dismissed with prejudice.

## ARGUMENT

### I.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER THE PRIMARY JURISDICTION DOCTRINE

FDA is in the midst of determining what trace levels of heavy metals in baby foods are acceptable.  Plaintiffs do not dispute this is an enormously complex question, it implicates multiple industries and stakeholders, and FDA (rather than a court) is the agency with the knowledge, experts, resources, and reach to resolve it.  *See generally* Mot. 6-14.  Nor do Plaintiffs address the primary jurisdiction factors, all of which support deferring until FDA completes its work.  Instead, Plaintiffs now claim their case is not about safety, but only labels, so what FDA does is beside the point.  *See* Opp. 7-8.  This false distinction contradicts the Complaint and simply does not hold. Two days ago, a New Jersey court rejected this exact argument in a case with nearly identical facts asserted against another baby food manufacturer.  Ex. 16 at 8 (*Kimca v. Sprout Foods, Inc. ("Kimca II")*, No. BER-L-002538-22 (N.J. Sup. Ct. Law Div. Aug. 17, 2022) (applying primary jurisdiction as "guidance from FDA on what constitutes a safe level of heavy metals in baby food is integral to determining whether any of Sprout's label statements were misleading")).

*First*, to suggest Plaintiffs do not challenge the safety of Gerber products is nonsense.  Even in making this contention, Plaintiffs still describe their case as about the presence of "Heavy Metals, which are known to be harmful to babies and young children."  *See* Opp. 7.  The Opposition

2

and the Complaint are filled with charged language about toxicity, safety, and harm.[2]  Plaintiffs cannot retreat from those allegations to avoid FDA's primary jurisdiction while relying on them everywhere else.

*Second*, Plaintiffs cannot separate their contentions of what should be on a label from what is safe.  Plaintiffs claim there are (or may be) trace levels of heavy metals in Gerber products that are (or may be) unsafe; and therefore the risk of their presence would be material to reasonable consumers and should have been disclosed on labels.  *See, e.g.*, Opp. 6.  The initial premise of that claim is that Gerber products were not safe to consume and posed these risks.  There would otherwise be no basis for Plaintiffs to claim "reasonable consumers" would "avoid risking the health of their children" by knowing "whether Gerber's Products contain, or are at material risk for containing, Heavy Metals."  Opp. 11.  Even in their Opposition, Plaintiffs describe their labeling claims as challenging whether Gerber's products were in fact "safe and suitable for consumption by babies and young children."  *See* Opp. 2-3.

*Third*, Plaintiffs have not pled what trace levels of heavy metals make a product unsafe for consumption.  That question must be answered to adjudicate Plaintiffs' claims, and it is best left to the expertise of FDA.[3]  Plaintiffs refuse to engage with known facts: traces of heavy metals occur naturally in foods babies and children must eat as part of a healthy and balanced diet (Mot. 4; Mot. Ex. 1 at 1); and FDA has publicly urged parents ***not*** to throw away packaged baby food or

---

[2] *See, e.g.*, Opp. 1, 4, 7-10; RC ¶¶ 1, 2, 5-11, 84, 87, 90, 92, 93, 95, 97, 99, 101, 102, 104, 106, 109, 112, 122, 178, 199, 225, 238, 269, 275, 288, 304, 323, 339, 356, 376.

[3] Plaintiffs cannot distinguish *Tran*, which presents nearly identical issues.  *Tran* involved false advertising claims and similarly hinged on the "harmful nature of glyphosate" and "what constitutes a safe level of glyphosate in honey," and thus the court held it could not "conclude whether the . . . labeling was misleading without guidance from the FDA on glyphosate's toxicity."  *Tran v. Sioux Honey Ass'n*, 2017 WL 5587276, at *2 (C.D. Cal. Oct. 11, 2017); *see* Mot. 6.  FDA's guidance is even more important here because, as FDA explicitly cautions, baby food is necessary for child health and development (whereas honey is not).  *See* Mot. 4; Mot. Ex. 1, at 1.

AMERICAS 116713483

cease feeding children certain foods for this reason.  Mot. Ex. 2 at 2; *see also* Mot. 7; Mot. Ex. 10 at 1.  Considered in full, Plaintiffs' claims are not a simple product labeling dispute.  *See Quidera v. Blackstone Labs, LLC*, 2021 WL 4958789, at *3 (S.D. Fla. Mar. 5, 2021) (emphasizing "[t]his type of weighing extensive chemical, technical, and scientific analysis is readily distinct" from simple labeling claims).  This Court should not "decide [this] issue committed to FDA's expertise without a clear indication of how FDA would view" it.  *Hood v. Wholesoy & Co.*, 2013 WL 3553979, at *5 (N.D. Cal. July 12, 2013).

The issues relevant to FDA's primary jurisdiction are ably described by Dr. Nega Beru (ECF No. 134), a 26-year veteran of FDA, who led a team of approximately 200 experts in food safety.  Plaintiffs' request to strike Dr. Beru's declaration misses the point.  Gerber offers Dr. Beru's expert testimony in support of its motion to dismiss based on primary jurisdiction, for which "matters outside the pleadings are properly considered," and not 12(b)(6).  *See* Mot. 4 at 4, n.2 (collecting cases).  Plaintiffs do not address these authorities.  Dr. Beru is also amply qualified to opine on FDA's functions in the context of evaluating and devising food safety standards.

