**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTRN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| IN RE: GERBER PRODUCTS COMPANY HEAVY METALS BABY FOOD LITIGATION | |
| | Master File No. 1:21-cv-00269 (MSN/JFA) |
| This Document Relates to ALL Cases | |

<u>**GERBER PRODUCTS COMPANY'S REPLY IN SUPPORT OF MOTION TO OVERRULE OBJECTIONS AND COMPEL PLAINTIFFS' ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS**</u>

## <u>TABLE OF CONTENTS</u>

Page

ARGUMENT ....................................................................................................................2

I.   Plaintiffs Fail to Show Gerber's Interrogatories Seeking the Factual Basis for
     Plaintiffs' Allegations that Gerber's Products Are "Harmful" and "Unsafe" Are
     Premature Contention Interrogatories, Require Expert Opinion, and/or Are Not
     Relevant ..............................................................................................................2

     A.   Interrogatory No. 14 - whether any harm has been suffered ...................2

     B.   Interrogatory Nos. 2, 3, 8 - facts that informed allegations that Gerber's
          products are "harmful" and/or "unsafe" .................................................5

          1.   Plaintiffs do not establish that Interrogatory Nos. 2, 3, and 8 are
               "contention" interrogatories.........................................................6

          2.   Plaintiffs fail to establish that Interrogatory Nos. 2, 3, and 8 require
               premature expert disclosures........................................................8

II.  Plaintiffs Fail to Show They Need Not Identify the Statements They Contend are False
     or Misleading, and the Information Gerber Should Have Disclosed (Interrogatory Nos.
     4, 6, 7) ...............................................................................................................11

III. Plaintiffs Should Be Required to Amend Their Interrogatory Responses to Reflect the
     New Information Provided in Plaintiffs' Opposition Regarding the Price They Would
     Pay for the Purchased Products, Knowing What They Know Today (Interrogatory No.
     9) .......................................................................................................................12

IV.  Plaintiffs Fail to Demonstrate Interrogatories Regarding Non-Gerber Baby Foods
     They Purchased or Served Are Not Relevant (Interrogatory No. 10 and part of
     Interrogatory No. 17) .........................................................................................13

V.   Plaintiffs Likewise Fail to Demonstrate Documents Relating to Non-Gerber Products
     Are Not Relevant (Request for Production No. 7).............................................16

VI.  Plaintiffs' Objections Upon Which They Are Not "Standing" Should be Overruled .......16

VII. Gerber Propounded Interrogatories Within the Court-Imposed Limit ..............18

CONCLUSION................................................................................................................20

i

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Allahverdi v. Regents of the Univ. of N.M.*,
   228 F.R.D. 696 (D.N.M. 2005) ........................................................................19

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
   2002 U.S. Dist. LEXIS 14327 (W.D. Va. Aug. 5, 2002) .........................................19

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013) ......................................................................15

*Bond v. Arrowhead Regional Medical Center*,
   2014 WL 12853147 (C.D. Cal. Feb. 11, 2014) .....................................................10

*Brown v. Experian Info. Sols., Inc.*,
   2017 WL 11623852 (E.D.V.A. Apr. 17, 2017) .....................................................18

*Deutsche Bank Nat'l Tr. Co. v. Fegely*,
   2020 WL 201048 (E.D. Va. Jan. 13, 2020) ...........................................................3

*Fitzhenry-Russell v. Dr. Pepper Snapple Group.*
   334 F.R.D. 552 (N.D. Cal. 2020) .....................................................................12

*Gorrell v. Sneath*,
   292 F.R.D. 629 (E.D. Cal. 2013) .....................................................................10

*In re Coca-Cola Prods. Mktg. & Sales Practices Litig. No. II*,
   2015 WL 5043846 (N.D. Cal. Aug. 26, 2015) ......................................................15

*In re Convergent Technologies Securities Litig.*,
   108 F.R.D. 328 (N.D. Cal. 1985) .......................................................................7

*In re Domestic Drywall Antitrust Litig.*,
   300 F.R.D. 228 (E.D. Pa. 2014) ........................................................................8

*In re Peanut Farmers Antitrust Litigation*,
   2020 WL 9216019 (E.D. Va. July 24, 2020) ....................................................15, 16

*Kimca v. Sprout Foods, Inc.*,
   2022 WL 1213488 (D.N.J. Apr. 25, 2022) ......................................................2, 3, 5

*Kimca v. Sprout Foods, Inc. ("Kimca II")*,
   2022 N.J. Sup. Unpub. LEXIS 1445 (N.J. Sup. Ct. Law Div. Aug. 17, 2022) ..................4, 5

ii

*Krommenhock v. Post Foods, LLC*
    326 F.R.D. 592 (N.D. Cal. 2018) ...................................................................................12

*Lonquist Field Services, LLC v. Sorby*,
    238 F.R.D 418 (N.D.W. Va. 2006) ...................................................................................6

*Magnesium Elektron N. Am., Inc. v. Applied Chemistries, Inc.*,
    2019 U.S. Dist. LEXIS 225266 (D. Mass. July 26, 2019) ...............................................19

*McCarthy v. Paine Webber Group*,
    168 F.R.D. 448 (D. Conn. 1996) ......................................................................................7

*McKellips v. Kumho Tire Company*,
    305 F.R.D. 655, 681 (D. Kan. 2015) ...............................................................................10

*Mullins v. Premier Nutrition Corp.*,
    2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ..................................................................4

*Norton v. Knapheide Equip. Co.*,
    2019 WL 3082631 (D. Mo. July 15, 2019) .....................................................................18

*Romanyk Consulting Corp. v. EBA Ernest Bland Assocs., P.C.*,
    2013 WL 3280030 (D. Md. June 25, 2013) .....................................................................19

*Spendlove v. RapidCourt, LLC*,
    2019 WL 7143664 (E.D. Va. Dec. 20, 2019) ...................................................................5

*Taggart v. Damon Motor Coach*,
    2007 WL 152101 (N.D.W. Va. Jan. 17, 2007) ..................................................................7

