**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| IN RE: GERBER PRODUCTS COMPANY HEAVY METALS BABY FOOD LITIGATION<br><br>_____<br><br>This Document Relates to ALL Cases | Master File No. 1:21-cv-00269 (MSN/JFA) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL
NESTLÉ DOCUMENTS, CUSTODIANS, AND SUBSTANTIAL COMPLETION DATE**

## TABLE OF CONTENTS

**INTRODUCTION**...................................................................................................................... 1

**BACKGROUND** ........................................................................................................................ 3

    **I.**    **Gerber Refuses to Produce Responsive Nestlé Documents Within Its Control** ........... 3

        **A.**  **Plaintiffs Seek Information About Ingredient Sourcing and Heavy Metal Standards and Testing from Gerber and Its Parents and Affiliates.** ............................... 4

        **B.**  **Gerber is a wholly owned subsidiary of Nestlé and a member of the Nestlé Group.** 5

        ██████████████████████████████████.......................................... 7

        ███████████████████████████████████████.................. 8

        █████████████████████████.................................................................. 9

        **F.**  **The Parties Have Reached an Impasse as to Gerber's Production of Documents or Information from other Nestlé Group Entities.** ...................................... 10

    **II.**    **Gerber Refuses to Produce Responsive Documents from All the Individuals Identified in Its Initial Disclosures and From Its Former and Current CEOs** ................. 11

    **III.**    **Gerber Refuses to Commit to a Substantial Completion Deadline for Production** 12

**ARGUMENT** ............................................................................................................................ 12

    **I.**    **Gerber Should Produce Responsive Nestlé Documents** ............................................... 12

        **A.**  **Gerber's Operations are Deeply Integrated into the Nestlé Group.** ...................... 14

            **1.**  **Gerber Is Part of the Integrated Corporate Structure of the Nestlé Group.** ....... 14

            **2.**  **Gerber and Nestlé Group Exchange Documents in the Ordinary Course of Business.** ................................................................................................................... 16

            **3.**  **Nestlé Has a Significant Interest in the Present Litigation.** .................................. 16

        **B.**  **The Case Schedule Requires an Efficient Approach to Discovery.** ........................ 17

        **C.**  **Gerber Must Include Custodians from the Nestlé Group in its ESI Search and Prepare a Corporate Designee to Testify Regarding Nestlé's Knowledge** ................... 18

    **II.**    **Gerber Should Produce Responsive Documents From All Custodians Identified in Its Initial Disclosures and From Its Former and Current CEOs** ........................................ 21

    **III.**    **The Court Should Order Gerber to Substantially Complete Its Production by September 15** ................................................................................................................... 23

**CONCLUSION** ........................................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anstead v. Virginia Mason Med. Ctr.*,
No. 221CV00447JCCJRC, 2022 WL 1641425 (W.D. Wash. May 24, 2022) .......................19

*Baby Jogger, LLC v. Britax Child Safety, Inc.*,
No. 2:12CV452, 2013 WL 12092292 (E.D. Va. Apr. 25, 2013)..........................13, 15, 16, 17

*Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*,
265 F.R.D. 235 (D. Md. 2010)..........................................................................................19, 20

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*,
286 F.R.D. 288 (E.D. Va. 2012) ................................................................................14, 16, 18

*Flame S.A. v. Indus. Carriers, Inc.*,
No. 2:13-CV-658, 2014 WL 1681426 (E.D. Va. Apr. 23, 2014) ................................... *passim*

*Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*,
No. 11-CV-02007-MSK-KLM, 2013 WL 627149 (D. Colo. Feb. 19, 2013),
*order amended on reconsideration,* No. 11-CV-02007-MSK-KLM, 2013 WL
12246941 (D. Colo. Sept. 12, 2013) ......................................................................................19

*Sanofi-Aventis v. Sandoz, Inc.*,
272 F.R.D. 391 (D.N.J. 2011)...........................................................................................19, 20

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*,
No. 01 CIV. 3016(AGS) ..........................................................................................................19

*Ultra-Mek, Inc. v. Man Wah (USA), Inc.*,
318 F.R.D. 309 (M.D.N.C. 2016) ......................................................................................2, 13

*United States v. United Techs. Corp.*,
No. 3:16-CV-01730 (AVC), 2020 WL 7339916 (D. Conn. Dec. 14, 2020) ..........................22

**Other Authorities**

Fed. R. Civ. P. 34..........................................................................................................12, 19, 20

## INTRODUCTION

Plaintiffs seek an order compelling Defendant Gerber Products Company ("Gerber") to (1) produce documents that reside at Nestle, S.A. and other Nestle affiliates, and prepare a corporate designee to testify regarding Nestle's knowledge; (2) produce responsive documents from the custodians already identified in Gerber's initial disclosures, as well as Gerber's current and former CEOs; and (3) substantially complete its production of documents by September 15, 2022.

This case concerns heavy metals in Gerber baby food products. It is incontrovertible that Gerber's parent Nestlé, S.A., and other Nestlé affiliates, play a key role with respect to heavy metals at every step of the sourcing and manufacturing process. ████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████ Thus, a substantial portion of the most relevant documents in this litigation are likely to reside at Gerber's Nestlé affiliates.

Gerber does not dispute that its parent company Nestlé holds responsive documents. Yet, Gerber refuses to search for or produce the documents that reside at Gerber's Nestlé affiliates. In late July, Gerber agreed to produce documents that resided at Nestlé, so long as those documents were in Gerber's possession, custody, and control. However, on an August 10 meet-and-confer, Gerber's counsel *reneged* on the parties' agreement by unilaterally declaring that Gerber was not searching for documents residing at Nestlé. Gerber's counsel then claimed he had "no idea" whether Nestlé conducted testing for heavy metals in the ingredients for Gerber products.

