**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| IN RE: GERBER PRODUCTS COMPANY HEAVY METALS BABY FOOD LITIGATION | |
| | Master File No. 1:21-cv-00269 (MSN/JFA) |
| This Document Relates to ALL Cases | |

**<u>GERBER PRODUCTS COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO
COMPEL NESTLÉ DOCUMENTS, CUSTODIANS, AND SUBSTANTIAL
COMPLETION DATE</u>**

## TABLE OF CONTENTS

Page

I.   INTRODUCTION .............................................................................................1

II.   BACKGROUND ...............................................................................................2

   A.   The Parties Already Agreed Gerber Would Collect Documents From its
        Employees and Produce Responsive Documents that Originated from Other
        Nestlé Entities Found in Gerber's Files, But Need Not Separately Search the
        Files of Other Nestlé Entities (Nor Could Gerber Do That)....................................2

   B.   Gerber is Separately Incorporated and a Distinct Corporate Entity From Other
        Nestlé Entities ........................................................................................3

III.   LEGAL STANDARD.......................................................................................4

IV.   DISCUSSION ...................................................................................................5

   A.   Plaintiffs Are Not Entitled to Sweeping Discovery From All Nestlé Entities
        Globally.................................................................................................5

        1.   Plaintiffs' Evidence of Control Falls Well Short .......................................5

        2.   Documents in the Possession of Other Nestlé Entities Are Either
             Irrelevant or Cumulative ................................................................7

        3.   Plaintiffs' Demand for Non-Gerber Custodians From Other Nestlé
             Entities is Not Proportional to the Needs of the Case..............................9

   B.   Plaintiffs' Refusal to Compromise on Additional Custodians is Unreasonable
        and Disregards the Court's Discovery Schedule ...................................................10

   C.   Given the Burden of Plaintiffs' Demands, Substantial Completion By
        September 15 is Not Feasible .........................................................................14

V.   CONCLUSION..................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Afros S.P.A. v. Krauss-Maffei Corp.*,
113 F.R.D. 127 (D. Del. 1986) ...............................................................................7

*Baby Jogger, LLC v. Britax Child Safety, Inc.*,
No. 2:12CV452, 2013 WL 12092292 (E.D. Va. Apr. 25, 2013)..............................7

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*,
286 F.R.D. 288 (E.D. Va. 2012) .............................................................................7

*Enslin v. Coca-Cola Co.*,
No. 2:14-CV-06476, 2016 WL 7042206 (E.D. Pa. June 8, 2016).........................14

*Eramo v. Rolling Stone LLC*,
314 F.R.D. 205 (W.D. Va. 2016) .............................................................................4

*Flame S.A. v. Indus. Carriers, Inc.*,
No. 2:13-CV-658, 2014 WL 1681426 (E.D. Va. Apr. 23, 2014) .............................7

*In re NC Swine Farm Nuisance Litig.*,
No. 5:15-CV-00013-BR, 2016 WL 3661266 (E.D.N.C. July 1, 2016) ....................5

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.*,
43 F.3d 922 (4th Cir. 1995) .....................................................................................4

*Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc.*,
237 F.R.D. 561 (D. Md. 2006)..................................................................................7

*Stein v. U.S. Xpress Enterprises, Inc.*,
No. 119-CV-00098-TRM-CHS, 2022 WL 511553 (E.D. Tenn. Feb. 11, 2022).....................8

*Ultra-Mek, Inc. v. Man Wah (USA), Inc.*,
318 F.R.D. 309 (M.D.N.C. 2016) ............................................................................7

*Uniden Am. Corp. v. Ericsson Inc.*,
181 F.R.D. 302 (M.D.N.C. 1998) ............................................................................7

*Va. Dep't of Corrs. v. Jordan*,
921 F.3d 180 (4th Cir. 2019) ............................................................................5, 10

*Wu v. Tseng*,
No. 2:06-CV-346, 2007 WL 4143077 (E.D. Va. Nov. 19, 2007) ............................4

AMERICAS 116952881

## FEDERAL RULES

Fed. R. Civ. P. 26(b)(1).............................................................................................5, 10

