# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| IN RE: GERBER PRODUCTS COMPANY HEAVY METALS BABY FOOD LITIGATION | Master File No. 1:21-cv-00269 (MSN/JFA) |
| This Document Relates to ALL Cases | |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL NESTLÉ DOCUMENTS, CUSTODIANS, AND SUBSTANTIAL COMPLETION DATE

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

      I.      Gerber Is Obligated to Search and Produce Relevant Documents Held
             by Nestle ........................................................................................................ 3

      A. Gerber Ignores and Misconstrues the Law .................................................... 3

      B. Gerber Does Not Dispute It Has the Practical Ability to Obtain Documents From
Nestle ................................................................................................................. 5

      C. Gerber's Assertion that Nestle Lacks Relevant and Unique Documents Is
Demonstrably False ......................................................................................... 7

      II. Gerber Should Be Ordered to Produce Documents from All Individuals
           Identified in Its Initial Disclosures and from Its Former and Current
           CEOs ........................................................................................................... 10

      III. Gerber Is Able—and Obligated—to Provide a Substantial Completion
           Date............................................................................................................ 12

CONCLUSION ................................................................................................................ 13

## Table of Authorities

**Cases**                                                                 **Page(s)**

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*,
    286 F.R.D. 288 (E.D.Va.2012)………………………………………………3, 4, 5

*Enslin v. Coca-Cola Co.,*
    No. 2:14-CV-06476, 2016 WL 7042206 (E.D. Pa. June 8, 2016)………………………...12

*Flame S.A. v. Indus. Carriers, Inc.,*
    2014 WL 1681426 (E.D. Va. Apr. 23, 2014)……………………………………...3, 4, 5, 6

*Hampton Hall, LLC v. Chapman Coyle Chapman & Assocs. Architects AIA, Inc.,*
    No. 9:17-CV-1575-RMG, 2019 WL 1276073 (D.S.C. Mar. 20, 2019)…………………3, 5

*In re: NC Swine Farm Nuisance Litig.,*
    2016 WL 3661266 (E.D.N.C. July 1, 2016)…………………………………………..5

*Medidata Sols., Inc. v. Veeva Sys., Inc.,*
    No. 17 CIV. 589 (LGS), 2021 WL 4902462 (S.D.N.Y. Sept. 22, 2021)………………...11

*Spendlove v. RapidCourt, LLC,*
    No. 3:18-CV-856, 2019 WL 7143664, (E.D. Va. Dec. 23, 2019) ………………………..11

*Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc.*,
    237 F.R.D. 561 (D. Md. 2006)……..………………………………………………3, 4, 5

*Ultra-Mek, Inc. v. Man Wah (USA), Inc.,*
    318 F.R.D. 309 (M.D.N.C. 2016) ……………………………………………………...3

*Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 306 (M.D.N.C. 1998)
    181 F.R.D. 302 (M.D.N.C. 1998)……...………………………………………………..3, 4

**Other Authorities**

Fed. R. Civ. P. 26………………………………………………………………………11

Fed. R. Civ. P. 34…………………………………………………………………..1, 3, 4

ii

## INTRODUCTION

Gerber does not dispute that it has the practical ability to obtain documents from Nestle. Nor can it. There is overwhelming evidence: Gerber's former CEO told Congress that Nestle sets the sourcing and contaminant strategy for heavy metals, and conducts most of the heavy metal testing. Gerber routinely works with Nestle with respect to heavy metals. Gerber's new declarant only *adds* to this evidence, by stating that Nestle USA handles most of the heavy metal testing for Gerber and by identifying a Nestle S.A. unit as responsible for directing the guidance on the level of heavy metals in Gerber baby foods.

Under the law of this District, a party with the practical ability to obtain documents from corporate affiliates must do so because the party is deemed to have control over the materials for purposes of Rule 34. Gerber's failure to contest the central issue in this dispute ends the inquiry, and Gerber should be ordered to produce relevant documents from Nestle USA, Nestle S.A., and any other relevant Nestle affiliates.