*Fourth*, Plaintiffs concede FDA is in the midst of its Closer to Zero Action Plan, which strongly supports the first, second, and fifth primary jurisdiction factors (which Plaintiffs do not attempt to address).  Mot. 9-14; *see also* RC ¶ 123.  Plaintiffs' response that this effort "does not address [] labeling" rings hollow.  FDA expressly includes "information for consumers" among its considerations and objectives.  Mot. Ex. 12 at 21-22.[4]  Moreover, FDA's assessment of what

---

[4] *See also* Mot. Ex. 1 at 2-3 ("FDA provides consumers with actionable advice to limit exposure to toxic elements from food."); Mot. Ex. 2 at 1-2 (Constituent Update section on "Advice for Parents and Caregivers"); Mot. Ex. 3 at 3-4 (Constituent Update section on "Reminders for Parents, Caregivers, and Consumers"); Mot. Ex. 8 at 8 (noting increased resources will allow CFSAN to create education materials for consumers on "the risks from toxic elements in foods, and the importance of healthy dietary patterns and variety as a strategy for reducing toxicants in the diet"); Mot. Ex. 9 at 3 (indicating FDA is considering policies that result in "educating

4

levels are harmful, and what is feasible without compromising infant and childhood nutrition and the food supply, is the foundation for what products should be sold, how those products should be described to consumers, and therefore what is material to include on a product label.

*Fifth*, there is no merit to Plaintiffs' argument that the forthcoming FDA action levels "are not binding" and will not directly adjudicate their claims.  Opp. 8.  FDA action levels "represent[] the current thinking" of FDA on these critical issues,[5] irrespective of any separate FDA enforcement action.  FDA's conclusions may very well resolve Plaintiffs' claims as a practical matter, because they will authoritatively answer the safety questions underpinning this case.[6]

*Finally*, Plaintiffs fail to address the risk of conflicting rulings and consumer confusion should this case precede or proceed in parallel with FDA's conclusions, the third factor in the primary jurisdiction analysis.  *See Physicians Comm. for Responsible Med. v. General Mills, Inc.*, 2006 WL 3487651, at *6 (E.D. Va. Nov. 30, 2006) (dismissing case under primary jurisdiction where parallel determinations by courts and FDA risked inconsistent judgments).  This litigation would have the Court assess potential harm from traces of heavy metals independent of, and potentially contradictory to, FDA's forthcoming findings.  Indeed, as Plaintiffs do not contest, they already bring claims that contradict current FDA action levels.  *See* Mot. 13; *e.g.*, RC ¶¶ 52, 109 (complaining that FDA's action level for inorganic arsenic in infant rice cereal is "too high" and alleging Gerber's rice-based products containing inorganic arsenic below FDA's current levels were "unsafe").  Overstating harms and creating confusion poses real risks to infant health and

_____

consumers about ways they can reduce the risks posed by [heavy] metals"); Mot. Ex. 14 at 4-5 (describing FDA's consumer education campaigns).

[5] *See, e.g.*, U.S. Food & Drug Admin., Inorganic Arsenic in Rice Cereals for Infants: Action Level Guidance for Industry (2020), at 3.

[6] Plaintiffs' complaint of delaying this case "for some unknown duration" is contradicted by the record, which includes FDA's detailed timeline.  *See* Mot. 5; Mot. Exs. 4-5.

nutrition, as FDA has expressly warned.  Mot. 7; Mot. Ex. 10 at 1 (FDA statement: "requiring levels that are not currently feasible could result in significant reductions in the availability of nutritious, affordable foods that many families rely on for their children").

Plaintiffs rely on inapposite cases that involved far less complex questions for non-essential products that were not the subject of an ongoing FDA proceeding.  *See Fisher v. Monster Bev. Corp.*, 656 F. App'x 819 (9th Cir. 2016) (energy drinks); *In re Juul Labs, Inc., Mktg., Sales Practices & Prods. Liab. Litig.*, 497 F. Supp. 3d 552 (N.D. Cal. 2020) (vape pens).  In contrast, this case involves foods all agree are part of a balanced diet for infants, and traces of elements that exist naturally and cannot be eliminated from these foods.  FDA is uniquely qualified to address these issues in the first instance, and resolution of this case should await its determinations.[7]

## II.   FEDERAL PREEMPTION BARS PLAINTIFFS' CLAIMS

Plaintiffs do not dispute that the FDCA establishes a comprehensive federal scheme under which FDA is authorized to determine whether food is safe and to provide consumers with uniform and consistent food safety information.  Mot. 15.  Nor do Plaintiffs dispute that FDA uses this authority "to achieve a somewhat delicate balance of statutory objectives."  *Id.*  As set out in the Motion, Plaintiffs' claims and the relief they seek—including an "order enjoining" Gerber from selling products FDA has determined do not pose "an immediate health risk" to infants—would wholly undermine and frustrate this scheme and are preempted.

In response, Plaintiffs contradict their Complaint.  For example, Plaintiffs claim they "do not seek to prohibit the sale of infant rice cereal with less than 100 ppb inorganic arsenic."  Opp. 14.  Wrong.  Plaintiffs allege Gerber sold "unsafe" rice-based products because they contained

---

[7] Plaintiffs cite to a two-page summary order in *In re Plum Baby Food Litig. ("Plum")*, 2022 U.S. Dist. LEXIS 25944, at *5-6 (N.D. Cal. Jan. 12, 2022) is unpersuasive.  The two-sentence primary jurisdiction ruling is not binding and fails to address or provide reasoning on any key issues.

AMERICAS 116713483

"over **90 ppb** of inorganic arsenic," a lower standard than FDA's. RC ¶ 109 (emphasis added); *see also id.* at ¶ 52 (alleging FDA's action level for inorganic arsenic in infant rice cereal is "too high"). In doing so, Plaintiffs repeatedly allege Gerber failed to disclose on its labels that its products "contain or were at material risk of containing **harmful** Heavy Metals." Again, contrary to FDA's statements. RC ¶¶ 10, 11, 17, 19, 21, 23 (emphasis added).