*Tucker v. Momentive Performance Materials USA, Inc.*,
    2016 WL 8252929 (S.D. W. Va. Nov. 23, 2016) ..............................................................9

*Wagner v. St. Paul Fire & Marine Ins. Co.*,
    238 F.R.D. 418 (N.D.W. Va. 2006) .....................................................................6, 7, 9, 11

*Whitley v. McClain*,
    2014 WL 1400178 (D. Mo. Apr. 10, 2014) ....................................................................18

*Williams v. AT&T Mobility*,
    2021 WL 1842713 (E.D.N.C. Apr. 13, 2021) ..............................................................8, 13

*Yamagata v. Reckitt Benckiser LLC*,
    2018 WL 3155772 (N.D. Cal. June 28, 2018) ...................................................................4

iii

## FEDERAL RULES

Fed. R. Civ. Proc. 11 ................................................................................................................1, 6

Fed. R. Civ. Proc. 33 ..............................................................................................................16, 20

Fed. R. Civ. Proc. 37 ...................................................................................................................20

AMERICAS 116777666

## <u>REPLY MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiffs fail to meet their burden to show that they should not be required to properly answer Gerber's interrogatories and produce documents in response to the request for production that are the subject of this motion.  Plaintiffs' opposition fails to engage with the merits arguments in Gerber's motion and instead recites, without support, that certain requests are "premature contention interrogatories," require expert opinion, and/or are not relevant.  But Gerber's interrogatories seek facts, *presently known to Plaintiffs*, that they must have known to file the Complaint in compliance with Rule 11.  Plaintiffs cannot avoid this reality by, for example, starting their arguments from the premise that the interrogatories are contention interrogatories or necessarily require expert opinion.  Their burden requires them to show *why* these objections are valid – and they cannot do so.

Plaintiffs also improperly attempt to resurrect, in their opposition, an objection to the number of interrogatories Gerber served (the same 20 interrogatories on each Plaintiff). Plaintiffs did not maintain an objection on this basis during the parties meet and confer discussions, and instead confirmed they would respond to all interrogatories.  Now, without any valid basis on which to oppose Gerber's motion, and without having moved for a protective order, Plaintiffs belatedly contend they may avoid responding to Gerber's interrogatories on this basis.  This is improper.

Finally, Plaintiffs attempt to misdirect the Court's attention by mischaracterizing the discovery record.  The opposition states that Plaintiffs' interrogatory responses and production of documents "demonstrate[] Plaintiffs' good faith efforts to respond to all of Gerber's propounded discovery . . . ."  Opp. 2.  To be clear, Gerber does not agree that the remainder of Plaintiffs' discovery responses are sufficient, but those responses are not the subject of this motion to

AMERICAS 116777666

compel.  Nor are Plaintiffs' discovery requests at issue here.  The issues before this Court are fairly simple and straightforward.

With this motion, Gerber seeks specific identification of the statements Plaintiffs allege are false or misleading and what fact(s) specifically Gerber should have disclosed on its product labels; the factual bases for Plaintiffs' allegations of "harm" and that the products are "unsafe"; whether Plaintiffs are aware of any physical injury suffered from consumption of the purchased products; whether Plaintiffs believe the purchased products have any value; and what products/foods Plaintiffs purchased or considered purchasing instead of Gerber's products. Plaintiffs strategically do not want to answer Gerber's interrogatories because they know the relevance of this information and that truthful answers will demonstrate the Complaint should be dismissed on, among others, grounds of primary jurisdiction and failure to allege economic injury.  *See Kimca v. Sprout Foods, Inc.*, 2022 WL 1213488, at *8-9 (D.N.J. Apr. 25, 2022).

The Court should grant Gerber's motion.

## ARGUMENT

**I.      Plaintiffs Fail to Show Gerber's Interrogatories Seeking the Factual Basis for Plaintiffs' Allegations that Gerber's Products Are "Harmful" and "Unsafe" Are Premature Contention Interrogatories, Require Expert Opinion, and/or Are Not Relevant**

Plaintiffs fail to meet their burden to demonstrate they need not answer interrogatories requesting the factual basis for their allegation that Gerber's products are "harmful" and "unsafe" (Interrogatory Nos. 2, 3, 8, and 14).

### A.      Interrogatory No. 14 - whether any harm has been suffered

Plaintiffs abandon their premature contention interrogatory objection to Interrogatory No. 14.  Opp. 15, n.2.  Left with their sole remaining objection – relevance – Plaintiffs (1) fail to address the merits arguments in Gerber's motion and the interrogatory actually propounded and

2

instead address their own, re-written version; (2) admit again to its relevance by stating harm allegedly suffered by consumption of the products is material to Plaintiffs' claims; and (3) attempt improperly to shift the burden to Gerber.  Opp. 15.  Plaintiffs' opposition falls far short of meeting their burden of showing "specifically how, despite the broad and liberal construction afforded by the federal discovery rules," Interrogatory No. 14 is not relevant.  *Deutsche Bank Nat'l Tr. Co. v. Fegely*, 2020 WL 201048, at *6-8 (E.D. Va. Jan. 13, 2020) (overruling relevance objection because the objecting party failed to demonstrate each interrogatory was not relevant).

*First*, Plaintiffs' opposition does not address the interrogatory actually propounded by Gerber, which asks Plaintiffs to state whether the consumption of the Gerber products Plaintiffs purchased has, to Plaintiffs' current knowledge, resulted in any harm.  Plaintiffs instead re-write Interrogatory No. 14 and claim it forces Plaintiffs' children to undergo detailed medical exams and have experts analyze and opine on whether any medical conditions resulted from eating Gerber's baby foods.  Opp. 14.  That is simply not the question Interrogatory No. 14 poses. Gerber has clearly stated on meet-and-confer calls, in letters with Plaintiffs (*see, e.g.*, Mot., Ex. 20 at 1-2), and in its motion (Mot. 9), that Interrogatory No. 14 seeks only *Plaintiffs' current knowledge*.  In other words, by its terms, the interrogatory does not ask Plaintiffs to engage an expert in any capacity.   Moreover, that Plaintiffs contend they could only answer the interrogatory by having their children undergo detailed medical examinations indicates they have an answer, but refuse to provide it – they know of no harm suffered.