Given that Gerber's former CEO told Congress that Nestlé conducts the "majority" of testing of Gerber ingredients, this statement by Gerber's counsel raises serious concerns about Gerber's honesty and/or diligence in the discovery process in this matter.

Plaintiffs respectfully request that the Court order Gerber to search and produce responsive documents from all Gerber affiliates, including Nestlé, S.A. Gerber cannot be allowed to withhold a substantial portion of the key documents in this litigation. If Plaintiffs are unable to obtain documents from Nestlé affiliates, Plaintiffs' ability to prosecute this action will be crippled. Some of the examples of the types of documents that Gerber presently intends to withhold include:

- Any discussions between Nestlé employees regarding identifying food ingredients with heavy metals that are used in Gerber baby food;

- Any discussions between Nestlé employees regarding Nestlé's contaminant guidance levels for heavy metals in Gerber baby food, including how Nestlé decided to set that guidance;

- Any raw data from Nestlé's heavy metal testing that was never provided to Gerber; and

- Any discussions between Nestlé employees about Nestlé's heavy metal testing.

Under the Federal Rules and the law of this Circuit, Gerber is required to produce documents that reside at its Nestlé affiliates because those documents are in Gerber's "control." To determine whether a party has control over documents, courts evaluate the party's practical ability to obtain the materials in question. *See e.g., Flame S.A. v. Indus. Carriers, Inc.,* No. 2:13-CV-658, 2014 WL 1681426, at *1 (E.D. Va. Apr. 23, 2014); *Ultra-Mek, Inc. v. Man Wah (USA), Inc.*, 318 F.R.D. 309, 312 (M.D.N.C. 2016). "Control does not require that the party have legal ownership or actual physical possession of the documents at issue, but rather 'the right, authority or practical ability to obtain the documents from a nonparty to the action." *Flame S.A.*, 2014 WL 1681426, at *1 (internal citations omitted).

2

Here, the question of control is simple. ███████████████████
████████████████████████████████████████ Thus, there is no question that Gerber had sufficient control over Nestlé information and documents when Gerber needed to provide it to the U.S. Congress. The Court should order Gerber to search for all responsive documents, including Nestlé documents.

In an effort to further stymie discovery in this matter, Gerber refuses to produce documents from all custodians identified on its initial disclosures. Gerber also refuses to produce responsive documents from its current and former CEO—despite having initially stated that its current CEO is likely to possess responsive documents, and despite documents demonstrating the involvement of its former CEO. Accordingly, the Court should order Gerber to produce responsive documents from all of these individuals.

Finally, Gerber has steadfastly refused to commit to a substantial completion date in this matter—notwithstanding an impending November 30 discovery deadline. To date, Gerber has produced about *one box* of documents (3,000 pages) including publicly available and duplicative documents. Plaintiffs seek a deadline for substantial completion of document production by September 15 to allow sufficient time to review the materials, conduct depositions, and serve follow-up discovery as necessary.

## BACKGROUND

### I.    Gerber Refuses to Produce Responsive Nestlé Documents Within Its Control

Plaintiffs bring claims against Gerber, on behalf of themselves and consumers who bought Gerber's baby food products. Representative Class Action Compl. ¶ 1, ECF No. 112 [hereinafter "Compl."]. Plaintiffs' claims all relate to the presence of Heavy Metals in Gerber's products,

Gerber's testing of its products, and Gerber's internal standards for Heavy Metals in its products. Compl. ¶ 11.

### A. Plaintiffs Seek Information About Ingredient Sourcing and Heavy Metal Standards and Testing from Gerber and Its Parents and Affiliates.

On June 10, 2022, Plaintiffs served their First Requests for Production. Ex. B, Plaintiffs' First Set of RFPs. As part of their Requests, Plaintiffs defined the terms "you" or "your" as used therein, to include:

> Defendant and its predecessors, successors, *parents*, *subsidiaries*, divisions, or *affiliates* (*foreign or domestic*), and their respective current and former officers, directors, agents, attorneys, accountants, employees, partners, or other persons occupying similar positions or performing similar functions, and all other persons acting or purporting to act on their behalf.

Ex. B, Plaintiffs' First Set of RFPs, at page 5 (emphasis added).

Plaintiffs' Requests for Production, including RFPs 2, 14, 19-28, 35-36, 38-39, 41, 58 and 60 seek information about sourcing of ingredients for Gerber products, the standards for heavy metals in Geber products, and testing for the amount of heavy metals in Gerber products. *See* Ex. B at e.g., Request No. 23 ("All DOCUMENTS reflecting or otherwise CONCERNING the standards and specifications YOU impose on PRODUCT ingredient supplies as they relate to HEAVY METALS"); Request No. 38 ("All DOCUMENTS that CONCERN any TESTING conducted on YOUR finished PRODUCTS or PRODUCT ingredients for HEAVY METALS, including internal and external COMMUNICATIONS, laboratory data or results, reports, and/or analyses.").

On June 21, 2022, Plaintiffs served their First Set of Interrogatories. Like Plaintiffs' Requests for Production, Plaintiffs' Interrogatories define "You" or "Your" to include Gerber's "parents, subsidiaries, divisions, or affiliates (foreign or domestic)…." Ex. C, Plaintiffs' First Set of Interrogatories, at page 4.  Plaintiffs' Interrogatories, including Interrogatory Nos. 4-7, 15-17,

4

and 20 seek information about the sourcing of ingredients for Gerber products, the standards for heavy metals in Geber products, and testing for the amount of heavy metals in Gerber products.