Fed. R. Civ. P. 26(b)(2)(C)(i) ...........................................................................................5

AMERICAS 116952881

## I.        INTRODUCTION

Plaintiffs' motion to compel is a fishing expedition, which they readily admit several times in their motion when they speculate, without any evidence, about what they hope to find. Gerber has already agreed to produce the documents Plaintiffs need for their case.  Plaintiffs' dilemma is that FDA has announced that it is currently working on additional standards for heavy metals in baby foods and that parents should keep feeding their children Gerber's (and other manufacturers') baby food products because they are safe.  Faced with a similar putative class action, another court granted the baby food manufacturer's motion to dismiss on the grounds of primary jurisdiction and plaintiffs' failure to plead injury.  Then, Healthy Babies Bright Futures (an organization Plaintiffs rely on to support the allegations in their Complaint) issued a report finding "no evidence to suggest that homemade baby food has lower heavy metal levels than store-bought brands."  In short, Plaintiffs' new demands are antithetical to Rule 1 of the Federal Rules of Civil Procedure.

Despite Plaintiffs' fantastical theory of liability, and non-existent damages, Gerber is diligently working to comply with the Court's schedule, but Plaintiffs continue to raise new "asks" and create new discovery demands that, if compelled, would make compliance with the schedule impossible.  Plaintiffs now seek broad categories of documents from the custodial files of all individuals identified on Gerber's initial disclosures, as well as newly identified individuals (some of whom do not work for Gerber), and countless unidentified individuals, even though the documents in these additional individuals' custodial files are likely duplicative, cumulative, or unlikely to include responsive information.  Such demands are not proportional to the needs of this case. For example, Plaintiffs now demand discovery *globally* from the entire Nestlé corporate family, even though, following a dispute and a meet and confer process, the parties

AMERICAS 116952881

resolved that issue by an agreement on July 18, 2022, whereby Plaintiffs agreed that Gerber would search only its documents and produce any responsive documents from other Nestlé entities found in Gerber's possession, custody, or control.

Plaintiffs' attempt to manufacture control by Gerber (one of six distinct Nestlé entities operating in the U.S. with entirely separate businesses) over all of Nestlé (globally) lacks any merit whatsoever.  Even if Gerber had the ability to demand documents from separate corporate entities (it does not), such an expanded document collection, review, and production is disproportionate to the needs of this case.  Plaintiffs want every potentially responsive document from every custodian on Gerber's initial disclosures, as well as from additional former and current employees of Gerber and even unidentified employees of other Nestlé entities that do not manufacture or sell baby food—all by September 15.  Putting aside that there is no legal requirement and no factual basis for these new demands, Plaintiffs' recent demands cannot be met within the schedule set by the Court.

Gerber has proposed reasonable solutions to focus document production on the relevant custodians likely to have the most unique responsive documents.  Plaintiffs refuse to compromise even though they cannot explain why the current priority custodians they agreed to, plus any five additional custodians, are insufficient to capture the responsive documents needed for this case. They simply say they want everything, and with this motion also seek to expand the collection and production of documents outside of Gerber.  The motion should be denied.

## II.    BACKGROUND

### A.    The Parties Already Agreed Gerber Would Collect Documents From its Employees and Produce Responsive Documents that Originated from Other Nestlé Entities Found in Gerber's Files, But Need Not Separately Search the Files of Other Nestlé Entities (Nor Could Gerber Do That)

On July 18, 2022, as part of efforts to resolve discovery disputes, the parties met and

AMERICAS 116952881

conferred and agreed that Gerber would respond only on behalf of Gerber and would ***not*** respond on behalf of, or collect documents from, any other Nestlé entity.  Plaintiffs themselves memorialized this agreement two days later in a July 20, 2022 letter:

> Regarding the definition of Gerber, You and Your, we believe this objection is resolved.  Gerber will respond to the discovery requests on behalf of the corporate entity, including any information and documents within Gerber's possession, custody or control. . . .  As to Nestlé and other entities, Gerber will not withhold otherwise responsive documents if they originated from Nestlé, or any other entity, if they are in Gerber's possession, custody, or control.