Nevertheless, Gerber continues to refuse to comply with its discovery obligations by misstating the law and facts. In its opposition, Geber fails to address the relevant legal factors to determine control in this District. Gerber instead misconstrues the law by repeatedly asserting that it lacks control over the documents from Nestle because it lacks legal control over Nestle. But this gets the applicable legal test wrong: under the lack of this District, the practical ability to obtain documents *determines* whether a party has control under Rule 34.

Gerber misleads the Court by asserting that other U.S. Nestle entities have no "insight into or influence over Gerber's ingredient sourcing, guidance levels, or testing . . ." (ECF No. 172, Gerber Products Company's Opposition To Plaintiffs' Motion To Compel Nestlé Documents, Custodians, And Substantial Completion Date "Opp." at 8.) That is false. Gerber's

1

own former CEO stated to Congress that Nestle controls the ingredient sourcing strategy for heavy metals, has established containment guidance levels for all baby food product categories globally, and the majority of Gerber's product testing for heavy metals is conducted by Nestle at a Nestle facility. Faced with this evidence, Gerber now seeks to disavow the statements of its former CEO by asserting that "[i]t is typical for a company's CEO to sign statements on behalf of the company based on information received from or drafted with the assistances from others." (Opp. at 13, n. 7.)

Gerber's new declarant also confirms that Nestle USA conducts the heavy metal testing for Gerber products, and that Nestle S.A. directs the guidance on the level of heavy metals in Gerber baby foods.

Gerber also asserts that Nestle has no unique documents because any relevant documents at Nestle have already been turned over to Gerber. But Gerber provides no facts to support this assertion. And Gerber's counsel admitted he had "no idea" what resides at Nestle. Regardless, Gerber's contention is betrayed by the facts. Recently produced emails demonstrate that documents related to heavy metals are not transmitted wholesale to Gerber, but rather must be requested.

Gerber should also be required to produce documents from all the custodians on its initial disclosures, as well as its current and former CEO. There is no evidence that the documents are duplicative, and Gerber has already admitted that they have relevant documents by including them on the initial disclosure list. Nor does Gerber offer any competent facts to explain why it should not search the documents of its current and former CEO (who sent the letter to Congress).

Finally, the Court should order Gerber to commit to a substantial completion deadline. Gerber's present staffing shows that it could complete the documents review in less than two

weeks based on the pace of an average document reviewer. Nevertheless, in an effort to
compromise, Plaintiffs propose September 22, 2022 as the substantial completion deadline.

## ARGUMENT

### I.    Gerber Is Obligated to Search and Produce Relevant Documents Held by Nestle

Gerber does not dispute that it has the practical ability to obtain documents held by
Nestle. Yet it steadfastly refuses to produce those materials by ignoring and misconstruing the
law, and by making assertions that contradict the facts.

#### A.    Gerber Ignores and Misconstrues the Law

A responding party must produce documents over which it as has the "practical ability to
obtain." *Flame S.A. v. Indus. Carriers, Inc.,* 2014 WL 1681426, at *1 (E.D. Va. Apr. 23, 2014)
(quoting *E.I. DuPont de Nemours & Co. v.. Kolon Indus., Inc.,* 286 F.R.D. 288, 292
(E.D.Va.2012)) (citations omitted).[1] A party's "practical ability to obtain" documents from a
corporate affiliate establishes "control" over the documents under Rule 34. *E.g. id.; E.I. DuPont*,
286 F.R.D. at 292. To determine if a party has the "practical ability to obtain" documents from a
corporate affiliate, courts in this District evaluate 11 non-dispositive factors. *E.g. Flame S.A.*,
2014 WL 1681426, at *1.

Gerber ignores the law. Other than a stray reference in a footnote, Gerber fails to address
the 11 factors used to determine the "practical ability to obtain." (Opp. at 7 n. 3.) Instead, Gerber
misconstrues the law by asserting that it has no control over the documents because it lacks
control over Nestle. (Opp. at 6.) But this gets the applicable legal test wrong: under the lack of

---

[1] *Hampton Hall, LLC v. Chapman Coyle Chapman & Assocs. Architects AIA, Inc.,* No. 9:17-CV-
1575-RMG, 2019 WL 1276073, at *2 (D.S.C. Mar. 20, 2019); *Ultra-Mek, Inc. v. Man Wah
(USA), Inc.,* 318 F.R.D. 309, 312–13 (M.D.N.C. 2016); *Steele Software Sys., Corp. v. DataQuick
Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006); *Uniden Am. Corp. v. Ericsson Inc.*, 181
F.R.D. 302, 306 (M.D.N.C. 1998).

this District, the practical ability to obtain documents *determines* whether a party has control

under Rule 34. *See Flame S.A.*, 2014 WL 1681426, at *1 (E.D. Va. Apr. 23, 2014) (quoting *E.I.*

*DuPont,* 286 F.R.D. at 292 (citations omitted)).