Despite their attempt to disavow any challenge to FDA standards, for Plaintiffs to succeed, they must establish that products meeting FDA standards are unsafe and that FDA standards do not sufficiently protect public health and safety. To allow Plaintiffs' claims to proceed would be to prefer Plaintiffs' flawed interpretation and disregard FDA's judgment on baby food safety, thus usurping its role in this comprehensive and carefully calibrated scheme. *See Marrache v. Bacardi U.S.A., Inc.*, 2020 WL 434928, at *2 (S.D. Fla. Jan. 28, 2020) (comparing case "to recent court decisions finding state law claims stemming from the use of partially hydrogenated oils ('PHOs') in food were preempted because they conflicted with the FDCA, which deemed PHOs to be safe").

Plaintiffs contend Gerber "failed to identify any specific federal law or regulation with which their state law claims purportedly conflict." Opp. 12-13. The Motion in fact identified many. *See* Mot. 15-17 (citing 21 U.S.C. §§ 342, 393(b), 402(a)(1), and 85 Fed. Reg. 47797 (FDA Action Level for Inorganic Arsenic in Infant Rice Cereals)). For this reason, Plaintiffs' reliance on the preemption ruling in *Plum*—contained in a single sentence—is misplaced. *See Plum*, 2022 U.S. Dist. LEXIS 25944, at *5-6 ("Plum fails to articulate any specific federal law or regulation with which plaintiffs' state law claims purportedly conflict.").[8]

---

[8] Plaintiffs also argue the "NLEA declares that courts may not find implied preemption based on any provision of the NLEA." Opp. 13 (citing *Holk v. Snapple Bev. Corp.*, 575 F.3d 329, 336 (3d Cir. 2009)). *Holk* considered implied **field** preemption (*id.*), which is not a ground for dismissal here. *Holk* also makes clear the NLEA preserves implied preemption claims not based on the

Plaintiffs also contend FDA's rules do not have "the force of law necessary to preempt state law." Opp. 14. Plaintiffs cite *Wyeth* and *Holk*, but both courts declined to give preemptive weight to the rules because of a lack of any deliberative process. *See Wyeth v. Levine*, 555 U.S. 555, 577 (2009) (noting FDA finalized rule "without offering States or other interested parties notice or opportunity for comment"); *Holk*, 575 F.3d at 341 ("FDA arrived at its policy without the benefit of public input."). Here, FDA's action level for inorganic arsenic in rice cereal for infants underwent extensive peer review, and FDA solicited and considered public comments before enacting guidelines. Mot. 17 (citing 85 Fed. Reg. 47797); *see also* Notice on Closer to Zero Action Plan, 86 Fed. Reg. 56711 (Oct. 12, 2021) (requesting public comments). Nor does *Geier* support Plaintiffs' assertion that a federal agency must have engaged in formal rulemaking for conflict preemption to apply, as *Geier* says the opposite. *See* Mot. 15 n.3; *Geier*, 529 U.S. at 885 (declining to require "a specific expression of agency intent to pre-empt, made after notice-and-comment rulemaking"). Plaintiffs' claims are preempted.

## III.   PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR RELIEF

### A.   <u>Plaintiffs Fail to Plausibly Allege Economic Injury</u>

As Gerber showed in its Motion, while Plaintiffs base their claims on supposedly unsafe products, they fail to allege any Gerber product—let alone one Plaintiffs purchased—was actually unsafe. Mot. 18-25. Plaintiffs allege, at most, a risk of the presence of (trace) heavy metals that "may, over time, . . . increase the risk of" harm. *Id.* In Opposition, Plaintiffs do not try to defend these deficient allegations; instead, they argue they do not need these factual allegations because

---

NLEA (*id.* at n.4), like those Gerber raises here. Similarly, Plaintiffs' contention that the savings clause in Section 6(c)(2) of the NLEA saves their claims from ***express*** preemption (Opp. 14, n.11) is irrelevant, as Gerber moves only on implied ***conflict*** preemption. The NLEA savings clause does not bar "the ordinary working of conflict pre-emption principles." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000).

AMERICAS 116713483

they only assert they overpaid.  This misses the point.  Plaintiffs' entire Complaint, including allegations they overpaid or would not have purchased if they had known more, is about the safety of Gerber products.  A lawsuit seeking damages on the basis that Gerber products were not safe needs well-pled facts—not merely conclusions—in support of that assertion.  Plaintiffs offer none.

### 1. Plaintiffs Do Not Allege They Purchased Products Unsafe for Consumption—and Incorrectly Assert They Do Not Need To

Plaintiffs do not meaningfully address their failure to allege (i) they purchased products that contained heavy metals, or (ii) the purchased products contained harmful amounts of heavy metals, such that they are "unsafe."  Mot. 19-24.  Plaintiffs conclude summarily in a footnote, that because they "do not allege personal injuries," these deficiencies are irrelevant.[9]  Opp. 19, n.14. Plaintiffs are wrong.  Every alleged "omission" Plaintiffs contend gives rise to their injury rests on Gerber's products being allegedly "harmful" due to heavy metals.  RC ¶ 11 (alleged omission that the products "contain or were at a material risk of containing harmful Heavy Metals" and Gerber's "internal standards . . . allow for the sale of Baby Food Products with Heavy Metals in amounts that could cause harm"); *id.* at ¶ 8 (alleged omission that Gerber "did not adequately test" for heavy metals and "[a]s a result, Gerber sold Baby Food Products that contained or were at material risk of containing harmful Heavy Metals").  This is true for every cause of action in the Complaint.[10]

Plaintiffs' assertion that they seek economic damages rather than damages from physical injuries from these supposed harms is beside the point.  To state a claim, Plaintiffs must allege

---

[9] Plaintiffs' authority for this assertion is *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1032 (C.D. Cal. 2015), a class certification opinion that had nothing to do with safety, and contained specific factual allegations that the products contained GMOs despite being labeled "100% Natural."  Here, Plaintiffs claim they overpaid because Gerber products are "unsafe" due to the risk of "harmful" heavy metals, but fail to allege plausible facts that the purchased products contained heavy metals or anything more than a mere risk of potential future harm.