*Second*, multiple courts considering nearly identical claims against another baby food manufacturer have confirmed that whether injury has been suffered from consumption of the products is relevant to allegations of economic harm.  *Kimca*, 2022 WL 1213488, at *9 (finding no economic injury where plaintiffs did not adequately allege their children had been harmed or

were at risk of harm); Ex. 22 (*Kimca v. Sprout Foods, Inc. ("Kimca II")*, 2022 N.J. Sup. Unpub. LEXIS 1445, at *12-13 (N.J. Sup. Ct. Law Div. Aug. 17, 2022) (same)).  Plaintiffs refuse to answer this interrogatory because they know it will further demonstrate they have failed to adequately allege economic injury.

Plaintiffs, too, have admitted (again) that harm allegedly suffered by consumption of the products is material to Plaintiffs' claims and is therefore relevant.  Opp. 15.  Despite that, Plaintiffs only explanation for why Interrogatory No. 14 is not relevant is simply that it "is not the same," citing two cases unrelated to the facts here.  Opp. 15.  The court in *Yamagata v. Reckitt Benckiser LLC* denied a motion to compel a request for a production of the plaintiffs' medical records because the plaintiffs had not waived their privacy rights.  2018 WL 3155772, at *1-3 (N.D. Cal. June 28, 2018).  Interrogatory No. 14 does not request the medical records or a recitation of the medical history of Plaintiffs' children.  Nor does it seek "medical information . . . protected by federal law (HIPPA Privacy Rule, 45 C.F.R. 160 and 164 subparts A and E)," as Plaintiffs claim.  Opp. 15.  Rather, Interrogatory No. 14 narrowly seeks whether the consumption of Gerber's products has, *to Plaintiffs' current knowledge*, resulted in any harm, such as the types of harm Plaintiffs allege in their Complaint and listed again in Plaintiffs' opposition. Compl. ¶¶ 3, 45, 48-49; Opp. 14.  *Mullins v. Premier Nutrition Corp.* addressed a motion for class certification and allegations a supplement did not provide the health benefits it allegedly advertised – not that the supplement caused physical harm or the risk of physical harm, as Plaintiffs allege here.  2016 WL 1535057, at *3 (N.D. Cal. Apr. 15, 2016).

*Third*, Plaintiffs attempt to shift the burden to Gerber by stating, "Gerber has failed to cite any cases allowing intrusive discovery into medical conditions in a false advertising and omissions case."  Opp. 16.  Beside the fact that this statement mischaracterizes this interrogatory,

4

as explained above, *Plaintiffs* bear the burden, not Gerber, to show they need not respond to Interrogatory No. 14.  *See, e.g.*, *Spendlove v. RapidCourt, LLC*, 2019 WL 7143664, at *3-4 (E.D. Va. Dec. 20, 2019) (overruling relevance objection because, "[w]hen discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance . . . .").  Plaintiffs' opposition concedes that harm from consumption of the products is, at minimum, relevant on its face by stating it is material to Plaintiffs' claims.  Opp. 15.  As Gerber detailed in its motion, the very basis of Plaintiffs' allegations seeking economic damages rests on a "risk" that Gerber's products are *not* safe to consume.  Mot. 9-11; *see also* Compl. ¶¶ 111, 216, 230, 243, 282, 312.  Whether Plaintiffs have, in fact, experienced harm from the products is directly relevant.  *Kimca*, 2022 WL 1213488, at *9; Ex. 22 (*Kimca II*, 2022 N.J. Sup. Unpub. LEXIS 1445, at *12-13).  Plaintiffs should be compelled to answer Interrogatory No. 14.

**B.**  **Interrogatory Nos. 2, 3, 8 - facts that informed allegations that Gerber's products are "harmful" and/or "unsafe"**

Interrogatory Nos. 2, 3, and 8 request the factual bases of Plaintiffs' allegations that Gerber's products are "harmful" and/or "unsafe."  Mot. 11-15.  Plaintiffs fail to address the bases for Gerber's motion to compel – that these interrogatories are not contention interrogatories and do not require expert opinion.  *Id.*  Instead, Plaintiffs start from the incorrect premise that these interrogatories are contention interrogatories and require expert opinion.  *Id.*  Plaintiffs argue two general principles that are not in question – that contention interrogatories may warrant a delayed response and that Plaintiffs cannot provide expert opinion or analysis.  Plaintiffs' burden in opposing Gerber's motion, however, was to show *why* these interrogatories are contention interrogatories and *why* they require expert opinion.  Mot. 8.  Plaintiffs have not met their burden on either point.

AMERICAS 116777666

1.      Plaintiffs do not establish that Interrogatory Nos. 2, 3, and 8 are
"contention" interrogatories

As an initial matter, Plaintiffs incorrectly state that Gerber "admits that these interrogatories explicitly request Plaintiffs' contentions." Opp. 7. Gerber has made no such statement, and Plaintiffs provide no citation in support.

Plaintiffs state in a conclusory fashion that Interrogatory Nos. 2, 3, and 8 are premature contention interrogatories, generally claiming the interrogatories "seek essentially all of the facts and evidence that Plaintiffs will present at trial to either support their allegations in the Complaint or to defeat Gerber's defenses" and "seek evidence that will be developed during discovery." Opp. 8. Plaintiffs know now, though, and completely ignore from Gerber's motion (and previous meet-and-confer efforts) that these interrogatories seek the factual bases for allegations in Plaintiffs' Complaint, *known to Plaintiffs when they filed the Complaint*. Mot. 11-13. The Complaint repeatedly alleges that Gerber's products contain or may contain "harmful" heavy metals and are "unsafe." *See, e.g.*, Compl. ¶¶ 11, 75, 122, 216-17, 230-31, 243-44, 253, 282-83, 293-94, 312-13, 329-30, 346-47, 365-66. Plaintiffs do not need to conduct discovery to provide the basis for their allegations.