Finally, on July 14, 2022, Plaintiffs served a Rule 30(b)(6) notice of Geber, which defined Gerber to include its affiliates. The Rule 30(b)(6) topics include testing for heavy metals and standards for heavy metals.

### B. Gerber is a wholly owned subsidiary of Nestlé and a member of the Nestlé Group.

Gerber Products Company is an indirect wholly owned subsidiary of Nestlé, S.A., a Swiss multinational food and drink company.[1] Nestlé S.A.'s annual revenue (including subsidiaries) in 2021 was more than $80 billion US Dollars.[2] Nestlé S.A.'s direct and indirect subsidiaries are referred to as the "Nestlé Group" in company documents.[3]

Gerber Products Company is a direct wholly owned subsidiary of Nestlé Holdings, Inc. ("NHI").[4] Nestlé Holdings, Inc. is an indirect wholly owned subsidiary of Nestlé, S.A.; and Nestlé Holdings, Inc. serves as "the holding company for Nestlé S.A.'s principal operating subsidiaries in the United States" with a few exceptions.[5] Nestlé Holdings, Inc.'s other direct subsidiaries

---

[1] *See Consolidated Financial Statements of the Nestlé Group 2021,* at page 163, the Nestlé Group, https://www.Nestlé.com/sites/default/files/2022-02/2021-financial-statements-en.pdf
[2] See *id.* at 70.
[3] *NHI Group Annual Financial Report December 31, 2020*, at page 3, Nestlé Holdings, Inc. https://www.Nestlé.com/sites/default/files/2021-04/Nestlé-holdings-inc-financial-statements-2020.pdf.
[4] *See id.* at 23.
[5] *NHI Group Annual Financial Report December 31, 2020*, at page 3, Nestlé Holdings, Inc. https://www.Nestlé.com/sites/default/files/2021-04/Nestlé-holdings-inc-financial-statements-2020.pdf; *see also Consolidated Financial Statements of the Nestlé Group 2021,* at page 163, the Nestlé Group, https://www.Nestlé.com/sites/default/files/2022-02/2021-financial-statements-en.pdf.

include Nestlé USA, Inc.[6] Other Untied States Nestlé Group entities include Nestlé Nutrition R&D Centers, Inc. and Nestlé R&D Center, Inc.

The Nestlé Group exerts significant control over Gerber. On Nestlé's website, Gerber is held out not as a separate company but as one of Nestlé's "brands".[7] Since the Nestlé Group's acquisition of Gerber in 2007, Nestlé has worked to integrate Gerber employees into its corporate structure.[8] Gerber is a major brand in the Nutrition segment of Nestlé Holdings, Inc., having driven much of the growth of the Nutrition segment's sales in 2018 and 2019.[9]

As discussed below, for the issues relevant to this case, Nestlé Group entities exert substantial control. This includes the sourcing of ingredients for Gerber products, setting the standards for heavy metals in Gerber products, and testing for the amount of heavy metals in Gerber products.

███████████████████████████████████ Ex. A, G0984 at 991, fn. 1. Based on publicly available information, Nestlé Infant Nutrition is not an independent entity; it is merely a d/b/a for Gerber.

---

[6] *See NHI Group Annual Financial Report December 31, 2020*, at page 23, Nestlé Holdings, Inc. https://www.Nestlé.com/sites/default/files/2021-04/Nestlé-holdings-inc-financial-statements-2020.pdf.
[7] *Baby Foods*, Nestlé, https://www.Nestlé.com/brands/baby-foods (last visited Aug. 24, 2022).
[8] *See Nestlé completes its acquisition of Gerber*, Nestlé, (Sept. 3, 2007)
https://www.Nestlé.com/media/pressreleases/allpressreleases/nestl%C3%A9_completes_its_acquisition_of_gerber
[9] *See Nestlé Holdings, Inc. and Subsidiaries Annual Financial Report*, at page 4, Nestlé Holdings, Inc. https://www.Nestlé.com/sites/default/files/2020-05/Nestlé-holdings-inc-financial-statements-2019.pdf*Nestlé*



Nestlé controls the monitoring of heavy metals in Gerber baby food.

Ex. A, G00984 at 992 (emphasis added).

Ex. A, G00984 at 991 (emphasis added).

Additionally, in a 2016 Wall Street Journal article, Nestlé S.A.'s Global Head of Supply Chain Chris Tyas openly discussed how Nestlé S.A. controls Gerber's supply chain and stores data about Gerber's ingredients. In discussing the ingredients in Gerber baby food, Tyas referred to the supply chain as _Nestlé's_ supply chain, and told the Wall Street Journal, "We have multiple data sets from all the different ingredients."[10] The article also discusses how Nestlé was working

---

[10] Kim S. Nash, _Farm to Cradle: Nestlé Experiments with Tracking Gerber Baby Food on the Blockchain_, Wall Street Journal (Aug. 1, 2018) https://www.wsj.com/articles/farm-to-cradle-Nestlé-experiments-with-tracking-gerber-baby-food-on-the-blockchain-1533121929

to store information about Gerber ingredients on a blockchain system called Food Trust that will "trace food and ingredients worldwide."[11]

**D.** 

████████████████████████████████████████ G00984 at 993.

Ex. A, G00984 at G00994 (emphasis added).

---

[11] *Id.*



Ex. A, G00984 at G00993.



Ex. A, G00984 at G00994-5.