Pls.' Ex. D at 1-2 (emphasis added).

Gerber confirmed the agreement on July 27, 2022, and later reiterated that, while it would not withhold responsive documents originating from another Nestlé entities, Gerber would not attempt to separately search, collect, or produce documents from any other Nestlé entity.  Pls.' Ex. E at 2.  Now, over a month later, Plaintiffs claim Gerber must search for documents possessed by other Nestlé entities.  Indeed, not until August 25, 2022, did Plaintiffs indicate their "understanding" had changed, and that Plaintiffs now disingenuously claim they believed Gerber would search for documents from all Nestlé entities globally.  This contrived understanding contradicts the parties' agreement, memorialized by Plaintiffs in their July 20, 2022 letter, and does not reflect Gerber's agreement or its legal obligation.

## B.      Gerber is Separately Incorporated and a Distinct Corporate Entity From Other Nestlé Entities

Nestlé S.A., headquartered in Vevey, Switzerland, is the ultimate parent many separate corporate entities with a portfolio of more than 2,000 brands spanning many food and beverage categories, including pet food, healthcare nutrition, chocolate and confectionary, coffee, dairy, ice cream, frozen meals, and bottled water.[1]  In the United States alone, there are six separate

---

[1] *Our Brands*, Nestlé Global, https://www.nestle.com/aboutus/overview/ourbrands (last accessed Aug. 30, 2022).

AMERICAS 116952881

Nestlé entities—Nestlé USA, Nestlé Nutrition (which includes Gerber), Nestlé Professional, Nespresso, Nestlé Health Science, and Nestlé Purina PetCare Company[2]—each with its own separate and distinct product lines, brands, management, and oversight.

Gerber sources and controls its own ingredient supply, oversees all heavy metals testing of its products (including the products identified in the Complaint), and implements, with direction from its parent, guidance levels for heavy metals in its baby food products sold in the United States. *See* Pater Decl. ¶¶ 4–6. For most of its heavy metals testing, Gerber contracts with Nestlé Quality Assurance Center (NQAC), which is part of Nestlé USA (Gerber's affiliate), and Gerber knows of no test results or supporting documents regarding those tests of its products that it does not possess. *Id.* ¶ 4.

## III.   LEGAL STANDARD

The decision to grant or deny a motion to compel production rests within the broad discretion of the trial court. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.*, 43 F.3d 922, 929 (4th Cir. 1995). The moving party must first make a *prima facie* showing of discoverability before the burden shifts to the objecting party. *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016).

A court may order a party to respond to discovery for "good cause," *Wu v. Tseng*, No. 2:06-CV-346, 2007 WL 4143077, at *3 (E.D. Va. Nov. 19, 2007), but the court must also "limit the frequency or extent of discovery . . . if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Because "[r]elevance is not, on its own, a high bar," and "[t]here may be a mountain of documents . . .

---

[2] *About Nestlé in the United States*, Nestlé USA, https://www.nestleusa.com/about-us (last accessed Aug. 30, 2022).

4

that are relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative," Rule 26(b)(1) requires that discovery into relevant matters "must also be 'proportional to the needs of the case.'" *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). The relevancy requirement thus "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Id.*

## IV.   DISCUSSION

### A.   Plaintiffs Are Not Entitled to Sweeping Discovery From All Nestlé Entities Globally

#### 1.   <u>Plaintiffs' Evidence of Control Falls Well Short</u>

Plaintiffs make the blanket assertion that Gerber has "control" over all documents in the possession of Nestlé S.A. and every affiliate in the "Nestlé Group," but altogether fail to support that sweeping proposition. Putting aside that Nestlé consists many separate corporate entities globally, Plaintiffs' primary argument for "control" is backward, as it is premised on the notion that other Nestlé entities supposedly "control" Gerber. *See* Mot. 6–7 (incorrectly stating "[t]he Nestlé Group exerts significant control over Gerber," including "the sourcing of ingredients for Gerber products, setting the standards for heavy metals in Gerber products, and testing for the amount of heavy metals in Gerber products"); *id.* at 7 (speculating "Nestlé S.A. controls Gerber's supply chain and stores data about Gerber's ingredients"). Directionality is essential for "control." *See In re NC Swine Farm Nuisance Litig.*, No. 5:15-CV-00013-BR, 2016 WL 3661266, at *4 (E.D.N.C. July 1, 2016) ("[T]he dispositive question here is whether . . . the subsidiary has the 'legal right to obtain the documents on demand' from . . . the parent (once removed), not whether [the parent] has the legal right to obtain the documents from [the subsidiary].").