       Gerber also seeks to mislead the Court by stating that Plaintiffs' "primary argument for

'control . . . is premised on the notion that other Nestle entities supposedly 'control' Gerber."

(Opp. at 5.) Not true. Plaintiffs demonstrate Gerber's practical ability to obtain documents from

Nestle by addressing the 11 relevant factors court's use to determine the issue—which Gerber

never addresses. (ECF No. 162, Plaintiffs' Motion To Compel Nestlé Documents, Custodians,

And Substantial Completion Date "Mot." at 14-17) Moreover, the section of Plaintiffs' brief

cited by Gerber (Mot. 6-7) discusses its former CEO's statement to Congress that Nestle controls

Gerber's ingredient sourcing, standards and testing with respect to heavy metals. That admission

satisfies factors 2, 4 and 6 and lays out the close relationship between the relevant entities, a key

factor in the "practical ability to obtain" analysis. *Steele Software Sys., Corp. v. DataQuick Info.*

*Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006) ("Common relationships between a party and its

related nonparty entity are particularly important to the determination of control.").

       Gerber suggests that as a subsidiary it does not have the "right" to order its parent

corporation Nestle, S.A. to turn over document.[2] For this proposition, Gerber cites *Uniden Am.*

*Corp. v. Ericsson Inc.*, as stating "subsidiary corporations which are wholly owned by the parent

have no right to order the parent corporation to turn over documents." 181 F.R.D. 302, 306-07

(M.D.N.C. 1998). But *Uniden* further states that a subsidiary can be required to produce a parent

company's documents where "there exists some intermingling of . . . business relations." *Id.*

(compelling a party to obtain documents from its sister corporation, noting "that the parent

---

[2] Notably, Gerber only makes this argument with regard to Nestle S.A. (Opp. at 7.)

corporation actually exerts control over both sister corporations, as opposed to their being run as completely separate, independent entities."). A explained in Plaintiffs' opening brief, and below, Gerber's business, including with respect to heavy metals, is tightly intermingled with Nestle.

Gerber's case law citations further misconstrue the law. The court in *In re: NC Swine Farm Nuisance Litig.,* did not apply the "practical ability to obtain" analysis, because the Eastern District of North Carolina, unlike the Eastern District of Virginia, the District of Maryland, the Middle District of North Carolina, and the District of South Carolina, *see supra* n. 1, has not adopted the "practical ability to obtain" test. *See* 2016 WL 3661266, at *3 (E.D.N.C. July 1, 2016). Second, the relevant legal analysis is whether Gerber can practically obtain documents from Nestle entities, which Plaintiffs argue in their motion, not whether Nestle can obtain documents from Gerber.

Gerber also seeks to distinguish in-district authority by attempting to draw a difference in the corporate forms at issue in those cases and the corporate form at issue here. (Opp. at 7 n.4.) Courts have been clear, however: "[t]he specific form of the corporate relative involved does not matter, *i.e.,* whether it is a parent, sister, or subsidiary corporation." *Steele Software*, 237 F.R.D. at 564; *Hampton Hall, LLC v. Chapman Coyle Chapman & Assocs. Architects AIA, Inc.*, 2019 WL 1276073, at *2 (D.S.C. Mar. 20, 2019); *see also*, *Flame S.A.*, 2014 WL 1681426, at *1 (noting that the eleven factors are utilized for "related non-parties, like parent, sister, or subsidiary corporations"); *E.I. DuPont*, 286 F.R.D. at 292 (E.D. Va. 2012) (same).