[10] RC ¶¶ 186, 190, 199, 203, 205, 216, 225, 230, 238, 243, 253, 255, 264, 275, 282, 288, 293, 304, 312, 323, 329, 339, 346, 356, 365, 376.

9

plausible facts that the products they purchased actually contained heavy metals in harmful amounts, and they do not do so.  *E.g.*, *Herrington v. Johnson & Johnson Consumer Cos.*, 2010 WL 3448531, at *3-4, *6 (N.D. Cal. Sept. 1, 2010); *In re Fruit Juice Prods. Mktg. & Sales Practices Litig. ("Fruit Juice")*, 831 F. Supp. 2d 507, 512 (D. Mass. Dec. 21, 2011).  Plaintiffs' failure to allege harm, or a defect, underlying their purported economic injury is fatal to their claims, because without it, they have no basis to allege they paid a price premium or did not receive the benefit of the bargain.  *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 958 (N.D. Ill. 2008).

Plaintiffs attempt to undermine the thorough decision on this exact issue in *Kimca v. Sprout Foods, Inc.*, 2022 WL 1213488, at *8-9 (D.N.J. Apr. 25, 2022), while encouraging this Court to follow an unreasoned opinion that contradicts itself (*Plum*, 2022 U.S. Dist. LEXIS 25944, at *5-6).  *Kimca* is far more instructive than *Plum*.  *Plum* included three sentences concluding the plaintiffs alleged injury in fact to support Article III standing in the Ninth Circuit; it then dismissed the plaintiffs' warranty claim for failure to "adequately allege[] that the product was not fit for consumption," yet, the court did not recognize this finding should also have resulted in dismissal of the other claims.  *Id.* at *6.  In contrast, *Kimca* includes over 13 pages of analysis on injury and concludes the plaintiffs did not adequately allege "the amount of heavy metals in Sprout's products were unsafe or dangerous" or allege "economic injury."  2022 WL 1213488, at *3.  *Kimca* does not, as Plaintiffs argue, rely on an "overly specific" or "artificially narrow[]" definition of "benefit of the bargain." Opp. 18.  *Kimca*'s definition is standard: "alleging that she bargained for a product worth a given value but received a product worth less than that value."  2022 WL 1213488, at *8. The state court in which the *Kimca* plaintiffs then refiled found *again* the plaintiffs failed to plead economic injury, including as a substantive element of their claims.  Ex. 16 at 7-9 (*Kimca II*).

*Kimca* and *Kimca II* are not outliers.  Courts regularly dismiss claims where a plaintiff

alleges economic injury based a mere hypothetical risk of future harm. *See, e.g.*, *Beck v. McDonald*, 848 F.3d 262, 272, 275-76 (4th Cir. 2017) (increased risk of future harm too speculative to plead injury, even though plaintiffs alleged 33% of those affected would be harmed); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009); *Frye*, 583 F. Supp. 2d at 958; *Doss v. Gen. Mills, Inc.*, 2019 WL 7946028, at *2 (S.D. Fla. June 14, 2019). Plaintiffs try to manufacture distinctions between such cases and this one, but none exists.[11] The *Fruit Juice* plaintiffs offered the same allegations as Plaintiffs and similarly cited reports finding lead could cause health problems. 831 F. Supp. 2d at 509-10. The court held the "allegation of 'economic' injury lack[ed] substance" because they "paid for [and] received fruit juice"; could not show injuries suffered, a product recall, or diminished value due to the presence of traces of lead; and a "continued risk of harm" was insufficient. *Id.* at 512 (collecting cases).

## 2. Plaintiffs Do Not Allege Facts Sufficient to Find that They Overpaid for the Products They Purchased

Plaintiffs' Opposition does not address (and therefore concedes) Gerber's position that Plaintiffs failed to plead that Gerber's products were "worthless."[12] Mot. 24. Plaintiffs instead focus only on an alleged "price premium." This change in theory does not change the result, because Plaintiffs' "overpayment" theory still lacks factual support. The cases Plaintiffs cite are not to the contrary, as they involved specific factual allegations demonstrating a delta between what defendants affirmatively (mis)represented and what plaintiffs actually received—

---

[11] Contrary to Plaintiffs' assertion otherwise, the allegations of injury in *Doss* are virtually indistinguishable from Plaintiffs' allegations here. *Doss*, 2019 WL 7946028, at *1-2 (alleging products "contained or could contain glyphosate" and "glyphosate may be harmful to human health"); RC ¶ 17 ("Gerber Baby Food Products [in general] contain or were at material risk of containing harmful Heavy Metals."); ¶ 121 ("exposure to . . . Heavy Metals may, over time, . . . increase the risk of several serious health problems").

[12] Relatedly, Plaintiffs do not dispute that, under the GBL, a consumer is not entitled to a refund of the price of a good whose purchase was allegedly procured through deception. Mot. 24, n.6.