In its motion, Gerber cites *Wagner v. St. Paul Fire & Marine Insurance Company* and *Lonquist Field Services, LLC v. Sorby*. Both courts granted motions to compel answers to interrogatories asking for the factual bases for allegations in the plaintiffs' complaint because, under Rule 11 of the Federal Rules of Civil Procedure, plaintiffs must have a factual basis for allegations in their complaint at the time of filing. 238 F.R.D. 418, 426-27 (N.D.W. Va. 2006); 2021 WL 4967041, at *3 (D. Kan. Oct. 26, 2021); Mot. 11-12. Plaintiffs' response to *Wagner* and *Lonquist* is that discovery had already been conducted in those cases. Opp. 10, n.8. But that was not part of either court's analysis, nor would it have made sense. The basis for the ruling by

6

both courts was that the plaintiffs *must* have a factual basis for the allegations in the complaint, *at the time of filing*. The stage of discovery was irrelevant. As such, the *Wagner* court rejected the plaintiffs' objection that the interrogatories asked for a "narrative account" of plaintiffs' entire case, which Plaintiffs here also argue (quoted above; *see* Opp. 8). 238 F.R.D. at 426-27. Both courts also rejected arguments that the plaintiffs had yet to obtain the information through discovery, which Plaintiffs here also argue (quoted above; *see* Opp. 8).

Plaintiffs offer mostly inapposite cases. *In re Convergent Technologies Securities Litigation* discusses "when (at which juncture in the pretrial period) should plaintiffs answer 'contention' interrogatories served by defendants," not whether the interrogatory was, in fact, a contention interrogatory. 108 F.R.D. 328, 330 (N.D. Cal. 1985). Similarly, *McCarthy v. Paine Webber Group*, 168 F.R.D. 448 (D. Conn. 1996) includes no analysis of what makes a contention interrogatory. *Id.* at 450. The only case Plaintiffs cite on this issue actually supports Gerber's position. In *Taggart v. Damon Motor Coach*, the court held an interrogatory asking a party to state the legal theories for its defense was a contention interrogatory, explaining a reason for delaying a response to a contention interrogatory is the "unfairness of requiring a party to prematurely articulate theories which have not yet been fully developed." 2007 WL 152101, at *7-9 (N.D.W. Va. Jan. 17, 2007). Gerber's interrogatories do *not* ask Plaintiffs to provide legal argument or theories. Moreover, the rationale for delaying answers to contention interrogatories, as articulated in *Taggart*, does not apply to interrogatories seeking information *known to Plaintiffs when they filed their Complaint*, as Gerber's do here.

Plaintiffs appear to rely on the fact that some interrogatories include a variation of the word "contention." Opp. 7. As Plaintiffs should know, the "use of the word 'contention' in the text of the interrogatories is certainly not dispositive" of whether an interrogatory is a contention

AMERICAS 116777666

interrogatory.  *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 228, 230 (E.D. Pa. 2014); *see* Mot. 12.  The court in *Domestic Drywall* held the defendants' interrogatories "seek[ing] facts on which Plaintiffs base their claims" (which Gerber's do here) are not contention interrogatories, even though they include the word "contention."  *Id.* at 230-31.  Plaintiffs incorrectly assert this opinion supports their position.

Finally, Plaintiffs suggest they need not answer Gerber's interrogatories because "[a]s of now, the bases for Plaintiffs' allegations are detailed in their Complaint and they would not be able to provide more information at this time beyond such allegations without discovery."  Opp. 9-10.  Refusing to respond to Gerber's interrogatories because "bases for Plaintiffs' allegations are detailed in their Complaint" is improper and has been rejected by courts in this circuit.  In *Williams v. AT&T Mobility*, for example, an interrogatory asked the plaintiff to specify the allegedly false statements AT&T made that support his claims.  2021 WL 1842713, at *1-2 (E.D.N.C. Apr. 13, 2021).  The plaintiff objected on the ground that his "best recollection of those communications" were in his complaint and he need not restate them in an interrogatory answer.  *Id.*  Rejecting this argument, the court held the plaintiff's "attempt to answer the interrogatory by referring to the allegations in his complaint does not comply with Rule 33."  *Id.* It is likewise improper for Plaintiffs here to simply refer to the Complaint in lieu of answering interrogatories.

2.    Plaintiffs fail to establish that Interrogatory Nos. 2, 3, and 8 require premature expert disclosures

Here, again, Plaintiffs start from the premise that these interrogatories "plainly require" expert opinion, without explaining why.  Opp. 10.  Plaintiffs simply repeat in a conclusory fashion, "Plaintiffs are lay persons and cannot testify as to scientific or technical matters."  Opp. 12.  Gerber does not ask Plaintiffs to do so.  *See, e.g.*, Mot., Ex. 20 at 3 ("Gerber is <u>not</u> asking

Plaintiffs at this time to provide expert opinions on 'safe' levels of heavy metals in baby food products.").  Plaintiffs' opposition suggests that Gerber asks Plaintiffs to provide a precise heavy metals level that renders the products "harmful" and/or "unsafe."  That is not the case.  Instead, as Gerber explained in its July 27, 2022 letter to Plaintiffs, Gerber seeks to understand for Interrogatory Nos. 2 and 3 whether Plaintiffs allege (i) *any* presence (or risk) of heavy metals in the Purchased Products renders them "unsafe" and/or "harmful," and should be disclosed to consumers; (ii) the ppb levels of heavy metals reflected in testing referenced in the Complaint that renders the Purchased Products "unsafe" and/or "harmful," and should be disclosed to consumers; and/or (iii) something else entirely.  Mot., Ex. 20 at 3.  With respect to Interrogatory No. 8, Gerber asks Plaintiffs to clarify whether they allege the products are "unsafe" for any reason other than the alleged "risk" of the presence of heavy metals.[1]  *Id.*  Plaintiffs should be able to identify the facts, *currently known to Plaintiffs*, underlying these allegations.