Multiple public documents indicate that the NQAC is owned and operated by Nestlé USA, Inc. For example, when the NQAC was expanded in 2016, Nestlé USA, Inc. posted a press release with a quote from a Nestlé USA Vice President.[12] The NQAC is also located in Dublin, Ohio, on

---

[12] *See State-Of-The-Art Expansion At Nestlé Quality Assurance Center*, Nestlé USA (Aug. 10, 2016)https://www.Nestléusa.com/media/pressreleases/quality-assurance-center-expansion

the same campus that "serves as headquarters for Nestlé USA's Frozen, Baking, and Pizza and Snacks divisions."[13]

Nestlé has also generated publicly available information on heavy metal testing, which demonstrates that Nestlé is engaged in setting heavy metal testing standards.[14]

### F. The Parties Have Reached an Impasse as to Gerber's Production of Documents or Information from other Nestlé Group Entities.

Plaintiffs have met and conferred with Gerber about its objection to producing documents or information from other Nestlé Group entities. The parties met and conferred regarding Plaintiffs' First Set of RFPs on June 16, 2022; July 6, 2022; July 11, 2022; and July 18, 2022.

After multiple meet-and-confers, the parties appeared to have reached an agreement under which Gerber would produce documents that reside at Nestlé, so long as those documents were in Gerber's possession, custody, and control. By letter dated July 20, 2022, Plaintiffs confirmed the parties' agreement in writing.

> Regarding the definition of Gerber, You and Your, we believe this objection is resolved. Gerber will respond to the discovery requests on behalf of the corporate entity, including any information and documents within Gerber's possession, custody or control. It will speak to all such employees as necessary to identify responsive materials and will also respond through custodial and non-custodial searches as needed. As to Nestlé and other entities, Gerber will not withhold otherwise responsive documents if they originated from Nestlé, or any other entity, if they are in Gerber's possession, custody, or control. For the interrogatories, it will collect the necessary information from individuals at Gerber but will respond only on behalf of Gerber as an entity.

Ex. D at 1-2, Letter from Plaintiffs' Counsel to Defense Counsel.

---

[13] *Id.*

[14] *See Now Nestlé Tests for Heavy Metal: Golden Rules for Lead Analysis*, Nestlé https://www.Nestlé.com/sites/default/files/asset-library/documents/about_us/ask-Nestlé/how-Nestlé-tests-heavy-metal.pdf (last visited Aug. 23, 2022).

However, on an August 10 meet-and-confer, Gerber's counsel *reneged* on the parties' agreement. Gerber's counsel unilaterally declared that Gerber was not searching for documents residing at Nestlé. Gerber's counsel then claimed he had "no idea" whether Nestlé conducted testing for heavy metals on the ingredients in Gerber products. *See* Ex. E, E-mail Thread Between Counsel re: Gerber Baby Food – Heavy Metals, at page 3.

On August 23, 2022, the parties met-and-conferred regarding custodians and the substantial completion date for Gerber to complete its document production. On that call, defense counsel confirmed that all of its custodians were current or former Gerber Product Companies employees, and that Gerber is not going to add custodians form any Nestlé entities. *See* Ex. F, Second E-mail Thread Between Counsel re: In re Gerber Products Company Heavy Metals Baby Food Litig. - Draft of Proposed Joint Agenda for August 19 Status Conference, at page 1.

## II. Gerber Refuses to Produce Responsive Documents from All the Individuals Identified in Its Initial Disclosures and From Its Former and Current CEOs

During the parties' August 23 meet-and-confer, the parties also reached an impasse regarding the current and former Gerber employees whose documents Gerber will search.

Plaintiffs have asked Gerber to search the documents of all eighteen of the individuals listed on its Initial Disclosures, as well Gerber's CEO Tarun Malkani and Gerber's former CEO William Partyka. Gerber refused. Gerber will only agree to produce documents from 12 custodians—11 (out of the 18) listed on the Initial Disclosures, as well as Wendy Johnson (who was not named on the Initial Disclosures, but who Gerber also named as a custodian). Gerber refuses to search the documents of the other 7 individual listed on its Initial Disclosures or its current CEO or former CEO. *See* Ex. G Liskow August 25 e-mail.

### III.     Gerber Refuses to Commit to a Substantial Completion Deadline for Production

To date, Gerber has produced 3,000 pages of documents—about a banker's box worth of material. Many of the documents consist of materials already produced to Congress, public documents, or duplicative documents. Plaintiffs have repeatedly requested that Gerber commit to a substantial completion deadline for the *entire* production, including all custodial and non-custodial documents (such as documents stored on shared drives). Gerber has refused. Instead, Gerber asserts that it cannot offer a substantial completion date because it does not know who the custodians will be. This is a misdirection: Plaintiffs have told Geber who they want as custodians: the 18 custodians listed on Gerber's initial disclosures, William Partyka, Tarun Malkani, Wendy Johnson, and appropriate custodians from the Nestlé Group entities. Yet, with approximately three months left for fact discovery, Gerber has produced almost nothing in this case, and refuses to commit to any production deadline.

### ARGUMENT

### I.     Gerber Should Produce Responsive Nestlé Documents

The Court should order Gerber to produce the Nestlé Group documents because Gerber's own behavior in responding to Congress makes clear that Gerber has the "practical ability to obtain" Nestlé Group documents. Gerber's former CEO already spoke on behalf of Nestlé to Congress and provided Nestlé data to Congress. Geber had sufficient control over Nestlé information and documents when Gerber needed to provide it to the U.S. Congress.