Moreover, Plaintiffs offer no support for their statement that Gerber has erected a

5

"contrived corporate form" to shield documents from discovery.  *See* Mot. 15.  Gerber has no control over the corporate structure or form of Nestlé's global holdings, nor does it share management, assignments, or transactions demonstrating any degree of mutuality with other Nestlé entities.  And, contrary to Plaintiffs' incorrect statement that other Nestlé entities are responsible for Gerber's ingredient sourcing and heavy metals testing, Gerber directs its own business and information relevant to Plaintiffs' allegations *against Gerber* and the relevant documents are in Gerber's possession.  Gerber maintains all documents concerning heavy metals test results for its products (Pater Decl. ¶ 4), and Gerber has produced, and will continue to produce, test results to Plaintiffs.

Additional documents already produced to Plaintiffs, such as Gerber's contaminant guidance levels applicable to its products, confirm Gerber possesses all such information Plaintiffs need for this case.  For example, Plaintiffs argue Nestlé provided Gerber with "Nestlé's Global Contaminant Guidance Levels for finished food products" concerning heavy metals, which Gerber then produced to Plaintiffs.  Mot. 7-8 (citing Pls.' Ex. A at G00993).  That shows guidance levels for heavy metals that Gerber uses for its products sold in the U.S., which includes all products identified in the Complaint.  References to "Nestlé" in Gerber's documents do not always mean another Nestlé entity, as Gerber is also a Nestlé company.  As Plaintiffs recognize, Gerber's d/b/a is Nestlé Nutrition or Nestlé Infant Nutrition.

Plaintiffs' broad, unsupported assertions concerning Gerber's "practical ability to obtain" Nestlé documents are equally flawed.  For example, Plaintiffs make the unsupported statement that Gerber has practical control of all documents possessed by all Nestlé entities solely because they are "intertwined" in the same corporate structure.  Mot. 14.  Plaintiffs fail to establish the level of connection required to meet the Fourth Circuit's "practical-ability-to-control"

test.[3]  With regard to Nestlé S.A., "subsidiary corporations which are wholly owned by the parent have no right to order the parent corporation to turn over documents." *Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 306-07 (M.D.N.C. 1998).  This is not a situation where, "because of the ownership situation, there . . . exists some intermingling of directors, officers, or employees, or business relations" such that Gerber "may be required to respond to a Rule 34 request which includes [Nestlé S.A.]'s documents."  *Id.*[4]  Plaintiffs' remaining arguments, including that Nestlé is invested in Gerber's supply chain and has stated that "Gerber is an important brand for the Nestlé Group" (Mot. 16-17), do not establish control or justify expanding discovery to all Nestlé entities globally.

## 2.    Documents in the Possession of Other Nestlé Entities Are Either Irrelevant or Cumulative

Plaintiffs' control argument distracts from the real issue here: Plaintiffs provide no evidence that non-Gerber Nestlé entities have relevant, unique documents which would justify Plaintiffs' demands.  Plaintiffs have not met their burden to show other Nestlé entities possess relevant information Plaintiffs need for their case.  Nestlé entities globally include many

---

[3] Courts consider 11 factors when determining whether a party has the practical ability to control documents in possession of a related non-party entity: "(1) the corporate structure of the party/non-party[;] (2) the non-party's connection to the transaction at issue in the litigation[;] (3) the degree that the non-party will benefit from the outcome of the case; (4) whether the related entities exchange documents in the ordinary course of business; (5) whether the nonparty [sic] has participated in the litigation; (6) common relationships between a party and its related non-party entity; (7) the ownership of the non-party; (8) the overlap of directors, officers, and employees; (9) the financial relationship between the entities; (10) the relationship of the parent corporation to the underlying litigation; and (11) agreements among the entities that may reflect the parties' legal rights or authority to obtain certain documents."  *See Ultra-Mek, Inc. v. Man Wah (USA), Inc.,* 318 F.R.D. 309, 312–13 (M.D.N.C. 2016).