## B.   Gerber Does Not Dispute It Has the Practical Ability to Obtain Documents From Nestle

In its Opposition, Gerber never denies that it has the practical ability to obtain documents from Nestle USA, Nestle NA, or any other Nestle affiliate. Nor does the two-page Pater declaration dispute that Gerber is able to obtain documents from Nestle. The reason for this is

simple: the evidence (including a letter submitted by Gerber's former CEO to Congress, a Wall Street Journal article, and other publicly available information) clearly demonstrate Gerber's practical ability to obtain documents from Nestle. (Mot. at 5-10.)

Indeed, Gerber's opposition, and its declarant Lyle Pater, *confirm* that Gerber has the practical ability to obtain documents from Nestle USA and Nestle S.A. As for Nestle USA, Pater admits that Gerber obtains documents from Nestle USA. *See* Pater Decl. ¶ 4. Gerber admits it receives at least some documents from Nestle USA related to heavy metal testing. (Opp at 8.) Gerber further admits that it "contracts" with Nestle USA to conduct that testing. Opp at 8. Gerber's contract with Nestle USA to conduct testing on Gerber products provides further support for Gerber's practical ability to obtain the Nestle USA documents. *E.g. Flame S.A.*, 2014 WL 1681426, at *1.

And, late on Thursday last week, Gerber produced e-mails showing that Gerber employees do request, and obtain, documents from Nestle USA. *See e.g*  G00003425-28 (Cheryl Callen asks a Nestle NQAC employee the LOD[3] and LOQ[4] used to test the contaminants baby food products; an NQAC representative asks why Callen needs the information, stating that "the laboratory" advised "we cannot report values below our LOQ"; Callen says she will get back to the NQAC if she needs the LOD); Ex. A, G00002582 (Callen directs a quality assurance employee to ask NQAC to specify if certain samples are about 10 ppb of arsenic); Ex. B, G00003805 (Callen notes she has asked NQAC for details on the company's test methods to update an external individual).

 Gerber's opposition, and its declarant Mr. Pater, also *confirm* that Gerber has the practical ability to obtain documents from Nestle S.A. Pater writes that the "Strategic Business

---

[3] By LOD, Callen is likely referring to the "limit of detection" of Nestle's testing.
[4] By LOQ, Callen is likely referring to the "limit of quantitation" of Nestle's testing.

Unit" provides "direction" to Gerber for the "guidance levels for heavy metals in its baby food products." Pater Declaration ¶6. Public records confirm that Nestle S.A. runs the "Strategic Business Unit" for Nestle Nutrition. Specifically, the head of the Strategic Business Unit for Nestle Nutrition is Thierry Philardeau, a Nestle S.A. employee.[5] Gerber is listed as one of the brands that Mr. Philardeau is responsible for on his LinkedIn profile. Ex. C. This confirm that the "Nestle Global Contaminant Guidance Levels" for heavy metals are created by Nestle S.A., and that Gerber then obtains the guidance documents from Nestle S.A.

In sum, there is no question Gerber has the practical ability to obtain documents from Nestle USA and Nestle S.A.

### C.     Gerber's Assertion that Nestle Lacks Relevant and Unique Documents Is Demonstrably False

Because Gerber does not and cannot provide evidence that it lacks the practical ability to obtain documents from the Nestle, Gerber instead attempts to mislead the Court by asserting that Nestle affiliates do not have any relevant documents and/or that certain Nestle affiliates have already provided all their relevant documents to Gerber. The facts tell a different story.

### 1.     Relevant Documents Reside at Nestle USA and Nestle SA

To obfuscate that Nestle USA and Nestle S.A. possess relevant documents, Gerber makes the following statement: "N*o other Nestle entity in the U.S.* manufactures or sells baby food products, *has insight into or influence over Gerber's ingredient sourcing, guidance levels, or testing,* or would have reason to discuss Gerber's internal business operations." (Opp. at 8.) (emphasis added). This is false.

---

[5] *Nigerian parents faces Social & Financial Pressures*, Nestle, (Mar. 4, 2021) https://www.nestle-cwa.com/en/nigerian-parents-faces-social-financial-pressures; *see also Thierry Philardeau*, LinkedIn, https://ch.linkedin.com/in/thierry-philardeau-26b4b14a/en (last visited Sept. 1, 2022).