AMERICAS 116713483

sometimes resulting in concrete economic harm even outside of the value of the purchase.[13]  Here,

no factual basis exists to conclude Plaintiffs overpaid for the products they purchased.[14]

Finally, Plaintiffs assert they need not allege the "exact amount of overpayment" or specify

competitor products at this stage.  Opp. 19-20.  Gerber did not argue they did, but rather that they

must allege specific facts that plausibly demonstrate they paid a price premium or did not receive

the benefit of the bargain, which they failed to do.  Mot. 24-25.  Contrary to Plaintiffs' assertion,

the Complaint shows competitors do not offer "heavy metal free" products that contain the same

ingredients as any challenged Gerber product.  Opp. 21.  The portion of the Complaint that

Plaintiffs quote alleges some products contain "little to no detectable levels of Heavy Metals" (RC

¶ 135)—which is not zero, and which is also what Gerber products allegedly contain.  Here, the

absence of a pled alternative product is not a technical pleading matter.  Given no dispute exists

that traces of heavy metals cannot be eliminated, there can be no plausible inference of an alternate

product without heavy metals, and no inference of any price premium or lost opportunity in buying

the Gerber product over another.  *See Sabo v. Wellpet, LLC*, 282 F. Supp. 3d 1040, 1041-43 (N.D.

---

[13] *E.g.*, *Carriuolo v. GM Co.*, 823 F.3d 977, 986-87 (11th Cir. 2016) (sticker on vehicles inaccurately stated they received perfect safety ratings when no safety ratings had been issued); *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 402-26 (E.D. Va. 2020) (in data breach case where defendants made affirmative misrepresentation regarding data security practices, plaintiffs alleged injury based on "actual fraudulent charges, . . . theft of their personal financial information, and costs associated with the detection and prevention of identity theft," and "imminent threat of identity [sic] theft"); *In re Marriott Int'l, Inc.*, 440 F. Supp. 3d 447, 465-66 (D. Md. 2020) (plaintiffs alleged injury where several plaintiffs alleged actual misuse of their data and the complaint included specific factual allegations to demonstrate plaintiffs bargained for data security and the loss of value of their data); *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 2017 WL 2646286, at *6 (E.D. Va. June 20, 2017) (lumber company knowingly misrepresented its flooring complied with stringent CA formaldehyde emission standards, which allowed it to charge a higher price).

[14] Moreover, Plaintiffs' attempt to shoehorn their case into the price premium line of cases is a "legally flawed," "deception as injury" theory.  *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56-57 (1999); *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (dismissing GBL claim where plaintiffs did not allege facts showing "they paid a *higher* price for the Candy than they otherwise would have, absent deceptive acts").

AMERICAS 116713483

Ill. 2017); *In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 438 (D.N.J. 2015).

### B. **Plaintiffs Concede Their Affirmative Misrepresentation Theory Fails; and They Fail to Plausibly Plead Omission-Based Deception**

Plaintiffs concede their "fraud claims are premised on an omission of material facts, rather than a misrepresentation on the label." Opp. 29.  This admission defeats their affirmative misrepresentation claims (Mot. 26-28), and FAL claim, which imposes liability for false or misleading "statement[s]," not omissions.  *See* Cal. Bus. & Prof. Code § 17500; *Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 668 (N.D. Cal. 2016).  Even under a "pure omissions" theory, Plaintiffs' remaining statutory fraud and common law fraudulent concealment/fraud by omission claims fail.

The parties agree on the factors relevant to assessing a duty to disclose.  *See* Opp. 22.[15] None is present here.

*Fiduciary.*  Plaintiffs concede Gerber is not their fiduciary.  *Id.* at 22-23.

*Exclusive knowledge.*  No allegation identified by Plaintiffs (*id.* at 24) shows Gerber had "exclusive knowledge" of material facts not known or reasonably accessible to Plaintiffs.  Plaintiffs admit Gerber's website informs "the consuming public" about efforts to "*reduce the presence*" and "*minimize the presence* of any unwanted heavy metals" in its products.  RC ¶ 77.  "The public availability of this information undermines Plaintiffs' arguments that (1) their allegations . . . are sufficient to support [Gerber's] exclusive knowledge and (2) Plaintiffs had no reason to know of these facts."  *Kumandan v. Google LLC*, 2022 WL 103551, at *9 (N.D. Cal. Jan. 11, 2022); *see also Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 972-73

---

[15] While the parties agree one or more of these four factors *may* give rise to a duty of disclosure under some relevant state laws, as shown in the Motion, Plaintiffs are incorrect that "they only need to meet one of the four requirements" in all cases.  For example, Plaintiffs' fraudulent concealment claims also require a special relationship between the parties, and the omitted fact must relate to an "unreasonable safety hazard" for their California claims.  Mot. 30.

AMERICAS 116713483

(E.D. Ky. 2019) (reasonable consumer exercising "ordinary diligence and attention" could have discovered products with fish might contain heavy metals).[16]  Plaintiffs' assertion that "consumers are not required to go out and do research" because "they are allowed to rely on Gerber's Product labels" is unavailing, as are the cases on which they rely.[17]  While reasonable consumers may not be expected to "do research" before relying on a misleading representation on a product label, this presumption does not apply when, as here, the label is generalized, vague, or makes no affirmative representation.  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) ("Plaintiffs' reliance on *Williams* is unpersuasive" where "there is no deceptive act to be dispelled."); *Yu v. Dreyer's Grand Ice Cream, Inc.*, 2022 WL 799563, at *6-7 (S.D.N.Y. Mar. 16, 2022) (presumption does not apply where the product's front packaging contains no misleading representation) (collecting cases).