Plaintiffs even admit such an interrogatory does not require expert opinion in the context of the cases Gerber cites in its motion.  Plaintiffs agree interrogatories that "require scientific, technical, or other specialized knowledge" are distinct from interrogatories that "simply ask[] for the underlying facts supporting the plaintiff's allegations that the work environment was unsafe" and from interrogatories that "merely request[] that the plaintiffs identify the wrongful acts that the plaintiffs allege constituted legal malpractice."  Opp. 12-13 (discussing *Tucker v. Momentive Performance Materials USA, Inc.*, 2016 WL 8252929, at *4-5 (S.D. W. Va. Nov. 23, 2016) and *Wagner v. St. Paul Fire & Marine Ins. Co.*, 238 F.R.D. 418, 428 (N.D.W. Va. 2006)).  Gerber's interrogatories request the latter: the facts underlying Plaintiffs' allegations that the Purchased

---

[1] For example, although not entirely clear, Plaintiffs suggest in the Complaint that the products were not "safe" or "suitable" for other reasons.  *E.g.*, ¶ 81 (taking issue with label statements regarding developmental stages); ¶ 238 (asserting claim based on "material risk and/or presence of Heavy Metals *and/or other toxic ingredients*").

AMERICAS 116777666

Products are "unsafe" and/or "harmful."

The cases Plaintiffs cite help illuminate this distinction between these two types of interrogatories – those that "plainly require" "scientific, technical, or other specialized knowledge" and those that "simply ask[] for the underlying facts supporting the plaintiff's allegations."  Opp. 12-13.  Plaintiffs cite *Gorrell v. Sneath*, where the court sustained an expert opinion objection to the portion of an interrogatory asking a party to describe the effect on the plaintiff's drug test results if Substance Abuse & Mental Health Services Administration/ Department of Health and Human Services standards were not adhered to when the drug test was administered.  292 F.R.D. 629, 633 (E.D. Cal. 2013).  In *Bond v. Arrowhead Regional Medical Center*, which Plaintiffs also cite, the interrogatories asked a party to opine whether information would present an "'urgent medical condition'" according to a detention center's policy and whether it would present "'an emergent medical condition" according to the policy.  2014 WL 12853147, at *2 (C.D. Cal. Feb. 11, 2014).  In contrast to Gerber's interrogatories, the interrogatories in *Gorrell* and *Bond* plainly illicit scientific and medical *analysis*, not the factual support for the plaintiffs' allegations.[2]

Finally, Plaintiffs suggest Gerber's argument in its motion to dismiss "that whether any particular level of heavy metals is safe will require expertise in things like nutrition and toxicology" is somehow incongruous with its position in this motion to compel.  Opp. 11.  It is not.  While setting limits for heavy metals in baby food products falls within FDA's ambit,

---

[2] Plaintiffs also cite *McKellips v. Kumho Tire Company*, stating that court rejected the "idea that defendant should respond with information it presently possessed because it could supplement later; defendant could respond after it served its expert disclosures."  Opp. 10-11.  However, *McKellips* provides little to no information on the content of the discovery requests or analysis for why they required expert analysis.  305 F.R.D. 655, 681 (D. Kan. 2015).  It mentions only that the discovery requests sought "technical information, including explanations about tread separation and permeability."  *Id.  McKellips*, therefore, is not instructive here as to Plaintiffs' position that Gerber's interrogatories require expert analysis.

AMERICAS 116777666

Plaintiffs should be able to provide the basic facts supporting their allegations that the products they purchased are "unsafe" and/or "harmful." *See, e.g.*, *Wagner*, 238 F.R.D. at 426-27 (rejecting plaintiffs' argument that they need not answer an interrogatory for which "they have yet to obtain the information through the discovery process" because "[f]act interrogatories are consistent with Rule 11 of the Federal Rules of Civil Procedure, [which requires that] plaintiffs must have some factual basis for the allegations in their complaint").

## II.   <u>Plaintiffs Fail to Show They Need Not Identify the Statements They Contend are False or Misleading, and the Information Gerber Should Have Disclosed (Interrogatory Nos. 4, 6, 7)</u>

Plaintiffs also object to answering interrogatories identifying the statements Plaintiffs contend are false and misleading, and the information Gerber should have disclosed, on the grounds they are premature contention interrogatories and require expert opinion.  In their opposition, Plaintiffs discuss all interrogatories together by objection.  Accordingly, for the same reasons detailed in Section 1.B., Plaintiffs fail to meet their burden of demonstrating Interrogatory Nos. 4, 6, and 7 are premature contention interrogatories, and Nos. 6 and 7 require expert opinion.[3]

Additionally, Plaintiffs provide no explanation of how these interrogatories – asking Plaintiffs for the factual bases for their claim that Gerber's packaging deceived them – could be construed as a contention interrogatory or requiring expert opinion.  Plaintiffs state "[w]hether alleged omissions are material and are likely to mislead reasonable consumers is often the subject of expert analysis," Opp. 11-12, but cite no case law supporting their implicit argument that if an expert will later opine on a topic then any interrogatory related to that topic necessarily requires expert opinion.  Moreover, the type of information sought in the two cases Plaintiffs cite

---

[3] Plaintiffs state in their opposition that they are not asserting "an expert-related objection to Interrogatory No. 4."  Opp. 11, n.9.

AMERICAS 116777666

is entirely distinct from the questions asked here of Plaintiffs.  Gerber's interrogatories do not ask Plaintiffs to opine on the impact of advertising on consumer perceptions or materiality, like the expert in *Krommenhock v. Post Foods, LLC*, or create a "consumers perception survey," like the one in *Fitzhenry-Russell v. Dr. Pepper Snapple Group*.  334 F.R.D. 552, 579 (N.D. Cal. 2020); 326 F.R.D. 592, 601-603 (N.D. Cal. 2018).