Under Rule 34, a party must produce responsive documents that are within its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "It is well established that a district court may order the production of documents in the possession of a related nonparty entity under Rule 34(a) if

12

those documents are under the custody or control of a party to the litigation." *Flame S.A. v. Indus. Carriers, Inc.,* No. 2:13-CV-658, 2014 WL 1681426, at *1 (E.D. Va. Apr. 23, 2014).

The Eastern District of Virginia and the district courts throughout the Fourth Circuit use the "practical-ability-to-obtain" test to determine whether a party has control over documents. *See e.g., Flame S.A. v. Indus. Carriers, Inc.,* 2014 WL 1681426, at *1; *Ultra-Mek, Inc. v. Man Wah (USA), Inc.*, 318 F.R.D. 309, 312 (M.D.N.C. 2016).

Under the "practical-ability-to-obtain" test, "[c]ontrol does not require that the party have legal ownership or actual physical possession of the documents at issue, but rather the right, authority or *practical ability* to obtain the documents from a nonparty to the action." *Flame S.A.*, 2014 WL 1681426, at *1 (internal citations omitted) (emphasis added); *Baby Jogger, LLC v. Britax Child Safety, Inc.*, No. 2:12CV452, 2013 WL 12092292, at *2 (E.D. Va. Apr. 25, 2013). *See also Ultra-Mek, Inc.*, 318 F.R.D. at 312.

The "practical-ability-to-obtain" test often analyzes 11 non-dispositive factors: "(1) the corporate structure of the party/non-party[;] (2) the non-party's connection to the transaction at issue in the litigation[;] (3) the degree that the non-party will benefit from the outcome of the case; (4) whether the related entities exchange documents in the ordinary course of business; (5) whether the nonparty [sic] has participated in the litigation; (6) common relationships between a party and its related non-party entity; (7) the ownership of the non-party; (8) the overlap of directors, officers, and employees; (9) the financial relationship between the entities; (10) the relationship of the parent corporation to the underlying litigation; and (11) agreements among the entities that may reflect the parties' legal rights or authority to obtain certain documents." *Ultra-Mek, Inc.,* 318 F.R.D. at 312-13.

13

A party seeking production of documents from a nonparty need not demonstrate each of the factors enumerated above. In fact, some courts have looked at only a subset of the factors listed above. *See E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc*., 286 F.R.D. 288, 292 (E.D. Va. 2012) (discussing *Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006) and *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 130 (D. Del. 1986)). Rather the party need only proffer specific facts demonstrating at least some of the foregoing factors. *See Steele Software Sys., Corp.*, 237 F.R.D. at 565; *Flame S.A.*, 2014 WL 1681426, at *3.

### A. Gerber's Operations are Deeply Integrated into the Nestlé Group.

#### 1. Gerber Is Part of the Integrated Corporate Structure of the Nestlé Group.

Many of the factors in the "practical ability to obtain" test look at the relationship between the party and the related non-party entities.[15] Based on the relationship between Gerber and the Nestlé Group, these factors weigh in Plaintiffs' favor. (Factors 1, 6, 7, 8, 9, & 10)

When weighing the corporate structure of the party/nonparty and related factors, the Court must look past convoluted corporate structures, to the practical realities of the connections between two corporations or affiliates. *See Flame S.A.*, 2014 WL 1681426, at *3. The relationship factors are meant to be considered within an evaluation of the "common relationships between a party and its related nonparty entity." *See Steele Software Sys., Corp.*, 237 F.R.D. at 564  ("The specific form of the corporate relative involved does not matter, *i.e.,* whether it is a parent, sister, or subsidiary corporation.").

---

[15] These factors include the corporate structure of the party/non-party, the common relationships between the party and nonparty; the overlap of directors, officers, and employees; the financial relationship between the entities; the ownership of the nonparty. *Flame S.A.*, 2014 WL 1681426, at *1.

For instance, "control" over documents held by a nonparty has been found where a party and its related nonparty affiliate are owned by the same individual, *Steele Software Sys., Corp.*, 237 F.R.D. at 564, where related entities share management, *Flame S.A.*, 2014 WL 1681426, at *2, and "when the parties' history, association, assignments and transactions together show sufficient mutuality", *Uniden Am. Corp.*, 181 F.R.D. at 306 n. 7 (collecting other examples). The Court should not permit Gerber to use its contrived corporate form to hide documents or make discovery of them difficult. *See Steele Software Sys.*, 237 F.R.D. at 564.

Here, Gerber is part of an integrated corporate structure that comprises the Nestlé Group. *See supra* Background.I.B. Gerber is a direct and wholly-owned subsidiary of Nestlé Holdings, Inc., and Gerber is an indirect, wholly-owned subsidiary of the Nestlé, S.A. *See supra* Background.I.B. Gerber is also an affiliate / sister corporation of other Nestlé Group entities, including Nestlé USA, Inc, Nestlé Nutrition R&D Centers, Inc., and Nestlé R&D Center, Inc. *See supra* Background.I.B.

The intertwined relationship between Gerber and the Nestlé Group is evident from Gerber's reliance on Nestlé entities for supply chain sourcing, *see supra* Background.I.C, setting standards for heavy metals in its baby food, *see supra* Background.I.D, and testing for heavy metals in baby food, *see supra* Background.I.E. Even if Gerber and all other entities in the Nestlé Group reliably respect their corporate forms and interact through at arm's length transactions, Gerber would still be in control of all relevant documents held by the Nestlé Group because Nestlé is likely intimately involved in the sourcing, standard setting, and testing of the products at issue in this case. *See Baby Jogger LLC*, 2013 WL 12092292, at *2.