[4] Plaintiffs' cases are distinguishable.  In *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127 (D. Del. 1986), the subsidiary compelled to produce documents of parent because it was parent's sole "acting arm in the United States" and each of the four members of the subsidiary's Board of Directors was employed by the parent, which Plaintiffs do not argue is the situation here.  In *Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 565 (D. Md. 2006), the judgement-debtor was ordered to produce documents from its affiliates, including its former parent with which Steel had merged.  *See also E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 286 F.R.D. 288, 294-295 (E.D. Va. 2012) (motion to compel judgment-debtor to produce documents from subsidiary entities); *Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13-CV-658, 2014 WL 1681426, at *3 (E.D. Va. Apr. 23, 2014) (denying objection to an order compelling corporation to produce documents in possession of sister corporation); *Baby Jogger, LLC v. Britax Child Safety, Inc.*, No. 2:12CV452, 2013 WL 12092292, at *4 (E.D. Va. Apr. 25, 2013) (motion to compel defendant corporation to produce all documents in the possession of its sister corporations).

7

companies with no connection to Gerber's business and which do not have documents concerning heavy metals in Gerber's products, if they have information about Gerber at all.

No other Nestlé entity in the U.S. manufactures or sells baby food products; has insight into or influence over Gerber's ingredient sourcing, guidance levels, or testing; or would have a reason to discuss Gerber's internal business operations.  Nor could NHI, a holding company, possess information relevant to this case.  Gerber is not required to produce documents or information from every conceivable custodian if such a production would not yield additional relevant information or would be largely duplicative.  *Stein v. U.S. Xpress Enterprises, Inc.*, No. 119-CV-00098-TRM-CHS, 2022 WL 511553, at \*3 (E.D. Tenn. Feb. 11, 2022) (denying motion to compel discovery from six additional custodians unlikely to yield relevant information not duplicative of documents from other custodians and cost of additional discovery was disproportionate to the needs of the case).

Moreover, Gerber is the entity Plaintiffs elected to sue and is similarly the company in possession of the information relevant to Plaintiffs' claims.  Plaintiffs make no showing, because they cannot, that custodians from other Nestlé entities would possess documents Plaintiffs need for their case that Gerber does not also possess.  Instead, Plaintiffs rely on unsupported speculation that is not sufficient to meet their burden on this motion.

Plaintiffs correctly recognize Gerber communicates with other Nestlé entities, and Gerber agreed to produce any such communications or documents originating from Nestlé in Gerber's possession, custody, or control that are responsive to Plaintiffs' discovery requests.  Plaintiffs give two examples of hypothetical documents they fear would be "withheld" unless Nestlé custodians are added, but fail to explain why Gerber's custodians would not possess the same

8

information.[5]

First, Plaintiffs speculate that Nestlé custodians might have "raw data from Nestlé's heavy metal testing that was never provided to Gerber," as well as communications regarding "Nestlé's" heavy metals testing or results.  *E.g.*, Mot. 2.  Not surprisingly, Plaintiffs provide no evidence for this incorrect assertion, because Gerber does not know of any heavy metals test results for its products not in its possession.  Pater Decl. ¶ 4.

Second, Plaintiffs speculate, again without any support, it is possible that "two Nestlé Group employees had an internal conversation admitting that the raw ingredients in Gerber baby food have concerning amounts of heavy metals."  Mot. 19.  This idle speculation falls far short of meeting their burden to drag many Nestlé entities and additional custodians into this case. Moreover, there is no reason that two employees from another Nestlé entity, with its own separate products, would discuss the heavy metal content in Gerber's products.

There is also no basis for Plaintiffs' demand that "Gerber must produce Rule 30(b)(6) designee(s) prepared to testify regarding the Nestlé Group's relevant knowledge for each 30(b)(6) topic."  Mot. 19.  Rule 30(b)(6) topics must be sufficiently narrow to allow a witness to prepare adequately.  No factual or legal basis exists for this overly broad demand for information from Nestlé globally.