As for Nestle USA, Gerber's statement is demonstrably false because it is undisputed that Nestle USA conducts most of the heavy metal testing for Gerber products. As Plaintiffs pointed out in their opening brief, Gerber's former CEO told Congress that Nestle conducts most heavy metal testing for Gerber. Mot. at 9 (citing Ex. A to Mot., GA00984 at G00994-5). Gerber responds to that damning admission by suggesting (in a footnote) that its former CEO misled congress. (Opp. at 13, fn. 7.) Regardless, Gerber and its declarant admit that Nestle USA possess relevant documents. Opp. at 4; Pater Decl. ¶ 4; G00984 at G00994-5. And Gerber's limited document production from late on Thursday last week further confirms that Nestle USA conducts heavy metal testing of Gerber products, and that Nestle USA creates the documentation related to that heavy metal testing. Ex. D, G00002903.

As for Nestle S.A., Gerber attempts to mislead the Court by limiting its statement regarding Nestle entities to U.S. entities. Opp. at 8. But Nestle S.A. is a Swiss entity and Gerber thus never denies that Nestle S.A. possess relevant documents. Notably, Pater never denies that Nestle S.A. sets the global sourcing and contaminant strategy relevant to heavy metals.

In fact, Gerber's declarant Pater *confirms* that Nestle S.A. directs the guidance on the level of heavy metals in Gerber baby foods. Pater identifies the "Strategic Business Unit" as directing the guidance levels. (Pater Decl. ¶ 6.) And public records confirm Nestle S.A. runs the "Strategic Business Unit" for Nestle Nutrition. Specifically, the head of the Strategic Business Unit for Nestle Nutrition is Thierry Philardeau, a Nestle S.A. employee.[6] It is thus undisputed that Nestle S.A. possesses relevant documents.

And neither Gerber nor Mr. Pater responds to Plaintiffs' evidence in its opening brief that

---

[6] *Nigerian parents faces Social & Financial Pressures*, Nestle, (Mar. 4, 2021) https://www.nestle-cwa.com/en/nigerian-parents-faces-social-financial-pressures; Ex. C, *Thierry Phlardeau*, LinkedIn, https://ch.linkedin.com/in/thierry-philardeau-26b4b14a/en (last visited Sept. 1, 2022).

Nestle S.A. contains relevant documents, including quotes from Nestle S.A.'s Global Head of Supply Chain Chris Tyas and Gerber's former CEO William Partyka. Instead, Gerber waives its hands and calls this evidence speculation. Opp. at 8.

<strong>2. Gerber's Assertion that It Possess All Relevant Nestle Documents Contradicts the Facts</strong>

Faced with overwhelming evidence that Nestle possesses relevant materials, Gerber argues that Plaintiffs' motion should be denied because Nestle supposedly does not possess any unique documents not already in Gerber's possession. In short, Gerber asserts that any relevant document residing at Nestle has already been turned over to Gerber. Opp. at 7-9.

Gerber proffers *no facts* to support this assertion. Gerber has not investigated whether responsive documents are held by other Nestle entities, and in a meet and confer Gerber's counsel admitted that he has "no idea" if Nestle possesses relevant documents. Mot. at 11. Nevertheless, Gerber now points to its single declarant who can only state: "To the best of my knowledge, Gerber possesses all results and supporting data concerning heavy metal testing for its products conducted."  Pater Decl. ¶ 4.

Gerber's baseless assertion is nonsensical. On the one hand, Gerber contends that Nestle has transmitted all relevant documents in its possession; on the other hand, Gerber asserts it has no knowledge of what is in Nestle's possession, and has no obligation to search for it.