Plaintiffs also cannot satisfy the "exclusive knowledge" test based on Gerber's alleged "superior knowledge" of its internal test results and standards.  Opp. 24.  Plaintiffs' cases confirm more than "superior knowledge" is required to establish a duty to disclose.[18]

***Active Concealment.***  Plaintiffs' conclusory assertion that "Gerber tried to suppress the

---

[16] Plaintiffs' attempt to distinguish *Simpson* because it involved Kentucky's consumer protection statute fails.  The reasonable consumer test is not materially different from state to state.  *See, e.g.*, *Harris v. Mondelez Global LLC*, 2020 WL 4336390, at *2 (E.D.N.Y. July 28, 2020); *see also Colangelo v. Champion Petfoods USA, Inc.*, 2022 WL 991518, at *86-87 (N.D.N.Y. Mar. 31, 2022) (NY GBL § 349 and fraud by omission claims failed because "the fact that the products had a material risk of containing heavy metals was information that Plaintiff could reasonably obtain") (citing *Simpson*, 397 F. Supp. 3d at 972-73).

[17] Unlike here, each of Plaintiffs' cited cases involved an affirmative misrepresentation on the front of the product label on which the plaintiffs reasonably relied.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (finding consumers are not expected to examine the ingredient list located on the back of a label to correct a prominent front-label misrepresentation); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1141 (C.D. Cal. 2010); *Colangelo v. Champion Petfoods USA, Inc.*, 2020 WL 777462, at *11 (N.D.N.Y. Feb. 18, 2020).

[18] *See Edwards v. FCA US LLC*, 2022 WL 1814144, at *3 (N.D. Cal. June 2, 2022) ("exclusive knowledge" requires the defendant had superior knowledge *and* the alleged defect was not reasonably discoverable by the plaintiff); *Elias v. Hewlett-Packard Co.*, 2014 WL 493034, at *9 (N.D. Cal. Feb. 5, 2014) (same).

AMERICAS 116713483

material facts or obscure them from the public with statements on its website" (Opp. 25) fails to establish intentional or active concealment.  As shown, "[f]acts are not deliberately concealed when they were reasonably accessible to the plaintiffs." *Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1139 (M.D. Fla. 2021).  Moreover, Plaintiffs cannot point to any allegations showing Gerber took affirmative steps to conceal, or had the intent to conceal, the "risk" of heavy metals from consumers.  *See, e.g.*, *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 577-78 (N.D. Cal. 2019) (no duty imposed by "active or intentional concealment" under CA, FL, and IL law).[19]

*Partial Representations.*  Plaintiffs contend various alleged misrepresentations on Gerber's product labels trigger a duty to disclose under the fourth factor.  Plaintiffs have already foreclosed this argument by conceding their omission claims are not premised on any misrepresentations on the labels.  Opp. 29.  Moreover, Plaintiffs do not challenge, and thus effectively concede, Gerber's argument that many of the packaging statements (1) make no representations about heavy metals (Mot. 26-28) or (2) are mere puffery and thus immaterial as a matter of law.  *Id.* 26, 28, 32; *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 799 (N.D. Cal. 2019) (alleged partial representation must relate directly to the omitted information).[20]  Nor do Plaintiffs adequately plead what is false or misleading about these statements.  Thus, Plaintiffs cannot state claims based on alleged partial omissions.  *See Ahern*, 411 F. Supp. 3d at 578-79.

For the fraudulent concealment claims, Plaintiffs simply recycle their conclusory assertions that they "placed trust in Gerber" and Gerber "held a special position of public trust as a baby food

---

[19] Plaintiffs' failure to plausibly allege intentional and active concealment disposes of their fraudulent concealment claims, which requires allegation "defendant intentionally concealed or suppressed a material fact with the intent to defraud." *Cheramie v. HBB, LLC*, 545 F. App'x 626, 627 (9th Cir. 2013); *see also* Mot. 31-32, n.13 (citing authorities).

[20] Plaintiffs' ICFA claim—which requires them to specifically allege "an omission from a communication, not a general failure to disclose"—fails for the same reason. *See, e.g.*, *Guajardo v. Skechers USA, Inc.*, 503 F. Supp. 3d 746, 754 (C.D. Ill. 2020) (dismissing ICFA claim).

15

manufacturer." Opp. 27. Plaintiffs do not address Gerber's authority holding these allegations do not establish a special relationship. Mot. 30; *see also Sharbat v. Iovance Biotherapeutics, Inc.*, 2022 WL 45062, at \*9 (S.D.N.Y. Jan. 5, 2022) (rejecting claim "that Plaintiffs had a relationship of trust with [the defendant] because they trusted him" as "tautological").

  ***Unreasonable safety hazard (CA).*** Finally, Plaintiffs fail to allege Gerber owed them a duty of disclosure under California law. First, Plaintiffs do not plausibly allege any product they purchased presents an "unreasonable safety risk." Plaintiffs instead make the circular argument that they adequately pled a "safety risk" because they allege Gerber failed to disclose the "risk" of heavy metals, which fails for the same reasons discussed above. *See supra*, Section III.A.1. Second, Plaintiffs fail to meet the "central functionality" test. Post-*Hodsdon,* the Ninth Circuit, and a majority of district courts, hold "a defendant only has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,' *and* the plaintiff alleges one of the four *LiMandri* factors." *Hammerling v. Google LLC*, 2022 WL 2812188, at \*7 (N.D. Cal. July 18, 2022). Because Plaintiffs concede they do not allege the products are unfit for consumption or otherwise incapable of use by all babies (*see* Opp. 19, n.14), Plaintiffs fail to meet this test as well. *Id.* at \*8.