Plaintiffs fail to meet their burden to show they need not respond to Interrogatory Nos. 4, 6, and 7 and therefore Plaintiffs must answer them.

**III.   <u>Plaintiffs Should Be Required to Amend Their Interrogatory Responses to Reflect the New Information Provided in Plaintiffs' Opposition Regarding the Price They Would Pay for the Purchased Products, Knowing What They Know Today (Interrogatory No. 9)</u>**

In their opposition, Plaintiffs state, for the first time, that they "would not have bought any of the Baby Food Products" knowing what they know today, which they explain "essentially means they would have paid $0."  Opp. 13.  This is the interrogatory answer Gerber requested, demonstrating both that Plaintiffs could have answered this interrogatory without the need for this motion, and that they can answer now.

Gerber has been asking Plaintiffs to provide this information for weeks and they have refused to do so.  *See, e.g.*, Mot., Ex. 20 at 6.  Plaintiffs even quote one of those efforts from Gerber's July 27, 2022 letter to Plaintiffs in their opposition.  *See* Opp. 13, n.11 ("Gerber asks Plaintiffs to specify whether they 'would not have bought' Gerber's products because they believe (i) the products are worth $0 or 'worthless' as alleged in the Complaint, or (ii) the products had some value to the responding Plaintiff, but not the full value of the price paid."); *see also* Mot., Ex. 20 at 6.  Moreover, when Plaintiffs assumed on a meet-and-confer call that Gerber would regard an answer that Plaintiffs believe the products are worth $0 as incomplete, Gerber's counsel reiterated that such an answer would respond adequately to Interrogatory No. 9.

AMERICAS 116777666

Gerber is entitled to a verified answer.  *Williams*, 2021 WL 1842713, at *1-2 (holding the plaintiff could not refer to other documents – such as pleadings, depositions, or other responses to written discovery – in lieu of providing an interrogatory answer because "[t]he Federal Rules require that a party responding to an interrogatory do so 'fully in writing under oath'").[4] Plaintiffs should serve a further interrogatory response to Interrogatory No. 9 to reflect the information provided in their opposition.

## IV.   Plaintiffs Fail to Demonstrate Interrogatories Regarding Non-Gerber Baby Foods They Purchased or Served Are Not Relevant (Interrogatory No. 10 and part of Interrogatory No. 17)

Plaintiffs refuse to answer interrogatories regarding non-Gerber baby foods they purchased or served (Interrogatory No. 10 and part of Interrogatory No. 17), but Plaintiffs have not met their burden of showing they are entitled to withhold such information based on relevance.  Mot. 17-18.  Plaintiffs have provided partial responses relating to foods other than packaged baby food products they have purchased (*see* Mot., Exs. 7-17 (response to Interrogatory Nos. 18-19)),[5] and responses relating to baby foods produced by other manufacturers are equally, if not more, relevant.  In truth, Plaintiffs do not want to answer these interrogatories because any baby food products from other baby food manufacturers they identify would contain the same or greater trace levels of heavy metals as those products identified in the

---

[4] Plaintiffs also suggest Interrogatory No. 9 seeks irrelevant information, stating, "Gerber has failed to cite to any cases showing that the plaintiff's lay views regarding the appropriate price of a food product in the abstract are relevant to the determination of damages."  Opp. 13, n.11. Despite the fact that Plaintiffs bear the burden (not Gerber) to show Gerber's discovery request is not relevant, Plaintiffs also do not state they are "standing on" a relevance objection for Interrogatory No. 9.

[5] Such fresh fruits and vegetables also contain heavy metals.  In fact, in August 2022, Healthy Babies Bright Futures released a second study, following the 2019 study cited in the Complaint, that concluded "We found no evidence to suggest that homemade baby food has lower heavy metal levels than store-bought brands."  *See* https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2022-08/ExecSummary_ENG.pdf.

AMERICAS 116777666

Complaint.

*First*, Plaintiffs rely heavily on the argument that such requests are too "burdensome" on Plaintiffs – that they seek "broad and wide-ranging information" related to "Plaintiffs' shopping habits of all other non-Gerber baby foods . . . over the last seven years." Opp. 16-17. That is false. Interrogatory No. 10 asks Plaintiffs to identify other baby food products they purchased or considered purchasing *when they purchased Gerber's products*, which, according to Plaintiffs' allegations, appears to span a period of one to two years. Compl. ¶¶ 16, 18, 20, 22, 24, 26, 28, 30. Interrogatory No. 17 asks Plaintiffs to identify baby food products they purchased *since learning* Gerber's products "contain or are at a material risk of containing harmful Heavy Metals," as Plaintiffs allege in the Complaint. Mot., Ex. 1. Plaintiffs allege they did not have this "revelation" until 2020 or 2021,[6] which means Interrogatory No. 17 seeks, at most, information over a period of one to three years, not seven years, as Plaintiffs claim.

Moreover, Plaintiffs acknowledge the Complaint includes allegations about alternative baby foods, but state that "[t]he only factual allegations in the Complaint about alternative baby foods are Paragraphs 136-137, where Plaintiffs allege that there are baby food products available with little to no detectable levels of heavy metals." Opp. 16-17. As Gerber explained in its motion, however, Plaintiffs allege they overpaid for the products seemingly based on comparisons to such "competitors" allegedly "manufacturing baby food products with little to no detectable levels of heavy metals." Mot. 17. Further, Plaintiffs' interrogatory responses state they "would not have bought any of the Baby Food Products" if they "had known that the Gerber

---

[6] Plaintiffs state in their interrogatory response to Interrogatory No. 17, they "did not purchase or serve any of the Gerber Baby Food Products" after this "revelation." Mot., Exs. 7-17. Each Plaintiff alleges purchasing Gerber products up until 2020 or 2021 (Compl. ¶¶ 16, 18, 22, 24, 26, 28, 30), with the exception of one Plaintiff, who alleges purchasing a Gerber product through December 2019 (Compl. ¶ 20).