In evaluating how closely related two entities are, it also matters how the entities hold themselves out. *See Steele Software Sys., Corp.*, 237 F.R.D. at 565 (noting that the party's website

15

identified one relevant nonparty as a "[party] company" and another relevant nonparty as an "affiliate of [the party]"). On its website Nestlé holds Gerber out as one of its baby food "brands,", not even as a separate company or entity. *See supra* n. 7.

### 2. Gerber and Nestlé Group Exchange Documents in the Ordinary Course of Business.

Another factor that weighs in favor of a finding of control is that Gerber and the Nestlé Group entities exchange documents in the ordinary course of business. (Factor 4). The minimal production Gerber has already made demonstrates that materials are shared between Gerber and Nestlé affiliates in meeting their own business needs. *E.g. see supra* Background.I.C, Background.I.D, Background.I.E, . For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ Ex. A, G00984 at G00993.

Gerber should not be able to benefit from the synergies of an integrated business with Nestlé only to refuse to acknowledge such an integrated business in the present litigation. *See E.I. DuPont,* 286 F.R.D. at 292 (E.D. Va. 2012). Because Gerber can secure documents from Nestlé and Nestlé affiliates to meet its own business needs, Gerber thus has "control" over those documents. *Baby Jogger, LLC*, 2013 WL 12092292, at *2.

### 3. Nestlé Has a Significant Interest in the Present Litigation.

Even though Nestlé has not been directly involved in this litigation, the other factors related to the non-party's connection to the litigation weigh in favor of finding Gerber's control over the relevant documents. (Factors 2 and 3). Those factors are: (i) the non-party's connection to the transaction at issue in the litigation and (ii) the degree that the non-party will benefit from the outcome of the case. First, as to Nestlé's connection to this litigation, Plaintiffs' claims relate to ingredients in Gerber's products and implicate the supply chain it shares with the Nestlé Group.

*See supra* Background.I.C. Nestlé's choice of a Gerber product for a novel supply chain tracking experiment shows how invested Nestlé is in the supply chain that flows into Gerber products. *See supra* n. 10. Second, Nestlé has vested an interest in the subject matter of this litigation. Nestlé and Nestlé Holdings, Inc. have noted that Gerber is an important brand for the Nestlé Group. *Supra* n. 9.

The only factor that appears to weight in Gerber's favor is that Nestlé has not yet participated in this action; however, this sole factor will not alone outweigh the other factors weighing in Plaintiffs' favor.[16] *See Flame S.A.*, 2014 WL 1681426, at *3.

While not every factor need weigh in Plaintiffs' favor, almost all here do, including the more important factors considered by courts. *E.g. Baby Jogger, LLC*, 2013 WL 12092292, at *2-4 (emphasizing the corporate structure and common relationships of the parties, the non-party entities' connection to the issues in the litigation, and whether the entities exchange documents in the ordinary course of business).

**B.  The Case Schedule Requires an Efficient Approach to Discovery.**

Gerber's refusal to search and produce documents held by its Nestlé Group affiliates has the potential to significantly delay the production of important documents. If Gerber is not compelled to produce responsive documents held by members of the Nestlé Group, Plaintiffs would be forced to subpoena many Nestlé affiliates, including foreign affiliates which counsel would have to seek discovery from through the Hague Convention.

---

[16] There is another factor—"agreements among the entities that may reflect the parties' legal rights or authority to obtain certain documents", *Flame S.A.*, 2014 WL 1681426, at *3—that weighs in favor of neither party, because it is unknown what agreements, if any, exist. .

Plaintiffs do not even have the information necessary to identify all the entities in the Nestlé Group that hold the relevant documents. However, based on Gerber's limited document production and public documents, it is already apparent that Nestlé S.A. and Nestlé USA, Inc. possess relevant documents. Because of Nestlé's opaque corporate structure, there may be other Nestlé Group entities with relevant documents. Of course, the court may order production without a complete knowledge of the corporate structure of related affiliates. *See E.I. DuPont*, 286 F.R.D. at 295. Here, the court should order Gerber to produce relevant documents from all Nestlé Group entities, i.e., any entity that is related directly or indirectly to Gerber Products Company, Nestlé S.A., or Nestlé Holdings, Inc.

"Courts are able to disregard corporate form to prevent, among other things, misleading actions whereby corporations try to hide documents or make discovery of them difficult." *Steele Software Sys., Corp.*, 237 F.R.D. at 564 (internal citations omitted). Here, Gerber's choice to disregard its integrated relationship when producing documents in this matter is nothing more than attempt to run out the short clock on discovery without having to turn over documents that may be critical to Plaintiffs' case.

### C. Gerber Must Include Custodians from the Nestlé Group in its ESI Search and Prepare a Corporate Designee to Testify Regarding Nestlé's Knowledge

In addition to seeking out and producing any non-custodial responsive documents held by the Nestlé Group, Gerber must also supplement its discovery responses in two additional ways related to Nestlé.

*First*, Gerber must add custodians from the Nestlé Group to its ESI search. Internal conversations between Nestlé Group employees will likely include some of the most documents in this litigation. Those documents will include: (1) any discussions between Nestlé employees regarding identifying food ingredients with heavy metals that are used in Gerber baby food; (2)

any discussions between Nestlé employees regarding Nestlé's contaminant guidance levels for heavy metals in Gerber baby food, including how Nestlé decided to set that guidance; and (3) any discussions between Nestlé employees about Nestlé's heavy metal testing.