### 3.   Plaintiffs' Demand for Non-Gerber Custodians From Other Nestlé Entities is Not Proportional to the Needs of the Case

Plaintiffs' demand for unknown materials from unidentified custodians at every Nestlé entity globally is simply not feasible, warranted, or proportional to the needs of this case.  In this

---

[5] Plaintiffs claim that Gerber "withheld" certain types of documents from its initial production of 3,000 pages and that supports the immediate addition of Nestle Group employees as custodians is based on a false assumption.  Mot. 19.  Gerber's first two productions were not from ESI searches of Gerber custodians.  Those two productions comprised documents Plaintiffs requested that Gerber provide immediately, which documents Gerber then located through manual searches and produced.  The contents of those two productions do not reflect the sufficiency of Gerber's ESI production or the current set of custodians.

Circuit, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Jordan*, 921 F.3d at 188–89.  Plaintiffs are not entitled to "a mountain of documents and emails that are relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative. . . . Proportionality requires courts to consider, among other things, 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

Plaintiffs essentially ask this Court to order Gerber to collect millions or tens of millions of emails and other documents (including proprietary and highly confidential information) from each and every Nestlé non-party entity, search that data for broadly defined "types" of documents, and then review each document for responsiveness, privilege, and confidentiality.  Even if it were possible for Gerber to undertake that effort before the close of fact discovery, Plaintiffs fail to consider that the associated burden would be astronomical.  It is reasonable to ask whether Plaintiffs are simply trying to burden Gerber with expensive and protracted discovery.  It would take months for dozens of contract reviewers and IT personnel to coordinate across countless separate companies around the world in order to provide what Plaintiffs now request (and what Gerber already agreed to produce from its own files).

Plaintiffs' request that all of this occur by September 15 is simply disingenuous. Plaintiffs speculate that "a substantial portion of the most relevant documents in this litigation are likely to reside at Gerber's Nestlé affiliates," a point never raised in this case prior to Plaintiffs' Motion to Compel.  While, at the same time, Plaintiffs have completed their document production of 373 pages.

## B.    Plaintiffs' Refusal to Compromise on Additional Custodians is Unreasonable and Disregards the Court's Discovery Schedule

Given the timeframe for discovery, Gerber has worked to implement a meaningful and

efficient process to ensure it produces the responsive information Plaintiffs seek and need. Gerber first identified the seven custodians likely to have the most relevant information and, after Plaintiffs agreed to those custodians, Gerber has prioritized the production of those documents. Gerber is in the process of completing its review of the documents from those priority custodians and agreed to the substantial completion of those documents by September 9, 2022. To meet this deadline, especially given August vacations and the upcoming holiday, Gerber increased the number of attorneys assigned to review those documents from 28 to 36. The number of attorneys actively reviewing documents has fluctuated each week due to personal issues, equipment failure, and lag time while awaiting conflicts clearance. Thus, the number of active reviewers on a given week ranges from 24 to 32 attorneys, dedicating anywhere from 350 to 1,100 hours each week to this review.

To complete its ESI production, Gerber also proposed to produce documents from five *additional* custodians from the non-priority group of individuals identified in its initial disclosures based on their roles at Gerber and the likelihood that their job responsibilities were sufficiently distinct that they may have unique, relevant information in their files. Plaintiffs nonetheless demand Gerber immediately include all remaining individuals identified in its initial disclosures as custodians, as well as Gerber's former and current CEOs, without consideration of Gerber's explanation that those individuals are unlikely to have additional information that is not duplicative and already being produced from other custodians. Mot. 22.

It is neither reasonable nor feasible for Gerber to search, review, and produce documents from all fourteen additional custodians, in addition to non-custodial data, by Plaintiffs' arbitrary deadline. The five custodians Gerber has proposed, plus the nine additional Gerber custodians Plaintiffs now demand, would increase the volume of documents Gerber has to review by over

11

85,000 documents—or roughly 765,000 pages, not including numerous lengthy spreadsheets and other non-email files which are labor intensive to review—in addition to non-custodial data which based on experience is likely to double the number documents to be reviewed.