The paltry number of documents produced thus far, however, already demonstrate that Gerber does not possess all of the relevant information on its heavy metal testing. Rather, Gerber must request it as needed from the NQAC, which is run by Nestle USA. For instance, recently produced emails from Gerber employee Cheryl Callen, Senior Director of Regulatory and Scientific Affairs, shows that she reaches out to Nestle USA employees at NQAC with questions whenever she needs information on the testing methods used to test Gerber's products and

9

ingredients for heavy metals. *See e.g* G00003425-28, attached hereto as Ex. E (Cheryl Callen asks a Nestle NQAC employee the LOD[7] and LOQ[8] used to test the contaminants in baby food products; an NQAC representative asks why Callen needs the information, stating that "the laboratory" advised "we cannot report values below our LOQ"; Callen says she will get back to the NQAC if she needs the LOD); G00002582 (Callen directs a quality assurance employee to ask NQAC to specify if certain samples are about 10 ppb of arsenic); G00003805 (Callen notes she has asked NQAC for details on the company's test methods to update an external individual). The minuscule number of documents produced to date already demonstrate that documents related to heavy metals are not transmitted wholesale to Gerber.

It is also undisputed that Plaintiffs will not receive all the relevant documents from Nestle S.A. Gerber has failed to name any Nestle S.A. custodians, and thus will not produce any internal conversations between Nestle S.A. employees regarding how it sets the guidance for heavy metals in Gerber baby food. For example, Plaintiffs will not receive any documents between Thierry Philardeau and other Nestle S.A. employees.

In sum, Gerber's position is not only circular, it also contradicts the facts.

## II.   Gerber Should Be Ordered to Produce Documents from All Individuals Identified in Its Initial Disclosures and from Its Former and Current CEOs

Gerber does not deny the individuals listed on its initial disclosures and its former and current CEOs possess relevant documents. Instead, Gerber argues that these custodians are not proportional to the needs of the case. Because Plaintiffs have demonstrated that the documents sought are relevant,[9] the burden shifts to Gerber, as the objecting party, to show that the request

---

[7] By LOD, Callen is likely referring to the "limit of detection" of Nestle's testing.
[8] By LOQ, Callen is likely referring to the "limit of quantitation" of Nestle's testing.
[9] Gerber certainly could not contend the individuals listed in their initial disclosures as having "discoverable information concerning this action" do not hold relevant documents.

is unduly burdensome. *Spendlove v. RapidCourt, LLC*, No. 3:18-CV-856, 2019 WL 7143664, at *4 (E.D. Va. Dec. 23, 2019) "[A] party objecting to a discovery request as overly burdensome must submit affidavits or other evidence demonstrating the nature and extent of the asserted burden." *Id.* But Gerber does not submit any declaration or facts to a demonstrate disproportionate burden.

Gerber also fails to even discuss many of the Rule 26(b)(1) proportionality factors.[10] In any event, Gerber asserts that it will have review 85,000 additional (i.e., unique) documents if it produces documents from all the Gerber custodians requested by Plaintiffs. In the context of complex litigation, such as this case, that is not a large burden. As the Court is aware, "the normal discovery process in complex civil litigation … [is that] a huge number of attorney hours are expended reviewing million of documents from dozens of custodians." *Medidata Sols., Inc. v. Veeva Sys., Inc.*, No. 17 CIV. 589 (LGS), 2021 WL 4902462, at *3 (S.D.N.Y. Sept. 22, 2021).

Moreover, the fact that there are 85,000 additional unique documents demonstrates that the inclusion of all the individuals on Gerber's initial disclosure list as custodians would not be duplicative. And, neither Gerber's brief nor the Pater declaration provides any evidence that the disputed custodians would be cumulative or duplicative. In Gerber's brief, it cites to Pater's Declaration for the proposition that the documents of the disputed custodians would be duplicative. Opp. at 12. But Pater never says that in his declaration. Instead, Pater acknowledges

---

[10] Here, all the Rule 26(b)(1) proportionality factors weigh in Plaintiffs' favor: (i) the issues at stake in the action – heavy metals in food eaten by babies – is highly important; (ii) the amount in controversy is large, as Gerber is one the best-selling baby food brands and thus sold its products to a large number of consumer; (iii) the relative access to relevant information also weighs in Plaintiffs' favor, as Gerber has access (and Plaintiffs do not) to the vast majority of the relevant information; (iv) the custodians selected are an important aspect of discovery; and (v) the burden asserted by Gerber is small.

that the requested custodians worked in different facilities. This is evidence *for* the disputed custodians possessing unique documents, not evidence against it.