  **C. <u>Plaintiffs Fail to Adequately Plead Reliance or Causation</u>**

  Plaintiffs do not dispute their reliance on Gerber's alleged omissions must be reasonable.[21]

*E.g.*, *Gurwell v. Seaworld Parks & Entm't LLC*, 2021 WL 4168503, at \*7 (E.D. Va. Aug. 11, 2021)

---

[21] Plaintiffs contend they need not plead reliance under the Texas DTPA because they assert an "unconscionable acts claim." Opp. 31. But their DTPA count makes ***no*** allegation of unconscionablity (*see* RC ¶¶ 341-358), and their conclusory allegations elsewhere in the Complaint (*Id.* at ¶¶ 277-289, 305-306) do not adequately plead unconscionability under Texas law. *See In re Clorox Consumer Litig.*, 2013 WL 3967334, at \*11 (N.D. Cal. July 31, 2013) (applying Texas law) (Unconscionability "requires a showing that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated.").

16

(VCPA "requires a plaintiff to plead actual reliance on a false statement or nondisclosure. Reliance must have been justified and reasonable. Reasonable reliance poses a higher standard than justified reliance."). Reasonable consumers would not infer from a label that a product containing, for example, sweet potato does not have what is naturally found in a sweet potato. Mot. 28. In fact, Plaintiffs fail to address reasonable reliance altogether, which is "fatal" to their UCL and VCPA claims,[22] and Florida, New York, and Illinois fraudulent concealment claims.[23]

As to causation, Plaintiffs' sole argument—that Gerber's alleged omissions caused them to pay a "price premium" for the products (Opp. 28-29)—fails for the same reasons discussed above regarding their failure to plead economic harm. *See supra*, Section III.A.

## D.  The Nationwide Virginia Consumer Protection Act Claim Fails

Plaintiffs do not dispute Virginia's choice-of-law rules, which apply to this Court sitting in diversity, routinely hold plaintiffs may bring statutory and common law fraud claims only under the laws of the state where the wrong occurred (*i.e.*, where Plaintiffs bought Gerber's products). Mot. 35. Each Plaintiff alleges they reviewed the packaging of, and purchased, Gerber's products in the state where s/he resides, *i.e.*, California, Florida, Illinois, New York, or Texas. *Id.* at 36. This forecloses any claims under the VCPA and the Court should dismiss this count. *Id.*[24]

In response, Plaintiffs argue whether the VCPA can extend to consumers residing outside Virginia (Opp. 32), which is not the issue, because the Court must first determine whether Virginia law applies to Plaintiffs' claims. It does not, because no Plaintiff purchased Gerber products in

---

[22] *Blackhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1047-48 (N.D. Cal. 2014); *Ostolaza-Diaz v. Countrywide Bank, N.A.*, 360 F. App'x 504, 506 (4th Cir. 2010).

[23] *See Prestige Ins. Grp. v. Allstate Ins. Co.*, 2022 WL 1091825, at *2 (S.D. Fla. Apr. 12, 2022); *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 232 (S.D.N.Y. 2007), *aff'd*, 354 F. App'x 496 (2d Cir. 2009); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012).

[24] *See Insteel Indus. v. Costanza Contracting Co.*, 276 F. Supp. 2d 479, 487 (E.D. Va. 2003) (dismissing fraud claim because wrong occurred outside Virginia).

17

Virginia.  For this reason, Plaintiffs' cases are distinguishable.  *See, e.g.*, *In re Hardieplank Fiber Cement Siding Litig.*, 2013 WL 3717743, at *16 (D. Minn. July 15, 2013) (Virginia resident and "alleged defects manifested in Virginia"); *Owens v. DRS Auto. Fantomworks*, *Inc.*, 288 Va. 489, 492 (2014) (applying VCPA where work occurred in Virginia).

Plaintiffs' reliance on *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), is misplaced.  The New York law at issue there was a procedural, not substantive, rule and therefore not applicable.  *Id.* at 409.  Here, the VCPA's limitation on class actions—which appears within the same statutory provision that creates a private cause of action under the VCPA (*see* Va. Code. Ann. § 59.1-204)—is a substantive right and remedy, and thus *Shady Grove* does not control.  *See In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Practices Litig.*, 2022 WL 551221, at *19 (E.D. Mich. Feb. 23, 2022) (enforcing VCPA class-action bar and rejecting contention "that Fed. R. Civ. P. 23 displaces such state statutory provisions in a diversity case like this one") (collecting cases rejecting Plaintiffs' *Shady Grove* argument).[25]

### E.  Plaintiffs' Common Law Claims Fail for Additional Reasons

Plaintiffs have abandoned their Song-Beverly Act and implied warranty claims.  *See* Opp. 6, n.4.  Their fraudulent concealment and unjust enrichment claims fail for additional reasons.

#### 1.  The Economic Loss Rule Bars Plaintiffs' Fraudulent Concealment Claims

The economic loss rule bars Plaintiffs' California and Florida fraudulent concealment claims.[26]  Most California courts "continue[] to read *Robinson Helicopter* as a narrow exception

---

[25] *See, e.g.*, *Matanky v. GM LLC*, 370 F. Supp. 3d 772, 798 (E.D. Mich. 2019) (holding class action bars in consumer protection statutes "define the scope of the state-created rights and are therefore substantive and not displaced by Rule 23"); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 416 (D.N.J. 2018) (class action bars in consumer protection statutes "are not preempted by Rule 23").

[26] Gerber does not "conced[e]" Plaintiffs' IL, NY, TX, or VA fraudulent concealment claims are sufficient because it only challenges their CA and FL claims on this ground.  Opp. 35.  Plaintiffs'

to the economic loss rule" and hold it bars fraudulent concealment claims. *Farrales v. Ford Motor Co.*, 2022 WL 1239347, at *9 (N.D. Cal. Apr. 27, 2022); *Gannon v. FCA US, LLC*, 2022 WL 3013101, at *3-4 (C.D. Cal. May 18, 2022) ("vast majority of federal courts" decline to extend *Robinson Helicopter* to omission claims).[27]  Unless and until the Ninth Circuit or the California Supreme Court holds otherwise, fraudulent omission claims are barred where, as here, "Plaintiffs seek only economic damages and do not allege any personal injury or damage to other property." *Tappana v. Am. Honda Motor Co.*, 2022 WL 2526971, at *7 (C.D. Cal. July 5, 2022).