AMERICAS 116777666

Baby Food Products contain or were at material risk of containing harmful Heavy Metals . . . . ." (Exs. 7-17, No. 9), so Plaintiffs' purchasing habits before and after Plaintiffs' "realization" that Gerber's product's allegedly "contain or are at a material risk of containing harmful Heavy Metals" are entirely relevant.  Compl. ¶ 10.

*Second*, Plaintiffs also rely heavily on *In re Coca-Cola Products Marketing & Sales Practices Litigation No. II*, 2015 WL 5043846 (N.D. Cal. Aug. 26, 2015) and *Astiana v. Kashi Co.*, 291 F.R.D. 493, 503 (S.D. Cal. 2013), stating each court found the "plaintiffs' purchasing habits" were not relevant or proportional to the needs of the case.  Opp. 17-18.  *Coca-Cola* and *Astiana* are consistent with Gerber's position here.  In addition to the reasons stated in Gerber's motion (Mot. 18, n.2), both cases are also inapposite because the plaintiffs' allegations in *Coca-Cola* and *Astiana* did not make comparisons to other products.  Those plaintiffs based their overpayment theory on allegations that the products were not healthy, as claimed, because they contained artificial or non-natural ingredients.  In contrast, here, Plaintiffs allege overpayment because there are other products available with little to no detectable levels of artificial or non-natural ingredients.  Because the plaintiffs' allegations in *Coca-Cola* and *Astiana* did not put other products issue, as Plaintiffs' allegations do here (*see, e.g.*, Compl. ¶¶ 11, 205, 135-137, 253), those courts' decisions finding other discovery mechanisms, like depositions, were a more proportional means for obtaining that information are inapposite here.

*Third*, and finally, Plaintiffs again attempt improperly to shift the burden to Gerber to show why the information it seeks is relevant, citing *In re Peanut Farmers Antitrust Litigation*, 2020 WL 9216019, at *1-2 (E.D. Va. July 24, 2020).  As Plaintiffs admit, the court in *Peanut Farmers* granted the plaintiffs' motion to compel because the defendant failed to meet its burden to demonstrate it should not be required to produce certain information.  *Id.*; Opp. 19.  Plaintiffs

argue "Gerber has failed to cite any cases showing that purchasing habits and related documents are relevant to any potential damages models that have been accepted in cases such as this one." Opp. 19.  Gerber does not need to cite potential damages models for these interrogatories to be relevant to Plaintiffs' allegations.  The court in *Peanut Farmers* discussed methodologies for damages models because the plaintiffs there specifically sought information for their damages model.  2020 WL 9216019, at *1-2.  Here, Gerber seeks to understand the bases of Plaintiffs' allegations.

Accordingly, Plaintiffs have failed to meet their burden of showing they need not respond to Interrogatory No. 10 and the part of Interrogatory No. 17 concerning non-Gerber baby foods they purchased or served.

## V.     Plaintiffs Likewise Fail to Demonstrate Documents Relating to Non-Gerber Products Are Not Relevant (Request for Production No. 7)

Plaintiffs object to producing documents identifying the non-Gerber food and beverages Plaintiffs purchased or served to babies, toddlers, or children (RFP No. 7) on the same grounds asserted in response to Interrogatory Nos. 10 and part of 17, described in Section IV.  Plaintiffs do not offer any arguments unique to Request No. 7.  Therefore, for the reasons stated in Gerber's motion and in Section IV above, Plaintiffs fail to meet their burden of showing the documents sought are not relevant.

## VI.    Plaintiffs' Objections Upon Which They Are Not "Standing" Should be Overruled

A party responding to discovery may "both object and respond" (Opp. 20) in the first instance, which Rule 33(b)(3) contemplates, and which is indeed typical of initial discovery responses in districts where objections and responses are due at the same time.  A party may not insist on perpetually caveating discovery responses as "subject to objections," which is what Plaintiffs do here.  Gerber is entitled to have these objections resolved.

16

Here, in conformity with this Court's rules, Plaintiffs served objections, the parties met and conferred on those objections, and Plaintiffs subsequently made clear which objections they maintained, and those they did not.  Then, however, Plaintiffs served discovery responses that were nonetheless "subject to" all of their objections, including the objections they had withdrawn (and Gerber understood had been resolved).  Plaintiffs therefore insist on formally maintaining objections they said they were withdrawing.  Because these objections lack merit—which Plaintiffs effectively acknowledged by clarifying they were not standing on them—they should be overruled.

Gerber is entitled to have Plaintiffs' discovery objections resolved—be it by Court order overruling or sustaining them, or by negotiated withdrawal during the meet-and-confer process.  Having these objections resolved is important:  the rules create an obligation for a party to supplement discovery as new facts / documents become available.  Where there is a live objection to a discovery request (whole or part), however, the responding party has no obligation to respond to that objected-to part of the request *at all*, and therefore, there is no duty to supplement the objected-to part of the request.  This means if new or additional information / documents are discovered later, the responding party could in theory withhold the new information without disclosing it exists.

Plaintiffs' hypothetical raised in their opposition proves this point.  Plaintiffs argue they need their objections to vagueness, ambiguousness, and overbreadth to Interrogatory No. 18 because without the objection, if a witness remembers an undisclosed fact during a deposition, Plaintiffs may be "accused of bad faith or not being completely truthful" in their interrogatory response.  Opp. at 20.  This makes no sense as the only way disclosing new information for the first time during a deposition would constitute "bad faith" would be if Plaintiffs had an

obligation to supplement an interrogatory response and knowingly did not.  *See, e.g., Brown v. Experian Info. Sols., Inc.*, 2017 WL 11623852, at *1-2 (E.D.V.A. Apr. 17, 2017) (serving discovery responses "subject to" objections "amounts to no answer at all, for it says, essentially, 'here is some information, but there could be more that you are not getting'").