The types of documents that would be withheld from the current production show how insufficient the production will be absent the addition of Nestlé Group employees. If two Nestlé Group employees had an internal conversation admitting that the raw ingredients in Gerber baby food have concerning amounts of heavy metals, Gerber will not search for or produce the document.

*Second*, Gerber must produce Rule 30(b)(6) designee(s) prepared to testify regarding the Nestlé Group's relevant knowledge for each 30(b)(6) topic. Under Federal Rule of Civil Procedure 30(b)(6), a corporate designee "must testify about information known *or reasonably availabl*e to the organization." Courts have consistently found that the "'or reasonably available' language of Rule 30(b)(6) can extend to information held by corporate affiliates." *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 394 (D.N.J. 2011) (collecting cases). To determine whether the information at issue is "reasonably" available courts often look to the "control" standard used in the context of Rule 34(a). *Id.* at 395; *Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc.,* No. 11-CV-02007-MSK-KLM, 2013 WL 627149, at *5 (D. Colo. Feb. 19, 2013), *order amended on reconsideration,* No. 11-CV-02007-MSK-KLM, 2013 WL 12246941 (D. Colo. Sept. 12, 2013); *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, No. 01 CIV. 3016(AGS)(HB, 2002 WL 1835439, at *4 (S.D.N.Y. Aug. 8, 2002). *See also Anstead v. Virginia Mason Med. Ctr.,* No. 221CV00447JCCJRC, 2022 WL 1641425, at *4 (W.D. Wash. May 24, 2022) ("The crux of the matter is not the identity of the holder or the location of the information, but whether the organization may obtain that information through reasonable efforts."); *Coryn Grp. II, LLC v. O.C.*

19

*Seacrets, Inc.*, 265 F.R.D. 235, 239 (D. Md. 2010) (considering many of the same factors as those outlined in the Rule 34 "control" analysis).

As discussed above, Gerber has "control" over information held by its Nestlé affiliates because it has the practical ability to obtain information from the Nestlé Group affiliates. In particular, Nestlé Group's operation as an integrated unit, *see supra* Argument.I.A.1, and information sharing amongst Nestlé affiliates, *see supra* Argument.I.A.2, means that information held by Nestlé affiliates is "reasonably" available to Gerber. *Coryn Grp.*, 265 F.R.D. at 239. Thus, the knowledge of the Nestlé Group affiliates regarding the relevant issues in this litigation are reasonably available to Gerber.

Courts are particularly persuaded that the information is "reasonably available" where, as here, the corporate entities interacted or worked together in relation to the topics noticed for the deposition. *Cf Sanofi-Aventis,* 272 F.R.D. at 395 (reviewing the scant case law on this issue and determining that "[t]he only case where a court declined to find information from a related entity 'reasonably available' involved a subpoena that sought information on matters in which the named deponent was *entirely uninvolved.*") (emphasis added). In the present case, Plaintiffs noticed the pertinent Rule 30(b)(6) deposition on testing and testing standards. *See* Ex.H, Rule 30(b)(6) Notice. Nestlé was not only involved in but in control of much of the standard setting and testing for Gerber's products. *See supra* Background.I.D.

Finally, it is Gerber that has failed to marshal any evidence, let alone sufficient and convincing evidence, that the information sought by Plaintiffs is not "reasonably available." *Coryn Grp.*, 265 F.R.D. at 239 (citing *Murphy v. Kmart Corp.,* 255 F.R.D. 497, 509 (D.S.D.2009) (compelling corporate deponent to discuss relevant history of four related corporate entities and

discussing that, in providing such a deponent, the company may either prepare its own employee to be deposed or may designate a knowledgeable employee of one of its affiliates).

## II.   Gerber Should Produce Responsive Documents From All Custodians Identified in Its Initial Disclosures and From Its Former and Current CEOs

Plaintiffs also ask the Court to order Gerber to search and produce documents from twenty-one custodians who are current or former Gerber Products Company employees: (i) the eighteen individuals listed on Gerber's Initial Disclosures, (ii) Gerber's former CEO William Partyka, and Gerber's current CEO Tarun Malkani, and (iii) Wendy Johnson (who is not listed on the Initial Disclosures, but Gerber already named as a custodian).[17] The parties have also reached impasse on this issue.[18]

On June 30, 2022, Gerber served its Rule 16 Initial Disclosures on Plaintiffs, stating that each of the 18 current or former Gerber employees that it disclosed were "likely to have discoverable information concerning this action." Ex. I, Gerber's Rule 16 Initial Disclosures at 4-7. Gerber, however, will only agree to produce documents from 12 custodians — 11 (out of the 18) listed on the Initial Disclosures, plus Wendy Johnson.[19] Gerber refuses to search the documents of the other seven individuals listed on its Initial Disclosures — Sarah Smith, Levi Walsh, Lori Young, Kristi Knutdson, Aude Bourguignon, Lori Hawkins and Anita Helland.

---

[17] The eighteen individuals listed on Gerber's Initial Disclosures are Kim Aylesworth, Aude Bourguignon, Cheryl Callen, Paula Casey, Jennifer Dressel, Lauryn Gutierrez, Lori Hawkins, Anita Helland, Mohini Joshi, Basharat Khalil, Kristi Knudtson, Russ Levitan, Kai Museilak, Susan Pac, Lyle Pater, Sarah Smith, Levi Walsh, and Lori Young.

[18] As noted above, Plaintiffs separately seek an order compelling Gerber to identify and search the records of Nestlé custodians who are likely to have responsive documents.