Instead of considering in good faith Gerber's explanation, Plaintiffs focused on whether it is theoretically possible that the individuals who would not be custodians could have a unique document not found in the files of the other custodians. Looking for one unique document does not justify the proposed burden and is not proportional to the needs of the case.

Gerber's explanation of which individuals on its initial disclosures are likely cumulative or duplicative of others is straightforward. Gerber proposes omitting as custodians additional employees in Gerber's Quality group, who would be duplicative of Lyle Pater, the head of that group, and other custodians Gerber has already searched.[6] *See* Pater Decl. ¶¶ 7–8. Of the additional five custodians Gerber has proposed, three are also in the Quality group.

Plaintiffs remain unwilling to compromise, now arguing "use of common practices and procedures across all facilities does not mean that the e-mail correspondence of each custodian is duplicative." Mot. 22. This misses the point. Gerber is producing all relevant testing data, guidance levels, and documents from the Quality group custodians and non-custodial data that hit on Plaintiffs' search terms. Merely because additional custodians from the Quality group may have had a separate communication about test results or processes does not justify the added burden of collecting, reviewing, and producing tens of thousands of documents which are cumulative of the information Plaintiffs will already have. Plaintiffs may want these documents, but have not demonstrated why they need them.

---

[6] Plaintiffs have twice cancelled the Rule 30(b)(6) deposition they noticed on testing issues, during which they could have learned about Gerber's testing practices and results. The last scheduled date for that deposition was August 29, 2022. Plaintiffs waited until one business day before that deposition to advise Gerber that they were not going forward, and then only after Gerber specifically asked them for confirmation that the deposition was going forward.

AMERICAS 116952881

As for Gerber's former CEO, William Partyka, and Gerber's current CEO, Tarun Malkani, Plaintiffs argue Gerber has not conducted any hit report analysis to support the assertion that Gerber's CEO is unlikely to have "unique" information.  Mot. 23.  Gerber had not conducted a review of those documents because Plaintiffs had not previously requested these CEOs be added as custodians and there was no reason to believe the most senior executives at Gerber would have unique documents about the core issues in this case.  Plaintiffs do not identify on what issues they believe the CEOs are likely to have unique documents; they speculate only that, based on their seniority, it is "highly likely" they would have participated in "unique" conversations about which more junior employees "were not privy."  Mot. 23.[7]  In any event, Gerber has now reviewed a small subset of its current CEO's documents and found nothing unique.

In summary, the custodians already included in Gerber's ESI review include senior employees and are the individuals that, in Gerber's estimation, are most likely to have the most documents relevant to the claims and defenses in this case.  Plaintiffs have not articulated why the current list of custodians does not meet their needs.  On a motion to compel, "the burden appropriately lies with the requesting party to show that the responding party's search was inadequate," particularly where "there is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files."  *Enslin v. Coca-Cola Co.*, No. 2:14-CV-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (cleaned up) (declining to compel search of additional custodians, including the former chief information security officers of various Coca-Cola companies, where plaintiff did not articulate why it "was not satisfied with

---

[7] Plaintiffs' basis for this assertion is that, in 2019, Mr. Partyka signed a letter to the House Subcommittee on behalf of Gerber in response to the Chairman's request for information regarding Gerber's testing for heavy metals in its products.  *See* Mot. 23 & Pls.' Ex. A.  It is typical for a company's CEO to sign statements on behalf of the company based on information received from or drafted with assistance from others.  Merely because Gerber's then-CEO signed a letter does not suggest he had any "unique" knowledge about the content of the letter.

AMERICAS 116952881

Defendants' choice of custodians").

### C.   Given the Burden of Plaintiffs' Demands, Substantial Completion By September 15 is Not Feasible

Plaintiffs have made no effort to compromise on a reasonable set of additional custodians—without any explanation of why they need documents from all custodians now, before Gerber has completed its production of the priority custodians Plaintiffs requested, which Gerber believes already captures the information they seek and, more importantly, need for their case. The Court already addressed this issue last week. Plaintiffs now simply say "we want everything," without explaining why. Their approach is unreasonable, not proportionate, and incompatible with their demand that Gerber substantially complete all production by September 15, 2022.