As to Gerber's current and former CEO, Plaintiffs have proffered evidence demonstrating that these individuals have relevant documents and information, a contention Gerber does not contest. Def. Resp. at 13. In supporting their burden that the documents held by the CEOs would be unreasonably duplicative, Gerber in effect says – just trust us. Gerber states in its response that it "has now reviewed a small subset of its current CEO's documents and found nothing unique." Even this bald assertion says nothing of Gerber's former CEO. More importantly, however, this argument in Gerber's response is not supported by any specific facts or even a sworn affidavit. Gerber does not even say how many documents it reviewed.

Finally, Gerber cites to out-of-district case law which state that asking a court to compel a party to search the ESI of additional custodians is equivalent to "second-guessing the responding party's representation that it conducted a reasonable inquiry for responsive information, and … the burden appropriately lies with the requesting party to show that the responding party's search was inadequate." *Enslin v. Coca-Cola Co.,* No. 2:14-CV-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016). Here, even applying the standard cited to by Gerber, Plaintiffs have clearly shown that Gerber's search for responsive information was not reasonable because it omitted individuals Gerber has stated have "discoverable information" related to this matter.

## III.   Gerber Is Able—and Obligated—to Provide a Substantial Completion Date

After refusing for months to commit to any substantial completion deadline for production, Gerber now states that "it can substantially complete production" from the additional requested custodial files by the end of October. (Opp. at 15.) Plaintiffs appreciate that Gerber has finally provided a date, albeit after forcing Plaintiffs to file a motion to compel. The proposed date of October 31, however, is facially insufficient in light of the demanding case schedule.

As noted in the opening brief, Plaintiffs need two and half months to review the documents, make follow up requests and take depositions. This is a bare minimum. It will take at least three weeks for Plaintiffs to review the documents. Plaintiffs must then make follow up requests, and prepare for depositions. Even assuming that Gerber could respond to all the necessary follow-up document requests in 30 days, that would only leave Plaintiffs with *three weeks* to conduct depositions – in the midst of the Thanksgiving holiday.

Gerber's own brief demonstrates that a September 15 deadline is entirely feasible. According to Gerber, it has staffed 24-32 attorneys to review documents and it estimates 85,000 custodial documents to review if the additional custodians are included. On average a document reviewer can review 500 documents per day for a document production. Graber Decl. ¶ 3; Ex. F, Website *Document Review Calculator*, Percipient. Assuming 30 document reviewers are staffed, they could review 15,000 documents per day. Thus, all of the additional custodial documents requested could be reviewed in six days. Gerber estimates a similar number of non-custodial documents; adding those documents, the review could be completed in 12 days. And, of course, Gerber can add document reviewers to complete the task even sooner.

In sum, based on Gerber's present staffing levels, it should easily be able to produce responsive documents from all of the requested custodians by September 15. Nevertheless, as a compromise, Plaintiffs propose a September 22, 2022 substantial completion deadline.

## CONCLUSION

For the foregoing reasons, Plaintiffs seek an order compelling Gerber to (1) produce documents that reside at Nestle, S.A. and other Nestle affiliates (including by adding custodians from Nestle Group entities to its ESI searches), and prepare a corporate designee to testify

regarding Nestle's knowledge; (2) produce responsive documents from the custodians already identified in Gerber's initial disclosures, as well as Gerber's current and former CEOs; and (3) substantially complete its production of documents by September 22, 2022.

Dated: September 1, 2022          By:      */s/ Steven J. Toll*

Steven J. Toll
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave. NW East
Tower, 5th Floor Washington,
DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Rosemary M. Rivas
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9700
Facsimile: 510-350-9701

Janine Pollack
CALCATERRA POLLACK LLP
1140 Avenue of the Americas, 9th
Floor
New York, New York 10036
Telephone: 212-899-1765
Facsimile: 332-206-2073

*Plaintiffs' Interim Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2022, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF system, which will send notice of

electronic filing to all counsel of record.

By:     _/s/ Steven J. Toll_
            Steven J. Toll
            COHEN MILSTEIN SELLERS & TOLL, PLLC
            1100 New York Ave. NW East
            Tower, 5th Floor Washington,
            DC 20005
            Telephone: (202) 408-4600
            Facsimile: (202) 408-4699