Similarly, Plaintiffs cite a 2015 New Jersey district court decision to argue the economic loss rule does not apply to their Florida claim, but the weight of recent authority in Florida holds omission claims "in which Plaintiffs allege [a defendant's] fraudulent concealment of defects and request [economic] damages despite alleging no specific property damage or personal injury, are precisely the type of claim barred by [the economic loss] rule." *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1225 (S.D. Fla. 2017); *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1103-04 (S.D. Fla. 2019) (rule bars FL fraudulent concealment claim seeking purely economic damages).

### 2.  Unjust Enrichment

Plaintiffs concede this claim is duplicative; and plead in the alternative.  But "where [an equitable claim] relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Loo*

---

fraudulent concealment claims should all be dismissed for several reasons.  Mot. 38.

[27] *Williams v. Tesla, Inc.,* 2022 WL 899847, at *6-7 (N.D. Cal. Mar. 28, 2022), was not decided "in error," as Plaintiffs assert without authority binding on *Williams*.  Plaintiffs rely on *Clenney v. FCA US LLC*, 2022 WL 2197074, at *3 (N.D. Cal. June 20, 2022), and *Edwards v. FCA US LLC*, 2022 WL 1814144, at *7 (N.D. Cal. June 2, 2022), but these cases "go against the majority view," *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 2021 WL 1220948, at *4 (C.D. Cal. Mar. 29, 2021), which "decline[s] to extend the narrow fraud-based exception to the economic loss rule to omission claims."  *Pineda v. Nissan N. Am., Inc.*, 2022 WL 2920416, at *4 (C.D. Cal. July 25, 2022) (collecting cases).

AMERICAS 116713483

*v. Toyota Motor Sales, USA, Inc.*, 2019 WL 7753448, at *13 (C.D. Cal. Dec. 20, 2019).  Even when pled in the alternative, if "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then . . . , of course, [it] will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).  Courts hold where "Plaintiffs' unjust enrichment claim is a vague catch-all that only incorporates by reference the alleged wrongdoing addressed by other legal causes of action," unjust enrichment "should be dismissed as duplicative." *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013).[28]

### F.  Plaintiffs' Claim for Injunctive Relief Fails

Plaintiffs do not dispute "the VCPA does not confer a private right on the Plaintiffs to seek injunctive relief." *Gurwell*, 2021 WL 4168503, at *14; Mot. 40.  Four Plaintiffs concede they do not allege an intent to purchase the products (RC ¶¶ 23, 27, 31, 37), eliminating future risk.  Mot. 39.  The remaining claims fail without pleading a real and immediate threat of future harm, as discussed above.  *See Castillo v. Unilever U.S., Inc.*, 2022 WL 704809, at *4 (N.D. Ill. Mar. 9, 2022).  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018) is distinguishable because the plaintiff alleged the defendant could modify the product (flushable wipes), and thus plausibly alleged she would buy it again.  Plaintiffs cannot plausibly claim the same here, as FDA has noted, heavy metals naturally occur and cannot be eliminated from baby food products.

### CONCLUSION

Gerber respectfully requests the Court grant this motion and dismiss the Complaint.

---

[28] *See also Pittman v. Chick-fil-A, Inc.*, 2022 WL 2967586, at *7 (S.D.N.Y. July 27, 2022) ("Courts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims" and, even pled in the alternative, should be dismissed where they depend on the same factual allegations.) (cleaned up) (collecting cases); *Slafter v. Haier US Appliance Sols., Inc.*, 2022 WL 1912388, at *4 (S.D. Ill. June 3, 2022) (even if pled in the alternative, unjust enrichment claim should be dismissed where "it is based on the same allegations as his inadequate ICFA claim"); *In re Clorox Consumer Litig.*, 2013 WL 3967334 (N.D. Cal. July 31, 2013) (same).

20

Dated:  August 19, 2022                          WHITE & CASE LLP


                                        By: _____
                                             Kathryn J. Mims (Va. 81486)
                                             701 Thirteenth Street, NW
                                             Washington, DC 20005
                                             T: (202) 626-3704
                                             F: (202) 639-9355
                                             kmims@whitecase.com

                                             Bryan A. Merryman
                                             (admitted *pro hac vice*)
                                             555 South Flower Street
                                             Suite 2700
                                             Los Angeles, CA 90071
                                             bmerryman@whitecase.com

                                             Kimberly A. Havlin
                                             (admitted *pro hac vice*)
                                             1221 Avenue of the Americas
                                             New York, NY 10020-1095
                                             kim.havlin@whitecase.com

                                             KELLEY DRYE & WARREN LLP
                                             Geoffrey W. Castello
                                             One Jefferson Road, 2nd Floor
                                             Parsippany, NJ  07054
                                             Tel: (973) 503-5922
                                             Fax: (973) 503-5950
                                             gcastello@kelleydrye.com

                                             *Attorneys for Defendant*
                                             *Gerber Products Company*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2022, I caused a copy of the foregoing **REPLY IN SUPPORT OF GERBER PRODUCT COMPANY'S MOTION TO DISMISS REPRESENTATIVE CLASS ACTION COMPLAINT** to be filed electronically with the Clerk of the Court via the Court's ECF system, which will send notification of such filing to all counsel of record.

Kathryn J. Mims (Va. 81486)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
T: (202) 626-3704
F: (202) 639-9355
kmims@whitecase.com

*Attorneys for Defendant*
*Gerber Products Company*

1