The two out-of-circuit cases Plaintiffs cite, *Norton* and *Whitley*, both from the District of Missouri, do not apply here.  Both explain that simultaneously objecting and providing a partial discovery response "subject to objections" does not render the objections meritless or mean the objections are waived.  *See Norton v. Knapheide Equip. Co.*, 2019 WL 3082631, at *1 (D. Mo. July 15, 2019) (emphasis added) (describing the moving party as "argu[ing] that answering subject to objection, *under any scenario*, should be deemed a waiver of the objection. . . ."); *Whitley v. McClain*, 2014 WL 1400178, at *1 (D. Mo. Apr. 10, 2014) (addressing the moving party's argument that answers subject to objections are generally "not allowed under the Federal Rules of Civil Procedure").

Whether providing discovery responses "subject to" objections can ever be appropriate is not the issue here.  Gerber does not argue that merely because Plaintiffs provided a partial response, their objections should be overruled.  Rather, Plaintiffs objections should be overruled because *Plaintiffs have said* they are not standing on them.  In other words, *Plaintiffs* said there was no real issue with or dispute over the scope or meaning of these discovery requests. Critically, Plaintiffs raise no actual dispute in their opposition.  Accordingly, these objections should be overruled.

## VII.   Gerber Propounded Interrogatories Within the Court-Imposed Limit

Plaintiffs' opposition improperly resurrects Plaintiffs' objection that Gerber exceeded the 50-interrogatory limit in an attempt to avoid answering Gerber's interrogatories.  Opp. 20-22.

Plaintiffs' opposition to Gerber's motion to compel is not the proper forum to "seek clarification of the limit on the number of interrogatories that Gerber may serve."  Opp. 21. Plaintiffs have not moved for a protective order and have already served answers to more than four of Gerber's interrogatories, effectively waiving Plaintiffs' objection.  *See, e.g.*, *Romanyk Consulting Corp. v. EBA Ernest Bland Assocs., P.C.*, 2013 WL 3280030, at *6-7 (D. Md. June 25, 2013) (holding plaintiffs waived an objection that the defendant exceeded the number of interrogatories allowed by answering some interrogatories and not answering others).  Plaintiffs cannot pick and choose to which of the 20 interrogatories to respond, as they suggest by asking that Gerber's motion to compel "be denied on this basis alone" because Plaintiffs "have already responded to well over 50 interrogatories."  Opp. 22; *see, e.g.*, *Allahverdi v. Regents of the Univ. of N.M.*, 228 F.R.D. 696, 698 (D.N.M. 2005) (holding plaintiff waived his right to challenge the number of interrogatories defendants served by answering some and not answering others, explaining "[t]he responding party should not answer some interrogatories and object to the ones to which it does not want to respond").

Moreover, multiplying each interrogatory by the number of Plaintiffs is not a reasonable interpretation of the Court's scheduling order.  *See, e.g.*, *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc*., 2002 U.S. Dist. LEXIS 14327, at *2-4 (W.D. Va. Aug. 5, 2002) (holding the same interrogatory served on five plaintiffs constituted one interrogatory, not five interrogatories).  Rather, Gerber's interpretation – that its interrogatories served collectively on Plaintiffs count only once (not multiplied by the number of Plaintiffs) and require each Plaintiff to respond separately – is consistent with the purpose of collective interrogatories.  *Magnesium Elektron N. Am., Inc. v. Applied Chemistries, Inc*., 2019 U.S. Dist. LEXIS 225266, at *6-7 (D. Mass. July 26, 2019) (allowing the plaintiff to serve up to 25 interrogatories on each defendant

AMERICAS 116777666

does not circumvent the limit in Rule 33(a)(1), explaining "collective interrogatories can be efficient and prevent counsel for a group of parties from wading through multiple sets of interrogatories that end up being identical").

## **CONCLUSION**

For the foregoing reasons, Gerber respectfully requests this Court grant its motion and compel Plaintiffs to serve, within five days, (1) complete answers to Interrogatory Nos. 2, 3, 4, 6, 7, 8, 9, 10, and 14, and (ii) complete answers to Interrogatory No. 17, and documents responsive to Request for Production No. 7, insofar as these requests relate to non-Gerber foods and beverages.  Gerber also respectfully requests the Court overrule Plaintiffs' objections upon which they are not standing for Interrogatory Nos. 1, 5, 11, 12, 13, 15, 16, 18, 19, 20, and the portion of Interrogatory No. 17 relating to Gerber baby food products, and Request for Production Nos. 2-4, 8 and 10-13, 16, and the portion of Request for Production No. 7 relating to Gerber baby food products.

For the reasons stated in Gerber's motion and herein, Plaintiffs refusal to answer the above requests is not substantially justified and attorneys' fees and costs incurred in filing this motion to compel are, therefore, appropriate pursuant to Federal Rule of Civil Procedure 37(a)(5).

20

Dated:  August 23, 2022                        WHITE & CASE LLP

By: _____

Kathryn J. Mims (Va. 81486)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
T: (202) 626-3704
F: (202) 639-9355
kmims@whitecase.com

Bryan A. Merryman
(admitted *pro hac vice*)
WHITE & CASE LLP
555 South Flower Street
Suite 2700
T: (213) 620-7700
F: (213) 452-2329
Los Angeles, CA 90071
bmerryman@whitecase.com

Kimberly A. Havlin
(admitted *pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, N.Y. 10020
T: (212) 819-8200
F: (212) 354-8113
kim.havlin@whitecase.com

Geoffrey W. Castello
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Tel: (973) 503-5922
Fax: (973) 503-5950
gcastello@kelleydrye.com

Attorneys for Defendant
Gerber Products Company

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 23, 2022, I caused a copy of the foregoing **GERBER PRODUCTS COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO OVERRULE OBJECTIONS AND COMPEL PLAINTIFFS' ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS** to be filed electronically with the Clerk of the Court via the Court's ECF system, which will send notification of such filing to all counsel of record.

By: _____
Kathryn J. Mims (Va. 81486)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
T: (202) 626-3704
F: (202) 639-9355
kmims@whitecase.com

*Attorneys for Defendant*
*Gerber Products Company*

22