[19] The eleven individuals listed on Geber's Initial Disclosures that Gerber has agreed to name as custodians are: Cheryl Callen, Paula Casey, Mohini Joshi, Basharat Khalil, Susan Pac, Lyle Pater, Kim Ayseworth, Jennifer Dressel, Lauryn Guiterrez, Russ Levitan, and Kai Museilak.

Because Gerber identified these individuals in their Initial Disclosures, Gerber must include them as custodians. *See United States v. United Techs. Corp.*, No. 3:16-CV-01730 (AVC), 2020 WL 7339916, at *9 (D. Conn. Dec. 14, 2020) ("The Court finds that the forty-five custodians listed in Defendant's initial disclosures are subject to an ESI document search. These forty-five individuals are not 'additional' custodians but the very individuals identified by Defendant as 'likely to support its claims or defenses.'"). Plaintiffs will be prejudiced if Gerber does not search the documents of all the individuals listed on its Initial Disclosures. For example, Gerber will be able to call the individuals listed on its Initial Disclosures as witnesses at trial, and Plaintiffs need to be able to cross-examine these individuals at trial with their own documents.

Gerber provides no reasonable explanation for its position. During a meet-and-confer on August 23, 2022, Gerber indicated that, although the custodians it wishes to exclude managed different facilities, the custodians were not all needed because, "Gerber's relevant practices and procedures are consistent across facilities." Ex. G, August 24 E-mail Correspondence, 11:58 e-mail from Taylor Akerbloom. But the use of common practices and procedures across all facilities does not mean that the e-mail correspondence of each custodian is duplicative. For example, employees at each of the facilities likely had separate discussions about their concerns with the heavy metals in Gerber baby food, even though they were all following the same common policies and procedures.[20]

As for Gerber's CEO Tarun Malkani, Gerber wrote a June 27, 2022 e-mail to Plaintiffs identifying Mr. Malkani as someone likely to be named in Gerber's Initial Disclosures. *See* Ex. J, June 27 E-mail. Gerber does not deny that Mr. Malkani possesses relevant information. Rather,

---

[20] On the August 23, 2022 meet-and-confer, Gerber also suggested that one of the employees in its Initial Disclosures was named in error, but Gerber did not formally amend its Initial Disclosures or even put this position in writing.

counsel has asserted that it believes Mr. Malkani is unlikely to have "unique" information and documents. However, during the parties' August 23 meet-and-confer, Gerber stated that it had not conducted any hit report analysis to support this assertion. Given Mr. Malkani's senior position, it is highly likely that he would have participated in "unique" communications to which more junior employees were not privy.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██ Yet, as with Mr. Malkani, counsel asserts, without evidence, that Mr. Partyka lacks "unique" information and documents. Once again, given Mr. Partyka's senior position, it is highly likely that he would have participated in "unique" responsive communications to which more junior employees were not privy. The Court should not accept Gerber's unevidenced assertions that Mr. Malkani and Mr. Partyka's documents are not "unique," and order Gerber to produce their documents.

### III.     The Court Should Order Gerber to Substantially Complete Its Production by September 15

To date, Gerber has produced less than 3,000 pages of documents. Gerber's stalling tactics threaten the feasibility of the current schedule. Fact discovery closes on November 30, 2022, which is just over three months away. Plaintiffs need two and half months to review Gerber's document production, depose Geber's witnesses, and ask for follow-up information and documents. If Gerber does not substantially complete its document production by September 15, 2022, Plaintiffs will be severely prejudiced. Additionally, Plaintiffs' expert reports are due on December 15, 2022. Plaintiffs' experts will need a sufficient amount of time to review Geber's documents to formulate their opinions. If Gerber does not substantially complete its document production by September

15, 2022, that will also jeopardize the ability of Plaintiffs' experts to meet the December 15, 2022 deadline.

The parties have met-and-conferred regarding a substantial completion date and reached impasse. As noted above, Gerber claims it cannot offer a substantial completion date because it does not know who the custodians will be. But again this is a misdirection as Plaintiffs have informed Geber who it wants as custodians: the 18 custodians listed on Gerber's initial disclosures, William Partyka, Tarun Malkani, Wendy Johnson, and appropriate custodians from the Nestlé Group entities – which Gerber refuses to search. Gerber's chicken-and-egg tactic is an obvious attempt to run out the clock. Accordingly, Plaintiffs respectfully order Gerber to substantially complete its document production by September 15, 2022.

## CONCLUSION

For the foregoing reasons, Plaintiffs seek an order compelling Gerber to (1) produce documents that reside at Nestle, S.A. and other Nestle affiliates (including by adding custodians from Nestle Group entities to its ESI searches), and prepare a corporate designee to testify regarding Nestle's knowledge; (2) produce responsive documents from the custodians already identified in Gerber's initial disclosures, as well as Gerber's current and former CEOs; and (3) substantially complete its production of documents by September 15, 2022.

Dated: August 26, 2022                    By:    */s/ Steven J. Toll*

                                              Steven J. Toll

                                              **COHEN MILSTEIN SELLERS & TOLL, PLLC**
                                              1100 New York Ave. NW
                                            East Tower, 5th Floor
                                            Washington, DC  20005
                                            Telephone: (202) 408-4600
                                            Facsimile: (202) 408-4699

Rosemary M. Rivas
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9700
Facsimile: 510-350-9701

Janine Pollack
**CALCATERRA POLLACK LLP**
1140 Avenue of the Americas, 9th
Floor
New York, New York 10036
Telephone: 212-899-1765
Facsimile: 332-206-2073

*Plaintiffs' Interim Co-Lead Counsel*