In an attempt to explain their arbitrary and unworkable deadline—and at the same time demanding that Gerber collect, review, and produce every document from every conceivable custodian in three weeks—Plaintiffs argue they need two and one-half months to review Gerber's document production, take depositions of Gerber's witnesses, and ask for follow-up information and documents. Mot. 23. Gerber cannot commit to a substantial completion date for the rest of its ESI production until it knows how many additional documents it must collect, review, and produce.

Gerber's inability to commit to a date certain for substantial completion is not "misdirection," as Plaintiffs claim. Mot. 24. Instead, because Plaintiffs have made clear they will accept nothing less than every custodian who may have some responsive information (as well as new unidentified custodians from non-Gerber Nestlé entities), and production of all documents from those custodians, Gerber cannot provide a reasonable estimate of when its document production will be complete. If Gerber is required to include all remaining custodians

14

from the non-priority list, and add its current and former CEO and potentially others, it cannot complete its production before September 15, 2022.

Gerber estimates that it will need until the end of September to substantially complete its review and production of the five additional custodians it proposed to Plaintiffs (or an equal number of alternative custodian(s) that Plaintiffs want to substitute for any of these five custodians)—Kim Aylesworth, Jennifer Dressel, Russ Levitan, Kai Musielak, and Lauryn Gutierrez—and relevant non-custodial data.  If Plaintiffs want Gerber to complete production by a date closer to September 15, they should lower the number of additional custodians.   If Plaintiffs insist on demanding more custodians (such as those mentioned in their motion, including Sarah Smith, Levi Walsh, Lori Young, Kristi Knutdson, Aude Bourguignon, Lori Hawkins and Anita Helland, as well as William Partyka and Tarun Malkani), in addition to the five additional custodians that Gerber has already proposed, Gerber estimates that it can substantially complete production from those additional custodial files by the end of October.

## V.     CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion to Compel.

AMERICAS 116952881

Dated:  August 31, 2022                    WHITE & CASE LLP

                                    By: */s/ Kathryn J. Mims*
                                         Kathryn J. Mims (Va. 81486)
                                         WHITE & CASE LLP
                                         701 Thirteenth Street, NW
                                         Washington, DC 20005
                                         T: (202) 626-3704
                                         F: (202) 639-9355
                                         kmims@whitecase.com

                                         Bryan A. Merryman
                                         (admitted *pro hac vice*)
                                         WHITE & CASE LLP
                                         555 South Flower Street
                                         Suite 2700
                                         T: (213) 620-7700
                                         F: (213) 452-2329
                                         Los Angeles, CA 90071
                                         bmerryman@whitecase.com

                                         Kimberly A. Havlin
                                         (admitted *pro hac vice*)
                                         WHITE & CASE LLP
                                         1221 Avenue of the Americas
                                         New York, N.Y. 10020
                                         T: (212) 819-8200
                                         F: (212) 354-8113
                                         kim.havlin@whitecase.com

                                         Geoffrey W. Castello
                                         KELLEY DRYE & WARREN LLP
                                         One Jefferson Road, 2nd Floor
                                         Parsippany, NJ 07054
                                         Tel: (973) 503-5922
                                         Fax: (973) 503-5950
                                         gcastello@kelleydrye.com

                                         *Attorneys for Defendant*
                                         *Gerber Products Company*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2022, I caused a copy of the foregoing **GERBER PRODUCTS COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL NESTLÉ DOCUMENTS, CUSTODIANS, AND SUBSTANTIAL COMPLETION DATE** to be filed electronically with the Clerk of the Court via the Court's ECF system, which will send notification of such filing to all counsel of record.

By:   */s/ Kathryn J. Mims*
Kathryn J. Mims (Va. 81486)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
T: (202) 626-3704
F: (202) 639-9355
kmims@whitecase.com

*Attorneys for Defendant*
*Gerber Products Company*

17